| | |
|---|---|
| NUSTAR FARMS, LLC )<br>ANTHONY NUNES, JR. )<br>ANTHONY NUNES, III )<br>    )<br>    Plaintiff, )<br>    )<br>v.    ) | Civil Action No. _____ |
| ) | |
| ) | **TRIAL BY JURY** |
| RYAN LIZZA ) | **IS DEMANDED** |
| ) | |
| -and- ) | |
| ) | |
| HEARST MAGAZINE MEDIA, INC. ) | |
| ) | |
|     Defendants. ) | |

# **COMPLAINT**

Plaintiffs, NuStar Farms, LLC, Anthony Nunes, Jr. and Anthony Nunes, III, by counsel, file the following Complaint against defendants, Ryan Lizza ("Lizza") and Hearst Media Magazine, Inc., the publisher of *Esquire* magazine ("Hearst" or "*Esquire*"), jointly and severally.

Plaintiffs seek (a) compensatory damages and punitive damages in the sum of **$25,000,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from the date of the commencement of this action until the date of Judgment pursuant to Iowa Code § 668.13, and (c) costs incurred – arising out of the Defendants' defamation.

In support of their claims, Plaintiffs state the following facts:

## I. INTRODUCTION

1. Plaintiffs are private individuals. They operate a private business and live with family in the small community of Sibley, Iowa.

2. On September 30, 2018, the Defendants knowingly and recklessly embroiled Plaintiffs in a wholly contrived controversy. Defendants injured Plaintiffs' reputations with a scandalous hit piece that intentionally disparaged Plaintiffs, accused Plaintiffs of criminal conduct, dishonesty, deceit, conspiracy, unethical business practices, and severely impugned Plaintiffs' integrity. Defendants published the hit piece online and targeted Plaintiffs via social media. Defendants' false and defamatory statements were foreseeably republished millions of times within the last year, including to citizens of Iowa.

3. In this case, Plaintiffs seek money damages for the insult, pain, embarrassment, humiliation, mental suffering, anguish, and injury to their good names and professional reputations in Iowa caused by the Defendants' defamation. The Defendants published click-bait, sensationalist, egregious misstatements simply to sell magazines and, in Lizza's case, to distract readers from his negative image and history as a sexual predator and to improve his standing. The Defendants' had an axe to grind against Devin Nunes, and wrote the hit piece shortly before the 2018 Congressional election, in order to accomplish a nefarious purpose. The Defendants' misconduct is egregious. They should never be permitted to attack the reputations and standing of anyone, especially hard-working private individuals. They should be punished for their unlawful actions and a very strong message needs to be sent to prevent other so-called "journalists" from acting in a similar way.

## II. PARTIES

4. Plaintiff, NuStar Farms, LLC ("NuStar"), is a limited liability company organized in 2006 under the laws of Iowa. None of its members is a citizen of Virginia, the District of Columbia, Delaware or New York. NuStar operates a dairy farm. It's business is located in Sibley, Iowa.

5. Plaintiffs, Anthony Nunes, Jr. ("Tony") and Anthony Nunes, III ("Anthony"), are citizens of Iowa. They manage the business of NuStar. Anthony runs the day-to-day operations of the farm.

6. Defendant, Lizza, is, upon information and belief, a citizen of Virginia or the District of Columbia. Lizza wrote the hit piece at issue in this action for Hearst for publication in *Esquire* magazine.

7. Defendants, Hearst Magazine Media, Inc. ("Hearst"), is a Delaware corporation. Hearst's headquarters and principal place of business is in New York. Hearst publishes *Esquire* magazine. Hearst is a unit of Hearst Corporation, a global media, information and services company. Hearst's print and digital assets reach 155 million readers and site visitors each month – two-thirds of all millennials, and over 80% of Gen Z and millennial women in the country. *Esquire* magazine has a total print circulation of 759,922. 97% of the total circulations are subscriptions. [http://www.esquiremediakit.com/r5/home.asp]. Hearst operates multiple active websites that target Iowans. Upon information and belief, Hearst has hundreds of thousands of print and digital subscribers, followers and viewers who live and work in Iowa, and has sold millions of copies of *Esquire* to Iowans.

### III. JURISDICTION AND VENUE

8. The United States District Court for the Northern District of Iowa has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees.

9. The Defendants are subject to specific personal jurisdiction in Iowa. They transact substantial business in Iowa and committed multiple acts of defamation in whole or part in Iowa. They have minimum contacts with Iowa such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution. Defendants purposefully availed themselves of the privilege of doing business in Iowa. Defendants' defamation was purposefully directed at Iowa. Plaintiffs' claims arise directly from and specifically relate to Defendants' publication of false and defamatory statements in Iowa. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

10. Venue is proper in the Western Division of the United States District Court for the Northern District of Iowa. A substantial part of the events giving rise to the claims stated in this action occurred in Osceola County within the Western Division of the United States District Court for the Northern District of Iowa. Plaintiffs suffered injury and loss within the Western Division, specifically in the Sibley community in which Plaintiffs live and work.

### IV. STATEMENT OF THE FACTS

11. On September 30, 2018, Hearst published an article in *Esquire* magazine written by Lizza entitled "**Devin Nunes's Family Farm Is Hiding a Politically**

**Explosive Secret**". [https://www.esquire.com/news-politics/a23471864/devin-nunes-family-farm-iowa-california/ (the "Lizza Hit Piece")].

12. The Lizza Hit Piece was a deeply flawed and desperate attempt by the Defendants (a) to target Tony's son, Devin Nunes ("Devin"), ahead of the November 2018 Congressional election, (b) to undermine confidence in Devin and interfere with his official duties as Chairman of the House Intelligence Committee to investigate Russian interference in the 2016 Presidential election, and (c) to retaliate against Devin for exposing corruption, including the DNC/Clinton campaign's role in funding the salacious "Steele dossier". [https://www.breitbart.com/politics/2018/10/01/devin-nunes-parents-stalked-iowa-move/; https://twitter.com/TomFitton/status/1047176155118411777].

13. Plaintiffs and other members of the Nunes family were collateral damage in Defendants' reckless smear operation.

14. From start to finish, the Lizza Hit Piece is a legion of lies. The click-bait headline falsely states or implies that Devin owns an interest in NuStar, and that Devin colluded with NuStar, Tony, Anthony and other members of the Nunes family to hide a "Politically Explosive Secret". In truth, Devin does not own an interest in his family's dairy farm in Iowa, never has, and is not involved in any way in its operations. Viewed in context and as a whole, the Lizza Hit Piece, directly and/or by implication, makes the following false and defamatory statements about Plaintiffs:

● "So why did [Devin Nunes'] parents and brother cover their tracks after quietly moving the farm to Iowa? Are they hiding something politically explosive? On the ground in Iowa, Esquire searched for the truth—and discovered a lot of paranoia and hypocrisy".

- "Devin; his brother, Anthony III; and his parents, Anthony Jr. and Toni Dian, sold their California farmland in 2006.  Anthony Jr. and Toni Dian, who has also been the treasurer of every one of Devin's campaigns since 2001, used their cash from the sale to buy a dairy eighteen hundred miles away in Sibley, a small town in northwest Iowa where they—as well as Anthony III, Devin's only sibling, and his wife, Lori—have lived since 2007 … [W]hat is strange is that the family has apparently tried to conceal the move from the public—for more than a decade".

- "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?"

- "As he walked to his truck, [Tony] looked back and warned me: 'If I see you again, I'm gonna get upset.'  Apparently Sibley's First Amendment training hadn't filtered down to all its residents".

- "Other dairy farmers in the area helped me understand why the Nunes family might be so secretive about the farm:  Midwestern diaries tend to run on undocumented labor".

- "In the heart of Steve King's district … the economy is powered by workers that King and Trump have threatened to deport.  I checked Anthony Nunes Jr.'s campaign donor history.  The only federal candidate he has ever donated to, besides his son, is King ($250 in 2012).  He also gives to the local Republican party of Osceola County, which, records show, transfers money into King's congressional campaigns".

- "The absurdity of this situation – funding and voting for politicians whose core promise is to implement immigration policies that would destroy their livelihoods – has led some of the Republican-supporting dairymen to rethink their political priorities".

- "'They are immigrants and Devin is a strong supporter of Mr. Trump, and Mr. Trump wants to shut down all of the immigration, and here is his family benefiting from immigrant labor', documented or not".

- "I had a particularly sensitive interview that afternoon with a source who I knew would be taking a risk by talking to me about immigration and labor at NuStar.  When I arrived, we talked for a few minutes before the source's cell phone suddenly rang.  The conversation seemed strained.  "*Sí, aquí está,*" the source said.  I learned that on the other end of the phone was a man named Flavio, who worked at NuStar.  Somehow Flavio knew exactly where I was and whom I was talking to.  He warned my source to end the conversation.  Not only was I being followed, but I was also being watched, and my sources were being contacted by NuStar".

- "I left and drove to the local grocery store, where I parked in the open, hoping to draw out whoever was tailing me. I suddenly noticed a man in jeans, a work shirt, and a baseball cap pulled down low. He was talking on his cell phone and walking suspiciously. Was he watching me? I held up a camera to take pictures and he darted away. I followed. His car was parked haphazardly on the side of the road half a block away. He got in and took off while I followed. It was a dark Chevrolet Colorado pickup truck—with California license plates … The guy in the pickup truck with California plates was, of course, … Anthony Jr".

- Devin Nunes "and his parents seemed to have concealed basic facts about the family's move to Iowa. It was suspicious".

- "There was no doubt about why I was being followed. According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor. One source, who was deeply connected in the local Hispanic community, had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs … asserting that the farm was aware of their status".

- "I laid out the facts I had uncovered in Sibley, including the intimidation of sources … , and asked him for advice. 'I'd tell that story,' he said. He paused and added, 'We're a sanctuary church, if you need a place to stay. You're safe here!'"

- "I learned that Anthony Jr. was seemingly starting to panic. The next day, the 2009 *Dairy Star* article about NuStar, the one that made me think the Nuneses were hiding something and that had led me to Sibley in the first place, was removed from the *Dairy Star*'s website".

- "Is it possible the Nuneses have nothing to be seriously concerned about? Of course, but I never got the chance to ask because Anthony Jr. … did not respond to numerous requests for interviews".

- "The relationship between the Iowa dairy farmers and their undocumented employees is indeed fraught".[1]

---

[1] The Lizza Hit Piece was sensational and scandalous. Lizza even exploited the death of Brenda Hoyer's son to promote his false narrative. Lizza wrote:

> "Then she told me something that knocked the wind out of me: 'My son recently took his life.' It came out of nowhere, and I barely knew how to respond. His name was Bailey. He was seventeen and he had died thirteen days ago. This was the first day the coffee shop had been open since his death. I noticed a Bible verse in chalk behind the counter: 'Do not fear for I have redeemed you. I have summoned you by name. You are mine.' The Lantern, I later learned, was actually a ministry that, according to its website, provides 'a safe place where everyone is welcome.' I liked it there and decided to make it my office while I was in Sibley".

15. The strong defamatory gist and false implication from the Lizza Hit Piece is that Plaintiffs were involved in, covered-up, conspired with others (including Devin) to conceal, or were aware of criminal activity and other wrongdoing.

16. On March 28, 2019, *Esquire* gratuitously republished the Lizza Hit Piece together with the following false and defamatory statement:



[https://twitter.com/esquire/status/1111272460299763712].

17. On November 20, 2019, Lizza brazenly republished the Lizza Hit Piece to his 242,000 Twitter followers:



[https://twitter.com/RyanLizza/status/1197322014572371969]. Lizza's tweet has been republished over 3,900 times to date.

18. Within the past year, Lizza and *Esquire's* combined 660,000+ Twitter followers and other third-parties republished the Lizza Hit Piece millions of times, *e.g.*:

https://twitter.com/MsToucanSami/status/1112163714264899585

https://twitter.com/CortexDevin/status/1107982056447971328

https://twitter.com/deangloster/status/1115471152342650880

https://twitter.com/jackhutton/status/1157681338771574784

https://twitter.com/Ann_Ashford/status/1197718918489620481

https://twitter.com/kateirby/status/1211705436191240193

https://twitter.com/52Katydid/status/1203886750965227520

https://twitter.com/wsunmu/status/1199472934139678721

https://twitter.com/MarleyKD/status/1194249674640646150

https://twitter.com/buzjohn/status/1194453414836617217

https://twitter.com/whoslappedjohn3/status/1194276539220856832

https://twitter.com/TheGimpyNinja/status/1198606878395097088

https://twitter.com/tRumpNitemare/status/1216543054380916736

19. The Lizza Hit Piece was knowingly and intentionally flawed. Lizza came to Sibley with a preconceived storyline. He fabricated a "secret" where none existed. [*See, e.g.*, https://thefederalist.com/2018/10/02/ryan-lizzas-hit-piece-on-devin-nunes-extended-family-is-deeply-flawed/ ("It turns out that Nunes doesn't have a secret, that he's not a hypocrite on immigration policy, and that the Iowans Lizza met were wary of him slowly driving around town while children were at play because they discovered Lizza had recently been fired from his job for sexual misconduct … Since it's beyond creepy to be lurking around a congressmen's young nieces and other family members,

Lizza makes the case that he has a reason other than his well-established animus toward Nunes for doing so … In interviews with more than half a dozen residents of Sibley, Iowa, they told a far different story. Lizza arrived in town and began slowly driving around neighborhoods in a dark car with out of town license plates. One neighbor of the Nunes family told me he spotted the car slowly driving by a Nunes family residence. This is in a small town where children play freely, and neighbors keep an eye out for each other. He expressed his concern to the family. Another resident told me that he encountered a Nunes family member crying because she'd discovered that the man who was surveilling her house had recently been fired for sexual misconduct. With three grammar-school aged daughters, she was concerned for their safety … In conversations with other residents of the town, they say that Lizza lied or mischaracterized other interactions as well. A woman who recently experienced the tragic death of her son and who had shown hospitality to Lizza was used for "color" in the story"); *see also* ['Collateral Damage': Iowa Town Residents Angered by Esquire Hit Piece on Devin Nuneshttps://www.breitbart.com/politics/2018/10/01/devin-nunes-parents-stalked-iowa-move/ (**"Disgraced Reporter Ryan Lizza Stalks Devin Nunes' Parents in Iowa"**); https://www.breitbart.com/politics/2018/10/07/collateral-damage-iowa-town-residents-angered-by-esquire-hit-piece-on-devin-nunes/ (**"'Collateral Damage': Iowa Town Residents Angered by Esquire Hit Piece on Devin Nunes"**)].

20. The entire Lizza Hit Piece is made of whole cloth.

## COUNT I – DEFAMATION

21. Plaintiffs restate paragraphs 1 through 20 of this Complaint, and incorporates them herein by reference.

22. Lizza and Hearst made and published to third-parties, including, but not limited to, advertisers, subscribers, readers, viewers and followers of *Esquire*, and to print media, mainstream media and social media, numerous false factual statements of and concerning Plaintiffs. These statements are detailed verbatim above. Lizza and Hearst's false and defamatory statements were published and republished within the past year without privilege, justification or legal excuse of any kind. The false and defamatory statements were not published in good faith or through misinformation or mistake. Lizza and Hearst published the words intentionally to harm Plaintiffs' business and reputation.

23. By publishing the Lizza Hit Piece in print magazines distributed in Iowa and throughout the United States, on the Internet and via social media such as Twitter, Lizza and Hearst knew or should have known that their false and defamatory statements about Plaintiff would be republished over and over by third-parties millions of times to Plaintiffs' detriment and injury. By tweeting the Lizza Hit Piece themselves and by encouraging others to tweet, retweet and post the Lizza Hit Piece to Twitter, Lizza and Hearst created an unreasonable risk that the defamatory matter in the Lizza Hit Piece would be communicated by third-parties. Republication by print media, mainstream media, and via social media in 2019 was the natural, foreseeable, reasonably expected and probable consequence of Lizza and Hearst's actions and was actually and/or presumptively authorized by Lizza and Hearst. Lizza and Hearst are liable for the republications of the false and defamatory statements by third-parties.

24. Lizza and Hearst's false statements constitute defamation *per se* or defamation *per quod*. The statements accuse Plaintiffs of multiple crimes. The statements impute to Plaintiffs an unfitness to perform the duties of an office or

employment for profit, or the want of integrity in the discharge of the duties of such office or employment. Lizza and Hearst's statements also prejudice Plaintiffs in their profession as farmers.

25. Lizza and Hearst's false statements caused Plaintiffs to suffer and incur both presumed and actual damages, including insult, pain, embarrassment, humiliation, and mental suffering, harm to name and reputation, injury to reputation, out-of-pocket loss and other actual damages.

26. Lizza and Hearst directed false and defamatory statements at Plaintiffs as private individuals with the specific intent to harm Plaintiff's reputation. Lizza and Hearst acted negligently. They lacked reasonable grounds for any belief in the truth of their statements.

27. Lizza and Hearst are liable for punitive damages because they acted with actual malice and reckless disregard for the truth:

    a. Lizza and Hearst and their editors and publishers violated their own code or standards of ethics and abandoned all journalistic standards in writing, editing and publishing the Lizza Hit Piece. https://members.newsleaders.org/resources-ethics-hearst ("We place our readers' interests above all others, and dedicate ourselves to the principles of truthfulness, fairness and independence. We understand that the free flow of accurate information is vital to our system of government and the foundations of our economy … The deliberate introduction of false information into our newspapers will not be tolerated"); https://www.spj.org/ethicscode.asp ("Members of the Society of Professional Journalists believe that public enlightenment is the forerunner of justice and the foundation of democracy. Ethical journalism strives to ensure the free exchange of

information that is accurate, fair and thorough. An ethical journalist acts with integrity. The Society declares these four principles as the foundation of ethical journalism and encourages their use in its practice by all people in all media")].

        b.     Lizza and Hearst conceived a story line in advance of any investigation and then consciously set out to make the evidence conform to the preconceived story. Lizza and Hearst pursued and regurgitated the preconceived narrative that they knew to be false.

        c.     Lizza and Hearst published the preconceived narrative out of a desire to embarrass Devin, undermine confidence in his abilities to act as Chairman of the House Intelligence Committee, and influence the 2018 Congressional election. Lizza and Hearst swept Plaintiffs into their scheme to injure Devin.

        d.     Lizza and Hearst knowingly presented half-truths and sensational statements in an effort to sell magazine and online subscriptions.

        e.     The Lizza Hit Piece evinces extreme bias, ill-will and a desire to hurt Plaintiffs. Lizza and *Esquire* chose to manufacture and publish false statements about Plaintiffs and to use unnecessarily strong and violent language, disproportionate to the occasion. Lizza and Hearst did not act in good faith because, in the total absence of evidence, they could not have had an honest belief in the truth of their statements about Plaintiffs.

        f.     Lizza and Hearst published the false defamatory statements out of a desire to gain notoriety, increase advertising and other revenues for Hearst, with reckless disregard for the consequences.

g. Lizza and Hearst relied on sources, including anonymous and unnamed persons, they knew were wholly unreliable and had an axe to grind against Plaintiffs.

h. Lizza Hearst and their agents repeated, reiterated and republished the Lizza Hit Piece a year after its original publication out of a desire to injure Plaintiffs and to spread the poison in the pool.

28. As a direct result of Lizza and Hearst's defamation, Plaintiffs suffered presumed damages and actual damages, including, but not limited to, insult, pain and suffering, emotional distress and trauma, insult, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage and injury to personal and professional reputations, loss of enjoyment of life, diminished future earning capacity, out-of-pocket expenses and costs, in the sum of $25,000,000.00 or such greater amount as is determined by the Jury.

29. Prior to filing this action, Plaintiff gave notice to the Defendants and made a demand for retraction of the defamatory statements at issue. The Defendants failed and/or refuse to retract or withdraw the defamatory statements.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, NuStar, Tony and Anthony, respectfully request the Court to enter Judgment against Lizza and Hearst, jointly and severally, as follows:

A. Compensatory damages in the amount of $20,000,000.00 or such greater amount as is determined by the Jury;

B. Punitive damages in the amount of $5,000,000.00 or the maximum amount allowed by Iowa law;

C. Prejudgment interest from January 16, 2020 until the date Judgment is entered at the maximum rate allowed by law;

D. Postjudgment interest at the maximum rate allowed by law;

E. Costs and such other relief as is just and proper.

**TRIAL BY JURY IS DEMANDED**

DATED: January 15, 2020

        NUSTAR FARMS, LLC
        ANTHONY NUNES, JR.
        ANTHONY NUNES, III

By: */s/ Joseph M. Feller*
        Joseph M. Feller, Esquire
        (Iowa State Bar No. AT0002512)
        Koopman, Kennedy & Feller
        823 3rd Avenue
        Sibley, Iowa 51249
        Telephone: (712) 754-4654
        Facsimile: (712) 754-2507
        jfeller@kkfellerlaw.com

        Steven S. Biss, Esquire
        (Virginia State Bar No. 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone: (804) 501-8272
        Facsimile: (202) 318-4098
        Email: stevenbiss@earthlink.net
        (*Application for Admission Pro Hac Vice*
        *To be Filed*)

        *Counsel for the Plaintiff*