# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| **NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III,**<br><br>Plaintiffs,<br><br>v.<br><br>**Ryan Lizza** and **Hearst Magazine Media, Inc.,**<br><br>Defendants. | **Case No. 5:20-cv-04003-CJW-MAR**<br><br>**Defendants' Brief in Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), and for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)**<br><br>**(Telephonic Oral Argument Requested)** |

Defendants Ryan Lizza and Hearst Magazine Media, Inc. ("Defendants") respectfully submit this brief in support of their motion (the "Motion") (i) to dismiss the Complaint of Plaintiffs NuStar Farms, LLC ("NuStar"), Anthony Nunes, Jr. ("Anthony Jr."), and Anthony Nunes, III ("Anthony III"), *see* ECF No. 1 (the "Complaint"), pursuant to Fed. R. Civ. P. 12(b)(6), and, in the alternative, (ii) for a more definite statement pursuant to Fed. R. Civ. P. 12(e) because the Complaint's vague and ambiguous allegations prevent Defendants from reasonably preparing their answers and defenses.

# Table of Contents

Introduction ................................................................................................................1

Fact Allegations .........................................................................................................2

    A.    NuStar, Managed by Anthony Jr. and Anthony III, Operates a Dairy Farm ...........2

    B.    *Esquire* Magazine Publishes the Article ..................................................................2

    C.    Plaintiffs File This Lawsuit .......................................................................................5

Argument ....................................................................................................................6

    I.    Plaintiffs' Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) .................6

        A.    Only False, Defamatory, Factual Statements that Are "Of and Concerning" Any or All of Plaintiffs Are Actionable ................................7

        B.    Plaintiffs Have Failed to Plead Facts to Support a Claim for Defamation ...............................................................................................10

        C.    Plaintiffs Cannot State a Claim for Defamation as a Matter of Law .........11

    II.    Should the Complaint Not Be Dismissed, the Court Should Order Plaintiff to Replead with a More Definite Statement ...............................................................23

Conclusion ...............................................................................................................25

Case 5:20-cv-04003-CJW-MAR   Document 16-1   Filed 03/23/20   Page 2 of 32

# Table of Authorities

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp., LLC,*
    783 F.3d 1328 (D.C. Cir. 2015).........................................................................................22, 23

*AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.,*
    903 F.2d 1000 (4th Cir. 1990) ...................................................................................................20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................................1, 6, 11

*Bandstra v. Covenant Reformed Church,*
    913 N.W.2d 19 (Iowa 2018) .........................................................................................................9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................................1, 6, 11

*Bierman v. Weier,*
    826 N.W.2d 436 (Iowa 2013) .........................................................................................2, 7, 8, 10

*Black v. Am. Family Mut. Ins. Co.,*
    No. C18-3021-LTS, 2018 WL 1865872 (N.D. Iowa Apr. 18, 2018) .....................................24

*Boley v. Atl. Monthly Grp.,*
    950 F. Supp. 2d 249 (D.D.C. 2013) ......................................................................................7, 11

*Brummett v. Taylor,*
    569 F.3d 890 (8th Cir. 2009) ........................................................................................................8

*Cabello-Rondón v. Dow Jones & Co.,*
    No. 16-CV-3346 (KBF), 2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017) ...........................7, 11

*Chapin v. Knight-Ridder, Inc.,*
    993 F.2d 1087 (4th Cir. 1993) ....................................................................................................22

*Cochran v. NYP Holdings, Inc.,*
    58 F. Supp. 2d 1113 (C.D. Cal. 1998) ......................................................................................13

*Cohn v. Nat'l Broad. Co.,*
    67 A.D.2d 140 (N.Y. App. Div., 1st Dep't 1979)....................................................................20

*Craig v. City of Cedar Rapids, Iowa,*
    826 N.W.2d 516 (Iowa Ct. App. 2012).....................................................................................10

*Crawford-El v. Britton*,
523 U.S. 574 (1998) ..................................................................................................24

*CRST Expedited, Inc. v. Knight Transp., Inc.*,
No. 17-CV-24 CJW, 2018 WL 1369920 (N.D. Iowa Mar. 15, 2018) ....................................24

*Franklin v. Dynamic Details, Inc.*,
116 Cal. App. 4th 375 (2004) .....................................................................................14

*Freeman v. Bechtel Constr. Co.*,
87 F.3d 1029 (8th Cir. 1996) ......................................................................................24

*Gilman v. Spitzer*,
538 F. App'x 45 (2d Cir. 2013) ...................................................................................20

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
398 U.S. 6 (1970) ....................................................................................................12

*Hawkins v. Kiely*,
250 F.R.D. 73 (D. Me. 2008) .....................................................................................24

*Horsley v. Feldt*,
304 F.3d 1125 (11th Cir. 2002) ..................................................................................12

*Hovey v. Iowa State Daily Publ'n Bd., Inc.*,
372 N.W.2d 253 (Iowa 1985) .......................................................................................8

*Int'l Ass'n of United Mine Workers Union v. United Mine Workers of Am.*,
No. 2:04CV00901, 2006 WL 1183245 (D. Utah May 1, 2006) ...................................19, 21

*Johnson v. Nickerson*,
542 N.W.2d 506 (Iowa 1996) ...............................................................................7, 8, 19

*Lauderback v. Am. Broad. Cos.*,
741 F.2d 193 (8th Cir. 1984) ...............................................................................12, 14, 16

*Lee v. Lincoln Nat'l Life Ins. Co.*,
No. 18-CV-2063-CJW, 2018 WL 5660553 (N.D. Iowa Oct. 31, 2018) ................................17

*Lundell Mfg. Co. v. Am. Broad. Cos.*,
98 F.3d 351 (8th Cir. 1996) ....................................................................................8, 13

*Mallory v. S & S Publishers*,
168 F. Supp. 3d 760 (E.D. Pa. 2016) ...........................................................................15

*Martin v. Mooney*,
No. 19-CV-00323-LM, 2020 WL 1027940 (D.N.H. Mar. 3, 2020) .....................................7

Case 5:20-cv-04003-CJW-MAR   Document 16-1   Filed 03/23/20   Page 4 of 32

*McBride v. Crowell-Collier Publ'g Co.*,
  196 F.2d 187 (5th Cir. 1952) ............................................................20

*Mechdyne Corp. v. Garwood*,
  707 F. Supp. 2d 864 (S.D. Iowa 2009) .................................................8

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)............................................................................9

*Miller v. Redwood Toxicology Lab., Inc.*,
  688 F.3d 928 (8th Cir. 2012) ...........................................................17

*Mills v. State*,
  924 F. Supp. 2d 1016 (S.D. Iowa 2013) .......................................10, 16, 18, 22

*N.U. by Amar v. E. Islip Union Free Sch. Dist.*,
  No. 16-CV-4540 (SJF) (ARL), 2017 WL 10456860 (E.D.N.Y. Sept. 15, 2017) .............19, 21

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964)..........................................................................8

*Paolini v. Albertson's, Inc.*,
  No. CV-02-0041-S-BLW, 2003 WL 27386670 (D. Idaho Jan. 24, 2003) ............................24

*Phila. Newspapers, Inc. v. Hepps*,
  475 U.S. 767 (1986)........................................................................8, 10

*Reeder v. Carroll*,
  759 F. Supp. 2d 1064 (N.D. Iowa 2010)...............................................8, 16, 22

*Schuster v. U.S. News & World Report, Inc.*,
  602 F.2d 850 (8th Cir. 1979) ........................................................15, 16, 22

*Smith v. Maldonado*,
  72 Cal. App. 4th 637 (1999) ...............................................................9

*State v. Milner*,
  571 N.W.2d 7 (Iowa 1997) ................................................................2

*Taggart v. Drake Univ.*,
  549 N.W.2d 796 (Iowa 1996) ............................................................8

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017)......................................................6, 7, 11, 18

*Verragio, Ltd. v. AE Jewelers, Inc.*,
  No. 15 CIV. 6500 (CM), 2017 WL 4125368 (S.D.N.Y. Aug. 23, 2017) ............................6, 7

iv

*Whitney v. Guys, Inc.*,
  700 F.3d 1118 (8th Cir. 2012) ............................................................6

*Wilson v. IBP, Inc.*,
  558 N.W.2d 132 (Iowa 1996) ...........................................................9

*Wright v. Boys & Girls Clubs of the Lowcountry*,
  No. CIV.A. 9:12-3243-SB, 2013 WL 3229719 (D.S.C. June 25, 2013) ..............................24

*Wyo. Corp. Servs. v. CNBC, LLC*,
  32 F. Supp. 3d 1177 (D. Wyo. 2014) ..........................................12, 13

*Yates v. Iowa W. Racing Ass'n*,
  721 N.W.2d 762 (Iowa 2006) ................................................. *passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(6)............................................................6, 17, 25

Fed. R. Civ. P. 12(e) ....................................................................23

Tom Wolfe, *Why They Aren't Writing the Great American Novel Anymore,*
  Esquire, May 15, 2018, https://www.esquire.com/lifestyle
  /money/a20703846/tom-wolfe-new-jounalism-american-novel-essay/ (last
  accessed Mar. 23, 2020)...................................................................2

## Introduction

In September 2019, Congressman Devin Nunes filed a meritless strike suit for defamation in this Court. *See* Case No. 5:19-cv-04064-CJW-MAR, ECF No. 1. His complaint concerned the *Esquire* article "*Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret*" (the "Article"). Three-and-a-half months later, the same counsel who represents Congressman Nunes in his case filed a strikingly similar complaint for defamation concerning the same Article—this time, on behalf of Congressman Nunes's father (Anthony Jr.), brother (Anthony III), and their dairy farm (NuStar).

Plaintiffs' Complaint follows the same cadence as that of Congressman Nunes: It is filled with bluster, hyperbole, and conclusory allegations of fabrication and misconduct, while summarily alleging that 16 statements in the Article are false. But Plaintiffs' Complaint does not explain why or how any of the 16 challenged statements are actionable, beyond simply quoting them and declaring them "false and defamatory." The Complaint does not provide any factual information as to what aspects of the statements—some of which are an entire paragraph in length—are false, and why that is so. Plaintiffs have therefore failed to carry their burden of pleading falsity with sufficient factual detail to make the allegation plausible, as required by *Twombly* and *Iqbal*. *See* Point I.A. (At a minimum, the Court should order that Plaintiffs plead a more definite statement, with details explaining precisely how and why they maintain that the challenged statements are false. *See* Point II.) Plaintiffs should not be permitted to subject Defendants to burdensome discovery that chills their and others' First Amendment rights without specifying facts that would support their conclusory claims of falsity.

Notwithstanding Plaintiffs' failure to satisfy Rule 8, every challenged statement is on its face not actionable for one or more reasons. Most are not statements "of and concerning" Plaintiffs. Most are not defamatory; that is, the statements would not tend to injure any of

Plaintiffs' reputations in the community. Several are actually or substantially true, as admitted in the Complaint. And others are nonactionable opinions, as evidenced by the literary journalism format of the Article and the overall context, and moreover such opinions are predicated on facts disclosed in the Article, and are therefore fair comment protected by the First Amendment and Art. I, § 7 of the Iowa Constitution.[1] *See* Point I.B.

## Fact Allegations

### A. NuStar, Managed by Anthony Jr. and Anthony III, Operates a Dairy Farm.

NuStar operates a dairy farm in Sibley, Iowa. Compl. ¶ 4. Anthony Jr. and Anthony III "manage the business of NuStar," with Anthony III running the farm's day-to-day operations. *Id.* ¶ 5. Anthony Jr. is the father of Devin Nunes, the California Congressman who currently represents the state's 22nd Congressional District and who serves as the ranking Republican member on the House Permanent Select Committee on Intelligence. Anthony III is Congressman Nunes's brother.

### B. *Esquire* Magazine Publishes the Article.

*Esquire* magazine is a publication of Hearst Magazine Media, Inc. ("HMMI"). *Id.* ¶ 7. *Esquire*'s content is also distributed on Esquire.com. *Id.* *Esquire*'s articles tend to be written in the style of literary journalism, which combines journalistic research with the techniques of prose writing in reports about real-life, public-interest events, often through the perspective of the author's first-person observations.[2]

---

[1] The Iowa Constitution "imposes the same restrictions on the regulation of speech as does the federal constitution." *Bierman v. Weier*, 826 N.W.2d 436, 451 (Iowa 2013) (quoting *State v. Milner*, 571 N.W.2d 7, 12 (Iowa 1997)).

[2] *Esquire* has been closely associated with this genre, known as "New Journalism," and its progenitors, including Tom Wolfe, since the 1960s. *See, e.g.*, Tom Wolfe, *Why They Aren't Writing the Great American Novel Anymore,* Esquire, May 15, 2018, https://www.esquire.com /lifestyle/money/a20703846/tom-wolfe-new-jo);;

2

The Article exemplifies this style. Authored by Lizza, HMMI's predecessor-in-interest posted the Article on Esquire.com on September 30, 2018, and reprinted it in the November 2018 edition of *Esquire* magazine. *See* March 23, 2020 Declaration of Ravi Sitwala ("Sitwala Decl."), Exs. A, B. The cover of the print magazine includes this headline: "One Powerful Congressman, 2,000 Cows, and a Small Town's Big Secret | A Very Weird Political Thriller | By Ryan Lizza." *Id.*, Ex. B. Consistent with the literary journalism style, on the page preceding any text in the print edition (and near the top of the online edition) appears a full-page illustration depicting Lizza sweating while driving past dairy farms in Sibley, with endless lines of cows staring at him on both sides of the road and a white SUV appearing in his rear-view mirror, the driver focused on Lizza. *Id*., Exs. A, B.

These elements reflect the tone of Lizza's first-person reporting, as he takes the reader into his investigation into the Nunes family farm. *Id*., Exs. A, B. As the Article explains, Congressman "Nunes grew up in a family of dairy farmers in Tulare, California, and as long as he has been in politics, his family dairy has been central to his identity and a feature of every major political profile written about him." *Id.* The Article points to several instances of prior reporting on Congressman Nunes in which his family farm was featured. *Id.*

The Article then reveals that "[t]he Nunes family dairy of political lore—the one where his brother and parents work—isn't in California. It's in Iowa." *Id.* The family moved their farming operations to Sibley, Iowa, more than a decade ago. *Id.* The Article explains that Congressman Nunes and his family, including Anthony Jr. and Anthony III, appear to have kept this fact a "secret," and that they "tried to conceal" it. *Id.* The Article notes that "until late August, neither Nunes nor the local California press that covers [Congressman Nunes] had ever publicly mentioned that his family dairy is no longer in Tulare[, California,]" according to the

Case 5:20-cv-04003-CJW-MAR   Document 16-1   Filed 03/23/20   Page 9 of 32

author's research.  *Id.*  The Article then describes several instances where Lizza would have

expected to find reference to the family farm having moved to Iowa—for example, in a press

release for a campaign rally for Congressman Steve King in his Iowa district, which

Congressman Nunes attended—but Lizza found no such disclosure.  *Id.*  The Article then asks,

"[w]hy would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the

fact that the congressman's family sold its farm and moved to Iowa?"  *Id.*

The foregoing appears within the first 14 paragraphs of the 68-paragraph Article.  *See id.*,

Ex. A.[3]  The rest of the Article concerns Lizza's experience reporting in and around Sibley, a

small town in a region of Iowa that overwhelming supported Donald Trump in 2016, and is

represented by Steve King, "the most anti-immigrant member of Congress."  *Id.*, Exs. A, B.  The

Article reports on Lizza's interviews with several Sibley residents, who offered their opinions on

President Trump and his policies.  Generally speaking, the residents that Lizza interviewed

(including Sibley's mayor) supported President Trump, but were uneasy about his hardline

positions on immigration.  *Id.*

In conducting his reporting, Lizza learned why area residents might not take a hardline

position in immigration: "Midwestern dairies tend to run on undocumented labor."  *Id.*, Exs. A,

B.  The Nunes family farm, NuStar, was no exception.  In the Article's 54th paragraph, Lizza

reports that "NuStar did indeed rely, at least in part, on undocumented labor."  *Id.*  Lizza

comments that this appears as a "massive political hypocrisy" given residents' election of King

and vocal support of Trump generally; "Trump's and King's rural-farm supporters embrace anti-

immigrant politicians while employing undocumented immigrants."  *Id.*

---

[3]     This count includes the summary paragraph that appears at the top of the Article.  In the
print edition, the 12th and 13th paragraphs are combined for formatting reasons; thus, the
foregoing appears within the first 13 paragraphs of the 67-paragraph Article as it appears in print.
*Id.*, Ex. B.

Lizza attempted to speak to Anthony Jr. about this issue, but Anthony Jr. "did not respond to numerous requests for interviews." *Id.* In the most vivid example of Anthony Jr.'s recalcitrance, Lizza was rebuffed when he approached Anthony Jr.'s house. Anthony Jr. told Lizza that he was "taking [his] license plate down and reporting [Lizza] to the sheriff," adding that he didn't "want to be bothered" by Lizza and if he "s[aw] [him] again, [he was] gonna get upset." *Id.*

Lizza then reports on how he was being followed by members of the Nunes family while reporting in Sibley. He observed a GMC Yukon following him as he drove aimlessly around Sibley. *Id.* He observed a man watching him while Lizza was in the parking lot of a local grocery store. *Id.* Lizza had "a particularly sensitive interview" with a source that was interrupted when the source received a phone call from a NuStar employee, warning the source not to speak with Lizza. *Id.* Using his GoPro, Lizza video recorded several cars that appeared to be following him—and, upon cross-checking the drivers caught on camera against photographs on Facebook, he concluded that he was being followed by members of the Nunes family, including Anthony Jr. and Anthony III. *Id.* The Article characterizes what Lizza found as "paranoia and hypocrisy"; residents of Sibley, and in particular members of the Nunes family, appeared to be startled by Lizza's presence. Lizza questioned whether the fears of Iowa dairy farmers, so reliant on undocumented laborers, were misplaced: "The greatest threat to Iowa dairy farmers, of course, is not the press. It's Donald Trump." *Id.*

### C. Plaintiffs File This Lawsuit.

Plaintiffs initiated this action by filing the Complaint on January 16, 2020. ECF No. 1. The Complaint asserts one count of defamation based on 16 allegedly defamatory statements in the Article. All are recounted and addressed below.

The Complaint focuses on supposed harm to Congressman Nunes, not to Plaintiffs. It

alleges that Defendants published the Article in an effort to "accomplish a nefarious purpose" of damaging Congressman Nunes in advance of the 2018 Congressional election. Compl. ¶ 3. It adds that the Article was published "to retaliate against [Congressman Nunes] for exposing corruption, including the DNC/Clinton campaign's role in funding the salacious 'Steele dossier.'" *Id.* ¶ 12. It complains that Plaintiffs "were collateral damage in Defendants' reckless smear operation" against Congressman Nunes. *Id.* ¶ 13. Regardless of the Complaint's focus, none of the allegedly defamatory statements are actionable, *see* Point I *infra*, and in the alternative the Court should order Plaintiff to plead a more definite statement, *see* Point II *infra*.

## Argument

**I.      Plaintiffs' Complaint Should Be Dismissed Pursuant to Rule 12(b)(6).**

"To survive a motion to dismiss" pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (citation omitted). "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted).

The *Twonbly/Iqbal* pleading standard applies with full force to a defamation plaintiff's burden to plead that a challenged statement is false (or not substantially true). It is not enough for a plaintiff to merely allege, in conclusory fashion, that a statement is false. Rather, because "falsity—or lack of substantial truth—is an element of a . . . defamation claim, it follows that a plaintiff must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017); *see also Verragio, Ltd. v. AE Jewelers, Inc.*, No. 15 CIV. 6500 (CM), 2017 WL 4125368,

at *7 (S.D.N.Y. Aug. 23, 2017) (defamation plaintiff must "present any well-pleaded factual allegations suggesting that the above statement is false").  This requires a plaintiff to not only *identify* the challenged statements, but to also explain *how* and *why* the challenged statements are not substantially true.  *Tannerite Sports*, 864 F.3d at 251 ("Tannerite's complaint failed to . . . explain *why* th[e challenged] statements were false" (emphasis added)).[4]

## A. Only False, Defamatory, Factual Statements that Are "Of and Concerning" Any or All of Plaintiffs Are Actionable.

To state a claim for defamation, Plaintiffs must plead (1) publication (2) of a false statement (3) concerning the plaintiff (4) made with the requisite level of fault (5) that resulted in demonstrable injury to their reputation through its falsity.  *See Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996).  Importantly, Plaintiffs cannot sidestep this burden as to the falsity, fault, and injury to reputation elements by the doctrine of libel *per se*; that doctrine does not apply in defamation cases brought against members of the media, like Hearst or Lizza.  *See Bierman*, 826 N.W.2d at 448 ("[L]ibel *per se* is available only when a private figure plaintiff sues a nonmedia defendant for certain kinds of defamatory statements that do not concern a matter of public importance.").  In considering whether Plaintiffs have pleaded those elements, courts are guided by various principles of common law and First Amendment[5] considerations.

---

[4]    *See also Martin v. Mooney*, No. 19-CV-00323-LM, 2020 WL 1027940, at *8 (D.N.H. Mar. 3, 2020) ("[F]ederal courts have required plaintiffs to plead facts that, if proven true, would allow a reasonable person to consider the statement false."); *Verragio*, 2017 WL 4125368, at *7 (dismissing claim where plaintiff failed to "articulat[e] *how* the statements 'may be' false" (emphasis added)); *Cabello-Rondón v. Dow Jones & Co.*, No. 16-CV-3346 (KBF), 2017 WL 3531551, at *6 (S.D.N.Y. Aug. 16, 2017) ("Cabello must do more than perfunctorily state that a statement is false; rather, Cabello must identify *how* the defendant's statement was false." (quotation marks and citation omitted)), *aff'd*, 720 F. App'x 87 (2d Cir. 2018); *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 263 (D.D.C. 2013) ("Although his complaint makes blanket denials of Goldberg's statements . . . Boley does not . . . explain *why* Goldberg's characterization of him as a warlord was false." (emphasis added)).

[5]    References in this Brief to the First Amendment include the protection provided under its free speech clause, its freedom of the press provision, and the independent state free speech and free press rights afforded under Art. I, § 7 of the Iowa Constitution.

Five salient points are described below.

*First*, the article in question must be read as a whole, and any allegedly defamatory statements must be considered in their context. *See Lundell Mfg. Co. v. Am. Broad. Cos.*, 98 F.3d 351, 359 (8th Cir. 1996) (applying Iowa law). And any allegedly defamatory statements must be judged objectively from the perspective of an objective reasonable reader; a defamation plaintiff may not maintain a claim premised on her own subjective interpretation of the article. *Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 771 (Iowa 2006).

*Second*, the question of whether the statement is capable of a defamatory meaning is a question of law for the Court to decide. *Id.* at 722. "In carrying out this task, a court should not . . . 'indulge far-fetched interpretations of the challenged publication.'" *Mechdyne Corp. v. Garwood*, 707 F. Supp. 2d 864, 875 (S.D. Iowa 2009) (quoting *Yates*, 721 N.W.2d at 771-72).

*Third*, the requirement that the allegedly defamatory statement be "of and concerning" the plaintiff is constitutionally required. *See, e.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964); *Brummett v. Taylor*, 569 F.3d 890, 892 (8th Cir. 2009); *Bierman*, 826 N.W.2d at 464-65; *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996). The Court can decide this issue as a matter of law where there is no possibility that a reasonable reader could understand the statement as referring to the plaintiff. *See Reeder v. Carroll*, 759 F. Supp. 2d 1064, 1083 (N.D. Iowa 2010).

*Fourth*, the plaintiff bears the burden of proving falsity, *Johnson v. Nickerson*, 542 N.W.2d 506, 511 n.3 (Iowa 1996)—also a constitutional requirement, *see Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986)—and the truth of a statement defeats a defamation claim, *Hovey v. Iowa State Daily Publ'n Bd., Inc.*, 372 N.W.2d 253, 256 (Iowa 1985). Plaintiffs' burden to prove falsity cannot be met by relying on minor inaccuracies; the plaintiff must prove

8

the challenged statement is materially false, meaning it must be substantially untrue. *See Yates*, 721 N.W.2d at 769-70 ("Slight inaccuracies of expression are immaterial provided the defamatory charge is true in substance." (citation omitted)). So long as the "gist" or "sting" of the challenged statement is substantially true, there can be no recovery. *See, e.g.*, *Wilson v. IBP, Inc.*, 558 N.W.2d 132, 140-41 (Iowa 1996). Where a complaint admits to the truth of the statement, then this issue may be decided as a matter of law. *See Smith v. Maldonado*, 72 Cal. App. 4th 637, 652 (1999), *as modified* (June 23, 1999). Further, and as explained *supra* pp. 6-7, falsity (or lack of substantial truth) cannot be alleged in a conclusory manner; it must be supported by factual allegations explaining how and why the challenged statement is not substantially true.

*Fifth*, the Constitution protects pure opinion, "rhetorical hyperbole," and any other statements that are not "sufficiently factual to be susceptible of being proved true or false." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 21 (1990). Beyond these baseline safeguards outlined in *Milkovich*, the common law of Iowa examines various factors to consider whether, in context, the statements would be understood by the reader as statements of constitutionally protected opinion. Iowa courts "utilize a four-part test to determine whether a statement is factual or a protected opinion": (1) "whether the alleged defamatory statement has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous"; (2) "the degree to which the [alleged defamatory] statements are objectively capable of proof or disproof"; (3) "the context in which the alleged defamatory statement occurs"; and (4) "the broader social context into which [the alleged defamatory] statement fits." *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018) (alterations in original) (quotation marks and citations omitted).

In determining whether the statement is protected opinion, courts also consider whether the author has disclosed the facts on which the statement is based. *See Mills v. State*, 924 F. Supp. 2d 1016, 1034 (S.D. Iowa 2013) (author's "subjective impression[]" of a situation is not actionable if it does not imply the speaker possesses additional, undisclosed facts informing that impression); *Yates*, 721 N.W.2d at 771 ("[S]tatements of opinion can be actionable if they imply a provable false fact, or rely upon stated facts that are provably false." (citation omitted)). Whether a statement is one of opinion is a question of law for the Court to decide. *See Craig v. City of Cedar Rapids, Iowa*, 826 N.W.2d 516 (Iowa Ct. App. 2012).

**B. Plaintiffs Have Failed to Plead Facts to Support a Claim for Defamation.**

Plaintiffs takes issue with 16 statements in the Article. Those statements are set forth in paragraph 14 of the Complaint, in bullet points that span three pages. But aside from calling the entire Article "a legion of lies" and characterizing all of the quoted statements as "false and defamatory," the Complaint does not include any facts to support that conclusory claim. Indeed, rather than allege facts concerning the truth of the identified statements, the Complaint focuses on Congressman Devin Nunes, who is not a party to this case. Paragraph 14 itself purports to provide the "context" that renders the identified statements false:

> The click-bait headline falsely states or implies that Devin owns an interest in NuStar, and that Devin colluded with NuStar, Tony, Anthony and other members of the Nunes family to hide a "Politically Explosive Secret". In truth, Devin does not own an interest in his family's dairy farm in Iowa, never has, and is not involved in any way in its operations.

Compl. ¶ 14. But this "context" has nothing to do with the truth of the identified statements or Plaintiffs themselves—it is the focus of an entirely separate lawsuit filed in this Court.

Proof of substantial falsity is an essential element of Plaintiffs' claims, and one for which they carry the burdens of pleading and proof. *Bierman*, 826 N.W.2d at 448; *Hepps*, 475 U.S. at

10

775.  By including only "blanket denials" of a laundry list of statements without "explaining why" those statements are false (and substantially so), Plaintiffs have failed to plead "facts demonstrating falsity" to satisfy their pleading obligations under *Twombly* and *Iqbal*.  *Tannerite Sports*, 864 F.3d at 247; *Boley*, 950 F. Supp. 2d at 263.  Plaintiffs "must do more than perfunctorily state that [various statements are] false; rather, [they] must identify *how* the [D]efendant[s]' statement[s] w[ere] false."  *Cabello-Rondón*, 2017 WL 3531551, at *6 (quotation marks and citation omitted).  For this reason alone, the Complaint should be dismissed in its entirety.

**C.  Plaintiffs Cannot State a Claim for Defamation as a Matter of Law.**

While Plaintiffs fail to plead facts supporting their conclusory claim of falsity, it is apparent on the face of the challenged statements and the other allegations of the Complaint itself that the challenged statements are not actionable as a matter of law, warranting dismissal with prejudice of the entire Complaint.  Each statement is discussed below.

1.   *Statements to the effect that Anthony Jr. and Anthony III concealed, kept secret, and/or conspired to keep secret the fact that the family farm moved to Iowa.*

Plaintiffs allege that the following statements are defamatory:

- "[W]hat is strange is that the family has apparently tried to conceal the move from the public—for more than a decade," Compl. ¶ 14, bullet point 2;

- "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?," *id.* ¶ 14, bullet point 3; and

- Devin Nunes "and his parents seemed to have concealed basic facts about the family's move to Iowa. It was suspicious," *id.* ¶ 14, bullet point 11.

None of these statements are actionable.  *First*, insofar as they concern Congressman Nunes or Congressman King, they are not "of and concerning" Plaintiffs.  Moreover, the fact that Anthony Jr. and Anthony III moved the family's farming operations to Iowa is (i) true, and (ii)

not defamatory, as the Article itself recognizes in noting that there is nothing strange about that. *See* Sitwala Decl., Exs. A, B ("There's nothing particularly strange about a congressman's family moving.").

    *Second*, statements that Anthony Jr. or Anthony III "concealed" or kept "secret" the fact of the farm's move are not defamatory. Because there is nothing illegal, shameful, or wrong about the fact that Anthony Jr.'s and Anthony III's relatives moved the family farm to Iowa, as a matter of law, it is not defamatory to state that they chose to keep that fact a secret. *See Wyo. Corp. Servs. v. CNBC, LLC*, 32 F. Supp. 3d 1177, 1187 (D. Wyo. 2014) (because "there is nothing illegal or shameful about hiding a person's ownership in a company," it was therefore not defamatory for defendant to state or imply that the plaintiff's "purpose" in creating a corporation was "to conceal ownership"). For the same reason, it is not defamatory to state that Anthony Jr. or Anthony III "conspired" to keep that fact "secret," an obvious rhetorical hyperbole in any event. *See Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (use of word "blackmail" to describe actions of public official not actionable "as a matter of law"); *Horsley v. Feldt*, 304 F.3d 1125, 1133 (11th Cir. 2002) (allegation in heated debate that the plaintiff had "conspired with others" to commit criminal acts nonactionable hyperbole; "a reasonable listener would not have taken the statement as a literal assertion that [the plaintiff] had actually conspired in the technical legal sense"); *Lauderback v. Am. Broad. Cos.*, 741 F.2d 193, 197 (8th Cir. 1984) (applying Iowa law to hold that an allegation that the plaintiff "was dealing unscrupulously with senior citizens, is more analogous to a broad, unfocused, wholly subjective comment than it is to specific accusations of felonious conduct") (quotation marks and citation omitted).

    *Third*, these statements are clearly nonactionable opinion. To start, they are obvious

hyperbole, as noted above. Further, the statements that Anthony Jr. or Anthony III kept the farm's move a "secret," or that they "concealed" it, are not readily capable of being proven true or false, and those words do not have an easily defined meaning (consider: to whom, to how many people, and in what contexts would Anthony Jr. or Anthony III need to disclose the fact of the farm's move before it could be said that they were no longer keeping that fact a "secret" or "concealing" it?). *See Wyo. Corp. Servs.*, 32 F. Supp. 3d at 1187 (statement that purpose of creating legal entity was to "conceal ownership" was "opinion"; "it cannot be proven true or false," and "[t]he statement does not imply 'the allegation of undisclosed defamatory facts'" (citation omitted)).

Moreover, the Article's tone and setting as a work of literary journalism written in the author's first-person perspective establish that the challenged statements constitute nonactionable opinion. Sitwala Decl., Exs. A, B. The tone of the Article, which must be taken as a whole, *Lundell Mfg. Co.*, 98 F.3d at 359, is filled with adjectives and introspective questions intended to reveal Lizza's mental impressions as he conducted reporting for the Article. A cartoon-style illustration appears at the top of the Article, Sitwala Decl., Exs. A, B., which the hard copy edition previews as being not a traditional news report but rather "A Very Weird Political Thriller," *id.*, Ex. B. These elements align with the author's literary voice. Together, these cues signal to readers that words like "secret," "conceal," or "conspire" are, in the context of the Article, not offered as objective facts but rather the opinion of Lizza as he investigates the piece. *See Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1121 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000) (statements were opinion considering "the general tenor of the entire work," including dramatic lead paragraph, and sarcasm and figurative language throughout).

Further, the Article discloses the constituent facts that led to the author's opinion that

Anthony Jr. and Anthony III kept the move a "secret," and that they "conspired" with Congressman Nunes and Congressman King to do so. The author states that, "[a]s far as I could tell, until late August, neither Nunes nor the local California press that covers him had ever publicly mentioned that his family dairy is no longer in Tulare." Sitwala Decl., Exs. A, B. In announcing that Congressman Nunes would be visiting his district, Congressman King's office issued a press release stating that "Congressman Nunes'[s] family has operated a dairy farm in Tulare County, California for three generations", but "[t]here was no mention that the Nunes family actually lived up the road in Sibley, where they operated a dairy." *Id.* The Article even reports on efforts to keep Devin Nunes's name out of a regional dairy industry publication's news article on the Nunes family farm in Iowa. *Id.* In sum, "the factual bases" for the opinion "were revealed" in the Article, and thus readers were free to accept or reject the author's opinion based on their own independent evaluation of the disclosed facts. *Lauderback*, 741 F.2d at 198; *see also Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 387 (2004).

2. *"Devin; his brother, Anthony III; and his parents, Anthony Jr. and Toni Dian, sold their California farmland in 2006. Anthony Jr. and Toni Dian, who has also been the treasurer of every one of Devin's campaigns since 2001, used their cash from the sale to buy a dairy eighteen hundred miles away in Sibley, a small town in northwest Iowa where they—as well as Anthony III, Devin's only sibling, and his wife, Lori—have lived since 2007."* Compl. ¶ 14, bullet point 2.[6]

It's not clear that Plaintiffs are alleging that these facts are false; they would seem to be demonstrably true. But even if the facts were false, it is not defamatory to report that members of Congressman Nunes's family moved the family farm to Iowa.

---

[6] This bullet point in Plaintiffs' Complaint adds the following at the end of this quotation: "…[W]hat is strange is that the family has apparently tried to conceal the move from the public—for more than a decade." In the Article, these words appear in the following paragraph. They are addressed *supra* Point I.B.1.

3. *"As he walked to his truck, [Anthony Jr.] looked back and warned me: 'If I see you again, I'm gonna get upset.' Apparently Sibley's First Amendment training hadn't filtered down to all its residents."* Compl. ¶ 14, bullet point 4.

As an initial matter, it is not clear that Plaintiffs are alleging that these facts are inaccurate. The Complaint alleges that residents of Sibley were concerned about Lizza's reporting on the Nunes family farm, and had reported their concerns to members of Congressman Nunes's family. Compl. ¶ 19. Those allegations seem to be proffered as an explanation for why Anthony Jr. would have told Lizza that he'd "get upset" if he saw him again.

In any event, it is not defamatory to report that Anthony Jr. told Lizza that he'd "get upset" if he saw him again; the fact that he said this to Lizza does not impugn his reputation in any way. *See Mallory v. S & S Publishers*, 168 F. Supp. 3d 760, 770, 771 (E.D. Pa. 2016) (statement that plaintiff "had come up to the office and caused a great scene" not defamatory; "there is nothing defamatory about [the plaintiff] getting angry or emotional, . . . whatever the cause") (citation omitted). Moreover, it is substantially true: The Complaint does not dispute that Anthony Jr. told Lizza that he was "taking [his] license plate down and reporting [Lizza] to the sheriff," and that he didn't "want to be bothered." Sitwala Decl., Ex. A, B. Given this undisputed reporting, the fact that Anthony Jr. added that he would "get upset" if he saw Lizza again would not change the effect of the Article on the minds of readers.

4. *"Other dairy farmers in the area helped me understand why the Nunes family might be so secretive about the farm: Midwestern diaries [sic] tend to run on undocumented labor."* Compl. ¶ 14, bullet point 5.

This statement about what "Midwestern d[ai]ries" "tend" to do is not "of and concerning" NuStar—just one of thousands of dairy farms in the Midwest—or its owners and operators, Anthony Jr. and Anthony III. *See Schuster v. U.S. News & World Report, Inc.*, 602 F.2d 850, 854, 854-55 (8th Cir. 1979) (where there were "hundreds of persons in the United States

involved in the sale, distribution, and advocacy of Laetrile," "[t]he alleged libel of the large group of Laetrile distributors and advocates in these two national periodicals could not, as a matter of law, reasonably be understood as being of and concerning Hanson or Schuster"); *Reeder*, 759 F. Supp. 2d at 1082 (statement in email referring to "[t]his group" of physicians at a hospital was not "of and concerning" a founding member and owner of the group). To the extent, if any, that Plaintiffs allege these two sentences together imply that NuStar itself "run[s] on undocumented labor," that is addressed *infra* Point I.B.10.

> 5.  *"In the heart of Steve King's district … the economy is powered by workers that King and Trump have threatened to deport. I checked Anthony Nunes Jr.'s campaign donor history. The only federal candidate he has ever donated to, besides his son, is King ($250 in 2012). He also gives to the local Republican party of Osceola County, which, records show, transfers money into King's congressional campaigns."* Compl. ¶ 14, bullet point 6.

The first sentence is not "of and concerning" Plaintiffs. It is about the local economy generally. Again, such general statements are not "of and concerning" Plaintiffs. *See Schuster*, 602 F.2d at 854, 855; *Reeder*, 759 F. Supp. 2d at 1082. Moreover, the statement is protected opinion; whether a region's economy is "powered by" a certain subset of the population is a subjective statement not capable of being objectively proven true or false. *See Lauderback*, 741 F.2d at 197 ("dealing unscrupulously with senior citizens" protected opinion); *Mills*, 924 F. Supp. 2d at 1033 (statements that there was a "culture of a lack of transparency" in legal office and that plaintiff "micromanaged" actions which constituted a "serious conflict of interest" were statements of opinion; "[e]ven if the Court were to permit every single individual involved in any way with the [the incident in question] to testify at a trial in this case, it would be entirely reasonable for some jurors to believe, and for some to disbelieve," the challenged statement); *Yates*, 721 N.W.2d at 773 (whether racing dog kennel produced "substandard and poor performers" did "not have a precise and verifiable meaning" and was therefore nonactionable

opinion).

As for the rest of this statement:  Anthony Jr.'s campaign contributions are a matter of public record, which the Court can consider on this motion.  *See Lee v. Lincoln Nat'l Life Ins. Co.*, No. 18-CV-2063-CJW, 2018 WL 5660553, at *2 (N.D. Iowa Oct. 31, 2018) (Williams, J.) ("In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider . . . 'matters of public record'" (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).  In considering these matters, it is true that Anthony Jr. made the campaign contributions, as reported.  *See* Sitwala Decl., Ex. C (FEC report regarding Anthony Jr.'s campaign contributions) and Ex. D (Iowa Ethics and Campaign Disclosure Board report regarding Anthony Jr.'s campaign contributions).  In any event, it is not defamatory to (accurately) report that Anthony Jr. contributed to Steve King's congressional campaigns and to the local Republican party.

6.  *"The absurdity of this situation—funding and voting for politicians whose core promise is to implement immigration policies that would destroy their livelihoods—has led some of the Republican-supporting dairymen to rethink their political priorities."*  Compl. ¶ 14, bullet point 7.

This statement is not "of and concerning" any of the Plaintiffs.  Neither NuStar nor Anthony Jr. nor Anthony III are referenced in this statement, which concerns "Republican-supporting dairymen" generally.  Indeed, the paragraph goes on to report on Lizza's interview with another "area dairy farmer" who no longer supports Congressman King.  Moreover, it is clearly protected opinion; here, Lizza is opining on the apparent hypocrisy of "Republican-supporting dairymen" who "fund[] and vot[e] for politicians whose core promise is to implement immigration policies that would destroy their livelihoods," arguing that doing so is "absurd." And to the extent this statement is reporting that the unspecified "dairymen" may "rethink their political priorities," that (i) is not defamatory, and (ii) not objectively provable true or false, and

thus another statement of opinion.  *See Mills*, 924 F. Supp. 2d at 1033; *Yates*, 721 N.W.2d at 773.

> 7.    *"'They are immigrants and Devin is a strong supporter of Mr. Trump, and Mr. Trump wants to shut down all of the immigration, and here is his family benefiting from immigrant labor', documented or not."*  Compl. ¶ 14, bullet point 8.

This statement is a quote from a reporter for a dairy industry publication whom Lizza interviewed for the Article.  In this quote, the reporter explains to Lizza why, in his view, Lizza's "encounter with Anthony Jr.," described seven paragraphs above, was "hostil[e]."  Sitwala Decl., Exs. A, B.  It is not defamatory for the reporter to state that Anthony Jr. and Anthony III are immigrants.  Whether Congressman Nunes "is a strong supporter of Mr. Trump," or whether "Mr. Trump wants to shut down all of the immigration," is neither "of and concerning" Plaintiffs nor susceptible of being objectively proven true or false.  And lastly, stating that Anthony Jr. and Anthony III are "benefiting from immigrant labor, *documented or not*" (emphasis added), is not defamatory; this statement does not accuse Anthony Jr. or Anthony III of hiring anybody and it is not defamatory to report that they hire immigrants.

> 8.    *"I had a particularly sensitive interview that afternoon with a source who I knew would be taking a risk by talking to me about immigration and labor at NuStar. When I arrived, we talked for a few minutes before the source's cell phone suddenly rang. The conversation seemed strained. 'Sí, aquí está,' the source said. I learned that on the other end of the phone was a man named Flavio, who worked at NuStar.  Somehow Flavio knew exactly where I was and whom I was talking to. He warned my source to end the conversation. Not only was I being followed, but I was also being watched, and my sources were being contacted by NuStar."* Compl. ¶ 14, bullet point 9.

Here, Lizza reports that NuStar, aware of Lizza's reporting efforts, instructed an employee or associate to stop speaking with Lizza.  But the Complaint does not proffer any factual support for the conclusory allegation that this statement is false; that is, the Complaint fails to explain how or why the statement is substantially untrue.  *See Tannerite Sports*, 864 F.3d at 247.  Moreover, it is not defamatory.  That NuStar was discouraging its employees and associates against speaking with members of the press would not "tend[] to injure the reputation

18

of [NuStar] or to expose [NuStar] to public hatred, contempt, or ridicule or to injure [NuStar] in the maintenance of [its] business." *Johnson*, 542 N.W.2d at 510.

9.  *"I left and drove to the local grocery store, where I parked in the open, hoping to draw out whoever was tailing me. I suddenly noticed a man in jeans, a work shirt, and a baseball cap pulled down low. He was talking on his cell phone and walking suspiciously. Was he watching me? I held up a camera to take pictures and he darted away. I followed. His car was parked haphazardly on the side of the road half a block away. He got in and took off while I followed. It was a dark Chevrolet Colorado pickup truck—with California license plates ... The guy in the pickup truck with California plates was, of course, ... Anthony Jr."* Compl. ¶ 14, bullet point 10.

As an initial matter, this "statement" pastes together a portion of the Article's 47th paragraph with one sentence from its 63rd paragraph. It omits—and does not dispute—the accuracy of a number of relevant facts in between, including that (i) the California plates were registered in Tulare, California, the Nunes's hometown, (ii) Lizza had taken video footage of the vehicles that had been following him, including the Chevrolet Colorado pickup truck, (iii) after cross-checking that footage against photographs found on Facebook, he confirmed that Anthony Jr. was the driver of the Chevrolet Colorado. Sitwala Decl., Exs. A, B. Because Plaintiffs fail to challenge these statements, the statement that Anthony Jr. was the "guy in the pickup truck with California plates" that was following Lizza is necessarily true. *See N.U. by Amar v. E. Islip Union Free Sch. Dist.*, No. 16-CV-4540 (SJF) (ARL), 2017 WL 10456860, at *19 (E.D.N.Y. Sept. 15, 2017) (dismissing defamation claim on grounds of truth where plaintiff, challenging that he "confessed to being part of ISIS, that he knew how to make bombs and was going to blow up the school," did not dispute that he "told several students" and made a confession "that he was a terrorist and that he intended to blow up the Middle School's fence"); *Int'l Ass'n of United Mine Workers Union v. United Mine Workers of Am.*, No. 2:04CV00901, 2006 WL 1183245, at *19 (D. Utah May 1, 2006) (dismissing defamation claim on grounds of truth where plaintiff challenged statement that workers were "exploited" without challenging underlying facts

19

supporting that statement: "Defamation cannot rest upon facts that are true. This alleged defamation is a conclusion that the author bases upon facts described in the article. The Plaintiffs do not dispute the truth of the facts upon which the author's conclusion is based.").

Moreover, even as pasted together, this "statement" merely alleges that Anthony Jr. may have been monitoring Lizza as he conducted his reporting. That is not defamatory, and again, the Complaint alleges various facts that supposedly would have given rise to Anthony Jr.'s supposed suspicions, specifically that the Nunes family had been alerted to concerns of Sibley residents regarding Lizza and his reporting. Compl. ¶ 19. And again, the Complaint fails to put forth factual allegations sufficient to make Plaintiffs' allegation of falsity plausible.

> 10. *"There was no doubt about why I was being followed. According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor. One source, who was deeply connected in the local Hispanic community, had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs . . . asserting that the farm was aware of their status."* Compl. ¶ 14, bullet point 12.

As an initial matter, this statement is not "of and concerning" Anthony Jr. or Anthony III. It only concerns NuStar.[7] Moreover, while it is entirely unclear what, if any, aspects of the statement Plaintiffs believe is false or why,[8] it is evident that there is nothing materially false about the statement in light of what Plaintiffs explicitly declined to take issue with in the full

---

[7] *See Gilman v. Spitzer*, 538 F. App'x 45, 47 (2d Cir. 2013) ("[A] broad reference to an organization cannot give rise to a defamation claim by one of its constituent members."); *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1005 (4th Cir. 1990) (dismissing claims brought by company's investors where allegedly defamatory statement concerned company, not individual investors); *Cohn v. Nat'l Broad. Co.*, 67 A.D.2d 140, 145 (N.Y. App. Div., 1st Dep't 1979) (dismissing lawsuit by former aides and advisors to Senator Joseph McCarthy based on documentary about McCarthy's career), *aff'd*, 408 N.E.2d 672 (N.Y. 1980); *McBride v. Crowell-Collier Publ'g Co.*, 196 F.2d 187, 189 (5th Cir. 1952) ("If what is said in the article about the corporation, in which he is said to own stock, does, or could, constitute defamation of the corporation for which a libel action would lie, the action would be that of the corporation, not that of the owners of its stock.").

[8] In particular, it is unclear whether Plaintiffs are claiming they have never hired undocumented workers, that they do not currently do so, that they have not knowingly done so, or something else entirely.

statement.  In particular, the quote in the Complaint omits the following statement, which NuStar does not challenge as being false: "'I've been [to NuStar] and bring illegal people,' the source said."  Sitwala Decl., Exs. A, B.  In light of this unchallenged fact, there can be nothing substantially false about the challenged statement as a matter of law.  *See also id.* (another unchallenged statement in the following paragraph: "A second source, who claimed to be an undocumented immigrant, also claimed to have worked at NuStar for several years, only recently leaving the dairy, which this source estimated employed about fifteen people."); *N.U. by Amar*, 2017 WL 10456860, at *19; *Int'l Ass'n of United Mine Workers Union*, 2006 WL 1183245, at *19.

> 11.    *"I laid out the facts I had uncovered in Sibley, including the intimidation of sources ... , and asked him for advice. 'I'd tell that story,' he said. He paused and added, 'We're a sanctuary church, if you need a place to stay. You're safe here!"* Compl. ¶ 14, bullet point 13.

This statement concerns Lizza's conversation with a priest about his reporting; it is not "of and concerning" Plaintiffs.  To the extent Plaintiffs are taking issue with the reference to NuStar's "intimidation of sources," this refers to statements addressed *supra* pp. Point I.B.8— and, as stated above, it is not defamatory to report that NuStar warned its employees or associates against speaking with members of the press.

> 12.    *"I learned that Anthony Jr. was seemingly starting to panic.  The next day, the 2009* Dairy Star *article about NuStar, the one that made me think the Nuneses were hiding something and that had led me to Sibley in the first place, was removed from the* Dairy Star*'s website."*  Compl. ¶ 14, bullet point 14.

The actions of the *Dairy Star* are not "of and concerning" Anthony Jr. or Anthony III. Whether Anthony Jr. had "start[ed] to panic" is a subjective statement of opinion, not capable of being objectively proven true or false; the fact that Anthony Jr. may disagree with the characterization that he "start[ed] to panic" does not make it false, and indeed "the disagreement highlights the fact that these statements are expressions of opinion that are not subject to an

action for defamation." *Mills*, 924 F. Supp. 2d at 1032. Notably, the Article discloses—and the Complaint does not challenge the accuracy of—the facts that support that opinion, stated in the rest of the paragraph: "Anthony Jr., I was told, had called the newspaper and demanded that the editors take the nine-year-old story down. They relented. . . . According to someone who talked to him that day, Anthony Jr. allegedly said that he was hiring a lawyer and that he was convinced that his dairy would soon be raided by ICE." Sitwala Decl, Exs. A, B; *Yates*, 721 N.W.2d at 773 (nonactionable opinion where defendant "disclos[ed] of the facts underlying his statement of 'substandard and poor performers,' facts that [the plaintiff] conceded were true").

13. *"Is it possible the Nuneses have nothing to be seriously concerned about? Of course, but I never got the chance to ask because Anthony Jr. [and Representative Nunes] did not respond to numerous requests for interviews."* Compl. ¶ 14, bullet point 15.

To the extent this statement concerns persons other than Anthony Jr. or Anthony III, it is not "of and concerning" them. Also, it is not an actionable statement of fact; it is a nonactionable question. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (Kavanaugh, J.) ("[I]t is generally settled as a matter of defamation law . . . that a question, 'however embarrassing or unpleasant to its subject, is not accusation.'" (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993))). As it relates to Anthony Jr., it is neither false nor defamatory to report that he did not respond to a request to be interviewed. Indeed, the Complaint does not dispute the accuracy of the reporting concerning Lizza's interaction with Anthony Jr. at his house.

14. *"The relationship between the Iowa dairy farmers and their undocumented employees is indeed fraught."* Compl. ¶ 14, bullet point 16.

This statement concerning "Iowa dairy farmers" generally is not "of and concerning" Plaintiffs. *See Schuster*, 602 F.2d at 854, 855; *Reeder*, 759 F. Supp. 2d at 1082. And whether the relationship between such farmers "and their undocumented employees is indeed fraught" is

22

a subjective statement of opinion that is not capable of being objectively proven true or false, and in all cases is not injurious to the reputation of any Plaintiff.

15. *"So why did [Devin Nunes'] parents and brother cover their tracks after quietly moving the farm to Iowa? Are they hiding something politically explosive? On the ground in Iowa,* Esquire *searched for the truth—and discovered a lot of paranoia and hypocrisy."* Compl. ¶ 14, bullet point 1.

These are two more non-actionable questions. *See Abbas*, 783 F.3d 1328. The statement regarding "paranoia and hypocrisy" is (i) not of and concerning Plaintiffs and (ii) protected opinion.

## II.       Should the Complaint Not Be Dismissed, the Court Should Order Plaintiff to Replead with a More Definite Statement.

The format of the Complaint does little to inform Defendants as to what, exactly, Plaintiffs are challenging in the Article. In one paragraph, the Complaint lists 16 statements from the Article—some of which are four or five sentences in length—that are allegedly "false and defamatory." Compl. ¶ 14. However, the Complaint does not explain why or how any of these challenged statements are false or defamatory. That is, the Complaint provides no explanation as to (i) what aspect(s) of each statement is supposedly false and defamatory, and (ii) what Plaintiffs allege the truth of the matter to be. While this failing warrants dismissal, *see supra* Point I.A, should the Court decline to dismiss the Complaint, it should, at a minimum, require Plaintiffs to provide these explanations in order to allow Defendants to meaningfully respond.

Rule 12(e) allows a party to move for a more definite statement "of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The motion must "point out the defects complained of and the details desired." *Id.* "In granting a Rule 12(e) motion, a court 'may insist that the plaintiff put forward specific, nonconclusory factual allegations that establish the claims

23

alleged in order to survive a prediscovery motion for dismissal or summary judgment." *CRST Expedited, Inc. v. Knight Transp., Inc.*, No. 17-CV-24 CJW, 2018 WL 1369920, at *3 (N.D. Iowa Mar. 15, 2018) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

Courts frequently grant motions for a more definite statement where, as here, a plaintiff proffers a vague defamation claim.[9]  A motion for a more definite statement is particularly useful where, as here, a more definite pleading will help the parties and the Court understand whether there are dispositive threshold questions to which the challenged statements may be susceptible. *See Hawkins v. Kiely*, 250 F.R.D. 73, 76 (D. Me. 2008) (granting motion in defamation case; "[w]hat is more, as the defendants point out, such details as they have been able to glean from the Complaint and the Response provide reason to believe that there are substantial dispositive threshold questions in this case").

While none of the statements are actionable in any way, as explained above, to the extent that Plaintiffs can identify any plausible way that any of the statements could be actionable, they should have to do so in a new pleading that Defendants have the opportunity to challenge.  More details will help the parties and the Court understand whether the statements at issue are statements of fact versus opinion; whether they are substantially true; whether they are defamatory at all; and whether Plaintiffs are attempting to assert a claim of defamation-by-

---

[9]      *See Black v. Am. Family Mut. Ins. Co.*, No. C18-3021-LTS, 2018 WL 1865872, at *5 (N.D. Iowa Apr. 18, 2018) (granting motion for more definite statement with regard to unspecific defamation claim) (citing *Freeman v. Bechtel Constr. Co.*, 87 F.3d 1029, 1031 (8th Cir. 1996); *Wright v. Boys & Girls Clubs of the Lowcountry*, No. CIV.A. 9:12-3243-SB, 2013 WL 3229719, at *3 (D.S.C. June 25, 2013) (granting motion; defamation "requires the inclusion of more information as to content, timing, audience, and method than is present here, before a defendant can adequately respond in keeping with its own obligations under the Rules."); *Paolini v. Albertson's, Inc.*, No. CV-02-0041-S-BLW, 2003 WL 27386670, at *2 (D. Idaho Jan. 24, 2003) (granting motion for more definite statement in defamation case; plaintiff's "defamation allegation fails to provide the context of the statements, names of those who made the statements, and to whom the statements were communicated," and thus are "excessively vague, precluding [the defendant] from asserting a good faith response").

24

implication, which is subject to more searching constitutional scrutiny.

**Conclusion**

For the reasons stated above and their related motion papers, Defendants respectfully request that the Court dismiss the Complaint pursuant to Rule 12(b)(6), with prejudice; or, in the alternative, order that Plaintiffs replead with a more definite statement.

March 23, 2020

**Ryan Lizza and Hearst Magazine Media, Inc., Defendants**

By:  /s/ Jonathan R. Donnellan
Jonathan R. Donnellan, *Lead Counsel*\*
 jdonnellan@hearst.com
Ravi V. Sitwala\*
 rsitwala@hearst.com
Nathaniel S. Boyer\*
 nathaniel.boyer@hearst.com
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000
*\*Admitted Pro Hac Vice*

Michael A. Giudicessi
 michael.giudicessi@faegrebd.com
Nicholas A. Klinefeldt
 nick.klinefeldt@faegrebd.com
Susan P. Elgin
 susan.elgin@faegrebd.com
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

*Attorneys for Defendants*

**Certificate of Service**

     The undersigned certifies that a true copy of **Defendants' Brief in Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), and for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) (Telephone Oral Argument Requested)** was served upon the following parties through the court's CM/ECF electronic filing system on March 23, 2020.

/s/  Jonathan R. Donnellan    

Jonathan R. Donnellan

Copy to:

    Joseph M. Feller
     *jfeller@kkfellerlaw.com*
    Steven S. Biss
     *stevenbiss@earthlink.net*

    *Attorneys for Plaintiff*