IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
Western Division

NUSTAR FARMS, LLC
et al

Plaintiffs,

v.

RYAN LIZZA
et al

Defendants.

Case 5:20-cv-04003-CJW-MAR

# PLAINTIFF'S RESISTANCE AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS

Plaintiffs, NuStar Farms, LLC, Anthony Nunes, Jr. and Anthony Nunes, III ("Plaintiffs"), by counsel, pursuant to Local Rule ("LR") 7e, respectfully submit this Resistance and Memorandum in Opposition to the motion to dismiss and motion for a more definite statement [*ECF No. 15*] filed by defendants, Ryan Lizza and Hearst Magazine Media, Inc. ("Defendants").

## I. BACKGROUND

Plaintiffs are private individuals who operate a dairy farm in the small community of Sibley, Iowa. On September 30, 2018, the Defendants published a scandalous hit piece in *Esquire* magazine that accused Plaintiffs of federal crimes, threats, stalking, intimidation, dishonesty, deceit, conspiracy, and unethical business practices. Defendants published the hit piece online, in print, and targeted Plaintiffs via social media. In March

2019 and again in November 2019, Defendants' gratuitously republished their false and defamatory statements to hundreds of thousands of followers on Twitter. [*ECF No. 1 ("Complaint"), ¶¶ 1, 2, 4, 5, 11, 12, 13, 14, 15, 16, 17, 18*].

Plaintiffs brought a one-count complaint against the Defendants for defamation. In their complaint, Plaintiffs allege that the Defendants made untrue written statements of fact in the *Esquire* article that constitute defamation *per se*. Plaintiffs allege that the "strong defamatory gist and false implication from the Lizza Hit Piece is that Plaintiffs were involved in, covered-up, conspired with others … to conceal, or were aware of criminal activity and other wrongdoing." [*Id., ¶ 15*]. In support of their position, Plaintiffs' complaint refers specifically to those parts of the article that accuse them of (a) "cover[ing] their tracks after quietly moving their farm to Iowa", (b) conspiring with others to "hide" the fact that Plaintiffs moved to Iowa, (c) hiding a "politically explosive secret", (d) operating their dairy farm using "undocumented" employees, (d) "intimidation of sources", (e) stalking and threatening Defendants, and infringing on their First Amendment rights. [*Id., ¶ 14*]. Plaintiffs allege that the Defendants' statements are defamatory and that Plaintiffs were injured as a result of Defendants' publication and republications. [*Id., ¶¶ 24, 25*]. In response, the Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, a motion for a more definite statements pursuant to Rule 12(e). [*ECF No. 15*].

The Court has subject matter jurisdiction pursuant to Title 28 U.S.C. § 1332. For the following reasons, Defendants' motions should be denied.

## II. DISCUSSION

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction ... a short and plain statement of the claim showing that the pleader is entitled to relief ... and a demand for the relief sought." Rule 12(b)(6) provides that a party may assert the defense of failure to state a claim upon which relief can be granted by motion and that "[a] motion asserting [this] defense[ ] must be made before pleading if a responsive pleading is allowed." To withstand a motion to dismiss, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679)). Courts also "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 fn. 4 (8th Cir. 2010)); *Braden v. Walmart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible"). Finally, and perhaps most importantly, in assessing plausibility, Courts accept as true the facts alleged in the complaint and grant all reasonable inferences in favor of the nonmoving party. *Stufflebeam v. Harris*, 521 F.3d 884, 886 (8th Cir. 2008); *see id. Fialkoff v. VGM Group, Inc.*, 2019 WL 5193813, at * 2 (N.D. Iowa 2019) ("When there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.") (quoting *Ashcroft*, 556 U.S. at 679)).[1]

**A. *Plaintiffs Clearly Alleges A Claim Of Defamation Under Iowa Law***

Iowa defamation law consists of "the twin torts of libel and slander" and involves "the publication of statements that tend to injure a person's reputation and good name." *Thiesen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 83 (Iowa 2001) (internal citation and quotation marks omitted)); *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996) (citation omitted). Defamation is a violation of an individual's right "to enjoy their reputation unimpaired by false and defamatory attacks." *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998) (quoting 50 Am. Jur.2d *Libel and Slander* § 2, at 338-39 (1995)).

To establish a prima facie case of defamation against a media defendant, private individuals, such as Plaintiffs in this case, must allege: "(1) publication (2) of a [false and] defamatory statement (3) concerning the plaintiff (4) in negligent breach of the professional standard of care (5) that resulted in demonstrable injury. Such a showing entitles the plaintiff to damages unless the defendant can claim a recognized privilege. In addition, if the incident involves a matter of public concern, the plaintiff must prove actual malice to recover punitive damages." *Johnson v. Nickerson*, 542 N.W.2d 506, 511 (Iowa 1996). Iowa has expressly adopted the principle of defamation by implication.

---

[1] In their brief in support of motion to dismiss [*ECF No. 18 ("Def. Brief")*], the Defendants assert – without authority – that "*Esquire*'s articles tend to be written in the style of literary journalism, which combines journalistic research with the techniques of prose writing in reports about real-life, public-interest events, often through the perspective of the author's first-person observations." Defendants claim that *Esquire* is closely associated with this genre, known as "New Journalism", and that the hit piece exemplifies this "style". **The "style" employed by Defendants to defame Plaintiffs is irrelevant to the Court's analysis of Defendants' motion to dismiss**.

*Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 828 (Iowa 2007). "Defamation by implication arises, not from what is stated, but from what is implied when a defendant

> (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct."

*Stevens*, 728 N.W.2d at (quoting Dan B. Dobbs, *Prosser & Keeton on the Law of Torts* § 116, at 117 (Supp. 1988)); *see also* Restatement (Second) of Torts § 563 cmt. *c*, at 163 (1965) ("The defamatory imputation may be made by innuendo, by figure of speech, by expressions of belief, by allusion or by irony or satire.").

**1. *<u>Falsity</u>***

Iowa courts examine the "gist" or "sting" of a publication to determine whether it is false or "substantially untrue". *Campbell v. Quad City Times*, 547 N.W.2d 608, 610 (Iowa App. 1996) (citing *Behr v. Meredith Corp.*, 414 N.W.2d 339, 342 (Iowa 1987)).[2] If the underlying facts are disputed, the issue of falsity is a matter for the jury. *Nelle v. WHO Television, LLC*, 342 F.Supp.3d 879, 892 (S.D. Iowa. 2018). In determining the overall "gist" or "sting" of a publication, the Court must construe a defendants' statements "as a whole", in context, and in light of the surrounding circumstances. *Toney v. WCCO Television, Midwest Cable and Satellite, Inc.*, 85 F.3d 383, 396 (8th Cir. 1996) ("The question is not whether that article can be divided into two parts, and each of those parts so analyzed separately from each other that each would appear to be free from defamatory meaning. The article must be construed as a whole") (quotation omitted).

---

[2] In Iowa, substantial truth is recognized as a defense in a defamation action. *Campbell*, 547 N.W.2d at 610 (citing *Hovey v. Iowa State Daily Publication Bd., Inc.*, 372 N.W.2d 253, 256 (Iowa 1985)). Libel defendants are not required to establish the literal truth of every detail of the publication, as long as the "sting" or "gist" of the defamatory charge is substantially true. *Hovey*, 372 N.W.2d at 255.

Here, the "gist" or "sting" of the Lizza Hit Piece is that Plaintiffs hid or conspired with others to conceal a "politically explosive secret" – the "politically explosive secret" is _not_ that Plaintiffs moved to Iowa. Rather, it is that Plaintiffs employ undocumented labor on their dairy farm. [*Complaint,* ¶ *15*]. The fact that the "family" of Congressman Devin Nunes (a "strong supporter of Mr. Trump" who "wants to shut down all of the immigration") employs "undocumented labor" – repeated throughout the article – ***is*** the explosive bombshell. The defamatory implication is created by Defendants' juxtaposition of a series of false facts of and concerning Plaintiffs ("cover their tracks", "hiding something politically explosive", "conspire to hide", "warned me", "Not only was I being followed, but I was also being watched", "There was no doubt about why I was being followed", Plaintiffs employed "undocumented labor", "I laid out the facts I had uncovered in Sibley, including the intimidation of sources", "Anthony Jr. was seemingly starting to panic"), so as to imply a defamatory connection between them. Viewed in context and in light of the overall tenor of the complaint, Defendants' statements are false because:

- Plaintiffs did not "cover their tracks after quietly moving the farm to Iowa";
- Plaintiffs did not "conspire" with anyone to hide the fact that they moved to Iowa;
- Plaintiff Anthony Jr., did not ever warn or threaten Lizza or infringe upon his rights under the First Amendment;
- Plaintiffs did not "intimidate" any "source";
- There was no "politically explosive secret";
- Plaintiffs did not employ, run on, or benefit from "undocumented labor".

[*Id.,* ¶¶ *14, 19, 20 ("The entire Lizza Hit Piece is made out of whole cloth")*].

Here, the underlying facts as to the gist of the defamatory charge are ***disputed***. Contrary to Defendants' suggestion made throughout their Brief, Plaintiffs challenge the "truth" of the facts in the Lizza Hit Piece. Plaintiffs challenge whether there were any real "sources" and whether those "sources", if any, were reliable. The questions of falsity and substantial truth are for the jury.[3] This dispute cannot be resolved without discovery and evidence.

**2. *Defendants Violate The Cardinal Rule Of Defamation***

It is a cardinal rule of Iowa defamation law that whether a statement is defamatory "must be determined by giving to the subject-matter thereof, as a whole, that meaning which naturally belongs to the language used." *Lundell Mfg. Co., Inc. v. American Broadcasting Companies, Inc.*, 98 F.3d 352, 359 (8th Cir. 1996) (quoting *Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 14 (Iowa 1990)).

Even though they acknowledge the cardinal rule, Defendants reject it. They refuse to view the publication "as a whole". Instead, they seek to isolate each statement, argue that each statement is "true". In so doing, the Defendants ignore the overall context and defamatory implication of the publication as a whole.

**3. *Defendants' Statements Are Of And Concerning Plaintiffs***

Although defamatory words must refer to an ascertainable person, the plaintiff need not be named "if the alleged libel contains matters of description or other references therein, or the extraneous facts and circumstances ... show that plaintiff was intended to

[3] In their Brief, p. 10, the Defendants represent that "[p]roof of substantial falsity is an essential element of Plaintiffs' claims, and one for which they carry the burdens of pleading and proof." Defendants cite *Bierman* as support. *Bierman* does not support this proposition. Indeed, Plaintiffs' counsel could find no legal support for this proposition.

be the object of the alleged libel, and was so understood by others." *Wisner v. Nichols*, 143 N.W. 1020, 1025 (1913); *id. Bierman v. Weier*, 826 N.W.2d 436, 465 (Iowa 2013) (even though the allegedly libelous passages did not refer to the plaintiffs by name, the context made it clear that the passages referred to the "defendant's ex-wife" without requiring any "speculation or guesswork" from the reader).

In this case, Plaintiffs' complaint specifically alleges that the defamatory statements are "of and concerning" them. [*Complaint, ¶¶ 14, 22*]. Plaintiffs' names and references to Plaintiffs are all over the Lizza Hit Piece. The publication refers explicitly to Plaintiffs and identifies them as "[Devin Nunes'] parents and brother", "Anthony Jr.", "Anthony III", the "Nuneses", the "congressman's family", the "Nunes family", "his family", and "NuStar". The millions of recipients of the Lizza Hit Piece clearly understood that it was referring to Plaintiffs in a defamatory way. [*See, e.g., Complaint, ¶ 18* – https://twitter.com/MsToucanSami/status/1112163714264899585 ("If people re-read this Esquire article, they might be more likely to donate. It's about the Nunes family, how they harass journalists and hypocritically hired undocumented workers)]; Restatement (Second) of Torts § 564, cmt. a. ("It is necessary that the recipient of the defamatory communication understand it as intended to refer to the plaintiff."); *see Ball v. Taylor*, 416 F.3d 915, 917 (8th Cir. 2005) ("Here, Taylor's statements and actions at the press conference could reasonably be understood to be of and concerning each employee. Although Taylor did not state the employees names individually, he referred to them as a group, stated he was suing them because they had committed fraud, then handed his audience copies of the complaint, which identified the individual employees by name in the caption and contained their names, addresses, and positions in an appendix").

### 4. ***Defendants' Statements Are Not Pure Opinion***

Libelous speech is not protected by the First Amendment. To be clear, there is "no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974); *id. Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 504 (1984) ("there are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality … Libelous speech has been held to constitute one such category") (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)).

While the right of free speech provides absolute protection to statements which are "purely opinions", *Gertz*, 418 U.S. at 339, 340, statements clothed as "opinion" which imply that they are based on undisclosed, defamatory facts are not protected. *Lauderback v. American Broadcasting Companies, Inc.*, 741 F.2d 193, 195 (8th Cir. 1984). The Iowa Supreme Court recently repeated that "statements of opinion can be actionable if they imply a provably false fact, or *rely upon stated facts that are provably false*." *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018) (emphasis added) (quoting *Yates v. Iowa Racing Ass'n*, 721 N.W.2d 762, 771 (Iowa 2006)). In other words, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich v. Lorain Journal Co*, 497 U.S. 1, 18-19 (1990).

Contrary to Defendants' suggestion, none of the statements in the Lizza Hit Piece constitute non-actionable opinion. The statements in paragraph 14 accuse Plaintiffs of hiding or concealing the (false) fact that NuStar employs "undocumented labor". The rhetorical question, "*Is it possible the Nuneses have nothing to be seriously concerned about?*", implies that Plaintiffs do indeed have something to be concerned about as a resulting of employing undocumented labor. Whether NuStar employed undocumented labor and whether NuStar was aware that any of its employees were in the country illegally are questions of fact. *See Nelle*, 342 F.Supp.3d at 894 ("The 'gist' of the WHO-TV broadcasts is therefore rooted in an actionable statement of fact, regardless of other characterizations in the broadcast … Here, Plaintiffs dispute the truth of the underlying facts. Even if Defendants are correct that some individual statements from the broadcast, such as 'cheated' or 'bilked,' are generally opinion, or that the 'gist' of the story contains some opinion about the nature of Nelle's conduct, the story remains founded on disputed facts: the conduct of Nelle and Gregory in regard to the price term in the contract. The First Amendment does not protect opinion if the underlying facts as stated in the story—that Nelle unlawfully altered the term without Gregory's knowledge and used it to seek damages—is determined to be false."). The falsity of Defendants' statement may be proven by NuStar's business records and course of dealing. Defendants separately accuse Plaintiffs of threatening a reporter ("[Anthony Jr.] looked back and warned me"), stalking Lizza ("I was being followed" and "I was also being watched"), and "intimidation of sources" – all part of the "conspiracy" to cover-up and hide the "politically explosive secret" that NuStar uses illegal immigrants in its business. Again, these false accusations may be proven or disproven by evidence, such as the testimony of

Anthony Jr.,[4] Anthony III, NuStar employees mentioned in the hit piece ("Flavio"), other citizens of Sibley aware of Lizza's misconduct, the "priest" who heard Lizza accuse Plaintiffs of using undocumented labor and "intimidation of sources", Lizza's own interview notes and/or tape recordings of interviews with his putative "sources", and, of course, footage from the dash-cam that Lizza supposedly used to film Anthony Jr.

The timing and general tenor of the Lizza Hit Piece also reveal that it was published 36 days before the 2018 Congressional Election, demonstrating that Lizza intended to injure Congressman Nunes. As alleged in the complaint, Plaintiffs were collateral damage of the political hit piece. [*Complaint, ¶ 13*].

On page 19 of their Brief, Defendants suggest that the hit piece was an innocent "work of literary journalism", filled with "adjectives and introspective questions intended to reveal Lizza's mental impressions as he conducted reporting for the Article." These "facts" appear nowhere in the Plaintiffs' complaint. Moreover, Lizza's intentions and state of mind in writing the hit piece involve factual issues that cannot be resolved by the Court without evidence.[5]

**B. *Defendants' Motion For A More Definite Statement Should Be Denied***

Federal Rule of Civil Procedure 12(e) provides:

---

[4] Whether Anthony Jr. "start[ed] to panic" because Lizza was going to report that NuStar used undocumented immigrants in its business is capable of objective proof. Further, the underlying facts are disputed. Lizza stated that Anthony Jr. "start[ed] to panic" solely because Lizza wanted to make it appear that Anthony Jr. was guilty of a crime and, therefore, was in a "panic".

[5] Defendants do not challenge, and therefore concede, that Plaintiff have sufficiently alleged the following elements of their claim of defamation: publication, that the statements are capable of a defamatory meaning, that Defendants were negligent in reporting the facts, and that Plaintiffs suffered a demonstrable injury. Further, Defendants do not challenge by way of a motion to dismiss under Rule 12(b)(6) Plaintiffs allegations of actual malice in support of their claim for punitive damages.

> "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired."

"A motion under Rule 12(e) is designed to strike at unintelligibility in a pleading rather than want of detail." *CRST Expedited, Inc. v. JB Hunt Transport, Inc.*, 2018 WL 2768874, at * 3 (N.D. Iowa 2018) (quoting *Cmty. Voiceline, LLC v. Great Lakes Commc'n Corp.*, 2013 WL 417749, at * 4 (N.D. Iowa 2013) (internal quotations and citations omitted). Further, "a motion for more definite statement is only proper when a party is unable to determine the issues he must meet." *Id.* (quoting *Innovative Dig. Equip., Inc. v. Quantum Tech, Inc.*, 597 F.Supp. 983, 988 (N.D. Ohio 1984) (citing *Fischer & Porter Co. v. Sheffield Corp.*, 31 F.R.D. 534 (D.Del. 1962))). A motion for a more definite statement is not to be used as a substitute for discovery. *Id.* (citing *Betancourt v. Marine Cargo Mgmt., Inc.*, 930 F.Supp. 606, 608 (S.D. Fla. 1996)).

"Rule 12(e) motions are generally disfavored '[b]ecause of the liberal notice-pleading standard governing federal pleadings and the availability of extensive discovery[.]'" *CRST*, 2018 WL 2768874, at * 3 (quotations and citations omitted). A "very limited" number of situations, however, may properly implicate Rule 12(e). *Id.*

This is not one of those "very limited" situations. In their motion, Defendants identify two subject matters for which they seek an "explanation": (i) what aspect(s) of the challenged statements are supposedly false and defamatory, and (ii) what Plaintiffs allege the truth of the matters to be. The parties have conducted their Rule 26(f) conference. In *CRST*, the Court found that there is "no readily apparent reason as to why defendant cannot obtain the contracts through discovery". The same is true here. The

information Defendants seek are factual matters that can be obtained through an interrogatory. The defamation claim in the Plaintiffs' complaint is not "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." It is obvious from a review of paragraphs 14, 15, 19 and 20 what aspects of the challenged statements are false.

**CONCLUSION**

For the reasons stated above and at the hearing of this matter, Plaintiffs respectfully request the Court to deny Defendants' motion to dismiss and motion for a more definite statement.

DATED: April 7, 2020

NUSTAR FARMS, LLC
ANTHONY NUNES, JR.
ANTHONY NUNES, III

By: */s/ Steven S. Biss*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Joseph M. Feller, Esquire
(Iowa State Bar No. AT0002512)
Koopman, Kennedy & Feller
823 3rd Avenue
Sibley, Iowa 51249
Telephone: (712) 754-4654
Facsimile: (712) 754-2507
jfeller@kkfellerlaw.com

*Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: *<u>/s/ Steven S. Biss</u>*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Joseph M. Feller, Esquire
(Iowa State Bar No. AT0002512)
Koopman, Kennedy & Feller
823 3rd Avenue
Sibley, Iowa 51249
Telephone: (712) 754-4654
Facsimile: (712) 754-2507
jfeller@kkfellerlaw.com

*Counsel for the Plaintiff*