IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| NuSTAR FARMS, LLC, ANTHONY NUNES, JR., and ANTHONY NUNES III, <br><br>  Plaintiffs, <br><br> vs. <br><br> RYAN LIZZA and HEARST MAGAZINE MEDIA, INC., <br><br>  Defendants. | No. 20-CV-4003-CJW-MAR <br><br> **ORDER** |

This matter is before the Court on defendants' motion to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) or alternatively for a more definite statement under Federal Rule of Civil Procedure 12(e). (Doc. 15). Plaintiffs timely filed a resistance (Doc. 20), and defendants timely filed a reply in support of their motion (Doc. 21). On April 24, 2020, the Court heard oral argument by telephone on the motion. (Doc. 26). For the following reasons, defendants' motion is **granted in part** and **denied in part**.

### I. BACKGROUND

#### A. Factual Background

Plaintiff NuStar Farms, LLC ("NuStar") operates a dairy farm in Sibley, Iowa. Plaintiffs Anthony Nunes, Jr. and Anthony Nunes III (collectively "the Nunes") manage and operate NuStar. Devin Nunes, a California Congressman, is the son of Anthony Nunes, Jr. and brother to Anthony Nunes III.

On September 30, 2018, defendant Hearst Magazine Media, Inc. ("Hearst") published in its *Esquire* magazine an article defendant Ryan Lizza ("Lizza") wrote about

plaintiffs and Devin Nunes. The article was entitled "Devin Nunes's Family Farm is Hiding a Politically Explosive Secret" ("the article"). The article discusses, among other things, the Nunes' sale of a farm in California, the purchase of a farm in Iowa, the Nunes' move to Iowa, and that Iowa dairy farmers, including NuStar, employ undocumented workers.

### B. Procedural Background

On January 16, 2020, plaintiffs filed a complaint in this Court alleging a single count of defamation. Paragraph 14 of the complaint alleges that the article "makes the following false and defamatory statements about Plaintiffs" and then lists 16 bullet points constituting the statements plaintiffs allege are false and defamatory ("the statements"):

- "So why did [Devin Nunes'] parents and brother cover their tracks after quietly moving the farm to Iowa? Are they hiding something politically explosive? On the ground in Iowa, Esquire searched for the truth—and discovered a lot of paranoia and hypocrisy".

- "Devin; his brother, Anthony III; and his parents, Anthony Jr. and Toni Dian, sold their California farmland in 2006. Anthony Jr. and Toni Dian, who has also been the treasurer of every one of Devin's campaigns since 2001, used their cash from the sale to buy a dairy eighteen hundred miles away in Sibley, a small town in northwest Iowa where they—as well as Anthony III, Devin's only sibling, and his wife, Lori—have lived since 2007 . . .. [W]hat is strange is that the family has apparently tried to conceal the move from the public—for more than a decade".

- "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?"

- "As he walked to his truck, [Tony] looked back and warned me: 'If I see you again, I'm gonna get upset.' Apparently Sibley's First Amendment training hadn't filtered down to all its residents".

- "Other dairy farmers in the area helped me understand why the Nunes family might be so secretive about the farm: Midwestern diaries tend to run on undocumented labor".

- "In the heart of Steve King's district . . . the economy is powered by workers that King and Trump have threatened to deport. I checked Anthony Nunes Jr.'s campaign donor history. The only federal candidate

2

he has ever donated to, besides his son, is King ($250 in 2012). He also gives to the local Republican party of Osceola County, which, records show, transfers money into King's congressional campaigns".

● "The absurdity of this situation – funding and voting for politicians whose core promise is to implement immigration policies that would destroy their livelihoods – has led some of the Republican-supporting dairymen to rethink their political priorities".

● "'They are immigrants and Devin is a strong supporter of Mr. Trump, and Mr. Trump wants to shut down all of the immigration, and here is his family benefiting from immigrant labor', documented or not".

● "I had a particularly sensitive interview that afternoon with a source who I knew would be taking a risk by talking to me about immigration and labor at NuStar. When I arrived, we talked for a few minutes before the source's cell phone suddenly rang. The conversation seemed strained. "Sí, aquí está," the source said. I learned that on the other end of the phone was a man named Flavio, who worked at NuStar. Somehow Flavio knew exactly where I was and whom I was talking to. He warned my source to end the conversation. Not only was I being followed, but I was also being watched, and my sources were being contacted by NuStar".

● "I left and drove to the local grocery store, where I parked in the open, hoping to draw out whoever was tailing me. I suddenly noticed a man in jeans, a work shirt, and a baseball cap pulled down low. He was talking on his cell phone and walking suspiciously. Was he watching me? I held up a camera to take pictures and he darted away. I followed. His car was parked haphazardly on the side of the road half a block away. He got in and took off while I followed. It was a dark Chevrolet Colorado pickup truck—with California license plates . . .. The guy in the pickup truck with California plates was, of course, . . . Anthony Jr".

● Devin Nunes "and his parents seemed to have concealed basic facts about the family's move to Iowa. It was suspicious".

● "There was no doubt about why I was being followed. According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor. One source, who was deeply connected in the local Hispanic community, had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs . . . asserting that the farm was aware of their status".

● "I laid out the facts I had uncovered in Sibley, including the intimidation of sources . . ., and asked him for advice. 'I'd tell that story,'

3

he said. He paused and added, 'We're a sanctuary church, if you need a place to stay. You're safe here!'"
● "I learned that Anthony Jr. was seemingly starting to panic. The next day, the 2009 Dairy Star article about NuStar, the one that made me think the Nuneses were hiding something and that had led me to Sibley in the first place, was removed from the Dairy Star's website".
● "Is it possible the Nuneses have nothing to be seriously concerned about? Of course, but I never got the chance to ask because Anthony Jr. . . . did not respond to numerous requests for interviews".
● "The relationship between the Iowa dairy farmers and their undocumented employees is indeed fraught".

(Doc. 1, at 5-7) (footnote 1 omitted).[1]

On March 23, 2020, defendants filed a motion to dismiss the complaint, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim or, alternatively, to require plaintiffs to file a more definite statement under Federal Rule of Civil Procedure 12(e). (Doc. 15).

## II. APPLICABLE LAW

### A. Standard Under FED. R. CIV. P. 12(b)(6)

A complaint must contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . and a demand for the relief sought." FED. R. CIV. P. 8(a). Rule 12(b)(6) provides that a party may assert the defense of failure to state a claim upon which relief can be granted by motion and that "[a] motion asserting [this] defense[ ] must be made before pleading if a responsive pleading is allowed." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than

---

[1] Plaintiffs' footnote does not allege facts relevant to the truth or falsity of the identified statements but, rather, alleges the author and article were "sensational and scandalous" for unrelated reasons.

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," but "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.*, at 555-56. Indeed, a theory asserted need only be plausible, which requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the conduct alleged]." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has *alleged*—but has not *shown*—that the pleader is entitled to relief." *Ashcroft v.Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added) (citation and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* When a pleading contains nothing more than conclusions, however, those conclusions are not entitled to the assumption of truth. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "[T]here is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Leimer v. State Mut. Life Assur. Co. of Worcester*, 108 F.2d 302, 306 (8th Cir. 1940).

### B. Standard Under FED. R. CIV. P. 12(e)

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). "A motion under Rule 12(e) is designed to strike at unintelligibility in a

pleading rather than want of detail." *Cmty. Voiceline, L.L.C. v. Great Lakes Commc'n Corp.*, No. C 12-4048-MWB, 2013 WL 417749, at *4 (N.D. Iowa Feb. 1, 2013) (internal quotations and citations omitted); see also *Resolution Tr. Corp. v. Fiala*, 870 F. Supp. 962, 977 (E.D. Mo. 1994) ("Rule 12(e) is not designed to remedy an alleged lack of detail, rather, the Rule is intended to serve as a means to remedy unintelligible pleadings."). When a "pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite [statement] under Rule 12(e) before responding." *Whitehead v. City of St. Louis*, No. 4:09CV483 CDP, 2009 WL 4430699, at *1 (E.D. Mo. Nov. 24, 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)) (internal quotation marks omitted).

In granting a Rule 12(e) motion, a court "may insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish [the claims alleged] in order to survive a prediscovery motion for dismissal or summary judgment." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment)). Further, "a motion for more definite statement is only proper when a party is unable to determine the issues he must meet." *Innovative Dig. Equip., Inc. v. Quantum Tech., Inc.*, 597 F. Supp. 983, 988 (N.D. Ohio 1984) (citing *Fischer & Porter Co. v. Sheffield Corp.*, 31 F.R.D. 534 (D. Del. 1962)). A motion for a more definite statement is not to be used as a substitute for discovery. *Betancourt v. Marine Cargo Mgmt., Inc.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996).

"Rule 12(e) motions are generally disfavored '[b]ecause of the liberal notice-pleading standard governing federal pleadings and the availability of extensive discovery[.]'" *Am. Cas. Co. of Reading v. Chang*, Case No. 14-00494-CV-W-BP, 2014 WL 12535303, at *2 (W.D. Mo. Nov. 26, 2014) (alterations in original) (quoting *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 901 (D. Minn. 2013)). A "very limited" number of situations, however, may properly implicate Rule 12(e). *Rutter v. Carroll's Foods of*

*Midwest, Inc.*, 50 F. Supp.2d 876, 887 (N.D. Iowa 1999) (quoting 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1377 (1990)). "'[T]he judge may in his discretion, in response to a motion for more definite statement under Federal Rule of Civil Procedure 12(e), require such detail as may be appropriate in the particular case, and may dismiss the complaint if his order is violated.'" *Id.* (quoting *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996)).

### III. DISCUSSION

Defamation is either libel or slander. *Thiesen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 83 (Iowa 2001). Plaintiffs' complaint sounds in libel. The Iowa Supreme Court defines libel as the "malicious publication, expressed either in printing or in writing, or by signs or pictures, tending to injure the reputation of another person or to expose [that person] to public hatred, contempt, or ridicule or to injure [the person] in the maintenance of [a] business." *Plendl v. Beuttler*, 111 N.W.2d 669, 670-71 (Iowa 1961).

"Iowa courts recognize two types of libel: 'libel per se and libel per quod.'" *Doe v. Hagar*, 765 F.3d 855, 860 (8th Cir. 2014) (quoting *Schlegel v. Ottumwa Courier*, Inc., 585 N.W.2d 217, 222 (Iowa 1998)). "A statement is libelous per se if it has 'a natural tendency to provoke the plaintiff to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse.'" *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996) (quoting *Prewitt v. Wilson*, 103 N.W. 365, 367 (Iowa 1905)). "A statement is libelous per quod if it is necessary to refer to facts or circumstances beyond the words actually used to establish the defamation." *Id.* (citing 50 AM. JUR. 2D LIBEL AND SLANDER § 146 (1995)).

The elements of libel claims also differ depending on whether the plaintiff is a private or public figure and whether the defendant is a member of the media. Under

7

Iowa law, for a private plaintiff, like the plaintiffs here,[2] to plead a prima facie defamation action against a media defendant like the defendants here, plaintiffs would need to allege "(1) publication (2) of a defamatory statement (3) concerning the plaintiff (4) in negligent breach of the professional standard of care (5) that resulted in demonstrable injury." *Johnson*, 542 N.W.2d at 511. The plaintiff must also prove that the defamatory statement is false. *Id.* at 511 n.3. "[I]f the incident involves a matter of public concern, the plaintiff must [also] prove actual malice to recover punitive damages." *Id.* at 511. When, as here, defendants are members of the media, there is no presumption that the libelous statements are false or caused injury. In other words, libel per se is not available against members of the media. *See Bierman v. Weier*, 826 N.W.2d 436, 448 (Iowa 2013) (stating that "libel per se is available only when a private figure plaintiff sues a nonmedia defendant for certain kinds of defamatory statements that do not concern a matter of public importance.").

Iowa also recognizes "defamation by implication" which

> [A]rises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct.

*Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007) (alteration in original) (quoting Dan B. Dobbs, PROSSER & KEETON ON THE LAW OF TORTS § 116, at 117 (Supp.1988)).

---

[2] At oral argument defendants' counsel asserted that the Nunes are limited public figures by virtue of the relation to Congressman Nunes. Defendants did not raise this issue in their brief, nor did defendants cite to any authority on this point. At this stage the Court must construe the record in the light most favorable to plaintiffs. Thus, the Court will presume for purposes of the present motions that plaintiffs are private figures.

Defendants argue that plaintiffs' complaint fails to identify "what aspect(s) of each statement is supposedly false and defamatory, and . . . what Plaintiffs allege the truth of the matter to be." (Doc. 18, at 29). Plaintiffs contend that it is enough for the complaint to simply allege that the statements are false, and defendants can seek the factual details they want through discovery. (Doc. 20, at 12-13). As a preliminary matter, the Court finds that plaintiffs must allege facts that, if proven, would show the statements to be false. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) (holding that "when falsity is an element of a state defamation claim, federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false."). It is not enough for plaintiffs to list a number of statements and generally declare them to be false without alleging facts which, if proven, would show them to be false.

To determine if plaintiffs' complaint has met the minimal pleading requirement such that defendants can answer the complaint and defend against the claim, the Court must carefully examine the allegedly false statements in the article. Plaintiffs identified those allegedly false statements are in sixteen bullets points in paragraph 14 of plaintiffs' complaint. The remainder of plaintiffs' complaint is bereft of any factual allegations pertaining to the truth or falsity of the challenged statements. Rather, the remainder of plaintiffs' complaint is conclusory in nature. Paragraph 15 includes the conclusory allegation that the article contains a "defamatory gist and false implication[s]." Paragraphs 16 through 18 allege defendants republished the article. Paragraph 19 asserts that the article was "knowingly and intentionally flawed," that "Lizza came to Sibley with a preconceived storyline," and that he "fabricated a 'secret' where none existed," citing as authority the Federalist's website that makes a personal attack on Lizza. Under the heading Count I – Defamation, paragraphs 21 through 29 make assertions of

9

defamation, republication and damages, but do not contain any factual allegations pertaining to the truth or falsity of the statements. Thus, the Court will examine each of the 16 bullet points in turn.

> 1. "So why did [Devin Nunes'] parents and brother cover their tracks after quietly moving the farm to Iowa? Are they hiding something politically explosive? On the ground in Iowa, Esquire searched for the truth—and discovered a lot of paranoia and hypocrisy".

The first two sentences in this bullet point are questions. Arguably, the first question asserts facts: Devin Nunes' parents and brother covered their tracks and moved their farm to Iowa. The word "quietly" is an adjective arguably reflecting an opinion. The words "covered their tracks" could be an opinion, but implies facts, that is that the Nunes performed some act to conceal the move. The third sentence appears generally to assert an opinion: *Esquire* searched for the truth and discovered a lot of paranoia and hypocrisy. Whether *Esquire* searched for the truth seems a matter of opinion, as is whether *Esquire* discovered facts that led it or anyone else to conclude that there was some or a lot of something considered to be paranoia or hypocrisy. Plaintiffs' complaint does not make it clear what it is in this bullet point they allege is false. In theory, plaintiffs could allege facts that would prove the first sentence to be false. That is, plaintiffs could allege that they did not move their farm to Iowa. Plaintiffs' complaint does not make it clear at all which of these statements plaintiffs are alleging are false. Plaintiffs could be asserting that it is false that the Nunes concealed any move, or they could be asserting that *Esquire* did not discover paranoia or hypocrisy. Nor does the complaint allege facts showing that any of the statements are false or why they are false. How defendants' answer the complaint or the defense they assert to the defamation claim turns on what it is that plaintiffs allege is false in this bullet point.

> 2. "Devin; his brother, Anthony III; and his parents, Anthony Jr. and Toni Dian, sold their California farmland in 2006. Anthony Jr. and

10

> Toni Dian, who has also been the treasurer of every one of Devin's campaigns since 2001, used their cash from the sale to buy a dairy eighteen hundred miles away in Sibley, a small town in northwest Iowa where they— as well as Anthony III, Devin's only sibling, and his wife, Lori—have lived since 2007 . . . . [W]hat is strange is that the family has apparently tried to conceal the move from the public—for more than a decade".

These sentences allege a number of facts: (a) Devin, his brother and his parents sold their California farmland in 2006; (b) Toni Dian has been the treasurer of every one of Devin's campaigns since 2001; (c) Anthony Jr. and Dian used their cash from the sale of the California farm to buy a dairy in Sibley Iowa; and (d) they and Devin's sibling and his wife have lived there since 2007. The last sentence again arguably implies the Nunes engaged in some conduct to conceal the move from the public. Nothing in the complaint informs defendants which of the alleged facts plaintiffs claim are false. Nor is there anything in the complaint alleging facts which, if proven, would show any of these facts to be false.

> 3. "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?"

This question asserts the fact that "the congressman's family sold its farm and moved to Iowa." The question arguably opines that there is a conspiracy between the Nuneses, Steve King, and a dairy publication to hide the move, and that the dairy publication is obscure. Plaintiffs' complaint does not specify what part of this question they allege is false. Presumably plaintiffs are not alleging that the assertion they sold their farm and moved to Iowa is false, as the complaint appears to state the move in fact occurred. Perhaps plaintiffs are alleging the existence of a conspiracy is false. If plaintiffs believe that line asserts a fact, they have not alleged facts which, if proven, would show there was no conspiracy.

11

> 4. "As he walked to his truck, [Tony] looked back and warned me: 'If I see you again, I'm gonna get upset.' Apparently Sibley's First Amendment training hadn't filtered down to all its residents".

The first sentence in this bullet point asserts three facts: (a) Tony walked to his truck; (b) Tony looked back; and (c) Tony stated: "If I see you again, I'm gonna get upset." The second sentence appears to be an opinion which would be incapable of being proven true or false. Plaintiffs' complaint does not make it clear which of the facts are allegedly false. Nor does plaintiffs' complaint allege facts which, if proven, would show one or more of the facts are false. If plaintiffs are claiming that Tony did not make the alleged statement, it should be easy enough for them to allege that fact.

> 5. "Other dairy farmers in the area helped me understand why the Nunes family might be so secretive about the farm: Midwestern diaries tend to run on undocumented labor".

This sentence arguably alleges the fact that Midwestern diaries employ undocumented labor. The first part of the sentence appears to be a tentative conclusion the author reached from that alleged fact. As a claim of defamation, this sentence arguably suffers from the defect that the sole fact alleged is not made specifically concerning plaintiffs and it is also not necessarily defamatory because it does not allege the farms do so knowingly. In any event, plaintiffs' complaint does not allege facts which, if proven, would show that Midwestern diaries do not run on undocumented labor.

> 6. "In the heart of Steve King's district . . . the economy is powered by workers that King and Trump have threatened to deport. I checked Anthony Nunes Jr.'s campaign donor history. The only federal candidate he has ever donated to, besides his son, is King ($250 in 2012). He also gives to the local Republican party of Osceola County, which, records show, transfers money into King's congressional campaigns".

These sentences allege several facts: (a) in Steve King's district the economy is powered by workers King and President Trump have threatened to deport; (b) the author

12

checked Anthony Nunes Jr.'s campaign donor history; (c) King is the only federal candidate Nunes Jr. donated to besides Nunes Jr.'s son; (d) the amount of the King donation; (e) Nunes Jr. also gives to the local Republican party of Osceola County; and (f) the Republican party transfers money into King's congressional campaigns. As a defamation claim, these sentences arguably suffer from a number of potential problems including that several of the alleged facts are not made concerning plaintiffs and the only facts alleged concerning plaintiffs are not defamatory in nature. There is nothing wrong, for example, with donating money to a political campaign. In any event, plaintiffs' complaint fails to state which of these alleged facts plaintiffs claim are false. How defendants defend against the defamation claim depends on which facts plaintiffs allege are false. If, for example, plaintiffs claim the first alleged fact is false, then defendants may assert a defense that the statement is not concerning plaintiffs. If the plaintiffs are alleging that Nunes Jr. did not contribute to King's campaign, then defendants may, for example, answer the complaint by alleging that it is a true statement or may admit it is untrue but assert a defense that the statement is not defamatory in nature. Nor does plaintiffs' complaint allege facts which, if proven, would show any of these facts to be false. For example, if Nunes Jr. has not donated money to King, plaintiffs may allege that fact. If Nunes Jr. has contributed money to other politicians, plaintiffs may say so. They have not.

> 7. "The absurdity of this situation – funding and voting for politicians whose core promise is to implement immigration policies that would destroy their livelihoods – has led some of the Republican-supporting dairymen to rethink their political priorities".

This sentence alleges facts including: (a) Republican-supporting dairymen fund and vote for politicians; (b) those politicians promise to implement immigration policies that would injure the dairymen's livelihoods; and (c) some of those dairymen have rethought their political priorities. Again, as a defamation claim this statement arguably

13

suffers from the problem that it does not explicitly concern plaintiffs. Regardless, plaintiffs' complaint does not state which of the alleged facts are false. Nor does the complaint allege facts which, if proven, would show either that these dairymen do not fund or vote for these politicians, the policies would not injure the dairymen's livelihoods, or that none of the dairymen have rethought their political priorities.

> 8. "'They are immigrants and Devin is a strong supporter of Mr. Trump, and Mr. Trump wants to shut down all of the immigration, and here is his family benefiting from immigrant labor', documented or not".

This sentence alleges the facts: (a) the Nunes are immigrants; (b) Devin Nunes is a strong supporter of Mr. Trump; (c) Mr. Trump wants to shut down all of the immigration; and (d) the Nunes family benefits from immigrant labor. As a claim of defamation, again, this statement arguably suffers from some potential problems, including that perhaps none of these alleged facts are defamatory in nature and at least one does not pertain to plaintiffs. In any event, plaintiffs' complaint does not state which of the alleged facts are false, nor does it allege facts which, if proven, would show any of them to be false.

> 9. "I had a particularly sensitive interview that afternoon with a source who I knew would be taking a risk by talking to me about immigration and labor at NuStar. When I arrived, we talked for a few minutes before the source's cell phone suddenly rang. The conversation seemed strained. "Sí, aquí está," the source said. I learned that on the other end of the phone was a man named Flavio, who worked at NuStar. Somehow Flavio knew exactly where I was and whom I was talking to. He warned my source to end the conversation. Not only was I being followed, but I was also being watched, and my sources were being contacted by NuStar".

These sentences in the article consist of assertions of fact and, arguably, opinions and conclusions. The facts asserted include: (1) the author interviewed a source in the afternoon; (2) the source's cell phone rang during the interview; (3) the source said "Sí,

14

aquí está."; (4) the caller was a man named Flavio; (5) Flavio worked at NuStar; and (6) Flavio warned the source to end the conversation. The rest of the sentences arguably do not assert facts, but rather reflect opinions and conclusions. It is not clear from plaintiffs' complaint which of these facts plaintiffs are claiming are false. Nor have plaintiffs alleged facts which, if proven, would show they are false. Perhaps, for example, plaintiffs claim that no one name Flavio works for NuStar. If that is the case, then defendants' answer to the complaint or defense to the defamation claim may turn on whether defendants knew that was a false statement. The defendants' answer and defense may be different, on the other hand, if the plaintiffs are alleging that the author never interviewed a source at all.

> 10. "I left and drove to the local grocery store, where I parked in the open, hoping to draw out whoever was tailing me. I suddenly noticed a man in jeans, a work shirt, and a baseball cap pulled down low. He was talking on his cell phone and walking suspiciously. Was he watching me? I held up a camera to take pictures and he darted away. I followed. His car was parked haphazardly on the side of the road half a block away. He got in and took off while I followed. It was a dark Chevrolet Colorado pickup truck—with California license plates . . .. The guy in the pickup truck with California plates was, of course, . . . Anthony Jr".

As with the prior bullet point, this one contains several factual assertions along with what appears to be opinions and conclusions. The facts alleged are: (1) the author drove to a grocery store and parked; (2) the author noticed a man; (3) the man was talking on his phone while walking; (4) when the author held up a camera, the man left; (5) the man's car was parked on the side of the road half a block away; (6) the man got in his car and left; (7) the author followed the man; (8) the man's car was a Chevrolet Colorado pickup truck—with California license plates; and (9) the man was Anthony Jr. Plaintiffs' complaint does not specify which of these factual assertions they claim are false. Plaintiffs have not alleged facts in the complaint which, if proven, would show that any

15

of these factual assertions are false. How defendants answer the complaint and what defenses they assert depends on which assertions of fact plaintiffs claim are false and why.

>    11.   Devin Nunes "and his parents seemed to have concealed basic facts about the family's move to Iowa. It was suspicious".

These two statements appear to be opinions; the second sentence most certainly is. Plaintiffs' complaint does not make it clear, but presumably plaintiffs are asserting that Devin Nunes and his family did not conceal basic facts about the family's move to Iowa. In any event, plaintiffs have not alleged facts which, if proven, would show that the family's move to Iowa was open and obvious or that defendants knew that.

>    12.   "There was no doubt about why I was being followed. According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor. One source, who was deeply connected in the local Hispanic community, had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs . . . asserting that the farm was aware of their status".

The sentences in this bullet point contains factual assertions and, arguably, opinions and conclusions. The facts asserted are: (1) the author was being followed; (2) two sources told the author that NuStar relied, at least in part, on undocumented labor; (3) one source had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs; and (4) that the source asserted that the farm was aware of the workers' immigration status. Plaintiffs' complaint does not state which of these factual assertions it claims are false and it would make a difference on how defendants would answer and defend the claim. If plaintiffs are asserting that NuStar did not knowingly hire undocumented workers, for example, defendants may defend the defamation claim by asserting that the author only claimed that a source told him that was the case, not that it was in fact true. On the other hand, if plaintiffs are asserting that if was false that anyone

16

was following the author, defendants may, for example, defend against the defamation claim by asserting that the factual assertion was not concerning plaintiffs. In any event, plaintiffs' complaint does not allege facts which, if proven, would show that any of these assertions of fact are false.

> 13. "I laid out the facts I had uncovered in Sibley, including the intimidation of sources . . ., and asked him for advice. 'I'd tell that story,' he said. He paused and added, 'We're a sanctuary church, if you need a place to stay. You're safe here!'"

This bullet point contains some factual assertions and arguably some opinions and conclusions. The clear factual assertions are: (1) the author spoke to a priest about the author's investigation; (2) the author asked the priest for advice; and (3) the priest made the two statements in reply. Plaintiffs' complaint does not make it clear which of these facts plaintiffs are claiming are false, nor does it allege facts which, if proven, would show them to be false. If, for example, plaintiffs allege that it was false that anyone intimidated the author's sources, defendants may defend against the defamation claim, for example, by asserting that the word "intimidation" reflects an opinion and not an assertion of fact, or defendants may admit the assertion is false but argue that the statement is not concerning plaintiffs. If, on the other hand, plaintiffs are alleging that the priest never made that statement to the author, defendants may answer the complaint by denying that allegation.

> 14. "I learned that Anthony Jr. was seemingly starting to panic. The next day, the 2009 Dairy Star article about NuStar, the one that made me think the Nuneses were hiding something and that had led me to Sibley in the first place, was removed from the Dairy Star's website".

This bullet point appears to contain some assertions of fact and possibly some opinions or conclusions. The one clear factual assertion is that the 2009 Dairy Star article about NuStar was removed from the Dairy Star's Website. It is not clear what plaintiffs

17

are claiming is false about these two sentences. If plaintiffs are asserting that Dairy Star never removed the article from its Website, then defendants may answer the complaint by denying that it is a false statement, or admit it is false but argue that it is not defamatory in nature and not concerning plaintiffs. If plaintiffs are asserting that Anthony Jr. never started to panic, defendants may answer the complaint and defend against a defamation claim by asserting that line of the article reflects an opinion and not an assertion of fact. Again, plaintiffs' complaint does not allege facts which, if proven, would show that any portion of this bullet point is false.

> 15. "Is it possible the Nuneses have nothing to be seriously concerned about? Of course, but I never got the chance to ask because Anthony Jr. . . . did not respond to numerous requests for interviews".

This bullet point appears to contain only one factual assertion: Anthony Jr. did not respond to requests for interviews. The remainder of the bullet point is arguably an opinion or a question. Plaintiffs' complaint is not clear what plaintiffs allege is false in this bullet point, nor does plaintiffs' complaint allege facts which, if proven, would show that any portion of this bullet point is false. For example, if plaintiffs are alleging that Anthony Jr. did respond to requests for interviews, plaintiffs can make that assertion of fact. Defendants can then determine how to respond to the complaint, perhaps by denying that allegation or by admitting it was a false statement but asserting that turning down an interview is not defamatory in nature.

> 16. "The relationship between the Iowa dairy farmers and their undocumented employees is indeed fraught".

It is not clear to the Court that this bullet point asserts any facts. The description of Iowa diary farmers' relationship with undocumented employees as being "fraught" seems to be an opinion. Perhaps plaintiffs are asserting that no Iowa dairy farmers employ undocumented workers. If so, then plaintiffs can allege that fact. Defendants

18

would then be in a position to know how to answer the complaint and defend against the defamation claim.

The tedious and laborious exercise of dissecting each of the sixteen bullet points illustrates the deficiency of plaintiffs' complaint. The complaint is not at all clear as to which facts asserted in these bullet points plaintiffs allege are actually false. Knowing which assertions plaintiffs allege are false is necessary for defendants to be able to answer the complaint and assert a defense. As the Court pointed out as it addressed each bullet point, some of the alleged facts may be defended as opinions or conclusions, others may be defended as not concerning plaintiffs, and still others may be defended as being true. Without knowing which of the facts plaintiffs allege are actually false, defendants are left not knowing how to answer the complaint. The exercise also shows that the complaint fails to allege facts which, if proven, would show that any of the alleged facts are false.

In short, the Court finds this is one of the rare instances when a more definite statement is required under Rule 12(e). Although defendants have urged the Court to dismiss the complaint outright under Rule 12(b)(6), to do so here would require the Court to guess as to what exactly plaintiffs are claiming are the false statements. Even if the Court granted such a motion at this stage, it would be a dismissal without prejudice allowing plaintiffs leave to file an amended complaint to allege facts that would state a claim. Without knowing precisely what plaintiffs are claiming, the Court cannot say that plaintiffs are incapable of alleging facts which, if proven, would state a defamation claim against defendants.

The Court fully understands that in determining whether a publication is defamatory, the Court must view the publication as a whole. The Court also understands that plaintiffs are proceeding at least in part on a theory of implied defamation by juxtaposition. Yet, for defendants to be able to answer the complaint, or for this Court to analyze whether the complaint is subject to dismissal under Rule 12(b)(6) because it

fails to state a claim, it is first necessary that the complaint itself be intelligible. The complaint needs to state whether it is alleging specific facts are false, and if so, which ones and why. If plaintiffs' entire theory of recovery is that the article as a whole is defamatory by implication, then the complaint needs to allege which facts or omissions are juxtaposed with other facts or omissions so as to lead to a false assertion of fact, and allege facts which, if proven, would show the implied assertion of fact to be false.

### IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss plaintiffs' complaint under FED. R. CIV. P. 12(b)(6), or, in the alternative, for a more definite statement under FED. R. CIV. P. 12(e), (Doc. 15), is **granted in part and denied in part**. The Court **denies** defendants' motion to dismiss under Rule 12(b)(6) with leave to refile. The Court **grants** defendants' motion for a more definite statement. Plaintiffs are granted 14 days to file an amended complaint specifically identifying the facts in the contested article they allege are false, and to allege facts which, if proven, would show those facts to be false. If plaintiffs do not file an amended complaint, the Court may dismiss this matter without further action by defendants.

**IT IS SO ORDERED** this 12th day of May, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa