IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
Western Division

NUSTAR FARMS, LLC )
    et al )
)
    Plaintiffs, )
)
v. )        Case 5:20-cv-04003-CJW-MAR
)
)        **TRIAL BY JURY**
RYAN LIZZA )        **IS DEMANDED**
    et al )
)
    Defendants. )
_____ )

# AMENDED COMPLAINT
# AND MORE DEFINITE STATEMENT

Plaintiffs, NuStar Farms, LLC, Anthony Nunes, Jr. and Anthony Nunes, III, by counsel, pursuant to the Court's Order entered May 12, 2020 [*ECF No. 27*], file the following Amended Complaint and More Definite Statement of claims against defendants, Ryan Lizza ("Lizza") and Hearst Media Magazine, Inc., the publisher of *Esquire* magazine ("Hearst" or "*Esquire*"), jointly and severally.

Plaintiffs seek (a) compensatory damages and punitive damages in the sum of **$25,000,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from the date of the commencement of this action until the date of Judgment pursuant to Iowa Code § 668.13, and (c) costs incurred – arising out of the Defendants' defamation.

In support of their claim of defamation, Plaintiffs state the following facts:

# I.  INTRODUCTION

1.     Plaintiffs are private individuals.  They operate a private business and live with family in the small community of Sibley, Iowa.

2.     On September 30, 2018, the Defendants knowingly and recklessly embroiled Plaintiffs in a wholly contrived controversy.  Defendants manufactured a false narrative out of whole cloth, and juxtaposed numerous false facts in a scandalous hit piece that intentionally disparaged Plaintiffs, accused Plaintiffs of criminal conduct, conspiracy to conceal criminal conduct, dishonesty, deceit, stalking, threats, intimidation, harassment, unethical and shoddy business practices.  Defendants published the hit piece online and targeted Plaintiffs excessively via a coordinated social media and main stream media campaign.  Long after the original publication, in March 2019 and November 2019, Defendants republished the hit piece out of spite, ill-will, and in an effort to further injure Plaintiffs' business and impair Plaintiffs' reputations.  Defendants' false and defamatory statements were foreseeably republished millions of times within the year preceding the filing of this action, including to citizens of Iowa.  Plaintiffs received threatening phone calls at their business and home from bad actors who read the Defendants' hit piece.  One caller, who identified herself as "Carrie", stated that "Hey … I just found out that you guys are employing illegal immigrants.   How's that for a republican family.  Guess what.  I'm reporting you to ICE.  You guys are bull----! Hypocrites.  You disgust me … You're engaging in criminal activity and I'm going to report this until they do something."   Defendants' defamation severely impugned Plaintiffs' business and integrity and jeopardized Plaintiff's safety and the safety of their families.

3. In this case, Plaintiffs seek money damages for the loss and damage to their business, insult, pain, embarrassment, humiliation, mental suffering, anguish, and injury to their good names and professional reputations in Iowa caused by the Defendants' false and defamatory statements. The Defendants published click-bait, sensationalist and egregious misstatements not because there was an ounce of truth in the statements, but to dirty up Congressman Devin Nunes ahead of the 2018 Congressional Election set to take place on November 6, 2018. By peddling scandal, Hearst intended to sell magazines and subscriptions, profit off the notoriety, and Lizza intended to distract readers from his negative image and history. Defendants' misconduct is egregious. They should never be permitted to attack the reputations and standing of anyone, especially hard-working private individuals. They should be punished for their unlawful actions and a very strong message needs to be sent to prevent other so-called "journalists" from acting in a similar way.

## II. PARTIES

4. Plaintiff, NuStar Farms, LLC ("NuStar"), is a limited liability company organized in 2006 under the laws of Iowa. None of its members is a citizen of Virginia, the District of Columbia, Delaware or New York. NuStar operates a dairy farm. It's business is located in Sibley, Iowa. The fact of NuStar's organization in Iowa, the date of its organization in 2006, its business address in Sibley, the identity of its business entity agent (Tony's wife, Toni Dian Nunes ["Dian"]), and all of its business filings since 2006, are matters of public record available online at https://sos.iowa.gov/search/business/. Tony's son and Anthony's brother, Devin Nunes, has never owned an interest in NuStar and has never been involved in any way in any of its operations, including, without

limitation, any of its labor and employment or hiring practices. The business of NuStar is managed professionally. NuStar documents all labor and employment decisions. Those records, including Forms 1-9 – Employment Eligibility Verifications, are reviewed and maintained by NuStar in the ordinary course of its business.

5.      Plaintiffs, Anthony Nunes, Jr. ("Tony") and Anthony Nunes, III ("Anthony"), are citizens of Iowa. They manage the business of NuStar. Anthony runs the day-to-day operations of the farm in Sibley. In 2006, Tony and Dian and Anthony and his family decided to move to Iowa and start a dairy farm.[1] The move was not a secret. The Nuneses made no attempt and took no action to keep the move a secret from anyone. In fact, the Nuneses threw a big going away party and otherwise publicly announced the fact that they were moving to Iowa. Tony's sister put together a scrapbook of memories and well wishes that included photographs, congratulations on the move, and good luck and success in Iowa. In conjunction with the move, the Nuneses also published and delivered cards that expressly disclosed and announced to family, friends and business colleagues that "**WE MOOOVED**" and supplied the Nuneses' new

---

[1]      The Nunes family dairy farm of political lore – the farm that has been central to Devin Nunes's identity and a feature of every major political profile written about him – is located in Tulare, California. It has always been in Tulare, California. It has never moved. The family farm was owned by Tony's parents. After Tony's father died, Devin Nunes started working with his uncle Gerald Nunes ("Gerald"), managing the family farm, as well as working on his own farmland. The Nunes family never sold the family farm. As of September 30, 2018, Gerald continued to manage the Nunes family farm in California, a fact that was well-known to the Defendants when they published the article at issue. [https://www.nationalreview.com/2018/03/devin-nunes-political-story-congressional-career-intelligence-committee/; https://www.wsj.com/articles/devin-nunes-washingtons-public-enemy-no-1-1532729666; https://www.thedailybeast.com/devin-nunes-the-dairy-farmer-overseeing-us-spies-and-the-russia-hack-investigation; https://www.modbee.com/news/state/article216488315.html ("Nunes' uncle, Gerald, remains in charge of the Tulare County dairy operation previously ran by Nunes' grandfather"].

addresses in Sibley, Iowa. Tony, Dian, Anthony and his family physically moved to Iowa in 2007. The move to Iowa was a matter of public record reported on numerous times over the years. [*See, e.g.*, https://dairystar.com/Content/News/Print-edition-click-here-/Article/From-the-Azores-to-Iowa-/1/1/3029;

https://www.heraldstandard.com/columns/national/devin-nunes-from-dairyman-to-disgrace/article_9f0ce9ce-16e3-5f07-9df1-211297badbf8.html ("That dairy farm in Iowa? That's where … Toni Dian Nunes … lives.").[2] In the decade plus since they moved to Iowa, Tony, Dian and Anthony have never done anything to conceal the move. To the contrary. Since 2007, Tony, Dian and Anthony have been active in the local community in Sibley. Dian serves as a member of the Court of St. Andrew (Sibley) of the Catholic Daughters of the Americas. The Nuneses have always been publicly involved in giving and fundraising for their local church. Dian also serves as treasurer of the Devin Nunes Campaign Committee. Public filings with the Federal Election Commission (FEC) expressly disclose that Dian lives in Sibley, Iowa. [https://docquery.fec.gov/pdf/812/13940745812/13940745812.pdf;

https://docquery.fec.gov/pdf/292/201509209002769292/201509209002769292.pdf;

https://docquery.fec.gov/pdf/348/201712219090329348/201712219090329348.pdf;

https://docquery.fec.gov/pdf/034/201902209145551034/201902209145551034.pdf].

Even in bad times, the Nuneses have been fully transparent about their move to Iowa. When Dian's father died in 2013, the online obituary confirmed that Dian and Tony live

---

[2] The false storyline – that the Nunes family dairy moved to Iowa – was created by Fusion GPS or other political operatives and fed to select media sympathizers, including Blair Bess and McClatchy (publisher of the Modesto Bee), in August 2018. Lizza put his weight (230,000+ Twitter followers) and imprimatur behind the preconceived story and regurgitated it with additional falsehoods about a "politically explosive secret", a conspiracy, and undocumented labor.

in "Sibley, Iowa". [https://www.salseranddillardvisalia.com/obituaries/Antone-Enas/?wms_redirected=1#!/Obituary]. There is no evidence that the Nuneses hid anything from anyone. Indeed, the evidence, all known to the Defendants, shows that there was no cover-up or concealment.

6. Defendant, Lizza, is, upon information and belief, a citizen of Virginia or the District of Columbia. Lizza, acting as a senior correspondent for Hearst in a managerial capacity within the scope of his employment, wrote the article at issue in this action for Hearst for publication in *Esquire* magazine. Lizza is not an "opinion" writer. He is a political news correspondent and self-acclaimed political analyst for CNN. The article at issue in this case did not appear in any "op-ed" column.

7. Defendant, Hearst Magazine Media, Inc. ("Hearst"), is a Delaware corporation. Hearst's headquarters and principal place of business is in New York. Hearst publishes *Esquire* magazine. Hearst is a unit of Hearst Corporation, a global media, information and services company. Hearst's print and digital assets reach 155 million readers and site visitors each month – two-thirds of all millennials, and over 80% of Gen Z and millennial women in the country. *Esquire* magazine has a total print circulation of 759,922. 97% of the total circulations are subscriptions. [http://www.esquiremediakit.com/r5/home.asp]. Hearst operates multiple active websites that target Iowans. Upon information and belief, Hearst has hundreds of thousands of print and digital subscribers, followers and viewers who live and work in Iowa, and has sold millions of copies of *Esquire* to Iowans. Hearst reviewed Lizza's pitch, edited Lizza's preconceived storyline, encouraged, authorized and ratified publication of the

article at issue in this action, and actively participated in its publication and multiple republications online, in print, and via social media.

### III.  JURISDICTION AND VENUE

8.  The United States District Court for the Northern District of Iowa has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The parties are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees.

9.  The Defendants are subject to specific personal jurisdiction in Iowa.  They transact substantial business in Iowa and committed multiple acts of defamation in whole or part in Iowa.  They have minimum contacts with Iowa such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution.  Defendants purposefully availed themselves of the privilege of doing business in Iowa.  Defendants' defamation was purposefully directed at Iowa.  Plaintiffs' claims arise directly from and specifically relate to Defendants' publication of false and defamatory statements in Iowa. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

10.  Venue is proper in the Western Division of the United States District Court for the Northern District of Iowa pursuant to Title 28 U.S.C. §§ 1391(a) and 1391(b).

### IV.  STATEMENT OF THE FACTS

**A.**   ***Publication and Republication***

11.  On September 30, 2018, Hearst published an article in *Esquire* magazine written by Lizza entitled "**Devin Nunes's Family Farm Is Hiding a Politically**

**Explosive Secret**".  [https://www.esquire.com/news-politics/a23471864/devin-nunes-family-farm-iowa-california/ (the "Article")].

12.     In addition to Hearst's online and print publications of the Article, Lizza republished the Article to a new target audience – his 230,000+ followers on Twitter:



[https://twitter.com/ryanlizza/status/1046543162964156416?lang=en].

13.     On September 30, 2018, Lizza's girlfriend, Olivia Nuzzi ("Nuzzi"), a correspondent with *New York* magazine, also tweeted the Article to her 200,000 Twitter

followers.  Nuzzi naturally understood the Article to accuse Plaintiffs of stalking and intimidation of sources:



**Olivia Nuzzi**
@Olivianuzzi

Devin Nunes has a secret, one that his family has gone to great lengths to protect - including stalking @RyanLizza around Iowa and intimidating his sources. The results are like some kind of David Lynch black comedy set in a community of dairy farmers:

Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret
Why did Devin Nunes's parents and brother cover their tracks after quietly moving their family farm to Iowa? Ryan Lizza went to Iowa in search of the trut...
🔗 esquire.com

8:04 PM · Sep 30, 2018 · Twitter for iPhone

[https://twitter.com/Olivianuzzi/status/1046551283891621889].

14.     The Defendants intentionally timed the original publication of the Article to occur within close proximity to the November 6, 2018 Congressional Election.  It was the Defendants' intent to hurt Devin Nunes politically with false statements of fact and

9

impair his voter bases (both agricultural and Republican) ahead of the Election. The false statement in the Article that the "Nunes family dairy of political lore … isn't in California. It's in Iowa" was specifically designed to erode support for Devin Nunes among California's agricultural community by misleading these voters into thinking that the family farm had moved. The adjacent and accompanying false statement that Plaintiffs and Devin Nunes conspired to cover-up a "politically explosive secret" – that NuStar employed undocumented labor – was expressly intended to mislead conservative Republicans into believing that Devin Nunes was a "hypocrite" and that he was soft on immigration.

15. NuStar, Tony and Anthony were collateral damage in Defendants' campaign to injure Devin Nunes.

16. The Defendants republished the Article without regard to Plaintiffs' rights and interests each time a major news story broke concerning Devin Nunes.

17. For instance, on March 22, 2019, Special Counsel Robert Mueller submitted his confidential report entitled "Report on the Investigation into Russian Interference in the 2016 Presidential Election" (the "Mueller Report"). For over two (2) years between 2017 and 2019, Devin Nunes publicly stated that there was no evidence of any collusion between any member of the presidential campaign of Donald Trump, and/or others associated with it, and "Russians". The Mueller Report fully and completely vindicated the President of the United States and those who supported him, including Devin Nunes. [https://assets.documentcloud.org/documents/5779700/AG-March-24-2019-Letter-to-House-and-Senate.pdf ("The Special Counsel's investigation did not find that the Trump campaign or anyone associated with it conspired or

coordinated with Russia in its efforts to influence the 2016 U.S. presidential election.");

https://thehill.com/homenews/house/435513-nunes-on-mueller-report-we-can-just-burn-it-up; https://www.youtube.com/watch?v=vsvNPeWsB7g].   On March 28, 2019, within days of the first publication of the Mueller Report, Hearst chose to gratuitously republish the Article:



[https://twitter.com/esquire/status/1111272460299763712].

18. During the impeachment hearings before the House Intelligence Committee in November 2019, Devin Nunes led the Republican criticism of House Democrats for their handling of the impeachment inquiry and other investigations into President Donald Trump. [*See, e.g.*, https://www.usnews.com/news/politics/articles/2019-11-20/read-devin-nunes-opening-statement-for-gordon-sondland-hearing-on-impeachment].

19. The Defendants chose to again republish the Article with reckless disregard for truth and consequences to Plaintiffs:



[https://twitter.com/RyanLizza/status/1197322014572371969].    Lizza's tweet has been retweeted over 3,900 times and liked over 7,800 times to date.

20.     Within the year preceding the filing of this action, Defendants' combined 660,000+ Twitter followers and other third-parties republished the Article millions of times, *e.g.*:

https://twitter.com/MsToucanSami/status/1112163714264899585

https://twitter.com/CortexDevin/status/1107982056447971328

https://twitter.com/deangloster/status/1115471152342650880

https://twitter.com/jackhutton/status/1157681338771574784

https://twitter.com/Ann_Ashford/status/1197718918489620481

https://twitter.com/kateirby/status/1211705436191240193

https://twitter.com/52Katydid/status/1203886750965227520

https://twitter.com/wsunmu/status/1199472934139678721

https://twitter.com/MarleyKD/status/1194249674640646150

https://twitter.com/buzjohn/status/1194453414836617217

https://twitter.com/whoslappedjohn3/status/1194276539220856832

https://twitter.com/TheGimpyNinja/status/1198606878395097088

https://twitter.com/tRumpNitemare/status/1216543054380916736

https://twitter.com/gabrielmalor/status/1219693345213243393

https://twitter.com/christenczech/status/1258823308994383876

https://twitter.com/DMendoza2032/status/1261672923057631232

https://twitter.com/decitect/status/1263601167126327298

**B.** _The False Statements And Why They Are False_

21.     The Article is deeply flawed and misleading.  From start to finish, the Article contains a legion of false facts, some of which are expressly libelous of Plaintiffs and some of which, when juxtaposed together to imply a connection, are defamatory by implication.

22.     The Article makes the following false statements of fact:

a.     "**Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret**".  This statement is false because (a) NuStar is not "Devin Nunes's Family Farm"; (b) neither Plaintiffs nor Devin Nunes's _family's_ farm hid anything from anyone; (c) there was no hidden "secret" as the "Nunes family dairy of political lore" never moved to Iowa; and (d) there was no "politically explosive" secret, as NuStar does not employ undocumented labor.

b.     "**So why did [Devin Nunes'] parents and brother cover their tracks after quietly moving the farm to Iowa?  Are they hiding something politically explosive?  On the ground in Iowa, Esquire searched for the truth—and discovered a lot of paranoia and hypocrisy**".  These statements are false because (a) Plaintiffs did not "cover their tracks" and, in any case, there was nothing to "cover" or hide; (b) Plaintiffs' move to Iowa was a publicized event and a matter of public record – Plaintiffs did nothing to conceal the move; (c) Plaintiffs did not move "the farm" or any farm to Iowa – Plaintiffs bought an existing dairy business here in 2006; (d) Defendants did not come to Iowa in search of the truth about a "secret", rather they took a preconceived storyline from political operatives and consciously set out to manufacture evidence to conform to the preconceived story; (e) none of Plaintiffs' business practices or beliefs

reflected any "hypocrisy" and Defendants did not discover any such "hypocrisy"; and (f) Plaintiffs and their family members had nothing to hide, did not suffer from any mental disorders, and were not "paranoid" or mentally ill – they and their neighbors were rightfully concerned as a result of Lizza's bizarre behavior in Sibley's quiet neighborhoods.

      c.    "**So here's the secret: The Nunes family dairy of political lore—the one where his brother and parents work—isn't in California. It's in Iowa. Devin; his brother, Anthony III; and his parents, Anthony Jr. and Toni Dian, sold their California farmland in 2006. Anthony Jr. and Toni Dian, who has also been the treasurer of every one of Devin's campaigns since 2001, used their cash from the sale to buy a dairy eighteen hundred miles away in Sibley, a small town in northwest Iowa where they—as well as Anthony III, Devin's only sibling, and his wife, Lori— have lived since 2007 … [W]hat is strange is that the family has apparently tried to conceal the move from the public—for more than a decade**". These statements are false because (a) there is no "secret" – the "Nunes family dairy of political lore" is in California and has always been there; (b) the Nunes family dairy was never sold; (c) Anthony, Tony and Dian do not work at the Nunes family dairy; (d) Devin Nunes never owned any "California farmland" with his father and mother; (e) Tony and Dian bought an existing dairy in Sibley; and (f) neither Anthony, Tony nor Dian ever did or said anything to anyone to conceal the move to Iowa from the public – in fact, they did the opposite.

      d.    Devin Nunes' "**immediate family's farm—as well as his family—is long gone**." These statements are false because (a) Devin Nunes' family,

15

including his wife, children, grandmother, uncles and aunts, cousins, and many other relatives all live in California; (b) Tony, Dian and Anthony did not move any farm from California to Iowa; and (c) Tony, Dian and Anthony retain significant farming interests in California.

   e. **"Why would the Nuneses, Steve King, and an obscure dairy publication all conspire[3] to hide the fact that the congressman's family sold its farm and moved to Iowa?"** These statements are false because (a) Plaintiffs never conspired, colluded, combined, associated, plotted, schemed or agreed with Steve King to do anything; in fact, Anthony only met Steve King briefly one time and the last time Tony spoke with Steve King was approximately a decade before Defendants' published the Article, so there could be no conspiracy;[4] (b) Plaintiffs did not conspire with Devin Nunes to hide anything – Devin Nunes has never had any involvement in the operation of NuStar and has no knowledge whatsoever of NuStar's labor and employment practices; (c) Devin Nunes' family did not sell its farm in California and move to Iowa; and (d) the move to Iowa was not hidden from anybody – in fact, the move was publicly disclosed and announced.

   f. **"As he walked to his truck, [Tony] looked back and warned me: 'If I see you again, I'm gonna get upset.'  Apparently Sibley's First Amendment training hadn't filtered down to all its residents"**. These statements are false because

---

   [3] In its ordinary and customary sense, the word "conspire" means to "plot", "scheme", "contrive", "collude", "to join in a secret agreement to do an unlawful or wrongful act or an act which becomes unlawful as a result of the secret agreement." [https://www.merriam-webster.com/dictionary/conspire].

   [4] The Nuneses have never communicated with Congressman King by telephone or email.  Under the circumstances, it is impossible for the Nuneses to have conspired with Congressman King.

Tony never warned Lizza or threatened him in any way or did anything that merited the "First Amendment training" that the Town of Sibley agreed to and received in the Harms case.

g.　**"Other dairy farmers in the area helped me understand why the Nunes family might be so secretive about the farm: Midwestern dairies tend to run on undocumented labor"**. These statements are false because (a) Plaintiffs were not "secretive" in any way about NuStar and the continuing insinuation, built to a crescendo throughout the Article, that Plaintiffs were hiding something "politically explosive" or were engaged in deceptive business practices is false; (b) NuStar did not run on undocumented labor – all of its labor is meticulously documented; and (c) midwestern dairies, including NuStar, do not tend to run on undocumented labor.

h.　**"'They are immigrants and Devin is a strong supporter of Mr. Trump, and Mr. Trump wants to shut down all of the immigration, and here is his family benefiting from immigrant labor', documented or not"**. These statements are false because Plaintiffs do not benefit from undocumented immigrant labor and Defendants falsely insinuate that Plaintiffs do.

i.　**"I had a particularly sensitive interview that afternoon with a source who I knew would be taking a risk by talking to me about immigration and labor at NuStar. When I arrived, we talked for a few minutes before the source's cell phone suddenly rang. The conversation seemed strained. "*Sí, aquí está,*" the source said. I learned that on the other end of the phone was a man named Flavio, who worked at NuStar. Somehow Flavio knew exactly where I was and whom I was talking to. He warned my source to end the conversation. Not only was I being**

followed, but I was also being watched, and my sources were being contacted by NuStar". These statements are false[5] because (a) Plaintiffs did not surveil Lizza or instruct anyone to surveil Lizza at any time; (b) none of the Plaintiffs ever warned or threatened or intimidated any source of Lizza in any way, nor did they even know the identity of any of his "sources"; (c) Lizza was not being "watched" by anyone – he was the one doing the stalking (a fact corroborated by numerous witnesses)!;[6] and (d) NuStar never contacted any of Lizza's sources, a fact that can be proven by NuStar's phone records and other evidence.

j.  **"Devin Nunes was the public figure at the heart of this, and he had no financial interest in his parents' Iowa dairy operation.  On the other hand, he and his parents seemed to have concealed basic facts about the family's move to Iowa**."  These statements are false because (a) Devin Nunes was not at the heart of

---

[5]  Without discovery, Plaintiffs cannot say whether the "source" referred to by Lizza even exists.

[6]  [https://thefederalist.com/2018/10/02/ryan-lizzas-hit-piece-on-devin-nunes-extended-family-is-deeply-flawed/ ("It turns out that … the Iowans Lizza met were wary of him slowly driving around town while children were at play because they discovered Lizza had recently been fired from his job for sexual misconduct … In interviews with more than half a dozen residents of Sibley, Iowa, they told a far different story.  Lizza arrived in town and began slowly driving around neighborhoods in a dark car with out of town license plates.  One neighbor of the Nunes family told me he spotted the car slowly driving by a Nunes family residence.  This is in a small town where children play freely, and neighbors keep an eye out for each other.  He expressed his concern to the family.  Another resident told me that he encountered a Nunes family member crying because she'd discovered that the man who was surveilling her house had recently been fired for sexual misconduct.  With three grammar-school aged daughters, she was concerned for their safety … In conversations with other residents of the town, they say that Lizza lied or mischaracterized other interactions as well."); *see also* https://www.breitbart.com/politics/2018/10/01/devin-nunes-parents-stalked-iowa-move/ ("**Disgraced Reporter Ryan Lizza Stalks Devin Nunes' Parents in Iowa**"); https://www.breitbart.com/politics/2018/10/07/collateral-damage-iowa-town-residents-angered-by-esquire-hit-piece-on-devin-nunes/ ("'**Collateral Damage': Iowa Town Residents Angered by Esquire Hit Piece on Devin Nunes**")].

anything, including any conspiracy with Plaintiffs to hide a "politically explosive secret"; and (b) neither Plaintiffs nor Devin Nunes ever concealed any facts about Plaintiffs' move to Iowa – the move was open, obvious and publicly announced, and the Defendants knew about the move prior to publication of the Article.

k. "**There was no doubt about why I was being followed. According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor. One source, who was deeply connected in the local Hispanic community, had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs … asserting that the farm was aware of their status … A second source, who claimed to be an undocumented immigrant, also claimed to have worked at NuStar for several years, only recently leaving the dairy, which this source estimated employed about fifteen people**".  These statements are false because (a) members of Plaintiffs' family and others in the small Sibley farming community saw Lizza driving slowly around the neighborhood, and developed concerns about trespassing and invasion of privacy (multiple witnesses saw Lizza filming and photographing the Nuneses' business and residence), so they decided to get Lizza's license plate and report him to the local sheriff; (b) after they googled his name, however, and learned about the accusations of "improper sexual conduct",[7] they became alarmed; (c) Plaintiffs and their family members did not "follow" Lizza because NuStar "did indeed rely, at least in part, on undocumented labor" or because they wanted to intimidate him and get him to stop reporting a story; (d) the anonymous "sources" of information, if there were any, were

---

[7] [*See, e.g.*, https://www.nytimes.com/2017/12/11/business/ryan-lizza-sexual-misconduct.html; https://www.politico.com/story/2017/12/11/new-yorker-fires-ryan-lizza-sexual-misconduct-290504].

unknown to Lizza, completely unverified, and unreliable because they never sent any undocumented workers to NuStar; (e) NuStar did not hire undocumented labor as its business records will attest; (f) no undocumented immigrant worked at NuStar for "several years" further undercutting the veracity and reliability of the anonymous "second" source; (g) NuStar was not "aware of their status" and did not violate Federal law (Title 8 U.S.C. § 1324a) by knowingly hiring an unauthorized alien; and (h) Lizza did nothing to verify the accuracy of his unreliable anonymous sources, and he ignored the fact that there were never any reported cases of NuStar's use of undocumented labor.

l.      "**I laid out the facts I had uncovered in Sibley, including the intimidation of sources**"  This statement is false because Plaintiffs did not "intimidate" any of Lizza's sources.

m.      "**I learned that Anthony Jr. was seemingly starting to panic. The next day, the 2009 *Dairy Star* article about NuStar, the one that made me think the Nuneses were hiding something and that had led me to Sibley in the first place, was removed from the *Dairy Star*'s website.  Anthony Jr., I was told, had called the newspaper and demanded that the editors take the nine-year-old story down.  They relented … According to someone who talked to him that day, Anthony Jr. allegedly said that he was hiring a lawyer and that he was convinced that his dairy would soon be raided by ICE.**"  These statements are false and are falsely ascribed to Tony because (a) Tony had no reason to panic and did nothing to indicate to anyone that he was panicked about anything; (b) Tony did not call the editors of the *Daily Star*; (c) Tony never made any demands or put any pressure on anyone to remove the story; (c) the

editors did not "relent" to pressure from Tony; (d) Tony did not tell anyone he was hiring a lawyer and/or that he was convinced that NuStar would soon be raided by ICE.

n.     "**Is it possible the Nuneses have nothing to be seriously concerned about?  Of course, but I never got the chance to ask because Anthony Jr. … did not respond to numerous requests for interviews**".  These statements are false. The rhetorical question insinuates that Plaintiffs have done something that they should be concerned about.

## C.     *Defamatory Implication and Gist*

23.     The strong defamatory gist and false implication from the Article is that Plaintiffs conspired with others (including Devin Nunes and Steve King) to hide and conceal a "politically explosive secret" – that NuStar knowingly employs undocumented labor on its dairy farm.  The Article implies that Plaintiffs are dishonest, deceitful, unethical in their business practices, that they are hiding criminal conduct, and that they fail to document the immigrant labor that they use in NuStar's business.  In addition to its defamatory implication, the Article directly (and falsely) accuses Plaintiffs of stalking, harassing and threatening Lizza and intimidating sources, acts taken by Plaintiffs in furtherance of the scheme to conceal the "politically explosive secret".

24.     Defendants carefully chose their words and purposefully misrepresented facts.  In the Article, they juxtaposed a series of facts so as to imply a defamatory connection between them.  The first false fact is the direct reference in the opening sentence to a "**politically explosive secret**".  There was no secret; in fact, "Devin Nunes's family farm" never moved to Iowa.  Further, Plaintiffs never moved "the farm" or any farm to Iowa, and never concealed their move in 2007.  The entire thematic

foundation of the Article is knowingly false. The next false fact is the "**conspiracy**" to hide the secret. Here, Lizza deliberately employs a series of falsehoods – including accusations that Plaintiffs were "hiding something politically explosive", "covered their tracks", "concealed" their actions, intimidated "sources", were "so secretive", and that "Anthony Jr. was seemingly starting to panic" – to create the appearance that the Plaintiffs acted intentionally and surreptitiously in furtherance of an agreed goal. The Article then rhetorically asks: "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold[8] its farm and moved to Iowa?" The answer is supplied by Defendants' third juxtaposed false fact: Defendants' falsely state that NuStar knowingly uses of "**undocumented labor**".[9]

25.     The entire Article is made of whole cloth.

26.     Viewing the defamatory statements in the context of the surrounding circumstances and within the entire communication, third persons immediately understood that Defendants were accusing Plaintiffs of harassment, stalking, intimidation, and employing undocumented labor (unethical and illegal business practices). A few examples suffice, *e.g.*:

https://twitter.com/Olivianuzzi/status/1046551283891621889
("Devin Nunes has a secret, one that his family has gone to great lengths to protect – including stalking @RyanLizza around Iowa and intimidating his sources. The results are like some kind of David Lynch black comedy set in a community of dairy farmers");

---

[8]     Lizza knew from prior reporting and public records that Devin Nunes' family did not sell its farm in California.

[9]     The Article begins by expressing declaring that NuStar is hiding a "**politically explosive**" secret. The secret is not that the "Nunes family dairy of political lore" is in Iowa. That fact, even if it was true, is not, by itself, "**politically explosive**". The "**politically explosive**" secret is the use of undocumented labor at "Devin Nunes's family farm". In the context of this story, the use of undocumented labor is what makes the secret "**politically explosive**".

https://twitter.com/MsToucanSami/status/1112163714264899585
("It's about the Nunes family, how they harass journalists and hypocritically hired undocumented workers");

https://twitter.com/CortexDevin/status/1107982056447971328
("By the way, remember that time when journalist Ryan Lizza writing for Esquire found the Nunes family farm in Iowa which employs undocumented labor and they stalked him around town and intimidated its residents into not talking with him");

https://twitter.com/52Katydid/status/1203886750965227520
("His family seems to like to intimidate and harass reporters. Read a really creepy story about his families dairy farm in Iowa. Reporter was followed around, people told not to speak");

https://twitter.com/wsunmu/status/1199472934139678721
("Nows a good time for this story again: Nunes' family farm in Iowa hires illegal immigrants");

https://twitter.com/tRumpNitemare/status/1216543054380916736
("#Nooooo_ns dirty little secret... The Nunes family #NuStarDairy uses undocumented labor on their Iowa dairy farm... and everyone in the area knows it!").

**D.** ***The False And Defamatory Statements Are Of Or Concerning Plaintiffs***

27. The Article expressly identifies Plaintiffs by name and contains matters of description or other references, including extraneous facts and circumstances, which clearly show that Plaintiffs were intended to be the object of the Defendants' libel, and that it was so understood by others.

28. Plaintiffs' names and references to Plaintiffs are all over the Article. The publication refers explicitly to Plaintiffs and identifies them as "[Devin Nunes'] parents and brother", "Anthony Jr.", "Anthony III", the "Nuneses", the "congressman's family", the "Nunes family", "his family", and "NuStar". The reference in the opening sentence to "Devin Nunes's family farm" is to NuStar. The millions of recipients of the Article understood that it was referring to Plaintiffs explicitly in a defamatory way.

E.    *__Negligent Breach Of The Standard Of Care__*

29.    In the course of investigating, reporting and publishing the Article, the Defendants intentionally breached their own code of ethics and standard of care and failed to exercise that degree of care which ordinarily prudent persons in the same profession exercise under similar conditions.

30.    Defendants failed to review publicly available records to determine whether the Nunes family farm in Tulare, California, was ever sold.

31.    Defendants intentionally ignored public records and declarations concerning Plaintiffs' move to Iowa, and chose to promote false facts that Plaintiffs sold a farm in California and conspired with two United States Congressmen to conceal their move to Iowa.

32.    Defendants lacked any reasonable basis for believing that Plaintiffs conspired with others, including Devin Nunes and Steve King, and the Article reflects a total absence of facts to support Defendants' false accusations about Plaintiffs.

33.    Defendants violated the practice in the trade that anonymous calls are customarily relied upon for direction, but not for information.

34.    Rather than report the truth, Defendants chose to accept and publish a preconceived story created by political operatives, including Fusion GPS, whose goal it was to smear Devin Nunes ahead of the 2018 Congressional Election.

F.    *__Plaintiffs Suffered Actual Injury And Damages__*

35.    Prior to publication of the Article, Plaintiffs enjoyed an untarnished reputation.

36.     The Defendants chose to publish and excessively republish the Article to the broadest possible audience in print, online and via social media.  The nature and character of the Defendants' insults had an immediate effect on those who read the Article.  Plaintiffs were universally condemned, ridiculed and exposed to contempt.  The Article directly impacted Plaintiffs' business, reputation and their standing in the community and in business.

37.     The Article and its excessive republication by Defendants inflicted actual harm on Plaintiffs, including impairment of their personal and professional reputations and standing in the community, humiliation, embarrassment, mental anguish and suffering.

## COUNT I – <u>DEFAMATION</u>

38.     Plaintiffs restate paragraphs 1 through 37 of this Amended Complaint, and incorporate them herein by reference.

39.     Defendants made and published to third-parties, including, but not limited to, advertisers, subscribers, readers, viewers and followers of *Esquire*, to print media, mainstream media and to followers on social media, numerous false factual statements of and concerning Plaintiffs.  These statements are detailed verbatim above.  Defendants' false and defamatory statements were published and republished within the past year without privilege, justification or legal excuse of any kind.  The false and defamatory statements were not published in good faith or through misinformation or mistake. Defendants published the words intentionally to harm Plaintiffs' business and reputation.

40.     By publishing the Article in print magazines distributed in Iowa and throughout the United States, on the Internet and via social media such as Twitter,

Defendants knew or should have known that their false and defamatory statements about Plaintiffs would be republished over and over by third-parties millions of times to Plaintiffs' detriment and injury. By tweeting the Article themselves and by encouraging others, such as Olivia Nuzzi, to tweet, retweet and post the Article to Twitter, Defendants created an unreasonable risk that the defamatory matter in the Article would be communicated by third-parties. Republication by print media, mainstream media, and via social media in 2019 and 2020 was the natural, foreseeable, reasonably expected and probable consequence of Defendants' actions and was actually and/or presumptively authorized by the Defendants. Defendants are liable for the republications of the false and defamatory statements by third-parties.

41. Defendants' false statements constitute defamation *per quod*. The statements accuse Plaintiffs of multiple crimes. The statements impute to Plaintiffs an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment. Defendants' statements also prejudice Plaintiffs in their profession and business as farmers.

42. Defendants' false statements caused Plaintiffs to suffer and incur actual injury and damages, including impairment of reputation.

43. Defendants directed false and defamatory statements at Plaintiffs as private individuals with the specific intent to harm Plaintiffs' reputation. Defendants acted negligently. They lacked reasonable grounds for any belief in the truth of their statements.

44. Defendants are liable for punitive damages because they acted with actual malice and reckless disregard for the truth:

a.　The Article is littered with statements that are knowingly false, and the sheer number of falsehoods demonstrates that the Defendants were out to get Plaintiffs.

b.　Defendants and their editors and publishers violated their own code or standards of ethics and abandoned all journalistic standards in writing, editing and publishing the Article. https://members.newsleaders.org/resources-ethics-hearst ("We place our readers' interests above all others, and dedicate ourselves to the principles of truthfulness, fairness and independence.  We understand that the free flow of accurate information is vital to our system of government and the foundations of our economy … The deliberate introduction of false information into our newspapers will not be tolerated"); https://www.spj.org/ethicscode.asp ("Members of the Society of Professional Journalists believe that public enlightenment is the forerunner of justice and the foundation of democracy.  Ethical journalism strives to ensure the free exchange of information that is accurate, fair and thorough.  An ethical journalist acts with integrity. The Society declares these four principles as the foundation of ethical journalism and encourages their use in its practice by all people in all media")].

c.　Defendants adopted as their own a preconceived storyline in advance of any investigation and then consciously set out to make the evidence conform to the preconceived story.  Defendants pursued, regurgitated and amplified upon the preconceived narrative, employing a string of facts they knew to be false.

d.　Lizza lied about the subject matter of the Article.  Prior to publication, he attempted to deceive Plaintiffs and Devin Nunes into making statements by falsely claiming that the story was about "immigration and the dairy industry".

e.    Defendants published the preconceived narrative out of a desire to embarrass Devin Nunes, undermine confidence in his abilities to act as Chairman of the House Intelligence Committee, and influence the outcome of the 2018 Congressional Election. Defendants knowingly swept Plaintiffs into their scheme to injure Devin Nunes with reckless disregard for the consequences to Plaintiffs' reputation and business.

f.    Defendants knowingly presented half-truths and sensational statements in an effort to sell magazine and online subscriptions.

g.    The Article evinces extreme bias, ill-will and a desire to hurt Plaintiffs. Defendants chose to manufacture and publish false statements about Plaintiffs and to use unnecessarily strong and violent language, disproportionate to the occasion. Defendants did not act in good faith because, in the total absence of evidence and in the face of known falsehoods, they could not have had an honest belief in the truth of their statements about Plaintiffs.

h.    Defendants published the false defamatory statements out of a desire to gain notoriety, increase advertising and other revenues for Hearst, with reckless disregard for the consequences.

i.    Defendants relied on unknown sources, including anonymous and unnamed persons, they knew were wholly unreliable and had an axe to grind against Plaintiffs, and failed to verify any of the "facts" supplied.

j.    Defendants and their agents excessively repeated, reiterated and republished the Article in March 2019 and November 2019 out of a desire to injure Plaintiffs and to spread the poison in the pool.

45.     As a direct result of Defendants' defamation, Plaintiffs suffered actual injury and damages, including, but not limited to, insult, public ridicule, humiliation, embarrassment, impairment, damage and injury to personal and professional reputations, out-of-pocket expenses and costs, in the sum of $25,000,000.00 or such greater amount as is determined by the Jury.

46.     Prior to filing this action, Plaintiffs gave notice to the Defendants and made a demand for retraction of the defamatory statements at issue. The Defendants failed and/or refuse to retract or withdraw the defamatory statements.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, NuStar, Tony and Anthony, respectfully request the Court to enter Judgment against Lizza and Hearst, jointly and severally, as follows:

A.     Compensatory damages in the amount of $20,000,000.00 or such greater amount as is determined by the Jury;

B.     Punitive damages in the amount of $5,000,000.00 or the maximum amount allowed by Iowa law;

C.     Prejudgment interest from January 16, 2020 until the date Judgment is entered at the maximum rate allowed by law;

D.     Postjudgment interest at the maximum rate allowed by law;

E.     Costs and such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED:        May 24, 2020


                NUSTAR FARMS, LLC
                ANTHONY NUNES, JR.
                ANTHONY NUNES, III



        By:    */s/ Steven S. Biss*
                Steven S. Biss (VSB # 32972)
                300 West Main Street, Suite 102
                Charlottesville, Virginia 22903
                Telephone:    (804) 501-8272
                Facsimile:    (202) 318-4098
                Email:        stevenbiss@earthlink.net
                (*Admitted Pro Hac Vice*)

                Joseph M. Feller, Esquire
                (Iowa State Bar No. AT0002512)
                Koopman, Kennedy & Feller
                823 3rd Avenue
                Sibley, Iowa 51249
                Telephone:    (712) 754-4654
                Facsimile:    (712) 754-2507
                jfeller@kkfellerlaw.com

                *Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: ___/s/ Steven S. Biss_____
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:    (804) 501-8272
        Facsimile:    (202) 318-4098
        Email:      stevenbiss@earthlink.net
        (*Admitted Pro Hac Vice*)

        Joseph M. Feller, Esquire
        (Iowa State Bar No. AT0002512)
        Koopman, Kennedy & Feller
        823 3rd Avenue
        Sibley, Iowa 51249
        Telephone:    (712) 754-4654
        Facsimile:    (712) 754-2507
        jfeller@kkfellerlaw.com

        *Counsel for the Plaintiffs*