IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
Western Division

| | |
|---|---|
| NUSTAR FARMS, LLC et al<br><br>Plaintiffs,<br><br>v.<br><br>RYAN LIZZA et al<br><br>Defendants. | Case 5:20-cv-04003-CJW-MAR<br><br>**TRIAL BY JURY IS DEMANDED** |

# **SECOND AMENDED COMPLAINT**

Plaintiffs, NuStar Farms, LLC, Anthony Nunes, Jr. and Anthony Nunes, III, by counsel, pursuant to the Court's Order entered September 11, 2020 [*ECF No. 50*], file the following Second Amended Complaint against defendants, Ryan Lizza ("Lizza") and Hearst Media Magazine, Inc., the publisher of *Esquire* magazine ("Hearst" or "*Esquire*"), jointly and severally.

Plaintiffs seek (a) compensatory damages in the sum of **$20,000,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from the date of the commencement of this action until the date of Judgment pursuant to Iowa Code § 668.13, and (c) costs incurred – arising out of the Defendants' defamation.

In support of their claim of defamation, Plaintiffs state the following facts:

# I. INTRODUCTION

1. Plaintiffs are private individuals. They operate a private business and live with family in the small community of Sibley, Iowa. They are active in the local community in Sibley, and have always been involved in giving and fundraising for their local church.

2. On September 30, 2018, the Defendants knowingly and recklessly embroiled Plaintiffs in a wholly contrived controversy. Defendants manufactured a false narrative out of whole cloth, and accused Plaintiffs of criminal conduct, dishonesty, deceit, and shoddy business practices. Defendants published false statements about Plaintiffs (described below) online and in print, and targeted Plaintiffs excessively via a coordinated social media and main stream media campaign. Defendants' false and defamatory statements were foreseeably republished millions of times within the year preceding the filing of this action. Plaintiffs received threatening phone calls at their business and home from bad actors who read the Defendants' article. One caller, who identified herself as "Carrie", stated "Hey … I just found out that you guys are employing illegal immigrants. How's that for a republican family. Guess what. I'm reporting you to ICE. You guys are bull----! Hypocrites. You disgust me … You're engaging in criminal activity and I'm going to report this until they do something." Plaintiffs and their family continue to receive death threats caused by Defendants' publications and republications. Defendants' defamation severely impugned Plaintiffs' business and integrity, injured their reputations, and jeopardized Plaintiffs' safety and the safety of their families.

3. In this case, Plaintiffs seek money damages for the loss and damage to their business, insult, pain, embarrassment, humiliation, mental suffering, anguish, and injury to their good names and professional reputations in Iowa caused by the Defendants' false and defamatory statements.

## II. PARTIES

4. Plaintiff, NuStar Farms, LLC ("NuStar"), operates a dairy farm in Sibley, Iowa. Plaintiffs Anthony Nunes, Jr. ("Anthony Jr.") and Anthony Nunes III ("Anthony III") (collectively "the Nuneses") manage NuStar. The business of NuStar is managed professionally. NuStar documents all labor and employment decisions. Those records, including documents establishing both employment authorization and identity and Forms 1-9 – Employment Eligibility Verifications, are reviewed and maintained by NuStar in the ordinary course of its business in accordance with Federal law. Devin Nunes, a California Congressman, is Anthony, Jr.'s son and Anthony III's brother.

5. The Nunes family has long owned and managed a dairy farm located in Tulare, California. The farm in California is closely associated with Devin Nunes's political profile.[1] In 2006, Anthony Jr., Anthony Jr.'s wife Toni Dian ("Dian"), Anthony III and his family moved to Iowa, formed NuStar, and started a new dairy farm. Devin Nunes has never had any ownership or financial interest whatsoever in NuStar or any

---

[1] The Nunes family dairy farm of political lore – the farm that has been central to Devin Nunes's identity and a feature of every major political profile written about him – is located in Tulare, California. It has always been in Tulare, California. It has never moved. The family farm was owned by Anthony Jr.'s parents. After Anthony Jr.'s father died, Devin Nunes started working with his uncle Gerald Nunes ("Gerald"), managing the family farm, as well as working on his own farmland. The Nunes family never sold the family farm. As of September 30, 2018, Gerald continued to manage the Nunes family farm in California, a fact that was well-known to the Defendants when they published the Article at issue.

involvement of any kind in its operations, including, without limitation, any of NuStar's labor and employment, hiring or compliance practices.

6. Defendant, Lizza, is a senior correspondent for Hearst. Acting in a managerial capacity within the scope of his employment, Lizza wrote the article at issue in this action for Hearst for publication in *Esquire* magazine. Lizza is not an "opinion" writer. He is a political news correspondent and self-acclaimed political analyst for Cable News Network, Inc. ("CNN"). The article at issue in this case did not appear in any "op-ed" column.

7. Defendant, Hearst Magazine Media, Inc. ("Hearst"), is a Delaware corporation. Hearst's headquarters and principal place of business is in New York. Hearst publishes *Esquire* magazine. Hearst is a unit of Hearst Corporation, a global media, information and services company. Hearst's print and digital assets reach 155 million readers and site visitors each month – two-thirds of all millennials, and over 80% of Gen Z and millennial women in the country. *Esquire* magazine has a total print circulation of 759,922. 97% of the total circulations are subscriptions. [http://www.esquiremediakit.com/r5/home.asp]. Hearst operates multiple active websites that target Iowans. Upon information and belief, Hearst has hundreds of thousands of print and digital subscribers, followers and viewers who live and work in Iowa, and has sold millions of copies of *Esquire* to Iowans. Hearst reviewed Lizza's pitch, edited Lizza's preconceived storyline, encouraged, authorized and ratified publication of the article at issue in this action, and actively participated in its publication and multiple republications online, in print, and via social media.

## III. JURISDICTION AND VENUE

8. The United States District Court for the Northern District of Iowa has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. The Defendants are subject to specific personal jurisdiction in Iowa. They transact substantial business in Iowa and committed multiple acts of defamation in whole or part in Iowa. They have minimum contacts with Iowa such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution. Defendants purposefully availed themselves of the privilege of doing business in Iowa. Defendants' defamation was purposefully directed at Iowa. Plaintiffs' claims arise directly from and specifically relate to Defendants' publication of false and defamatory statements in Iowa. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

10. Venue is proper in the Western Division of the United States District Court for the Northern District of Iowa pursuant to Title 28 U.S.C. §§ 1391(a) and 1391(b).

## IV. STATEMENT OF THE FACTS

### A. *Publication and Republication*

11. On September 30, 2018, Hearst published in its *Esquire* magazine an article written by Lizza about Plaintiffs and Devin Nunes ("the Article"). The online version of the Article was headlined "**Devin Nunes's Family Farm is Hiding a Politically Explosive Secret**". It was (and is) accessed by clicking the following

hyperlink: https://www.esquire.com/news-politics/a23471864/devin-nunes-family-farm-iowa-california/. The print version was entitled "**Milking the System**" and the text under the title, in part, asks "So why did [Devin Nunes's] parents and brother cover their tracks after quietly moving the farm to Iowa? Are they hiding something politically explosive?"

12. In addition to Hearst's online and print publications of the Article, Lizza republished the Article to a new target audience – his 230,000+ followers on Twitter:



[https://twitter.com/ryanlizza/status/1046543162964156416?lang=en].

13. On September 30, 2018, Lizza's girlfriend, Olivia Nuzzi ("Nuzzi"), a correspondent with *New York* magazine, also tweeted the Article to her 200,000 Twitter followers.

14. The Defendants intentionally timed the original publication of the Article to occur within close proximity to the November 6, 2018 Congressional Election. It was the Defendants' intent to hurt Devin Nunes politically with false statements of fact and impair his voter bases (both agricultural and Republican) ahead of the Election. The false statement in the Article that NuStar knowingly received, relied on and employed undocumented labor was expressly intended to mislead conservative Republicans into believing that Devin Nunes was a "hypocrite" and that he was soft on immigration.

15. The Defendants negligently republished the Article without regard to Plaintiffs' rights and interests each time a major news story broke concerning Devin Nunes.

16. For instance, on March 22, 2019, Special Counsel Robert Mueller submitted his confidential report entitled "Report on the Investigation into Russian Interference in the 2016 Presidential Election" (the "Mueller Report"). For over two (2) years between 2017 and 2019, Devin Nunes publicly stated that there was no evidence of any collusion between any member of the presidential campaign of Donald Trump, and/or others associated with it, and "Russians". The Mueller Report fully and completely vindicated the President of the United States and those who supported him, including Devin Nunes. [https://assets.documentcloud.org/documents/5779700/AG-March-24-2019-Letter-to-House-and-Senate.pdf ("The Special Counsel's investigation did not find that the Trump campaign or anyone associated with it conspired or

coordinated with Russia in its efforts to influence the 2016 U.S. presidential election."). On March 28, 2019, within days of the first publication of the Mueller Report, Hearst chose to gratuitously republish the Article:



[https://twitter.com/esquire/status/1111272460299763712].

17. During the impeachment hearings before the House Intelligence Committee in November 2019, Devin Nunes led the Republican criticism of House

Democrats for their handling of the impeachment inquiry and other investigations into President Donald Trump. [*See, e.g.*, https://www.usnews.com/news/politics/articles/2019-11-20/read-devin-nunes-opening-statement-for-gordon-sondland-hearing-on-impeachment]. The Defendants chose to republish the Article again with reckless disregard for truth and consequences to Plaintiffs:



[https://twitter.com/RyanLizza/status/1197322014572371969].

18.     Within the year preceding the filing of this action, Defendants' combined 660,000+ Twitter followers and other third-parties republished the Article millions of times.

B.  *The False Statements And Why They Are False*

19.     The Article makes the following statements of fact:

a.      "**There was no doubt about why I was being followed. According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor.  One source, who was deeply connected in the local Hispanic community, had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs … asserting that the farm was aware of their status … A second source, who claimed to be an undocumented immigrant, also claimed to have worked at NuStar for several years, only recently leaving the dairy, which this source estimated employed about fifteen people**".  These statements are false because (a) NuStar did not hire undocumented labor as its business records will attest; (b) NuStar was not "aware of their status" and did not violate Federal law (Title 8 U.S.C. § 1324a) by knowingly hiring an unauthorized alien.  NuStar fully documented all hiring decisions in accordance with Federal law.  Indeed, there were never any reported cases of NuStar's use of undocumented or unauthorized workers.

C.  *Defamatory Meaning*

20.     Viewing the defamatory statements in the context of the surrounding circumstances and within the entire communication, third persons immediately understood that Defendants were accusing Plaintiffs of knowingly employing

"undocumented" and "illegal" labor (unethical and illegal business practices). A few examples suffice:

> https://twitter.com/RVAwonk/status/1046598123005636610
> ("Devin Nunes' family is quietly running a dairy farm reliant on undocumented immigrant labor -- and working very hard to keep it a secret");
>
> https://twitter.com/thedailybeast/status/1046749328126152710
> ("Rep. Devin Nunes' family dairy farm secretly relocated from central California to Iowa more than a decade ago, where it's reported to rely heavily on undocumented immigrant labor");
>
> https://twitter.com/RyanLizza/status/1078657747774779392
> ("1. Until the Trump era Rep. Nunes had not been a demagogue about undocumented immigrants and crime. 2. The Nunes family dairy, in Iowa, has for years relied on undocumented labor, as reported here");
>
> https://twitter.com/DerekCressman/status/1079817511066128384
> ("Devin Nunes' Family Farm Rife With Undocumented Labor");
>
> https://twitter.com/eugenegu/status/1083409187579748352
> ("Republican Congressman Devin Nunes' family farm employed hundreds of undocumented immigrants to exploit them for cheap labor");
>
> https://twitter.com/CortexDevin/status/1107982056447971328
> ("By the way, remember that time when journalist Ryan Lizza writing for Esquire found the Nunes family farm in Iowa which employs undocumented labor");
>
> https://twitter.com/MatkovichTony/status/1108543305791475712
> ("Devin... have you talked to your family @NuStar Farms about hiring undocumented labor? Has ICE visited your farm up in Sibley, Iowa to make sure it is on the up and up?");
>
> https://twitter.com/MsToucanSami/status/1112163714264899585
> ("It's about the Nunes family, how they … hypocritically hired undocumented workers");
>
> https://twitter.com/buzjohn/status/1194453414836617217
> ("It is hard to understand how farmers can support politicians with zero tolerance for undocumented immigrants, when they can't survive without immigrant labor. This esquire piece is fascinating");

https://twitter.com/somebadideas/status/1194651741012267009
("This, but more egregiously, Nunes' family are probably hiding using undocumented labor on their farm while the dipshit backs the most racist immigration policies in decades");

https://twitter.com/Kayk859/status/1197768033533644800
("Nunes Family Farm Employs Udocumented [sic] Immigrants");

https://twitter.com/ourBooksLuvUs/status/1198655097892270080
("Devin Nunes owns a large dairy relocated from California to Iowa, the farm uses immigrant labor and its operation is kept super-secret");

https://twitter.com/BLStrangfeld/status/1198995301455028225
("Holy Cow, Nunes. If you wanted steak, why didn't you travel to Iowa where your family farm is really located (not in California) and where they happily employed undocumented workers????");

https://twitter.com/wsunmu/status/1199472934139678721
("Nows a good time for this story again: Nunes' family farm in Iowa hires illegal immigrants");

https://twitter.com/BLStrangfeld/status/1199675366652174336
("And if anyone would like to subpoena Devin Nunes' Cow to testify, you won't find her in California. The family farm is actually in Iowa where they have a history of hiring undocumented workers");

https://twitter.com/ribbone9/status/1200267110255079424
("His parents farm in Iowa also employ illegal immigrants and pay them a sub par wage");

https://twitter.com/sturgeon_sue/status/1200266459680837634
("Apparently his parents have illegal immigrants tend the farm");

https://twitter.com/tRumpNitemare/status/1216543054380916736
("#Nooooo_ns dirty little secret... The Nunes family #NuStarDairy uses undocumented labor on their Iowa dairy farm... and everyone in the area knows it!");

https://twitter.com/perf_tenn/status/1222059092711071744
("I am unique in my contempt for Devin Nunes, and his hypocritcal [sic] family that employs undocumented immigrants");

https://twitter.com/MinnesotaCitiz1/status/1223750573314494465
("Don't forget the illegal labor....");

https://twitter.com/gunsensemo1/status/1229032971698659329
("@DevinNunes family has taken $140k in govt welfare & there's a 99.999999% chance they employ illegal workers. Really nothing like championing policies that will screw over your parents to own the libs. #hypocrisy #ICE");

https://twitter.com/2cannan1/status/1229495018081132544
("You mean like breaking the law like Devin Nunes' family does?");

https://twitter.com/fxmct71/status/1229956798779678721
("Devin Nunes family farm is in Shelby, Iowa. They employ undocumented workers there");

https://twitter.com/byronesk/status/1229955615809822720
("Fortunately not all farmers are as stupid as Nunes. Is Devin trying to remind @MikeBloomberg that Nunes' brother's dairy farm employs undocumented immigrants?");

https://twitter.com/deangloster/status/1231731919840108544
("The farm in Iowa belongs to his relatives. There was an interesting expose here (labor=undocumented immigrants?)");

https://twitter.com/philgrogers/status/1239903969062854656
("'Media freaks' my rear-end, sir. ......Devin Nunes's Family Farm Moved to Iowa, Employs Undocumented Workers");

https://twitter.com/devin_stepmom/status/1271612629929177088
("Devin used to be moderate. His family's farm moved to Iowa in 2006. They, like everyone else in dairy, hires undocumented workers. IMO trump is holding this over devin");

https://twitter.com/redshoe9/status/1275919838167302145
("I just want to remind everyone that this article exposing Devin's criminal family dairy cow scam reads like a thriller book");

https://twitter.com/mog7546/status/1291149584606154753
("The story claimed that is farm operated in California by members of his family was moved to #Iowa and that it ultimately, used 'UNDOCUMENTED LABOR'");

https://twitter.com/MrRaulJenkins/status/1291626173643005952
("His farm in Iowa hires undocumented workers");

https://twitter.com/pvdork/status/1303077102363783168
("Devin Nunes's Family Farm Moved to Iowa, Employs Undocumented Workers");

https://twitter.com/McTeagle74/status/1303252052173152256
("Maybe someone close to Trump learned about the Nunes family farm's dependency on illegal hiring before Esquire did, and used the threat of exposing that as leverage").

**D.** *The False And Defamatory Statements Are Of Or Concerning Plaintiffs*

21. The Article expressly identifies Plaintiffs by name and contains matters of description or other references, including extraneous facts and circumstances, which clearly show that Plaintiffs were intended to be the object of the Defendants' libel, and that it was so understood by others.

22. Plaintiffs' names and references to Plaintiffs are all over the Article. The publication refers explicitly to Plaintiffs and identifies them as "[Devin Nunes'] parents and brother", "Anthony Jr.", "Anthony III", the "Nuneses", the "congressman's family", the "Nunes family", "his family", and "NuStar". The reference in the opening sentence to "Devin Nunes's family farm" is to NuStar. The millions of recipients of the Article understood that it was referring to Plaintiffs explicitly in a defamatory way.

**E.** *Negligent Breach Of The Standard Of Care*

23. In the course of investigating, reporting and publishing the Article, the Defendants intentionally breached their own code of ethics and standard of care and failed to exercise that degree of care which ordinarily prudent persons in the same profession exercise under similar conditions.

24. Defendants' code of ethics, in pertinent part, represents that "[w]e … dedicate ourselves to the principles of truthfulness, fairness and independence. We understand that the free flow of accurate information is vital to our system of government and the foundations of our economy … The deliberate introduction of false information into our newspapers will not be tolerated". [https://members.newsleaders.org/resources-

ethics-hearst; *see also* https://www.spj.org/ethicscode.asp ("Members of the Society of Professional Journalists believe that public enlightenment is the forerunner of justice and the foundation of democracy. Ethical journalism strives to ensure the free exchange of information that is accurate, fair and thorough. An ethical journalist acts with integrity. The Society declares these four principles as the foundation of ethical journalism and encourages their use in its practice by all people in all media")]. The Article was neither truthful, accurate nor fair in its portrayal of Plaintiffs. Defendants came to Iowa with a preconceived storyline that Plaintiffs violated federal law. Prior to publication, Lizza attempted to deceive Plaintiffs and Devin Nunes into making statements by falsely claiming that the story was about "immigration and the dairy industry". Defendants violated the practice in the trade that anonymous calls are customarily relied upon for direction, but not for information. Prior to accusing Plaintiffs of crimes, Defendants failed to properly investigate and determine whether NuStar had ever knowingly received unauthorized workers from anyone "aware of their status" and/or used undocumented labor without fully complying with Federal law. Defendants maximized the harm to Plaintiffs by stating and/or implying that NuStar had, in fact, knowingly employed undocumented or unauthorized workers, and then by excessively republishing the false statements even after they were on notice that the statements were false.

25. Rather than report the truth, Defendants chose to accept and publish a preconceived story created by political operatives, including Fusion GPS, whose goal it was to smear Devin Nunes ahead of the 2018 Congressional Election.

F.  *<u>Plaintiffs Suffered Actual Injury And Damages</u>*

26. Prior to publication of the Article, Plaintiffs enjoyed an untarnished reputation.

27. The Defendants chose to publish and excessively republish the Article to the broadest possible audience in print, online and via social media. The nature and character of the Defendants' insults had an immediate effect on those who read the Article. Plaintiffs were universally condemned, ridiculed and exposed to contempt. The Article directly impacted Plaintiffs' business, reputation and their standing in the community and in business.

28. Publication and republication of the Article by the Defendants inflicted actual harm on Plaintiffs, including impairment of their personal and professional reputations and standing in the community, humiliation, embarrassment, mental anguish and suffering.

## COUNT I – <u>DEFAMATION</u>

29. Plaintiffs restate paragraphs 1 through 28 of this Amended Complaint, and incorporate them herein by reference.

30. Defendants made and published to third-parties, including, but not limited to, advertisers, subscribers, readers, viewers and followers of *Esquire*, to print media, mainstream media and to followers on social media, numerous false factual statements of and concerning Plaintiffs. These statements are detailed verbatim above. Defendants' false and defamatory statements were published and republished within the past year without privilege, justification or legal excuse of any kind. The false and defamatory

statements were not published in good faith or through misinformation or mistake. Defendants published the words intentionally to harm Plaintiffs' business and reputation.

31. By publishing the Article in print magazines distributed in Iowa and throughout the United States, on the Internet and via social media such as Twitter, Defendants knew or should have known that their false and defamatory statements about Plaintiffs would be republished over and over by third-parties millions of times to Plaintiffs' detriment and injury. By tweeting the Article themselves and by encouraging others, such as Olivia Nuzzi, to tweet, retweet and post the Article to Twitter, Defendants created an unreasonable risk that the defamatory matter in the Article would be communicated by third-parties. Republication by print media, mainstream media, and via social media in 2019 and 2020 was the natural, foreseeable, reasonably expected and probable consequence of Defendants' actions and was actually and/or presumptively authorized by the Defendants. Defendants are liable for the republications of the false and defamatory statements by third-parties.

32. Defendants' false statements constitute defamation *per quod*. The statements accuse Plaintiffs of multiple crimes. The statements impute to Plaintiffs an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment. Defendants' statements also prejudice Plaintiffs in their profession and business as farmers.

33. Defendants' false statements caused Plaintiffs to suffer and incur actual injury and damages, including impairment of reputation.

34. Defendants directed false and defamatory statements at Plaintiffs as private individuals with the specific intent to harm Plaintiffs' reputation. Defendants

acted negligently. They lacked reasonable grounds for any belief in the truth of their statements.

35. As a direct result of Defendants' defamation, Plaintiffs suffered actual injury and damages, including, but not limited to, insult, public ridicule, humiliation, embarrassment, impairment, damage and injury to personal and professional reputations, out-of-pocket expenses and costs, in the sum of $20,000,000.00 or such greater amount as is determined by the Jury.

36. Prior to filing this action, Plaintiffs gave notice to the Defendants and made a demand for retraction of the defamatory statements at issue. The Defendants refuse to retract or withdraw the defamatory statements.

## **CONCLUSION AND REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, NuStar, Anthony, Jr. and Anthony III, respectfully request the Court to enter Judgment against Lizza and Hearst, jointly and severally, as follows:

A. Compensatory damages in the amount of $20,000,000.00 or such greater amount as is determined by the Jury;

B. Prejudgment interest from January 16, 2020 until the date Judgment is entered at the maximum rate allowed by law;

C. Postjudgment interest at the maximum rate allowed by law;

D. Costs and such other relief as is just and proper.

## **TRIAL BY JURY IS DEMANDED**

DATED: September 17, 2020

        NUSTAR FARMS, LLC
        ANTHONY NUNES, JR.
        ANTHONY NUNES, III


By: */s/ Steven S. Biss*
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone: (804) 501-8272
        Facsimile: (202) 318-4098
        Email: stevenbiss@earthlink.net
        (*Admitted Pro Hac Vice*)

        Joseph M. Feller, Esquire
        (Iowa State Bar No. AT0002512)
        Koopman, Kennedy & Feller
        823 3rd Avenue
        Sibley, Iowa 51249
        Telephone: (712) 754-4654
        Facsimile: (712) 754-2507
        jfeller@kkfellerlaw.com

        *Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Joseph M. Feller, Esquire
(Iowa State Bar No. AT0002512)
Koopman, Kennedy & Feller
823 3rd Avenue
Sibley, Iowa 51249
Telephone: (712) 754-4654
Facsimile: (712) 754-2507
jfeller@kkfellerlaw.com

*Counsel for the Plaintiffs*