# HEARST

**Office of General Counsel**

Eve Burton
**Executive Vice President**
**Chief Legal Officer**

Jonathan R. Donnellan
Mark C. Redman
**Vice President**
**Co-General Counsel**

Kenan J. Packman
Maureen Walsh Sheehan
Ravi V. Sitwala
Jack Spizz
**Associate General Counsel**

Carolene S. Eaddy
**Vice President**
**Corporate Human Resources**

Jennifer G. Tancredi
Debra S. Weaver
**Senior Counsel**

Catherine A. Bostron
**Corporate Secretary**

Sultan Barazi
Liddy Barrow*
Nathaniel S. Boyer
Lisa Bozman
David Brioso
Michael A. Canencia
James Coil
Adam Colón
Howard Davis
Travis P. Davis
Ignacio Diaz*
Vincent Floyd*
Kerry A. Flynn
Matthew Greenfield
Diego Ibargüen
Monika Jedrzejowska
Kate Mayer
Marianne Chow Newman
Aimee Nisbet*
Sarah S. Park
Suzanne Peters
Andrea S. Ryken
Eva M. Saketkoo
Jennifer Schanes
Nina Shah
Federica Tigani*
Kitty Yang*
Stephen H. Yuhan
Jim Zeng
**Counsel**

\* Not admitted or resident in New York

**Sarah S. Park**
Counsel

March 16, 2021

**VIA ECF**

The Hon. Mark A. Roberts
United States Magistrate Judge
U.S. District Court for the Northern District of Iowa
111 Seventh Avenue SE
Cedar Rapids, IA 52401

Re:     *NuStar Farms, LLC et al. v. Lizza et al.*,
         Case No. 5:20-cv-04003-CJW-MAR

Dear Judge Roberts:

We and Faegre Drinker Biddle & Reath LLP represent Defendants Ryan Lizza and Hearst Magazine Media, Inc. in this defamation action brought by Plaintiffs NuStar Farms, LLC ("NuStar"), Anthony Nunes, Jr., and Anthony Nunes, III. We submit this notice to outline proposed matters to be discussed during the upcoming status conference scheduled before the Court on March 18, 2021. *See* ECF No. 71.

Defendants and Plaintiffs have continued to meet and confer, and Defendants respectfully request that the Court so order certain agreed-upon matters on the record accordingly. *See infra* Point I.

Notwithstanding those areas of cooperation, Defendants regret to report that the parties are again at an impasse concerning the incompleteness of Plaintiffs' response to Defendants' Interrogatory No. 1. Despite several efforts to confer with Plaintiffs' counsel, Defendants must once more seek the Court's intervention on Interrogatory No. 1, out of concern over Defendants' ability to conduct discovery—in particular, depositions—in a streamlined manner within the schedule the Court has set. *See infra* Point II. And at the end of the letter, Defendants respond to the purported discovery issues raised by Plaintiffs in their submission to chambers yesterday evening. *See infra* Point III.

300 West 57th Street
New York, NY 10019
T 212.649.2042
Sarah.Park@hearst.com

### I. Plaintiffs' Productions in Response to Defendants' First Request for Production of Documents.

On March 3, 2021, the parties met and conferred, and Plaintiffs represented that they had as of that date produced all documents for the time period of 2006 to the present in their possession, custody, and control, responsive to Defendants' First Set of Requests for Production of Documents ("First RFP"), with respect to the following categories:

- All documents showing employment authorization and identity for Plaintiffs' workers, including all I-9s and associated records
- All quarterly wage reports
- All Forms W-2, W-4, 1099
- All of Plaintiffs' financial records (tax returns, financial statements, income statements, statements of cash flows, balance sheets, budgets, bank statements)
- All payroll and other records identifying employees, including any records of payments to such employees
- All documents concerning subsidies and stimulus funds
- All customer lists
- All documents on participation in trade organizations
- Plaintiffs' health and medical records

Defendants respectfully seek entry of Plaintiffs' representation into the record, so Defendants may proceed in reasonable reliance on this representation and draw appropriate inferences from it.[1]

### II. Plaintiffs' Incomplete Responses to Interrogatory No. 1.

The Court has addressed Plaintiffs' obligation to respond to Interrogatory No. 1 multiple times now. Regrettably, Defendants must again raise this issue, as Plaintiffs have yet to provide a complete verified answer to

---

[1] Plaintiffs declined to make the same representation with respect to all documents showing damages. Plaintiffs have also taken under advisement Defendants' request for native or electronic data, including any general ledgers underlying the income statements and other financial and payroll records that have been produced to Defendants. During the meet and confer, Plaintiffs represented that they soon will supplement their written responses to the First RFP to clarify what, if any, documents concerning damages have not been produced, and Defendants accordingly table these issues while expressly reserving all rights, including to raise them with the Court if necessary.

Interrogatory No. 1, and Plaintiffs have definitively stated they will not engage with Defendants in further attempts to resolve the issue.

By no later than March 5, 2021, as agreed by the parties and directed by the Court, Plaintiffs were due to serve a partial response to Interrogatory No. 1—the names and Social Security Numbers of all Plaintiffs' workers from 2006 to the present. Per the Interrogatory's definitions, Plaintiffs must provide such information for both employees and non-employees, including any independent contractors or other workers not on the payroll.

On March 5, 2021, Plaintiffs served  Plaintiffs did not comply with their obligation to respond in full. It is all the more inappropriate since Plaintiffs, as of submission of this letter, have not provided a signed verification that the Interrogatory was answered fully under oath, as required by Federal Rule 33(b). Rather, Plaintiffs suggest they will *not* certify, or even vouch for the accuracy of their response as a list of all workers.

Such a response falls far short of what the Rules require. This is especially true in a case involving undocumented workers, for whom there may well be no formal payroll records.

Upon receipt of this incomplete response, Defendants asked whether Plaintiffs utilized any workers or employees who would not appear on the cited records (including those engaged prior to January 1, 2013, as well as non-employees or other workers not on payroll). Defendants further asked whether Plaintiffs had knowledge of the workers' complete names. Defendants also requested an updated verification page by, at the latest, March 17.

Plaintiffs responded that they will not answer these questions, complaining of "nit-pick[ing]" and describing Defendants' questions as "a rabbit hole" down which Plaintiffs refused to go.

Plaintiffs are due to serve complete responses to the remainder of Interrogatory No. 1 by tomorrow (March 17). However, by virtue of the incompleteness of the list produced on March 5, the responses served on March 17 also necessarily will be incomplete, ██████████ ████████████████████████████████████.[2] Any verification will, similarly, be deficient as it will not attest to the accuracy or completeness of the response in view of the disclaimer.

Defendants therefore respectfully ask the Court to order complete *verified* responses to Interrogatory No. 1 by no later than **March 19, 2021**. Even if responses remain facially incomplete by that date, Defendants are entitled to Plaintiffs' verification that their responses represent the totality of their knowledge and completion of a full search and disclosure, to permit Defendants and the Court to draw necessary inferences from, among other things, the absence of names, records, and complete and contemporaneous documentation of employment eligibility at the time of hire.

Defendants are eager to schedule depositions. It is highly likely that in addition to Plaintiffs themselves and third parties who may have knowledge of Plaintiffs' labor and employment practices or claimed damages, Defendants may need to depose a number of Plaintiffs' current and former workers. While Defendants hope to streamline discovery and hold down the number of depositions—particularly in the latter category of workers—this is proving difficult to do as Plaintiffs continue to balk at providing necessary information on this critical group of witnesses. Defendants do not at this time formally seek to expand the number of fact depositions available to each side, but reserve the right to do so, should Plaintiffs' recalcitrance persist. Defendants therefore hope the Court can provide a preliminary view on such an expansion of the deposition limits so this issue can be presented formally should the parties reach impasse on it.

---

[2] Defendants further reserve the right to object to any other deficiencies that may be apparent from the responses that will be served on March 17.

### III. Plaintiffs' Purported Discovery Issues Are a Meritless Attempt to Manufacture Discovery Grievances.

Plaintiffs' purported discovery complaints are non-issues and do not represent genuine disputes between the parties. Each is addressed *seriatim* below.

1. *Lizza's Original Notes, Original Emails, and Text Messages*. Mr. Lizza has produced all of the notes, emails, and text messages relating to the Article that are within his possession, custody, and control, searching his email account, text messages, and digital and hard copy files for responsive documents. Indeed, Plaintiffs' letter describes many pages of notes of emails that Mr. Lizza has produced, including original notes. To the extent any documents no longer exist, that is the result of Mr. Lizza's standard retention practices, which Plaintiffs' counsel is welcome to explore at a deposition of Mr. Lizza.

Defendants' counsel has provided this response to Plaintiffs' counsel on multiple occasions, including in a detailed email on March 5. It is not clear why Plaintiffs' counsel is now raising this with the Court, having not taken issue with the March 5 email.

2. *Complete Copies of All Audio Recordings*. Again, Mr. Lizza has produced complete copies of all audio recordings in his possession, custody, and control. He has produced many hours of recordings, including recordings of interviews with the sources central to his story. If Plaintiffs have further questions, they can explore the topic further at a deposition of Mr. Lizza.

3. *Fact-Checkers/Researchers/Editors/Directors/etc.* Defendants have produced all the non-privileged and responsive notes, emails, and other correspondence located after a reasonable and diligent search of relevant custodians' files. Hearst has produced to Plaintiffs a copy of its written retention policies, and Plaintiffs are welcome to explore the matter further at a deposition.

It is telling that Plaintiffs focus on the question of whether one of the on-the-record sources in the Article (Father James Callahan) was, in fact, wearing a "Hawaiian shirt" at the time he was interviewed with Mr. Lizza. This is not a relevant issue. But, if Plaintiffs want to understand why Hearst has not produced detailed notes concerning Father Callahan's attire, they are welcome to explore that in depositions.

Magistrate Judge Roberts
March 16, 2021
Page 6

4. *Esquire Staff*. Today, Defendants are supplementing their response to Interrogatory No. 7 with the names of Hearst editorial staff involved in confirming the accuracy of the statements in the Article. This issue has therefore been resolved.

5. *Lizza's Phone Records*. Mr. Lizza's phone records—identifying incoming and outgoing calls—will include information concerning other, unrelated reporting by Mr. Lizza that is privileged pursuant to any and all applicable shield laws and reporters' privileges. Defendants have repeatedly inquired with Mr. Lizza's cell phone carrier in writing and by phone, but have been unsuccessful in obtaining call detail logs. Defendants continue to diligently attempt to obtain the records from the carrier. Should Plaintiffs choose to subpoena these records, Defendants would object to the production of any privileged information and would therefore seek to redact the records as appropriate.

Defendants shall be prepared to address the above issues and any others deemed appropriate by the Court at the coming conference.

We appreciate the Court's willingness to conduct these conferences and thank you for taking the time to do so.

Respectfully submitted,

 /s/     Sarah S. Park
Sarah S. Park*

*Admitted pro hac vice

cc: all counsel of record (by CM/ECF)