# HEARST

Office of
General Counsel

Eve Burton
**Executive Vice President**
**Chief Legal Officer**

Jonathan R. Donnellan
Mark C. Redman
**Vice President**
**Co-General Counsel**

Kenan J. Packman
Maureen Walsh Sheehan
Ravi V. Sitwala
Jack Spizz
**Associate General Counsel**

Carolene S. Eaddy
**Vice President**
**Corporate Human Resources**

Jennifer G. Tancredi
Debra S. Weaver
**Senior Counsel**

Catherine A. Bostron
**Corporate Secretary**

Sultan Barazi
Liddy Barrow*
Nathaniel S. Boyer
Lisa Bozman
David Brioso
Michael A. Canencia
James Coil
Adam Colón
Howard Davis
Travis P. Davis
Ignacio Diaz*
Vincent Floyd*
Kerry A. Flynn
Matthew Greenfield
Diego Ibargüen
Monika Jedrzejowska
Kate Mayer
Marianne Chow Newman
Aimee Nisbet*
Sarah S. Park
Suzanne Peters
Andrea S. Ryken
Eva M. Saketkoo
Jennifer Schanes
Nina Shah
Federica Tigani*
Kitty Yang*
Stephen H. Yuhan
Jim Zeng
**Counsel**

* Not admitted or
resident in New York

Nathaniel S. Boyer
Counsel

300 West 57th Street
New York, NY 10019
T 212.649.2030
Nathaniel.Boyer@hearst.com

April 13, 2021

**VIA ECF**

The Hon. Mark A. Roberts
United States Magistrate Judge
U.S. District Court for the Northern District of Iowa
111 Seventh Avenue SE
Cedar Rapids, IA 52401

Re: *NuStar Farms, LLC et al. v. Lizza et al.*,
  Case No. 5:20-cv-04003-CJW-MAR

Dear Judge Roberts:

We and Faegre Drinker Biddle & Reath LLP represent Defendants Ryan Lizza and Hearst Magazine Media, Inc. in this defamation action brought by Plaintiffs NuStar Farms, LLC ("NuStar"), Anthony Nunes, Jr., and Anthony Nunes, III ("Plaintiffs"). We submit this notice to outline proposed matters to be discussed during the upcoming status conference scheduled before the Court for 9 a.m. on April 15, 2021. *See* ECF No. 71.

We seek the Court's guidance in two areas.

First, our clients issued a third-party subpoena for records and information to the Woods Fuller law firm, which conducted an I-9 audit commissioned by NuStar after publication of the *Esquire* magazine article in issue. Plaintiffs and their former law firm declined to provide responsive documents and information and further have refused to meet and confer regarding their incomplete and implausible privilege log and responses to Defendants' subpoena. *See infra* Point I.

Second, Defendants seek the Court's permission to take more than 10 depositions in this case, a request Plaintiffs oppose. *See infra* Point II.[1]

**I.      Plaintiffs and Their Former Law Firm Refuse to Meet and Confer Regarding Their Failure to Provide Responses to a Subpoena Seeking Documents Concerning Potentially Necessary and Crucial Facts Assembled for a Post- Publication I-9 Audit.**



Here is a screenshot of a representative certification produced recently by Plaintiffs in discovery marked by them for Counsel's Eyes Only:



See PX_3098 (highlight added).

Both parties agree, as we think they must, that any and all documents relating to this I-9 audit, which was not commenced until immediately following the date the article was published, are responsive to numerous document requests issued to Plaintiffs. An I-9 audit goes directly to whether NuStar lacked documentation for its workforce and to Plaintiffs' awareness (or willful disregard) of any undocumented status of their workers, the central issue in this case. Further, the facts provided by Plaintiffs or considered by

---

[1] Immediately prior to the last conference, Defendants noticed a subpoena to Mr. Lizza's cell phone carrier, to resolve one issue raised by Plaintiffs at the last conference. Defendants understand that the carrier has received the subpoena; that the carrier has informed Mr. Lizza that it will be producing the requested records; and Defendants await receipt of those records, which they will review for privilege before producing to Plaintiffs' counsel in redacted form with a compliant privilege log.

the auditor are just that—facts—that are neither legal advice nor privileged attorney-client communications.

Below, Defendants describe two disputes that have arisen concerning documents relating to the audit.

      A. *Plaintiffs Refuse to Meet and Confer Regarding Their Incomplete Privilege Log.*

On February 14, 2021, Plaintiffs disclosed, for the first time, that they are withholding from production a single letter from Amanda J. Bahena of Woods, Fuller, Shultz & Smith, P.C. ("Woods Fuller"), on the basis of the attorney-client privilege. According to Plaintiffs' privilege log, the October 12, 2018 letter was sent to "NuStar Farms, LLC Attn: Lori Nunes," and it concerns a "[f]ollow-up to I-9 Audit conducted in October of 2018."

Plaintiffs would later amend their privilege log (i) on March 13, 2021, to add a single October 2, 2018 outbound email from Lori Nunes to Ms. Bahena, and (ii) on March 30, 2021, to add a single line item for "Multiple Sticky Notes affixed to Forms I-9 during audit in October 2018." A copy of Plaintiffs' most recent privilege log is attached as **Exhibit A**.

On April 6, 2021, Defendants' counsel asked Plaintiffs' counsel to meet and confer regarding this privilege log. For example, as Defendants' counsel explained, a single entry disclosing "[m]ultiple [s]ticky [n]otes" that does not specify the documents to which the notes were affixed is not sufficient. Each document to which a sticky note was affixed is relevant because it identifies the document(s) about which Plaintiffs sought and obtained legal advice, facts that are not privileged.

Plaintiffs' counsel responded that he would not meet and confer, because "[i]t does not matter what the sticky notes were attached to."

Defendants ask that the Court direct Plaintiffs' counsel to confer with Defendants' counsel about their privilege log, with the expectation that Plaintiffs will amend their privilege log by specifying the document or documents to which each sticky note was attached and by providing other identifying information including the subject matter, date, and author of each sticky note. This information is needed so that Defendants may test the assertion of the privilege as to each "audit" document on Plaintiffs' log.

As an alternate course, Defendants request that the Court require Plaintiffs to submit the withheld "sticky notes" and documents to which they were attached to the Court for an *in camera* inspection and possible disclosure to Defendants under the Protective Order.

### B. Plaintiffs' Former Law Firm Refuses to Meet and Confer Regarding Their Evasive Response to a Subpoena.

Plaintiffs have produced no other documents concerning the audit, ████████████████████████████. So, on March 10, 2021, Defendants served a subpoena on Woods Fuller, the law firm that Plaintiffs assert they engaged to conduct the audit. The subpoena, a copy of which is attached as **Exhibit B**, sought copies of documents relating to Plaintiffs and the audit, and had a return date of March 30, 2021.

Defendants expected that Woods Fuller—a law firm with obligations to retain client files and of the sophistication to likely employ risk management best practices of preserving copies of records returned to clients—would be in control or possession of (i) records setting forth facts relied on it in the I-9 audit, (ii) non-privileged materials that NuStar shared with it for review and analysis during the audit, and (iii) information over which they may assert the attorney-client privilege in an informative and compliant privilege log.

On March 24, 2021, Woods Fuller partner Sander Morehead responded to the subpoena by merely referencing emails from Plaintiffs' counsel: "Woods Fuller agrees the referenced subpoena seeks information subject to the attorney-client privilege. That privilege has been asserted. Woods Fuller therefore objects to the subpoena on the same grounds." Mr. Morehead summarily added that "Woods Fuller also believes that the privilege log referenced in Mr. Biss's email below is complete."[2]

At no time did Woods Fuller say whether it had searched for responsive documents. It did not say whether it at one time possessed non-privileged documents responsive to the subpoena, or if it retained non-privileged or privileged records or copies. Nor did Woods Fuller identify any privileged documents beyond those already logged by Plaintiffs. To date, Woods Fuller has not produced any documents or a privilege log in response to the subpoena. It further has not provided documents that reveal facts rather than communications seeking or delivering legal advice.

---

[2] This was incorrect. The privilege log would be subsequently amended to add the aforementioned "sticky notes."

Finding it implausible that Woods Fuller would not possess a single document—privileged or not—relating to the I-9 audit, Defendants asked Woods Fuller to meet and confer regarding its response. Defendants sought to understand, among other things, whether Woods Fuller at one time possessed or today retains any non-privileged documents; if so, if and when it will produce them; if not, why; and as to documents over which Woods Fuller may assert privilege on behalf of its former client, why Woods Fuller would not possess a single additional privileged document beyond those logged by Plaintiffs' counsel in this case.

Woods Fuller refused to meet and confer with Defendants' counsel, responding on March 30, 2021: "Woods Fuller cannot unilaterally meet and confer about the subpoena. Woods Fuller must and will defer to the party asserting the privilege."

Defendants' counsel sent Mr. Morehead an email asking what he meant by this email—*i.e.*, were Plaintiffs (through Mr. Biss or otherwise) directing Woods Fuller to not meet and confer with Defendants' counsel? Mr. Morehead responded that that is not accurate, and that Woods Fuller's reasons for refusing to meet and confer "have previously been stated clearly and in detail."

Attached as **Exhibit C** is a copy of the above-described email chain.

The Court can see for itself how Woods Fuller provided only an evasive response to the subpoena. We find it frustrating that an officer of this Court would refuse to speak with Defendants' counsel regarding his firm's response to a duly served subpoena.[3] We fairly question how Woods Fuller could not have a single responsive document beyond the two documents and sticky notes previously identified on Plaintiffs' privilege log (which Defendants understood were in the possession of Plaintiffs since they were noted on Plaintiffs' log).

In this unusual posture, Defendants respectfully seek the Court's guidance as to what next steps are appropriate.

---

[3] A motion to enforce the subpoena would be filed in this case in this Court; Woods Fuller has an office located in Sioux Center, Iowa, and the subpoena was directed to and served on Woods Fuller's Sioux Center office, at which Ms. Bahena is the registered agent for service of process.

Appropriate options in our view could include a direction by the Court to Plaintiffs to instruct Woods Fuller to (i) meet and confer with Defendants as to what searches Woods Fuller has conducted, what responsive documents Woods Fuller has (and does not have), and whether and why responsive documents were not retained; and then (ii) produce all responsive documents (with a detailed privilege log specifying any documents over which they assert privilege).

Or, Defendants could notice Woods Fuller's deposition and explore those topics under oath.[4]  Or, Defendants could file and serve a motion to compel for an order directing the same relief, which Woods Fuller seems to contemplate in the email provided.  *See* Ex. C.  Additionally, as noted earlier, given Plaintiffs' and Woods Fuller's lack of forthrightness so far, it may also be appropriate for the Court to review *in camera* the two withheld documents (and, perhaps, the stack of "sticky notes," once they are properly delineated on the privilege log) to assess the validity of the privilege assertion.

## II. Defendants Will Seek Leave of the Court to Take More than Ten Depositions.

Defendants anticipate seeking the Court's leave to take depositions in excess of the 10 permitted without leave under Rule 30(a).  Plaintiffs' counsel to date has not stipulated to a greater number, and we think the grounds for a mandatory grant of leave exist under Rule 30(a)(2) because more than ten depositions is consistent with Rule 26(b)(1) and (2).  Presently, Defendants seek leave to take up to 20 depositions, with the understanding that many of those depositions will be short.  Plaintiffs have opposed this request without offering their basis for doing so.

To date, Defendants have identified the following persons whom they seek to depose:

- At least eight of NuStar's 14 workers (other than Lori Nunes and Anthony Nunes, III, described below).  These depositions will be short; they should take no more than two hours of examination each.  Defendants are prepared to make the process as efficient and non-disruptive as possible to the employees and NuStar's business, and have proposed to take

---

[4] Anticipating privilege disputes, it may be efficient to have the Court on standby to determine issues of privilege and duties to respond.

      all of these depositions over two or three consecutive days in early May in Sibley, Iowa.

- NuStar, by Rule 30(b)(6).[5]

- Anthony Jr. and Toni Dian Nunes. Anthony Jr. is a Plaintiff. Toni Dian Nunes, also named in the article, co-owns NuStar. Toni Dian is also the treasurer for Devin Nunes's political campaigns.

- Anthony III and Lori Nunes. They manage the day-to-day operations of NuStar. Anthony III is a Plaintiff. Lori Nunes is NuStar's secretary, who gathered records in discovery (including, according to Plaintiffs' counsel, by her recent visits to the "storage" shed that led to large supplemental productions) and who coordinated the provision of facts to Woods Fuller for the I-9 audit.

- Some of the persons Plaintiffs identified in their Rule 26(a) disclosures as having relevant information on which they intend to rely in this case, which include:
    - Devin Nunes;
    - Mollie Hemingway;
    - "Sibley Citizens," if Plaintiffs specify any on whom they intend to rely; and
    - "Twitter Users," if Plaintiffs specify any on whom they intend to rely.

- Plaintiffs' designated expert, Chris Buskirk.

      As the Court can see, Defendants have already identified the need to take at least 16 depositions. Undoubtedly, as Defendants continue their document review and fact investigation, the number of witnesses whose deposition testimony is needed for fact discovery, trial preparation, or to preserve through a trial deposition will rise. Furthermore, in this case, Plaintiffs have put at issue (i) their reputation among members of the

---

[5] Defendants will be efficient in their questioning where the knowledge and testimony of Anthony Jr., Toni Dian, Anthony III, and Lori Nunes overlaps with NuStar's knowledge and testimony by Rule 30(b)(6).

community, (ii) any business losses sustained by NuStar, and (iii) NuStar's hiring practices. Independent knowledge to corroborate or refute those allegations well may be known by former employees and other members of the community.

Finally, Plaintiffs' counsel has taken the position that he represents *all* current NuStar employees, meaning Defendants' counsel effectively cannot interview those workers or obtain sworn statements from them. Plaintiffs certainly should not be able to use this claimed representation of all NuStar employees as a shield against obtaining evidence from them and, at the same time, insist that it is unreasonable to increase the 10-depostion limit of the civil procedure rules as Defendants seek and need under the circumstances.

For these reasons, Defendants request leave at this time to exceed the 10-deposition limit and seek initial permission to take up to 20 depositions.

\* \* \*

Defendants shall be prepared to address the above issues and any others deemed appropriate by the Court at the conference this Thursday.

We appreciate the Court's willingness to conduct these conferences and thank you for taking the time to do so.

Respectfully submitted,

 /s/    Nathaniel S. Boyer
Nathaniel S. Boyer*

*Admitted pro hac vice

cc: all counsel of record (by CM/ECF)