IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

ANTHONY NUNES, JR.,
ANTHONY NUNES, III, and
NUSTAR FARMS, LLC,

        Plaintiffs,

    vs.                          No. C20-4003-CJW

RYAN LIZZA and                TRANSCRIPT OF
HEARST MAGAZINE MEDIA, INC.,    STATUS CONFERENCE

        Defendants.
_____/


        The Status Conference held before the Honorable
Mark A. Roberts, Magistrate Judge of the United States
District Court for the Northern District of Iowa, at the
Federal Courthouse, 111 Seventh Avenue Southeast, Cedar
Rapids, Iowa, May 13, 2021, commencing at 9:03 a.m.

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com*
*Court Disclaimer: Copy of the transcript*
Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 1 of 44

APPEARANCES

For the Plaintiffs:     STEVEN SCOTT BISS, ESQ.
                        Law Office of Steven S. Biss
                        Suite 102
                        300 West Main Street
                        Charlottesville, VA  22903

For the Defendants:     JONATHAN R. DONNELLAN, ESQ.
                        NATHANIEL S. BOYER, ESQ.
                        NINA N. SHAH, ESQ.
                        RAVI V. SITWALA, ESQ.
                        The Hearst Corporation
                        40th Floor
                        300 West 57th Street
                        New York, NY  10019

                        MICHAEL A. GIUDICESSI, ESQ.
                        NICHOLAS A. KLINEFELDT, ESQ.
                        Faegre, Drinker, Biddle & Reath
                        33rd Floor
                        801 Grand Avenue
                        Des Moines, IA  50309

Transcribed from       Shelly Semmler, RDR, CRR
digital recording by:  320 Sixth Street
                       Sioux City, IA  51101
                       (712) 233-3846

```
 1            (The following transcript was prepared from an
 2   audio recording.)
 3                           *  *  *  *
 4            THE COURT:  Good morning.  The case before the
 5   Court is Nunes, et al., versus Lizza, et al., Number
 6   20-CV-4003.  The matter comes on for a status conference.
 7   For the plaintiff I understand we have Mr. Biss?
 8            MR. BISS:  Morning, Your Honor.
 9            THE COURT:  Morning.  And for the defendants
10   I'll read the names, and then I'll listen to see if I
11   missed anybody.  Mr. Donnellan, Mr. Giudicessi,
12   Mr. Boyer, Mr. Klinefeldt, Miss Shah, Miss -- or
13   Mr. Sitwala.  Is there anybody else?
14            UNIDENTIFIED MALE:  No, Your Honor.
15            THE COURT:  Okay.  Then I did receive the
16   defendants' e-mail indicating they didn't have any issues
17   to address.  I did receive Mr. Biss's e-mail indicating
18   that there were three issues he wanted to address.  And
19   then I received briefly before the hearing a deposition
20   transcript that I've looked into but I haven't finished.
21   So let's start with issue number 1 regarding the phone
22   records.  Mr. Biss?
23            MR. BISS:  Judge, on the --
24            MR. KLINEFELDT:  Your Honor, if I may, I
25   apologize.  This is Nick Klinefeldt.  I just wanted to
```

Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 3 of 44

1    alert the Court and clarify what that deposition

2    transcript that we sent Your Honor is about.  We have a

3    very urgent and pressing issue that has come up last

4    night in the course of the deposition that Your Honor's

5    already begun to deal with, and that issue is going to be

6    occurring again here as soon as this settlement

7    conference is over, the deposition's resumed.  And we'd

8    respectfully ask if we could be heard on that issue given

9    its importance and urgency given the fact that these

10   depositions are occurring right now.

11            THE COURT:  Okay.  I'll make sure we get to it.

12   Let's just stay on course for the moment, though.  With

13   respect to the phone records, where are we?

14            MR. BISS:  Judge, my -- this is Steve Biss.  My

15   understanding of the phone records is I got an e-mail

16   from Mr. Boyer on the 11th I believe, May 11, indicating

17   that they had the phone records and that they were going

18   to be doing some redactions to the phone records and

19   then -- for attorney-client privilege and they were going

20   to be producing them.  I don't really have much to add to

21   what I wrote in the e-mail to Your Honor in paragraph 1.

22   You know, again, these are way overdue, and I don't know

23   that the phone records themselves bear any

24   attorney-client privileged information.  They're just

25   phone records.

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com*
*for a clean complete copy of the transcript*
Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 4 of 44

```
 1      So I would just ask the Court again to direct the
 2  defendants to produce those phone records.  We're sort of
 3  running out of time on discovery.  You know, we were
 4  hoping to get these months ago so . . .
 5          THE COURT:  I'll just ask the defendants to,
 6  you know, expedite whatever their response is going to
 7  be.  I'm not going to rule on whether they're privileged.
 8  I can -- I'm not going to show my hand about what might
 9  be in those phone records that could be privileged or
10  not.  But I don't think it's ripe for me today to do
11  anything else other than ask the parties to expedite that
12  issue.  Do the defendants want to be heard with respect
13  to the phone records further?
14          MR. GIUDICESSI:  Good morning, Judge Roberts.
15  Mike Giudicessi.  Just one additional aspect to that, and
16  it's not simply attorney-client privilege.  There will be
17  a reporter's or a journalist's privilege asserted as to
18  information, phone records that would be unrelated to
19  this case.  And so that's -- that's one of the basis of a
20  review.  There will be a privilege log produced.  If they
21  are deemed to be privileged and the privilege asserted
22  under the reporter's privilege, then that will be logged
23  on that log.  And they (insufficient) in progress of
24  marking those for us, and we then will turn around and
25  get them to Mr. Biss.
```

1          THE COURT:  Okay.  Thank you.

2          MR. BISS:  Your Honor, the problem with that

3    second privilege assertion is it would be impossible for

4    me to determine -- if they say they're working on some

5    other story, they've got some other story that he's

6    working on and they redact that phone record, it would be

7    impossible for me to determine whether that's true or

8    not.

9          For instance, Mr. Lizza might have been talking to

10   some political operative in the Democratic party about

11   doing this article, or he could have been talking about

12   an opposite -- with an opposition research firm such as

13   Fusion GPS.  He could have been talking to anybody about

14   writing this inflammatory article about NuStar Dairy and

15   Devin Nunes.  And to allow him -- it would be

16   inappropriate to allow him to hide behind the reporter's

17   privilege.

18        So I understood what Your Honor said, but, you know,

19   we may have to bring this issue back to Your Honor after

20   they produce the records.

21          THE COURT:  Let's turn to issue 2, the tax

22   returns.

23          MR. BISS:  Judge, on the tax returns, I really

24   don't have anything other -- other than what I've asked

25   in there.  They're relevant.  They could lead to the

Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 6 of 44

1  discovery of admissible evidence.  And I would ask the
2  Court to direct them to produce the tax -- the full tax
3  returns.
4          THE COURT:  From the defendants?
5          MR. GIUDICESSI:  Again, Your Honor, Mike
6  Giudicessi.  With respect to the tax records, as the
7  Court knows, the punitive damages claim has been
8  stricken.  And as you know, the practice in Iowa is that
9  typically issues of wealth or of income that are
10  irrelevant with respect to what Mr. Biss is arguing that
11  they somehow become relevant because this is a libel
12  case, what he fails to recognize is that Mr. Lizza's
13  state of mind is state of mind towards a fact, not
14  towards making money or anything else.  And so they're
15  never going to be leading to admissible evidence.  And as
16  the Court knows, tax returns are something that are
17  almost sacrosanct.  They're simply not germane to the
18  case.  And so we objected to producing those.  We
19  continue to object to produce -- to producing those.
20          THE COURT:  My crystal --
21          MR. BISS:  Judge, just brief --
22          THE COURT:  My crystal ball that you all enjoy
23  hearing about so much, I would tend to agree that mostly
24  tax returns are not producible, particularly where
25  punitive damages aren't at issue.  And it may be

Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com
Case 5:20-cv-04003-CJW-MAR  Document 104  Filed 05/18/21  Page 7 of 44
Reproduction of this copied transcript

1    something that you end up having to brief and cite

2    authority for.  But that's just what the crystal ball

3    says this morning about that.  I don't think it's ripe

4    for me to do much else on it this morning.

5        And then I think the third thing on the list,

6    Mr. Biss, was you want some representation from the

7    defendants that they've produced all responsive

8    documents; is that right?

9            MR. BISS:  Yes, sir.  Yeah.  Judge, every

10   deposition so far they have -- they have either shown up

11   at the deposition or an hour before the deposition with

12   additional documents.  Or they have -- like yesterday at

13   the deposition of Flavio Dominguez, they produced

14   documents that they have never produced before.  They

15   just showed up with exhibits that they had never produced

16   before.

17       So one of our -- we've issued -- as Your Honor

18   knows, we've issued multiple discovery requests for

19   documents.  One of those discovery requests requested all

20   documents that prove, show, or evidence that NuStar ran

21   on, benefitted from, or relied on undocumented labor.

22       So at the deposition yesterday, one of the things

23   that the defendants' counsel showed the witness was some

24   court records of a seat belt infraction among others,

25   seat belt infraction from 2015.  And it was counsel's

1  representation that somehow this was relevant to the case
2  and that he indicated that we hadn't asked for it in
3  discovery.  And our discovery requests were broad, very
4  broad.  We covered numerous bases including any documents
5  that would prove, show, or evidence the main contention
6  in the case.
7      So the purpose of number 3 in my letter to you was
8  fundamental fairness.  I mean, we have to have some --
9  they complained that we hadn't produced all our
10 documents, and we certified that we had.  And I'm just
11 asking that the same be -- that they be held to the same
12 standard.  I mean, it's fundamentally unfair for them to
13 show up at depositions and use documents that they've
14 never produced before.
15     I just -- I would ask the Court to have them produce
16 everything that they have including any court records
17 that they intend to use either in the deposition of the
18 workers or the deposition of anybody else so that we --
19 we have a level playing field and everybody knows --
20 knows what -- what has been produced and what's Bates
21 stamped.  I just think it's very unfair for them to show
22 up with documents they hadn't produced.  It doesn't give
23 me an opportunity to prepare at all.  So I would ask the
24 Court for the certification that I requested in paragraph
25 3 and production of all the documents.

*Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com*
*Your Dakota Complete copy of the transcript*
Case 5:20-cv-04003-CJW-MAR  Document 104  Filed 05/18/21  Page 9 of 44

1          THE COURT:  From the defendants with respect to

2     the general issue of completeness of the production or

3     specifically with respect to a court record like the 2015

4     traffic citation, you know, something you want to share

5     about that?

6          MR. GIUDICESSI:  Well, Judge, I'll try to be

7     brief.  Again, Mike Giudicessi speaking.  As we've done

8     several times through the course of these meetings which

9     we, again, very much appreciate, I think each party has

10    said we're doing our best.  And I know that Mr. Biss

11    referred to the last time I think (insufficient audio)

12    was going to the shed to find more documents.  Well, with

13    respect to the letter objection that he wrote -- he wrote

14    to the Court on Tuesday, there were six photographs that

15    were found in a thumb drive in the bottom of a box, and I

16    think the Court had previewed or at least predicted that

17    from time to time one of the parties might find something

18    for the first time that they realize that they had it,

19    didn't know that they had it, they found it and produced

20    it.

21         With respect to the court records, these are items

22    that weren't required by Rule 26.  I don't believe they

23    were covered by any production request.  Assuming for the

24    moment that they were, to the extent that items are

25    located in the manner of work product by lawyers

1  immediately before the deposition, I'm really not sure
2  what we're required to do but to make them available to
3  Mr. Biss and if he has an objection to use at the
4  deposition, he can do so.  He had plenty of time to look
5  at a court record.  It's a one-page document that shows
6  that -- it shows the signature of the deponent.  It also
7  shows driver's licenses and driver's license numbers that
8  may be in disparity to those that have been produced by
9  the plaintiffs themselves.
10        Again, if they -- where I come down on this is this
11  is going to happen for both sides, and the real question
12  is is there prejudice.  Here there is no prejudice.  It's
13  a one-page document.  Counsel can look at it and
14  immediately on cross-examination ask the witness about.
15        MR. BISS:  Judge, the issue's not prejudice at
16  all.  The issue is we've got a discovery request that
17  covers it, and they had the document in their possession.
18  This is not work product of a lawyer.  This is a document
19  that they obtained, and it's a document that they intend
20  to use.  They should be producing all these documents.
21  We should not have to guess what's out there, what they
22  haven't produced.  They should have to produce it just
23  like we've produced it.
24        And we haven't -- we don't use and haven't used a
25  single document that wasn't produced by the parties,

Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 11 of 44

1   either party, in discovery.  We don't intend to do that.

2   It's not fair to litigate this way.

3        And I would ask the Court to take that into

4   consideration here.  This isn't about being able to very

5   quickly study a one-page document.  That's not -- that

6   doesn't factor into it at all because everybody can read

7   a one-page document.  This is about fundamental fairness.

8   It's about knowing that there's -- that there aren't

9   things out there that haven't been produced.

10           THE COURT:  Okay.

11           MR. GIUDICESSI:  Your Honor, we would be happy

12   to visit with Mr. Biss offline to ask him exactly what

13   discovery request is covered by this because we're at a

14   loss to identify what that is.

15        The other part is that we could ask these same

16   questions without using the document, and it would seem

17   to be easier to use the document and let the witness see

18   if it's -- if the information, for example, shows a

19   disparity in the number of the driver's license and the

20   witness says no, that's the same one, we don't even

21   introduce the exhibit.  So again, . . .

22           THE COURT:  Okay.  There's two things going on

23   here.  One appears to be the issue of something like a

24   document that was produced in the course of the

25   deposition that the witness was asked about and Mr. Biss

1   hadn't seen it before.  That can be resolved whether it

2   was actually asked for in production.  I can't tell you

3   that now.

4        The other issue related to that seems to be whether

5   this is an isolated incident or this is a representative

6   of the way Hearst is litigating.  I don't know that --

7   the answer to that either.

8        So I think that's something that's not really ripe

9   for me today, and hopefully in your discussions after

10  this you can resolve with respect to that particular

11  document so that, you know, that doesn't need to come to

12  my attention again.  And if it does, it does.

13       The other issue is generally the issue both of -- on

14  both sides, whether it's a thumb drive they didn't know

15  was in the bottom of a box or they had to go back to a

16  storeroom to look for more documents again, we're getting

17  fairly late in the case.  These events should be fairly

18  rare by this point of, oh, we forgot to look in our sock

19  drawer for photographs that might be there.  I understand

20  it still comes up.  But hopefully these are becoming less

21  and less rare.

22       So what number 3 seeks is a declaration from the

23  defendants and an assurance that all responsive documents

24  in their possession have been produced.  Can someone on

25  behalf of the defendants make that sort of assertion at

*Contact Shelly Semmler at 712-233-3840 or ssemmlerreporting@gmail.com*
*US District Court, Northern District of Iowa*
Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 13 of 44

1 this point?

2            MR. GIUDICESSI:  This is Mike Giudicessi.  I
3 think -- again, I think yes, to our knowledge we're doing
4 the best that we can.  And can I say to the Court that
5 the sock drawer won't yield another thumb drive?  I can't
6 say that.  But it's clear when we find them we produce
7 them.

8            THE COURT:  And --

9            MR. GIUDICESSI:  And the only other thing,
10 Judge, is we have not produced the Verizon documents, but
11 those are in progress.  So I don't want to certify as to
12 that.

13            THE COURT:  And, you know, I can't -- I don't
14 know as I can help you pin them down any better than
15 that, Mr. Biss.  And I think the same applies to the
16 Nunes.  They might have a sock drawer too, and I don't
17 know what's in it.

18            MR. BISS:  Well, I'm not sure they -- I don't
19 know about sock drawer, Judge, but I understand what -- I
20 appreciate what Mr. Giudicessi is saying.  And I also
21 appreciate what Your Honor is indicating as well.

22      It is -- it is -- I don't want to say infrequent
23 because it's happened at two depositions now.  But I do
24 understand just from a pragmatic standpoint that people
25 do go back and look for things.  They -- I think the

1  photographs were located in the bottom of a box, and it

2  was represented that Mr. Lizza had -- it was a box that

3  he had stored away after a move of some kind.  So I

4  understand -- I understand that documents are located.

5  People do continue to look for documents.

6       So -- but I just want to make sure.  I mean, again,

7  we're getting late in the game, and I want to make sure

8  I've got everything because we've got some party

9  depositions coming up.  We have a few more fact -- we do,

10  plaintiffs have maybe one or two more fact witnesses, but

11  we've got the party depositions coming up.  And, again, I

12  just want to make sure that the -- you know, I know

13  everything that's -- you know, that they know that's out

14  there, so that's all.

15            THE COURT:  All right.  Thank you.

16       Mr. Klinefeldt, you raised an issue earlier I

17  believe about the deposition that occurred yesterday.

18  You think it's going to arise again.  Again, I haven't

19  read the transcript of the deposition, but I'll -- tell

20  me what the nature of the issue is.

21            MR. BISS:  Judge, this is Steve Biss.  May I

22  just say something just before Mr. Klinefeldt speaks?

23            THE COURT:  Well, we can go -- we can --

24            MR. BISS:  This is a counsels' eyes only

25  deposition.  I just want to make sure the Court

1  understands.  That transcript is -- has been designated

2  by the plaintiffs as counsels' eyes only, and there have

3  been documents shown within that deposition that have

4  been designated as counsels' eyes only.

5      So I don't know if there are certain parties who are

6  listening in on this call, but obviously the deposition

7  itself is counsels' eyes only, and to the extent that

8  Mr. Klinefeldt is going to refer to that kind of

9  information, you know, I just want to raise that issue

10  with the Court ahead of time.  I want to make sure that

11  there's no -- no disclosure of counsels' eyes only

12  information in an inappropriate way.

13      THE COURT:  Okay.  Mr. Klinefeldt, perhaps if

14  you see yourself trodding on sensitive ground here, you

15  can just call out the page of it.  Maybe I can look at

16  it.  You can be a little bit more obtuse, and then we can

17  avoid undue publication.  So go ahead.

18      MR. KLINEFELDT:  Absolutely.  Thank you, Your

19  Honor.  So the issue here concerns the depositions of the

20  NuStar employees.  As Your Honor knows, this case is

21  about the plaintiffs have sued the defendants claiming

22  that the defendants have falsely accused them of using

23  illegal labor.  And so whether they have used illegal

24  labor is perhaps the pinnacle issue in the case.

25      And this issue specifically concerns the depositions

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com*
*Prepared using eScribers court reporting software*
Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 16 of 44

1   of the very employees at issue.  And as Your Honor knows,
2   we started those yesterday.  But what really has happened
3   started several weeks ago.  Once we started identifying
4   that we wanted to depose certain employees at a
5   meet-and-confer with Mr. Biss a few weeks ago, I've
6   alerted him to an issue that is very near and dear to my
7   specialty and said, look, you know, I think that there's
8   going to be Fifth Amendment issues here and potential
9   conflict here with respect to these employees who we
10  believe are here illegally and would be committing
11  violations of 8 U.S.C. 1324(d).  And Mr. Biss said he
12  would think about that issue and consider it, you know.
13      And so we subpoenaed these witnesses, and we
14  specifically included a few things in that subpoena, Your
15  Honor, to address these issues.  One, as Your Honor
16  knows, the location.  We wanted to make sure that it's at
17  a neutral location where, you know, there was no feeling
18  of any sort of undue pressure, that it's a neutral
19  location so it was still comfortable to testify freely.
20  And that's why we noticed it for a neutral site.
21      A second thing we did here, Your Honor, was we
22  included in the subpoena requests for documents,
23  specifically IDs, current IDs as well as IDs that they
24  have shown their employer as part of their I-9
25  submission.

1        As Your Honor is familiar, I believe all these

2    employees are alleged green card holders.  You have to

3    have a current green card on you at all times.  And what

4    we're asking for is for the employees to show up, to give

5    us and show us copies of their current government ID and

6    Social Security card as well as the documents that they

7    showed to their employer when they got hired.  You know,

8    those -- I would be hard pressed to think of more

9    relevant documents in this case.

10        Those subpoenas were -- have not been objected to or

11    moved to quash in any manner.  Mr. Biss, I think, was

12    trying to kind of, you know, walk the right line here.

13    He accepted service of the subpoenas for the employees

14    but then said, look, I'm not going to be representing

15    them at the deposition.  I'm going to have separate

16    counsel do that which I absolutely agree was the right

17    move.

18        And so yesterday separate counsel appeared for the

19    first witness, Flavio Sanchez Dominguez.  And that

20    counsel was Justin Allen who Your Honor met yesterday.

21    Justin Allen is somebody who has 20 years of

22    prosecutorial experience with Polk County, Iowa.  As we

23    started to get into the depositions, one thing became

24    clear.  As we alerted -- the reason why we alerted

25    Mr. Biss of this issue is that we believe there are

1  serious concerns with their documents.  Each employee has
2  to submit an I-9 that they fill out and attest to whether
3  they're an LPR or a citizen in addition to providing a
4  government ID and a Social Security card.  Typically that
5  (insufficient audio) with a green card.
6      And we, you know, think that there are serious
7  issues whether those IDs are legitimate.  But in addition
8  to that, as Your Honor knows, we went through the process
9  of requesting the Social Security Administration check to
10  see if their Social Security Numbers match the names.
11  And in all of these cases they do not.  And so we believe
12  there are serious concerns with whether these individuals
13  are, in fact, working illegally.
14      And so as soon as the issue came up in the
15  deposition when Mr. Boyer started asking about their
16  I-9s, Mr. Allen --
17          MR. BISS:  Judge, this is Steve Biss.  I do
18  object.  He's getting into counsels' eyes only
19  information.  In fact, he's transgressed across that with
20  the Social Security Administration statement.  So I
21  object to -- we're on a public line, and he is disclosing
22  counsels' eyes only information.  And I just -- I need to
23  state an objection to this.  This is not proper.
24          MR. KLINEFELDT:  Your Honor, if we can't talk
25  about counsels' eyes only information in this case, then

1   there's no way to proceed with it.

2           THE COURT:  I'm going to ask --

3           MR. KLINEFELDT:  Because pretty much

4   everything's been identified as counsels' eyes only.

5           THE COURT:  Okay.  I'm going to ask if there's

6   anybody else on the line, and I'm going to have to rely

7   on that for today, and then one of the things you can

8   discuss if you want to have these continued status

9   conferences by telephone, maybe we can find some

10  additional security measures to put in place.  Or you can

11  all travel to Cedar Rapids for these future meetings so

12  we know who's listening.  But is there anybody who's not

13  an attorney for the parties in this case on the line with

14  me today?

15      Okay.  I'm going to have to rely on that for today.

16  And in the future, Mr. Biss, if we want to discuss

17  different security arrangements for these telephone

18  conferences or make these in person, we can -- we'll have

19  to take that up later.

20      So, Mr. Klinefeldt, could you continue, please?

21          MR. KLINEFELDT:  Thank you, Your Honor.  And so

22  when Mr. Boyer started asking Mr. Sanchez Dominguez about

23  his I-9, Mr. Allen instructed his client, Mr. Sanchez

24  Dominguez, not to answer that question and assert his

25  Fifth Amendment privilege at which time Mr. Biss stopped

Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 20 of 44

1    the deposition and went off the record.

2        That took about two hours, maybe more, at which time

3    at the end of the day they come back.  Mr. Allen,

4    Mr. Biss come back, and Mr. Boyer tries to clarify to get

5    whether the employee has, in fact, asserted his Fifth

6    Amendment privilege because, as Your Honor knows, the

7    only basis to instruct a witness not to answer is

8    privilege.  And so just wanted to confirm that the

9    witness was, in fact, asserting his Fifth Amendment

10   privilege.  Mr. Biss says no, he's not going to do that

11   and at which time Mr. Allen made a statement and made

12   clear that he's been fired and that the deposition would

13   have to be continued.  Mr. Biss told us that he would get

14   new counsel for the employees and that the employees

15   would not be asserting their Fifth Amendment privilege.

16       And so our -- you know, in addition to that, Your

17   Honor, during the course of the deposition, there's a lot

18   of, you know, interruptions, argumentative objections,

19   and different, you know, conduct that we were concerned

20   about.

21       And so what we're requesting from Your Honor is to

22   remind counsel that there should be no interruptions of

23   questions during depositions, no speaking objections, no

24   argumentative objections, that -- and, second, Your

25   Honor, we would ask to ensure that counsel be provided

*Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com*
*Veritext Legal Solutions www.veritext.com 800.336.4000*
Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 21 of 44

 1   for the employees who have a very real Fifth Amendment

 2   privilege issue, that it be made clear to them, and that

 3   if counsel's not going to be provided by the company that

 4   the Court appoint counsel to advise them of their Fifth

 5   Amendment privilege and, third, that the Court, as it did

 6   with the location of the depositions, enforce the ID

 7   requests included in the subpoenas.  And that is what we

 8   have, Your Honor.

 9           THE COURT:  Mr. Biss, do you want to be heard

10   on that?

11           MR. BISS:  Yes, I do, Judge.  There is no Fifth

12   Amendment that they're going to assert.  This is a way

13   that these defendants are going to use to create a --

14   newspaper articles.  So what they're going to do is

15   they're going to argue that -- they're going to publicize

16   the fact that the witnesses have taken or have been

17   advised of the Fifth Amendment.

18       Not a single one of them is going to take the Fifth

19   Amendment because they haven't done anything wrong.

20   We've produced all their documentation showing they're

21   authorized to work.  We've produced every piece of it.

22   There's nothing here.  Mr. Klinefeldt is -- is completely

23   incorrect.

24       And he can -- and he can advise me all day long

25   about the Fifth Amendment.  But they're not going to take

1   the Fifth Amendment.  They're going to answer every

2   question that's posed to them, and that's the bottom

3   line, and that's what we intend to do.  I notified them

4   this morning we're ready to go today at noon with --

5   finish up the deposition of Mr. Dominguez.

6        And as far as a neutral location, Mr. Klinefeldt

7   commented about a neutral location.  This is not a

8   neutral location.  This was the offices of a -- the city

9   attorney of Sibley who these workers all know.  And they

10  did it to -- they did it to intimidate.  They did it to

11  put pressure on these workers, maximum pressure.  There

12  was no -- no reason this couldn't have been done at the

13  farm.  But Your Honor ruled on that yesterday.

14       So we're going forward.  This is not a neutral

15  location by any stretch of the imagination.  We've

16  produced all our IDs.  The workers had received the

17  subpoenas.  They can ask whether they have their

18  documentation with them.  If the workers have their

19  documentation, they have their documentation.  If they

20  don't, they don't.  It was asked yesterday, in fact, at

21  Mr. Dominguez's deposition whether he had brought his

22  Social Security card with him and his green card and his

23  driver's license.  He said no.  He said he just came from

24  work so -- and all these people, every single one of

25  these workers, is going to be coming from work.  They

Case 5:20-cv-04003-CJW-MAR  Document 104  Filed 05/18/21  Page 23 of 44

1   work all the time.  That's what they do, almost six days

2   a week.  They work -- they work long hours.  Some of them

3   work longer hours than others.

4        As far as interruptions and arguments --

5   argumentative objections go, again, I disagree with

6   Mr. Klinefeldt, but the transcript says what it says.

7        My main concern, Judge, is the harassment, the

8   harassment of these employees.  We spent an hour of the

9   deposition yesterday, a whole hour, or more looking at --

10  looking at traffic tickets, looking at a failure to wear

11  a seat belt that Mr. Boyer indicated is somehow relevant

12  to this case.  And I can't for the life of me see how

13  that would be relevant.  Mr. Dominguez was pulled over

14  apparently for not having a valid driver's license,

15  again, in 2015.  I don't see how that could possibly

16  relate to the case in any way, shape, or form.

17       My concern is the harassment.  My concern is that

18  these defendants are somehow suggesting to these workers

19  that they've broken the law, that the government is

20  coming for them, that ICE is coming for them, and the

21  dairy has a great interest in keeping these long-term,

22  loyal employees and preventing -- and preventing the

23  abuse of the litigation process to scare them because

24  every single one of them, Judge, is authorized to work.

25  Not a single one of them is unauthorized.  Some of them

*Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com*
*Reproduction without written authorization is prohibited.*
Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 24 of 44

1  have green cards and a Social Security card.  Some of

2  them have a driver's license and Social Security card.

3  They all have documentation.  They're all prepared to sit

4  and take their deposition.

5       And we are -- we're in the process of locating

6  counsel for them.  If we can't locate counsel, they're

7  going to appear without counsel.  They have that choice.

8  They don't have to have counsel.  And so that's -- that's

9  where we are in terms of the depositions.  We -- we are

10  going to answer all their questions because NuStar has

11  nothing to hide in this case notwithstanding

12  Mr. Klinefeldt's speculation.

13            THE COURT:  I don't understand why any of them,

14  if they were coming straight from work, where they work

15  apparently all the time, that they wouldn't have in their

16  possession the identification.  That's one thing that

17  bothers me.

18       But I think before I get into it, can someone tell

19  me what page the deposition broke down and then Mr. Allen

20  came back and said he was fired?

21            MR. KLINEFELDT:  Yes, Your Honor.  I believe it

22  is starting on about page 80.

23            THE COURT:  Well, Ms. Steele, what you printed

24  for me stops at page 75, so maybe we're out of paper or

25  something.  So could you print the rest of that?

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com*
*Shelly Semmler, United States Court Reporter/Transcriber*
Case 5:20-cv-04003-CJW-MAR  Document 104  Filed 05/18/21  Page 25 of 44

 1          MR. KLINEFELDT:  As she's doing that, Your

 2    Honor, I can quickly address the ID issues because I

 3    worry that we're going to be, you know, calling and

 4    bothering Your Honor's chambers again here at noon today

 5    if Mr. Sanchez Dominguez doesn't bring his ID.

 6          The good thing about small town Iowa, Your Honor, is

 7    that if he doesn't have it, work is only eight minutes

 8    away, and he lives there in town.  And so if he has an

 9    ID, it's somewhere.  And maybe we need to make a

10    representation because it's in the subpoena to bring the

11    current IDs that they have and that they've shown their

12    employers or make the representation on the record that

13    they don't exist, that they don't have them.  And that is

14    an important fundamental issue to this case.

15          The -- with regard to the Fifth Amendment issue,

16    Your Honor, this is an extremely important issue.  I

17    don't know that I've seen this come up in just this

18    context before.  But what you have is a situation where

19    there is a good-faith belief that these individuals are

20    violating 8 U.S.C. 1324(c), maybe (d), others in terms of

21    using fake documents to gain employment and work here

22    illegally.  And these individuals have a real Fifth

23    Amendment concern that was just underscored yesterday by

24    somebody who's a career prosecutor.  When this issue came

25    up, he instructed his client to assert his Fifth

1  Amendment privilege.

2      And our concern is that these witnesses may feel

3  intimidated and that by, you know, you know, speaking

4  objections and interruptions that they very much get the

5  impression that their employer doesn't want them to

6  speak, that -- you know, that not bringing documents, by

7  where the location is of the deposition and that they are

8  being told in no uncertain terms not to assert their

9  Fifth Amendment privilege.

10      And the problem there is not just their rights, Your

11  Honor, but the very real possibility of these witnesses

12  being put in a position of providing false testimony on

13  the record.

14      Think about it this way, Your Honor.  These

15  individuals are here from another country.  They do not

16  speak English.  They are trying to work and send money

17  home to their families.  And they're being asked whether

18  they're here legally or not which is -- again, is a

19  fundamental issue in this case.

20      And if they are being told not to assert their Fifth

21  Amendment privilege, what's going to happen?  Well, you

22  know, there's the very real possibility that they could

23  falsely testify that they're here legally and -- you

24  know, and where they got their documents and so forth and

25  so on.  And then the Court has in the deposition that's

1  going to be submitted to the Court false testimony.  And

2  I think we need to take very seriously guarding against

3  the possibility of false testimony being put on the

4  record in this case.

5      And that requires these individuals have counsel

6  provided to them that is independent of the company and

7  that if I understand that, you know, in short order if

8  Mr. Biss can't do that, then I would ask or we would ask

9  for the Court to appoint counsel from the Sioux City

10  public defender's office or the Sioux City CJA panel to

11  advise these clients about their Fifth Amendment

12  privilege.

13              THE COURT:  Okay.

14              MR. BISS:  May I respond, Your Honor?

15              THE COURT:  Well, I don't have a whole lot of

16  time yet this morning, so let me get to a few things,

17  Mr. Biss.

18      I do have the full transcript now.

19              MR. GIUDICESSI:  Your Honor, this is Mike

20  Giudicessi.  I think it's at page 80, 81.

21              THE COURT:  I found it.  I'm reading a little

22  bit, so if you just give me a minute.

23      This is very troubling.  I assume that Mr. Allen was

24  not retained by these individual deponents but they were

25  retained possibly at the request of and at the expense of

1    the plaintiff.  I'm not telling you you need to tell me

2    that today, Mr. Biss.  It seems that was likely.

3        It's troubling to me that Mr. Allen would have

4    invoked the Fifth Amendment because he clearly did at one

5    page.  Let me find the -- let me read it so that we don't

6    have any dispute.  Let me ask again -- question, Let me

7    ask again.  Do you remember who presented this document

8    to me?  Mr. Allen, I've advised my client to invoke his

9    Fifth Amendment right regarding questions about this

10   document.

11       And then that's when Mr. Biss took it off the

12   record, and then it was off the record for quite some

13   time.  And then apparently either the plan would be for

14   these depositions to proceed with these people

15   unrepresented or with different counsel that's retained

16   by someone who may have very differing interests about

17   the invocation of a Fifth Amendment right or not.

18       It doesn't -- that is deeply concerning to me.  I

19   advise people every day of the importance of the Fifth

20   Amendment.  So I'm also concerned about that.  What is --

21       MR. KLINEFELDT:  Your Honor, if I may, we are

22   actually even one step further in the sense that now not

23   only have we alerted the counsel of this issue that

24   there's a good-faith belief that there is a Fifth

25   Amendment privilege and that you have a career prosecutor

1  who has actually asserted it but that the employee now

2  understands that the lawyer that just asserted the Fifth

3  Amendment privilege has been fired.

4      And so I think the message is clear to the employee,

5  Your Honor.  There's only one way to go with this, and so

6  I, frankly, have concerns now that even if independent

7  counsel can resolve this issue.  And I worry about the

8  effect on the witness here and the very real possibility

9  of there being only one possible now and that that answer

10 is not being truthful.

11          MR. BISS:  Judge, I --

12          MR. KLINEFELDT:  And so --

13          MR. BISS:  -- want to respond, Your Honor, at

14 some point to this.  I mean, this is -- I want to be

15 respectful of Mr. Klinefeldt, but I do need to respond.

16          THE COURT:  Go ahead.

17          MR. BISS:  Judge, these are not fake documents.

18 There's no -- there's no false testimony.  Nobody's

19 refusing to testify here.  This career prosecutor knows

20 nothing about the case.  This career prosecutor knows

21 nothing about the documents.  And the career prosecutor

22 advised him incorrectly.  He didn't know anything about

23 the case or the documents.  And the client, his client,

24 Mr. Sanchez Dominguez, terminated him because the

25 prosecutor doesn't know what he's doing.

1      And for Mr. Klinefeldt to keep talking about him

2  being a career prosecutor, he's a civil attorney.  He's

3  an associate in a law firm who didn't know anything about

4  the case, didn't bother to talk to counsel for NuStar or

5  anyone else and asserted this privilege.

6      These employees want to testify.  There is no fake

7  documents.  Mr. Klinefeldt keeps talking about fake

8  documents.  There are none.  There are I-9s and green

9  cards and Social Security cards and driver's licenses for

10  everybody.  This is a stunt, Your Honor.  This is not

11  real.  There is no fake documents.  There is no false

12  testimony.

13      In fact, a couple of pages above here, Mr. Boyer

14  asks Mr. Sanchez Dominguez, he says here, You remember

15  being presented -- this is on page 80.  You remember

16  being presented with this document.  I think so.  I don't

17  remember.  And then that's where Mr. Allen begins to step

18  in.

19      But you can see here Mr. Sanchez Dominguez freely

20  answering all these questions, none of which even

21  implicate the Fifth Amendment.  It's my name and my

22  handwriting.  And these employees want to answer the

23  questions.  They didn't do anything wrong.  There's no

24  false testimony and no specter of any false testimony.

25  This is a stunt.  This is not real.

```
 1        They want to have in the record -- they want to have
 2   all of these Fifth Amendment invocations that they want
 3   to scare -- they want to scare these witnesses, not the
 4   other way around.  There's no specter of false testimony.
 5   They ask questions about an I-9 that was signed in
 6   February of 2007.  And, of course, he doesn't remember.
 7   Of course, he's not going to remember anything on the
 8   document from 2007.  Or maybe he is.  But he should --
 9   the witness should be given an opportunity to testify.
10   And we've made him available.  We've made him available.
11   We objected to the location.  You resolved that.  We've
12   made him available.  He wants to testify just like all
13   the other employees want to testify.  They don't want to
14   invoke their Fifth Amendment.  And we don't want to have
15   the defendants use the Fifth Amendment in the press.  Oh,
16   look, NuStar is invoking the Fifth Amendment.  They must
17   have something to hide.  It's all wrong.
18              THE COURT:  Listen, Mr. Biss, Mr. Biss.  What I
19   see here is an invocation of an attorney who said he was
20   that person's attorney of the Fifth Amendment, and then
21   there was a long break, and then he was no longer that
22   person's attorney.  That's not a lot for me to go on this
23   juncture given how sacred we all hold people's Fifth
24   Amendment privileges and what sympathy we probably all
25   feel for people being -- the people who are being placed
```

Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 32 of 44

1   in this circumstance.  You know, maybe they don't deserve

2   sympathy.  I don't know.  Maybe they don't need it

3   because they're -- there's -- they're not hiding

4   anything.  But that's not the way the Fifth Amendment

5   works.

6        So what was -- just the schedule, please, what is

7   the schedule for the depositions of these people?  When

8   are they supposed -- they're going to finish these up

9   today?  Is that the plan?

10           MR. BISS:  We've got -- we'll finish up

11  Mr. Sanchez Dominguez today.  We've got -- we have a

12  schedule for the other -- the other five employees.

13           THE COURT:  And is that --

14           MR. BISS:  That schedule would go -- would go

15  today and then Friday, and maybe we can get them all done

16  in those two days.  These depositions are going a lot

17  longer than what was indicated.  But that's -- we have

18  the schedule in place, Your Honor.

19           MR. BOYER:  If I may -- I apologize for

20  interjecting.  This is Nate Boyer on behalf of the

21  defendant.  Could I speak to that question very briefly,

22  Your Honor?

23           THE COURT:  Just very briefly.

24           MR. BOYER:  Yes.  We aspire to get six done

25  over three days.  That's two a day.  We were on the

1    record for a total of one hour and 28 minutes yesterday

2    in light of the various issues that I would submit

3    plaintiffs ultimately raised and/or sort of caused by

4    plaintiffs including conference with Your Honor in the

5    morning.  We obviously want to get them done this week,

6    but I am going to follow Mr. Klinefeldt's lead, that the

7    single-most important thing to my mind is that these

8    persons have adequate, proper, independent representation

9    at these -- at these depositions.  And I aspire to get

10   them done as quickly and as efficiently as possible when

11   we're out here.  They should not take long, but we want

12   to make sure they get done right, and that's the

13   single-most important thing.  And with that I'll stop

14   talking and turn it back to Mr. Klinefeldt.

15            THE COURT:  Okay.  So here's what -- here's

16   what we're going to do is we are going to pause these

17   depositions until you have made arrangements to get them

18   counsel.  I will make some inquiries about the

19   possibility of having counsel appointed for them.  It

20   would be very unusual I would think, but I will make some

21   inquiries about it.

22        But we're not just going to go forward with the

23   deposition of this witness who started it with a lawyer

24   and now he's not going to have one just because our

25   schedules say that that's when your deposition is going

1    to occur.  So he's going to have time to find a lawyer.

2    And given someone help him find a Brown, Winnick lawyer

3    the other day, I assume that his employer is making

4    efforts to look for independent counsel, and I urge you

5    to do that.

6        I may -- you know, alert Ms. Steele what progress

7    you've made with respect to finding counsel and where

8    that is in the schedule so I'm not spinning my wheels

9    trying to find someone.  But I hope you would all agree

10   it's important that they have counsel at these

11   depositions.

12       MR. KLINEFELDT:  Absolutely, Your Honor.  This

13   is -- this is Nick Klinefeldt.  I would liken this to the

14   issue of if Your Honor's in trial and a witness who's

15   currently on the stand in the trial appears to have a

16   Fifth Amendment concern that the Court would, you know,

17   have somebody appointed to go out and represent them.

18       And that's essentially what we're asking for here

19   and that, you know, if necessary, if we believe that the

20   employee is being directed to fire and ignore the advice

21   of that counsel, we may ask for the Court to have an

22   ex parte conversation with that individual's counsel.

23       But I think we would all very much like the

24   depositions to proceed on course as soon as possible

25   because we all know we have a schedule.  And, you know,

Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 35 of 44

1    we'll do whatever we could to help that process.

2            MR. BISS:  Judge, I just -- I, again, reiterate

3    there's no Fifth Amendment concern here on any one of

4    these employee's part.  I understand what Your Honor's

5    saying.  We are in the process of trying to locate

6    alternate counsel.  We started trying to find alternate

7    counsel.  And I don't know.  I haven't had -- I've been

8    on the phone.  I don't know if they have -- if they have

9    succeeded.  It's hard to find an attorney on short

10   notice.  But we are in the process of doing that to the

11   extent these employees want to have counsel, their

12   choice, if they want to have counsel at the deposition,

13   you know.  But I, again, remain very concerned the

14   defendants are using this as a publicity stunt.  So if we

15   get to -- if we get to the point where we have a hearing

16   and the questions are asked, do you want to invoke your

17   Fifth Amendment, as soon as the jury hears the Fifth

18   Amendment, that's so highly prejudicial to the plaintiffs

19   in this case, I would suggest it's almost a mistrial once

20   they start -- once they start interjecting these types of

21   scandalous statements into the process.

22           THE COURT:  Well, we're not --

23           MR. BISS:  That's what they're doing here.

24           THE COURT:  All right.  Thanks, everyone.  Have

25   a great day.

```
1              (The foregoing hearing was

2              concluded at 9:53 a.m.)

3         (This concludes the transcript of the audio

4    recording.)

5                              *   *   *   *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20                         CERTIFICATE

21         I certify that the foregoing is a correct

22   transcript to the best of my ability from the digital

23   recording of proceedings in the above-entitled matter.

24        S/Shelly Semmler              5-14-21
          Shelly Semmler, RDR, CRR           Date
25
```

Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 37 of 44

## 1

**1** [2] - 3:21, 4:21
**10019** [1] - 2:8
**102** [1] - 2:3
**11** [1] - 4:16
**111** [1] - 1:12
**11th** [1] - 4:16
**13** [1] - 1:12
**1324(c** [1] - 26:20
**1324(d)** [1] - 17:11

## 2

**2** [1] - 6:21
**20** [1] - 18:21
**20-CV-4003** [1] - 3:6
**2007** [2] - 32:6, 32:8
**2015** [3] - 8:25, 10:3, 24:15
**2021** [1] - 1:12
**22903** [1] - 2:4
**233-3846** [1] - 2:15
**26** [1] - 10:22
**28** [1] - 34:1

## 3

**3** [3] - 9:7, 9:25, 13:22
**300** [2] - 2:3, 2:8
**320** [1] - 2:14
**33rd** [1] - 2:11

## 4

**40th** [1] - 2:7

## 5

**5-14-21** [1] - 37:24
**50309** [1] - 2:12
**51101** [1] - 2:14
**57th** [1] - 2:8

## 7

**712** [1] - 2:15
**75** [1] - 25:24

## 8

**8** [2] - 17:11, 26:20
**80** [3] - 25:22, 28:20, 31:15
**801** [1] - 2:11
**81** [1] - 28:20

## 9

**9:03** [1] - 1:12
**9:53** [1] - 37:2

## A

**a.m** [2] - 1:12, 37:2
**ability** [1] - 37:22
**able** [1] - 12:4
**above-entitled** [1] - 37:23
**absolutely** [3] - 16:18, 18:16, 35:12
**abuse** [1] - 24:23
**accepted** [1] - 18:13
**accused** [1] - 16:22
**add** [1] - 4:20
**addition** [2] - 19:3, 19:7, 21:16
**additional** [3] - 5:15, 8:12, 20:10
**address** [4] - 3:17, 3:18, 17:15, 26:2
**adequate** [1] - 34:8
**Administration** [2] - 19:9, 19:20
**admissible** [2] - 7:1, 7:15
**advice** [1] - 35:20
**advise** [4] - 22:4, 22:24, 28:11, 29:19
**advised** [3] - 22:17, 29:8, 30:22
**ago** [5] - 5:4, 17:3, 17:5
**agree** [3] - 7:23, 18:16, 35:9
**ahead** [3] - 16:10, 16:17, 30:16
**al** [2] - 3:5
**alert** [2] - 4:1, 35:6
**alerted** [4] - 17:6, 18:24, 29:23
**alleged** [1] - 18:2
**Allen** [11] - 18:20, 18:21, 19:16, 20:23, 21:3, 21:11, 25:19, 28:23, 29:3, 29:8, 31:17
**allow** [2] - 6:15, 6:16
**almost** [3] - 7:17, 24:1, 36:19
**alternate** [2] - 36:6
**Amendment** [36] - 17:8, 20:25, 21:6, 21:9, 21:15, 22:1, 22:5, 22:12, 22:17, 22:19, 22:25, 23:1, 26:15, 26:23, 27:1, 27:9, 27:21, 28:11, 29:4, 29:9, 29:17, 29:20, 29:25, 30:3, 31:21, 32:2, 32:14, 32:15, 32:16, 32:20, 32:24, 33:4, 35:16, 36:3, 36:17, 36:18
**answer** [7] - 13:7, 20:24, 21:7, 23:1, 25:10, 30:9, 31:22
**answering** [1] - 31:20
**ANTHONY** [2] - 1:3, 1:3
**apologize** [2] - 3:25, 33:19

**appear** [1] - 25:7
**APPEARANCES** [1] - 2:1
**appeared** [1] - 18:18
**applies** [1] - 14:15
**appoint** [2] - 22:4, 28:9
**appointed** [2] - 34:19, 35:17
**appreciate** [3] - 10:9, 14:20, 14:21
**argue** [1] - 22:15
**arguing** [1] - 7:10
**argumentative** [3] - 21:18, 21:24, 24:5
**arguments** [1] - 24:4
**arise** [1] - 15:18
**arrangements** [2] - 20:17, 34:17
**article** [2] - 6:11, 6:14
**articles** [1] - 22:14
**aspect** [1] - 5:15
**aspire** [2] - 33:24, 34:9
**assert** [5] - 20:24, 22:12, 26:25, 27:8, 27:20
**asserted** [6] - 5:17, 5:21, 21:5, 30:1, 30:2, 31:5
**asserting** [2] - 21:9, 21:15
**assertion** [2] - 6:3, 13:25
**associate** [1] - 31:3
**assume** [2] - 28:23, 35:3
**assuming** [1] - 10:23
**assurance** [1] - 13:23
**attention** [1] - 13:12
**attest** [1] - 19:2
**attorney** [10] - 4:19, 4:24, 5:16, 20:13, 23:9, 31:2, 32:19, 32:20, 32:22, 36:9
**attorney-client** [4] - 4:19, 4:24, 5:16
**audio** [4] - 3:2, 10:11, 19:5, 37:3
**authority** [1] - 8:2
**authorized** [2] - 22:21, 24:24
**available** [4] - 11:2, 32:10, 32:12
**Avenue** [2] - 1:12, 2:11
**avoid** [1] - 16:17

## B

**ball** [2] - 7:22, 8:2
**bases** [1] - 9:4
**basis** [2] - 5:19, 21:7
**Bates** [1] - 9:20
**bear** [1] - 4:23
**became** [1] - 18:23
**become** [1] - 7:11
**becoming** [1] - 13:20
**begins** [1] - 31:17

**begun** [1] - 4:5
**behalf** [2] - 13:25, 33:20
**behind** [1] - 6:16
**belief** [2] - 26:19, 29:24
**belt** [3] - 8:24, 8:25, 24:11
**benefitted** [1] - 8:21
**best** [3] - 10:10, 14:4, 37:22
**better** [1] - 14:14
**Biddle** [1] - 2:10
**BISS** [22] - 2:2, 3:8, 3:23, 4:14, 6:2, 6:23, 7:21, 8:9, 11:15, 14:18, 15:21, 15:24, 19:17, 22:11, 28:14, 30:11, 30:13, 30:17, 33:10, 33:14, 36:2, 36:23
**Biss** [30] - 2:2, 3:7, 3:22, 4:14, 5:25, 7:10, 8:6, 10:10, 11:3, 12:12, 12:25, 14:15, 15:21, 17:5, 17:11, 18:11, 18:25, 19:17, 20:16, 20:25, 21:4, 21:10, 21:13, 22:9, 28:8, 28:17, 29:2, 29:11, 32:18
**Biss's** [1] - 3:17
**bit** [2] - 16:16, 28:22
**bother** [1] - 31:4
**bothering** [1] - 26:4
**bothers** [1] - 25:17
**bottom** [4] - 10:15, 13:15, 15:1, 23:2
**box** [4] - 10:15, 13:15, 15:1, 15:2
**BOYER** [3] - 2:5, 33:19, 33:24
**Boyer** [8] - 3:12, 4:16, 19:15, 20:22, 21:4, 24:11, 31:13, 33:20
**break** [1] - 32:21
**brief** [3] - 7:21, 8:1, 10:7
**briefly** [3] - 3:19, 33:21, 33:23
**bring** [3] - 6:19, 26:5, 26:10
**bringing** [1] - 27:6
**broad** [2] - 9:3, 9:4
**broke** [1] - 25:19
**broken** [1] - 24:19
**brought** [1] - 23:21
**Brown** [1] - 35:2

## C

**C20-4003-CJW** [1] - 1:6
**card** [9] - 18:2, 18:3, 18:6, 19:4, 19:5, 23:22, 25:1, 25:2
**cards** [3] - 25:1, 31:9
**career** [6] - 26:24, 29:25, 30:19, 30:20, 30:21, 31:2
**case** [22] - 3:4, 5:19, 7:12, 7:18, 9:1, 9:6, 13:17, 16:20, 16:24, 18:9, 19:25, 20:13,

24:12, 24:16, 25:11, 26:14, 27:19, 28:4, 30:20, 30:23, 31:4, 36:19

**cases** [1] - 19:11
**caused** [1] - 34:3
**Cedar** [2] - 1:12, 20:11
**certain** [2] - 16:5, 17:4
**CERTIFICATE** [1] - 37:20
**certification** [1] - 9:24
**certified** [1] - 9:10
**certify** [2] - 14:11, 37:21
**chambers** [1] - 26:4
**Charlottesville** [1] - 2:4
**check** [1] - 19:9
**choice** [2] - 25:7, 36:12
**circumstance** [1] - 33:1
**citation** [1] - 10:4
**cite** [1] - 8:1
**citizen** [1] - 19:3
**City** [3] - 2:14, 28:9, 28:10
**city** [1] - 23:8
**civil** [1] - 31:2
**CJA** [1] - 28:10
**claim** [1] - 7:7
**claiming** [1] - 16:21
**clarify** [2] - 4:1, 21:4
**clear** [2] - 14:6, 18:24, 21:12, 22:2, 30:4
**clearly** [1] - 29:4
**client** [8] - 4:19, 4:24, 5:16, 20:23, 26:25, 29:8, 30:23
**clients** [1] - 28:11
**comfortable** [1] - 17:19
**coming** [6] - 15:9, 15:11, 23:25, 24:20, 25:14
**commencing** [1] - 1:12
**commented** [1] - 23:7
**committing** [1] - 17:10
**company** [2] - 22:3, 28:6
**complained** [1] - 9:9
**completely** [1] - 22:22
**completeness** [1] - 10:2
**concern** [7] - 24:7, 24:17, 26:23, 27:2, 35:16, 36:3
**concerned** [3] - 21:19, 29:20, 36:13
**concerning** [1] - 29:18
**concerns** [5] - 16:19, 16:25, 19:1, 19:12, 30:6
**concluded** [1] - 37:2
**concludes** [1] - 37:3
**conduct** [1] - 21:19
**confer** [1] - 17:5
**CONFERENCE** [1] - 1:7
**conference** [3] - 3:6, 4:7, 34:4
**Conference** [1] - 1:10
**conferences** [2] - 20:9, 20:18

**confirm** [1] - 21:8
**conflict** [1] - 17:9
**consider** [1] - 17:12
**consideration** [1] - 12:4
**contention** [1] - 9:5
**context** [1] - 26:18
**continue** [2] - 7:19, 15:5, 20:20
**continued** [2] - 20:8, 21:13
**conversation** [1] - 35:22
**copies** [1] - 18:5
**Corporation** [1] - 2:7
**correct** [1] - 37:21
**counsel** [30] - 8:23, 11:13, 18:16, 18:18, 18:20, 21:14, 21:22, 21:25, 22:4, 25:6, 25:7, 25:8, 28:5, 28:9, 29:15, 29:23, 30:7, 31:4, 34:18, 34:19, 35:4, 35:7, 35:10, 35:21, 35:22, 36:6, 36:7, 36:11, 36:12
**counsel's** [2] - 8:25, 22:3
**counsels** [9] - 15:24, 16:2, 16:4, 16:7, 16:11, 19:18, 19:22, 19:25, 20:4
**country** [1] - 27:15
**County** [1] - 18:22
**couple** [1] - 31:13
**course** [8] - 4:4, 4:12, 10:8, 12:24, 21:17, 32:6, 32:7, 35:24
**COURT** [34] - 1:1, 3:4, 3:9, 3:15, 4:11, 5:5, 6:1, 6:21, 7:4, 7:20, 7:22, 10:1, 12:10, 12:22, 14:8, 14:13, 15:15, 15:23, 16:13, 20:2, 20:5, 22:9, 25:13, 25:23, 28:13, 28:15, 28:21, 30:16, 32:18, 33:13, 33:23, 34:15, 36:22, 36:24
**court** [5] - 8:24, 9:16, 10:3, 10:21, 11:5
**Court** [22] - 1:11, 3:5, 4:1, 5:1, 7:2, 7:7, 7:16, 9:15, 9:24, 10:14, 10:16, 12:3, 14:4, 15:25, 16:10, 22:4, 22:5, 27:25, 28:1, 28:9, 35:16, 35:21
**Courthouse** [1] - 1:12
**covered** [3] - 9:4, 10:23, 12:13
**covers** [1] - 11:17
**create** [1] - 22:13
**cross** [1] - 11:14
**cross-examination** [1] - 11:14
**CRR** [2] - 2:13, 37:24
**crystal** [3] - 7:20, 7:22, 8:2
**current** [4] - 17:23, 18:3, 18:5, 26:11

### D

**dairy** [1] - 24:21
**Dairy** [1] - 6:14
**damages** [2] - 7:7, 7:25
**Date** [1] - 37:24
**days** [3] - 24:1, 33:16, 33:25
**deal** [1] - 4:5
**dear** [1] - 17:6
**declaration** [1] - 13:22
**deemed** [1] - 5:21
**deeply** [1] - 29:18
**defendant** [1] - 33:21
**Defendants** [2] - 1:8, 2:5
**defendants** [15] - 3:9, 5:2, 5:5, 5:12, 7:4, 8:7, 10:1, 13:23, 13:25, 16:21, 16:22, 22:13, 24:18, 32:15, 36:14
**defendants'** [2] - 3:16, 8:23
**defender's** [1] - 28:10
**Democratic** [1] - 6:10
**deponent** [1] - 11:6
**deponents** [1] - 28:24
**depose** [1] - 17:4
**deposition** [33] - 3:19, 4:1, 4:4, 8:10, 8:11, 8:13, 8:22, 9:17, 9:18, 11:1, 11:4, 12:25, 15:17, 15:19, 15:25, 16:3, 16:6, 18:15, 19:15, 21:1, 21:12, 21:17, 23:5, 23:21, 24:9, 25:4, 25:19, 27:7, 27:25, 34:23, 34:25, 36:12
**deposition's** [1] - 4:7
**depositions** [18] - 4:10, 9:13, 14:23, 15:9, 15:11, 16:19, 16:25, 18:23, 21:23, 22:6, 25:9, 29:14, 33:7, 33:16, 34:9, 34:17, 35:11, 35:24
**Des** [1] - 2:12
**deserve** [1] - 33:1
**designated** [2] - 16:1, 16:4
**determine** [2] - 6:4, 6:7
**Devin** [1] - 6:15
**different** [3] - 20:17, 21:19, 29:15
**differing** [1] - 29:16
**digital** [2] - 2:14, 37:22
**direct** [2] - 5:1, 7:2
**directed** [1] - 35:20
**disagree** [1] - 24:5
**disclosing** [1] - 19:21
**disclosure** [1] - 16:11
**discovery** [9] - 5:3, 7:1, 8:18, 8:19, 9:3, 11:16, 12:1, 12:13
**discuss** [2] - 20:8, 20:16
**discussions** [1] - 13:9

**disparity** [2] - 11:8, 12:19
**dispute** [1] - 29:6
**DISTRICT** [2] - 1:1, 1:1
**District** [1] - 1:11
**DIVISION** [1] - 1:2
**document** [16] - 11:5, 11:13, 11:17, 11:18, 11:19, 11:25, 12:5, 12:7, 12:16, 12:17, 12:24, 13:11, 29:7, 29:10, 31:16, 32:8
**documentation** [5] - 22:20, 23:18, 23:19, 25:3
**documents** [31] - 8:8, 8:12, 8:14, 8:19, 8:20, 9:4, 9:10, 9:13, 9:22, 9:25, 10:12, 11:20, 13:16, 13:23, 14:10, 15:4, 15:5, 16:3, 17:22, 18:6, 18:9, 19:1, 26:21, 27:6, 27:24, 30:17, 30:21, 30:23, 31:7, 31:8, 31:11
**Dominguez** [11] - 8:13, 18:19, 20:22, 20:24, 23:5, 24:13, 26:5, 30:24, 31:14, 31:19, 33:11
**Dominguez's** [1] - 23:21
**done** [8] - 10:7, 22:19, 23:12, 33:15, 33:24, 34:5, 34:10, 34:12
**Donnellan** [1] - 3:11
**DONNELLAN** [1] - 2:5
**down** [3] - 11:10, 14:14, 25:19
**drawer** [4] - 13:19, 14:5, 14:16, 14:19
**Drinker** [1] - 2:10
**drive** [3] - 10:15, 13:14, 14:5
**driver's** [7] - 11:7, 12:19, 23:23, 24:14, 25:2, 31:9
**during** [2] - 21:17, 21:23

### E

**e-mail** [4] - 3:16, 3:17, 4:15, 4:21
**easier** [1] - 12:17
**effect** [1] - 30:8
**efficiently** [1] - 34:10
**efforts** [1] - 35:4
**eight** [1] - 26:7
**either** [5] - 8:10, 9:17, 12:1, 13:7, 29:13
**employee** [5] - 19:1, 21:5, 30:1, 30:4, 35:20
**employee's** [1] - 36:4
**employees** [17] - 16:20, 17:1, 17:4, 17:9, 18:2, 18:4, 18:13, 21:14, 22:1, 24:8, 24:22, 31:6, 31:22, 32:13, 33:12, 36:11

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*IT WAS A computer copy of the transcript*
Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 39 of 44

**employer** [4] - 17:24, 18:7, 27:5, 35:3
**employers** [1] - 26:12
**employment** [1] - 26:21
**end** [2] - 8:1, 21:3
**enforce** [1] - 22:6
**English** [1] - 27:16
**enjoy** [1] - 7:22
**ensure** [1] - 21:25
**entitled** [1] - 37:23
**ESQ** [7] - 2:2, 2:5, 2:5, 2:6, 2:6, 2:9, 2:10
**essentially** [1] - 35:18
**et** [2] - 3:5
**events** [1] - 13:17
**evidence** [4] - 7:1, 7:15, 8:20, 9:5
**ex** [1] - 35:22
**exactly** [1] - 12:12
**examination** [1] - 11:14
**example** [1] - 12:18
**exhibit** [1] - 12:21
**exhibits** [1] - 8:15
**exist** [1] - 26:13
**expedite** [2] - 5:6, 5:11
**expense** [1] - 28:25
**experience** [1] - 18:22
**extent** [3] - 10:24, 16:7, 36:11
**extremely** [1] - 26:16
**eyes** [9] - 15:24, 16:2, 16:4, 16:7, 16:11, 19:18, 19:22, 19:25, 20:4

---

**F**

**fact** [11] - 4:9, 7:13, 15:9, 15:10, 19:13, 19:19, 21:5, 21:9, 22:16, 23:20, 31:13
**factor** [1] - 12:6
**Faegre** [1] - 2:10
**fails** [1] - 7:12
**failure** [1] - 24:10
**fair** [1] - 12:2
**fairly** [1] - 13:17
**fairness** [2] - 9:8, 12:7
**faith** [2] - 26:19, 29:24
**fake** [5] - 26:21, 30:17, 31:6, 31:7, 31:11
**false** [8] - 27:12, 28:1, 28:3, 30:18, 31:11, 31:24, 32:4
**falsely** [2] - 16:22, 27:23
**familiar** [1] - 18:1
**families** [1] - 27:17
**far** [3] - 8:10, 23:6, 24:4
**farm** [1] - 23:13
**FARMS** [1] - 1:4
**February** [1] - 32:6
**Federal** [1] - 1:12

**few** [4] - 15:9, 17:5, 17:14, 28:16
**field** [1] - 9:19
**Fifth** [36] - 17:8, 20:25, 21:5, 21:9, 21:15, 22:1, 22:4, 22:11, 22:17, 22:18, 22:25, 23:1, 26:15, 26:22, 26:25, 27:9, 27:20, 28:11, 29:4, 29:9, 29:17, 29:19, 29:24, 30:2, 31:21, 32:2, 32:14, 32:15, 32:16, 32:20, 32:23, 33:4, 35:16, 36:3, 36:17
**fill** [1] - 19:2
**finish** [3] - 23:5, 33:8, 33:10
**finished** [1] - 3:20
**fire** [1] - 35:20
**fired** [3] - 21:12, 25:20, 30:3
**firm** [2] - 6:12, 31:3
**first** [2] - 10:18, 18:19
**five** [1] - 33:12
**Flavio** [2] - 8:13, 18:19
**Floor** [2] - 2:7, 2:11
**follow** [1] - 34:6
**following** [1] - 3:1
**FOR** [1] - 1:1
**foregoing** [2] - 37:1, 37:21
**forgot** [1] - 13:18
**form** [1] - 24:16
**forth** [1] - 27:24
**forward** [2] - 23:14, 34:22
**frankly** [1] - 30:6
**freely** [2] - 17:19, 31:19
**Friday** [1] - 33:15
**full** [2] - 7:2, 28:18
**fundamental** [4] - 9:8, 12:7, 26:14, 27:19
**fundamentally** [1] - 9:12
**Fusion** [1] - 6:13
**future** [2] - 20:11, 20:16

---

**G**

**gain** [1] - 26:21
**game** [1] - 15:7
**general** [1] - 10:2
**generally** [1] - 13:13
**germane** [1] - 7:17
**Giudicessi** [7] - 3:11, 5:15, 7:6, 10:7, 14:2, 14:20, 28:20
**GIUDICESSI** [8] - 2:9, 5:14, 7:5, 10:6, 12:11, 14:2, 14:9, 28:19
**given** [5] - 4:8, 4:9, 32:9, 32:23, 35:2
**good-faith** [2] - 26:19, 29:24
**government** [3] - 18:5, 19:4, 24:19
**GPS** [1] - 6:13
**Grand** [1] - 2:11

**great** [2] - 24:21, 36:25
**green** [6] - 18:2, 18:3, 19:5, 23:22, 25:1, 31:8
**ground** [1] - 16:14
**guarding** [1] - 28:2
**guess** [1] - 11:21

---

**H**

**hand** [1] - 5:8
**handwriting** [1] - 31:22
**happy** [1] - 12:11
**harassment** [3] - 24:7, 24:8, 24:17
**hard** [2] - 18:8, 36:9
**heard** [3] - 4:8, 5:12, 22:9
**hearing** [4] - 3:19, 7:23, 36:15, 37:1
**hears** [1] - 36:17
**HEARST** [1] - 1:7
**Hearst** [2] - 2:7, 13:6
**held** [2] - 1:10, 9:11
**help** [3] - 14:14, 35:2, 36:1
**hide** [3] - 6:16, 25:11, 32:17
**hiding** [1] - 33:3
**highly** [1] - 36:18
**hired** [1] - 18:7
**hold** [1] - 32:23
**holders** [1] - 18:2
**home** [1] - 27:17
**Honor** [45] - 3:8, 3:14, 3:24, 4:2, 4:21, 6:2, 6:18, 6:19, 7:5, 8:17, 12:11, 14:21, 16:19, 16:20, 17:1, 17:15, 17:21, 18:1, 18:20, 19:8, 19:24, 20:21, 21:6, 21:17, 21:21, 21:25, 22:8, 23:13, 25:21, 26:2, 26:6, 26:16, 27:11, 27:14, 28:14, 28:19, 29:21, 30:5, 30:13, 31:10, 33:18, 33:22, 34:4, 35:12
**Honor's** [4] - 4:4, 26:4, 35:14, 36:4
**Honorable** [1] - 1:10
**hope** [1] - 35:9
**hopefully** [2] - 13:9, 13:20
**hoping** [1] - 5:4
**hour** [4] - 8:11, 24:8, 24:9, 34:1
**hours** [3] - 21:2, 24:2, 24:3

---

**I**

**I-9** [4] - 17:24, 19:2, 20:23, 32:5
**I-9s** [2] - 19:16, 31:8
**IA** [2] - 2:12, 2:14
**ICE** [1] - 24:20
**ID** [6] - 18:5, 19:4, 22:6, 26:2, 26:5, 26:9

**identification** [1] - 25:16
**identified** [1] - 20:4
**identify** [1] - 12:14
**identifying** [1] - 17:3
**IDs** [6] - 17:23, 19:7, 23:16, 26:11
**ignore** [1] - 35:20
**III** [1] - 1:3
**illegal** [2] - 16:23
**illegally** [3] - 17:10, 19:13, 26:22
**imagination** [1] - 23:15
**immediately** [2] - 11:1, 11:14
**implicate** [1] - 31:21
**importance** [2] - 4:9, 29:19
**important** [5] - 26:14, 26:16, 34:7, 34:13, 35:10
**impossible** [2] - 6:3, 6:7
**impression** [1] - 27:5
**IN** [1] - 1:1
**inappropriate** [2] - 6:16, 16:12
**INC** [1] - 1:7
**incident** [1] - 13:5
**included** [3] - 17:14, 17:22, 22:7
**including** [3] - 9:4, 9:16, 34:4
**income** [1] - 7:9
**incorrect** [1] - 22:23
**incorrectly** [1] - 30:22
**independent** [4] - 28:6, 30:6, 34:8, 35:4
**indicated** [3] - 9:2, 24:11, 33:17
**indicating** [4] - 3:16, 3:17, 4:16, 14:21
**individual** [1] - 28:24
**individual's** [1] - 35:22
**individuals** [5] - 19:12, 26:19, 26:22, 27:15, 28:5
**inflammatory** [1] - 6:14
**information** [8] - 4:24, 5:18, 12:18, 16:9, 16:12, 19:19, 19:22, 19:25
**infraction** [2] - 8:24, 8:25
**infrequent** [1] - 14:22
**inquiries** [2] - 34:18, 34:21
**instance** [1] - 6:9
**instruct** [1] - 21:7
**instructed** [2] - 20:23, 26:25
**insufficient** [3] - 5:23, 10:11, 19:5
**intend** [4] - 9:17, 11:19, 12:1, 23:3
**interest** [1] - 24:21
**interests** [1] - 29:16

*Contact Shelly Semmler at 712-233-3841 or shelly_semmler@iand.uscourts.gov*
*Computer-aided transcription of the record*

Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 40 of 44

**interjecting** [2] - 33:20, 36:20
**interruptions** [4] - 21:18, 21:22, 24:4, 27:4
**intimidate** [1] - 23:10
**intimidated** [1] - 27:3
**introduce** [1] - 12:21
**invocation** [2] - 29:17, 32:19
**invocations** [1] - 32:2
**invoke** [3] - 29:8, 32:14, 36:16
**invoked** [1] - 29:4
**invoking** [1] - 32:16
**IOWA** [1] - 1:1
**Iowa** [5] - 1:11, 1:12, 7:8, 18:22, 26:6
**irrelevant** [1] - 7:10
**isolated** [1] - 13:5
**issue** [34] - 3:21, 4:3, 4:5, 4:8, 5:12, 6:19, 6:21, 7:25, 10:2, 11:16, 12:23, 13:4, 13:13, 15:16, 15:20, 16:9, 16:19, 16:24, 16:25, 17:1, 17:6, 17:12, 18:25, 19:14, 22:2, 26:14, 26:15, 26:16, 26:24, 27:19, 29:23, 30:7, 34:14
**issue's** [1] - 11:15
**issued** [2] - 8:17, 8:18
**issues** [8] - 3:16, 3:18, 7:9, 17:8, 17:15, 19:7, 26:2, 34:2
**items** [2] - 10:21, 10:24
**itself** [1] - 16:7

## J

**JONATHAN** [1] - 2:5
**journalist's** [1] - 5:17
**JR** [1] - 1:3
**Judge** [19] - 1:11, 3:23, 4:14, 5:14, 6:23, 7:21, 8:9, 10:6, 11:15, 14:10, 14:19, 15:21, 19:17, 22:11, 24:7, 24:24, 30:11, 30:17, 36:2
**juncture** [1] - 32:23
**jury** [1] - 36:17
**Justin** [2] - 18:20, 18:21

## K

**keep** [1] - 31:1
**keeping** [1] - 24:21
**keeps** [1] - 31:7
**kind** [3] - 15:3, 16:8, 18:12
**Klinefeldt** [15] - 3:12, 3:25, 15:16, 15:22, 16:8, 16:13, 20:20, 22:22, 23:6, 24:6, 30:15, 31:1, 31:7, 34:14, 35:13

**KLINEFELDT** [11] - 2:10, 3:24, 16:18, 19:24, 20:3, 20:21, 25:21, 26:1, 29:21, 30:12, 35:12
**Klinefeldt's** [2] - 25:12, 34:6
**knowing** [1] - 12:8
**knowledge** [1] - 14:3
**knows** [12] - 7:7, 7:16, 8:18, 9:19, 9:20, 16:20, 17:1, 17:16, 19:8, 21:6, 30:19, 30:20

## L

**labor** [3] - 8:21, 16:23, 16:24
**last** [2] - 4:3, 10:11
**late** [2] - 13:17, 15:7
**Law** [1] - 2:2
**law** [2] - 24:19, 31:3
**lawyer** [5] - 11:18, 30:2, 34:23, 35:1, 35:2
**lawyers** [1] - 10:25
**lead** [2] - 6:25, 34:6
**leading** [1] - 7:15
**least** [1] - 10:16
**legally** [2] - 27:18, 27:23
**legitimate** [1] - 19:7
**less** [2] - 13:20, 13:21
**letter** [2] - 9:7, 10:13
**level** [1] - 9:19
**libel** [1] - 7:11
**license** [5] - 11:7, 12:19, 23:23, 24:14, 25:2
**licenses** [2] - 11:7, 31:9
**life** [1] - 24:12
**light** [1] - 34:2
**likely** [1] - 29:2
**liken** [1] - 35:13
**line** [5] - 18:12, 19:21, 20:6, 20:13, 23:3
**list** [1] - 8:5
**listen** [1] - 3:10, 32:18
**listening** [2] - 16:6, 20:12
**litigate** [1] - 12:2
**litigating** [1] - 13:6
**litigation** [1] - 24:23
**lives** [1] - 26:8
**LIZZA** [1] - 1:7
**Lizza** [3] - 3:5, 6:9, 15:2
**Lizza's** [1] - 7:12
**LLC** [1] - 1:4
**locate** [2] - 25:6, 36:5
**located** [3] - 10:25, 15:1, 15:4
**locating** [1] - 25:5
**location** [10] - 17:16, 17:17, 17:19, 22:6, 23:6, 23:7, 23:8, 23:15, 27:7, 32:11

**log** [2] - 5:20, 5:23
**logged** [1] - 5:22
**long-term** [1] - 24:21
**look** [11] - 11:4, 11:13, 13:16, 13:18, 14:25, 15:5, 16:15, 17:7, 18:14, 32:16, 35:4
**looked** [1] - 3:20
**looking** [2] - 24:9, 24:10
**loss** [1] - 12:14
**loyal** [1] - 24:22
**LPR** [1] - 19:3

## M

**MAGAZINE** [1] - 1:7
**Magistrate** [1] - 1:11
**mail** [4] - 3:16, 3:17, 4:15, 4:21
**Main** [1] - 2:3
**main** [2] - 9:5, 24:7
**MALE** [1] - 3:14
**manner** [2] - 10:25, 18:11
**Mark** [1] - 1:11
**marking** [1] - 5:24
**match** [1] - 19:10
**matter** [2] - 3:6, 37:23
**maximum** [1] - 23:11
**mean** [4] - 9:8, 9:12, 15:6, 30:14
**measures** [1] - 20:10
**MEDIA** [1] - 1:7
**meet** [1] - 17:5
**meet-and-confer** [1] - 17:5
**meetings** [2] - 10:8, 20:11
**message** [1] - 30:4
**met** [1] - 18:20
**MICHAEL** [1] - 2:9
**might** [5] - 5:8, 6:9, 10:17, 13:19, 14:16
**Mike** [5] - 5:15, 7:5, 10:7, 14:2, 28:19
**mind** [3] - 7:13, 34:7
**minute** [1] - 28:22
**minutes** [2] - 26:7, 34:1
**Miss** [1] - 3:12
**missed** [1] - 3:11
**mistrial** [1] - 36:19
**Moines** [1] - 2:12
**moment** [2] - 4:12, 10:24
**money** [2] - 7:14, 27:16
**months** [1] - 5:4
**morning** [9] - 3:4, 3:8, 3:9, 5:14, 8:3, 8:4, 23:4, 28:16, 34:5
**most** [2] - 34:7, 34:13
**mostly** [1] - 7:23
**move** [2] - 15:3, 18:17
**moved** [1] - 18:11

**MR** [40] - 3:8, 3:23, 3:24, 4:14, 5:14, 6:2, 6:23, 7:5, 7:21, 8:9, 10:6, 11:15, 12:11, 14:2, 14:9, 14:18, 15:21, 15:24, 16:18, 19:17, 19:24, 20:3, 20:21, 22:11, 25:21, 26:1, 28:14, 28:19, 29:21, 30:11, 30:12, 30:13, 30:17, 33:10, 33:14, 33:19, 33:24, 35:12, 36:2, 36:23
**multiple** [1] - 8:18
**must** [1] - 32:16

## N

**name** [1] - 31:21
**names** [2] - 3:10, 19:10
**Nate** [1] - 33:20
**NATHANIEL** [1] - 2:5
**nature** [1] - 15:20
**near** [1] - 17:6
**necessary** [1] - 35:19
**need** [7] - 13:11, 19:22, 26:9, 28:2, 29:1, 30:15, 33:2
**neutral** [7] - 17:17, 17:18, 17:20, 23:6, 23:7, 23:8, 23:14
**never** [4] - 7:15, 8:14, 8:15, 9:14
**new** [1] - 21:14
**New** [1] - 2:8
**newspaper** [1] - 22:14
**NICHOLAS** [1] - 2:10
**Nick** [2] - 3:25, 35:13
**night** [1] - 4:4
**NINA** [1] - 2:6
**nobody's** [1] - 30:18
**none** [2] - 31:8, 31:20
**noon** [2] - 23:4, 26:4
**NORTHERN** [1] - 1:1
**Northern** [1] - 1:11
**nothing** [4] - 22:22, 25:11, 30:20, 30:21
**notice** [1] - 36:10
**noticed** [1] - 17:20
**notified** [1] - 23:3
**notwithstanding** [1] - 25:11
**Number** [1] - 3:5
**number** [4] - 3:21, 9:7, 12:19, 13:22
**numbers** [1] - 11:7
**Numbers** [1] - 19:10
**numerous** [1] - 9:4
**NUNES** [2] - 1:3, 1:3
**Nunes** [3] - 3:5, 6:15, 14:16
**NuStar** [6] - 6:14, 8:20, 16:20, 25:10, 31:4, 32:16
**NUSTAR** [1] - 1:4
**NY** [1] - 2:8

## O

**object** [3] - 7:19, 19:18, 19:21
**objected** [3] - 7:18, 18:10, 32:11
**objection** [3] - 10:13, 11:3, 19:23
**objections** [5] - 21:18, 21:23, 21:24, 24:5, 27:4
**obtained** [1] - 11:19
**obtuse** [1] - 16:16
**obviously** [2] - 16:6, 34:5
**occur** [1] - 35:1
**occurred** [1] - 15:17
**occurring** [2] - 4:6, 4:10
**OF** [2] - 1:1, 1:7
**Office** [1] - 2:2
**office** [1] - 28:10
**offices** [1] - 23:8
**offline** [1] - 12:12
**once** [3] - 17:3, 36:19, 36:20
**one** [28] - 5:15, 5:19, 8:17, 8:19, 8:22, 10:17, 11:5, 11:13, 12:5, 12:7, 12:20, 12:23, 15:10, 17:15, 18:23, 20:7, 22:18, 23:24, 24:24, 24:25, 25:16, 29:4, 29:22, 30:5, 30:9, 34:1, 34:24, 36:3
**one-page** [4] - 11:5, 11:13, 12:5, 12:7
**operative** [1] - 6:10
**opportunity** [2] - 9:23, 32:9
**opposite** [1] - 6:12
**opposition** [1] - 6:12
**order** [1] - 28:7
**overdue** [1] - 4:22

## P

**page** [11] - 11:5, 11:13, 12:5, 12:7, 16:15, 25:19, 25:22, 25:24, 28:20, 29:5, 31:15
**pages** [1] - 31:13
**panel** [1] - 28:10
**paper** [1] - 25:24
**paragraph** [2] - 4:21, 9:24
**parte** [1] - 35:22
**part** [3] - 12:15, 17:24, 36:4
**particular** [1] - 13:10
**particularly** [1] - 7:24
**parties** [5] - 5:11, 10:17, 11:25, 16:5, 20:13
**party** [5] - 6:10, 10:9, 12:1, 15:8, 15:11
**pause** [1] - 34:16
**people** [8] - 14:24, 15:5, 23:24, 29:14, 29:19, 32:25,
33:7
**people's** [1] - 32:23
**perhaps** [2] - 16:13, 16:24
**person** [1] - 20:18
**person's** [2] - 32:20, 32:22
**persons** [1] - 34:8
**phone** [13] - 3:21, 4:13, 4:15, 4:17, 4:18, 4:23, 4:25, 5:2, 5:9, 5:13, 5:18, 6:6, 36:8
**photographs** [3] - 10:14, 13:19, 15:1
**piece** [1] - 22:21
**pin** [1] - 14:14
**pinnacle** [1] - 16:24
**place** [2] - 20:10, 33:18
**placed** [1] - 32:25
**plaintiff** [2] - 3:7, 29:1
**Plaintiffs** [2] - 1:5, 2:2
**plaintiffs** [7] - 11:9, 15:10, 16:2, 16:21, 34:3, 34:4, 36:18
**plan** [2] - 29:13, 33:9
**playing** [1] - 9:19
**plenty** [1] - 11:4
**point** [4] - 13:18, 14:1, 30:14, 36:15
**political** [1] - 6:10
**Polk** [1] - 18:22
**posed** [1] - 23:2
**position** [1] - 27:12
**possession** [2] - 11:17, 13:24, 25:16
**possibility** [5] - 27:11, 27:22, 28:3, 30:8, 34:19
**possible** [3] - 30:9, 34:10, 35:24
**possibly** [2] - 24:15, 28:25
**potential** [1] - 17:8
**practice** [1] - 7:8
**pragmatic** [1] - 14:24
**predicted** [1] - 10:16
**prejudice** [3] - 11:12, 11:15
**prejudicial** [1] - 36:18
**prepare** [1] - 9:23
**prepared** [2] - 3:1, 25:3
**presented** [3] - 29:7, 31:15, 31:16
**press** [1] - 32:15
**pressed** [1] - 18:8
**pressing** [1] - 4:3
**pressure** [3] - 17:18, 23:11
**pretty** [1] - 20:3
**preventing** [2] - 24:22
**previewed** [1] - 10:16
**print** [1] - 25:25
**printed** [1] - 25:23
**privilege** [22] - 4:19, 5:16, 5:17, 5:20, 5:21, 5:22, 6:3,
6:17, 20:25, 21:6, 21:8, 21:10, 21:15, 22:2, 22:5, 27:1, 27:9, 27:21, 28:12, 29:25, 30:3, 31:5
**privileged** [4] - 4:24, 5:7, 5:9, 5:21
**privileges** [1] - 32:24
**problem** [2] - 6:2, 27:10
**proceed** [3] - 20:1, 29:14, 35:24
**proceedings** [1] - 37:23
**process** [7] - 19:8, 24:23, 25:5, 36:1, 36:5, 36:10, 36:21
**produce** [7] - 5:2, 6:20, 7:2, 7:19, 9:15, 11:22, 14:6
**produced** [21] - 5:20, 8:7, 8:13, 8:14, 8:15, 9:9, 9:14, 9:20, 9:22, 10:19, 11:8, 11:22, 11:23, 11:25, 12:9, 12:24, 13:24, 14:10, 22:20, 22:21, 23:16
**producible** [1] - 7:24
**producing** [4] - 4:20, 7:18, 7:19, 11:20
**product** [2] - 10:25, 11:18
**production** [4] - 9:25, 10:2, 10:23, 13:2
**progress** [3] - 5:23, 14:11, 35:6
**proper** [2] - 19:23, 34:8
**prosecutor** [7] - 26:24, 29:25, 30:19, 30:20, 30:21, 30:25, 31:2
**prosecutorial** [1] - 18:22
**prove** [2] - 8:20, 9:5
**provided** [3] - 21:25, 22:3, 28:6
**providing** [2] - 19:3, 27:12
**public** [2] - 19:21, 28:10
**publication** [1] - 16:17
**publicity** [1] - 36:14
**publicize** [1] - 22:15
**pulled** [1] - 24:13
**punitive** [2] - 7:7, 7:25
**purpose** [1] - 9:7
**put** [4] - 20:10, 23:11, 27:12, 28:3

## Q

**quash** [1] - 18:11
**questions** [8] - 12:16, 21:23, 25:10, 29:9, 31:20, 31:23, 32:5, 36:16
**quickly** [3] - 12:5, 26:2, 34:10
**quite** [1] - 29:12

## R

**raise** [1] - 16:9
**raised** [2] - 15:16, 34:3
**ran** [1] - 8:20
**Rapids** [2] - 1:12, 20:11
**rare** [2] - 13:18, 13:21
**RAVI** [1] - 2:6
**RDR** [2] - 2:13, 37:24
**read** [4] - 3:10, 12:6, 15:19, 29:5
**reading** [1] - 28:21
**ready** [1] - 23:4
**real** [8] - 11:11, 22:1, 26:22, 27:11, 27:22, 30:8, 31:11, 31:25
**realize** [1] - 10:18
**really** [5] - 4:20, 6:23, 11:1, 13:8, 17:2
**reason** [2] - 18:24, 23:12
**Reath** [1] - 2:10
**receive** [2] - 3:15, 3:17
**received** [2] - 3:19, 23:16
**recognize** [1] - 7:12
**record** [11] - 6:6, 10:3, 11:5, 21:1, 26:12, 27:13, 28:4, 29:12, 32:1, 34:1
**recording** [4] - 2:14, 3:2, 37:4, 37:23
**records** [16] - 3:22, 4:13, 4:15, 4:17, 4:18, 4:23, 4:25, 5:2, 5:9, 5:13, 5:18, 6:20, 7:6, 8:24, 9:16, 10:21
**redact** [1] - 6:6
**redactions** [1] - 4:18
**refer** [1] - 16:8
**referred** [1] - 10:11
**refusing** [1] - 30:19
**regard** [1] - 26:15
**regarding** [2] - 3:21, 29:9
**reiterate** [1] - 36:2
**relate** [1] - 24:16
**related** [1] - 13:4
**relevant** [6] - 6:25, 7:11, 9:1, 18:9, 24:11, 24:13
**relied** [1] - 8:21
**rely** [2] - 20:6, 20:15
**remain** [1] - 36:13
**remember** [6] - 29:7, 31:14, 31:15, 31:17, 32:6, 32:7
**remind** [1] - 21:22
**reporter's** [3] - 5:17, 5:22, 6:16
**represent** [1] - 35:17
**representation** [5] - 8:6, 9:1, 26:10, 26:12, 34:8
**representative** [1] - 13:5
**represented** [1] - 15:2
**representing** [1] - 18:14

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*tri-county reporting company 104 north bedford*

Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 42 of 44

request [4] - 10:23, 11:16, 12:13, 28:25
requested [2] - 8:19, 9:24
requesting [2] - 19:9, 21:21
requests [5] - 8:18, 8:19, 9:3, 17:22, 22:7
required [2] - 10:22, 11:2
requires [1] - 28:5
research [1] - 6:12
resolve [2] - 13:10, 30:7
resolved [2] - 13:1, 32:11
respect [11] - 4:13, 5:12, 7:6, 7:10, 10:1, 10:3, 10:13, 10:21, 13:10, 17:9, 35:7
respectful [1] - 30:15
respectfully [1] - 4:8
respond [3] - 28:14, 30:13, 30:15
response [1] - 5:6
responsive [2] - 8:7, 13:23
rest [1] - 25:25
resumed [1] - 4:7
retained [3] - 28:24, 28:25, 29:15
returns [5] - 6:22, 6:23, 7:3, 7:16, 7:24
review [1] - 5:20
rights [1] - 27:10
ripe [3] - 5:10, 8:3, 13:8
Roberts [2] - 1:11, 5:14
Rule [1] - 10:22
rule [1] - 5:7
ruled [1] - 23:13
running [1] - 5:3
RYAN [1] - 1:7

## S

s/Shelly [1] - 37:24
sacred [1] - 32:23
sacrosanct [1] - 7:17
Sanchez [8] - 18:19, 20:22, 20:23, 26:5, 30:24, 31:14, 31:19, 33:11
scandalous [1] - 36:21
scare [2] - 24:23, 32:3
schedule [7] - 33:6, 33:7, 33:12, 33:14, 33:18, 35:8, 35:25
schedules [1] - 34:25
SCOTT [1] - 2:2
seat [3] - 8:24, 8:25, 24:11
second [3] - 6:3, 17:21, 21:24
security [2] - 20:10, 20:17
Security [9] - 18:6, 19:4, 19:9, 19:10, 19:20, 23:22, 25:1, 25:2, 31:9
see [8] - 3:10, 12:17, 16:14, 19:10, 24:12, 24:15, 31:19,

32:19
seeks [1] - 13:22
seem [1] - 12:16
Semmler [3] - 2:13, 37:24, 37:24
send [1] - 27:16
sense [1] - 29:22
sensitive [1] - 16:14
sent [1] - 4:2
separate [2] - 18:15, 18:18
serious [3] - 19:1, 19:6, 19:12
seriously [1] - 28:2
service [1] - 18:13
settlement [1] - 4:6
Seventh [1] - 1:12
several [2] - 10:8, 17:3
SHAH [1] - 2:6
Shah [1] - 3:12
shape [1] - 24:16
share [1] - 10:4
shed [1] - 10:12
Shelly [2] - 2:13, 37:24
short [2] - 28:7, 36:9
show [7] - 5:8, 8:20, 9:5, 9:13, 9:21, 18:4, 18:5
showed [3] - 8:15, 8:23, 18:7
showing [1] - 22:20
shown [4] - 8:10, 16:3, 17:24, 26:11
shows [4] - 11:5, 11:6, 11:7, 12:18
Sibley [1] - 23:9
sides [2] - 11:11, 13:14
signature [1] - 11:6
signed [1] - 32:5
simply [2] - 5:16, 7:17
single [7] - 11:25, 22:18, 23:24, 24:24, 24:25, 34:7, 34:13
single-most [2] - 34:7, 34:13
Sioux [3] - 2:14, 28:9, 28:10
sit [1] - 25:3
site [1] - 17:20
situation [1] - 26:18
Sitwala [1] - 3:13
SITWALA [1] - 2:6
six [3] - 10:14, 24:1, 33:24
Sixth [1] - 1:7
small [1] - 26:6
Social [9] - 18:6, 19:4, 19:9, 19:10, 19:20, 23:22, 25:1, 25:2, 31:9
sock [4] - 13:18, 14:5, 14:16, 14:19
someone [5] - 13:24, 25:18, 29:16, 35:2, 35:9

somewhere [1] - 26:9
soon [4] - 4:6, 19:14, 35:24, 36:17
sort [4] - 5:2, 13:25, 17:18, 34:3
Southeast [1] - 1:12
speaking [3] - 10:7, 21:23, 27:3
speaks [1] - 15:22
specialty [1] - 17:7
specifically [4] - 10:3, 16:25, 17:14, 17:23
specter [2] - 31:24, 32:4
speculation [1] - 25:12
spent [1] - 24:8
spinning [1] - 35:8
stamped [1] - 9:21
stand [1] - 35:15
standard [1] - 9:12
standpoint [1] - 14:24
start [3] - 3:21, 36:20
started [3] - 17:2, 17:3, 18:23, 19:15, 20:22, 34:23, 36:6
starting [1] - 25:22
state [3] - 7:13, 19:23
statement [2] - 19:20, 21:11
statements [1] - 36:21
STATES [1] - 1:1
States [1] - 1:11
status [2] - 3:6, 20:8
STATUS [1] - 1:7
Status [1] - 1:10
stay [1] - 4:12
steele [2] - 25:23, 35:6
step [2] - 29:22, 31:17
Steve [3] - 4:14, 15:21, 19:17
Steven [1] - 2:2
STEVEN [1] - 2:2
still [2] - 13:20, 17:19
stop [1] - 34:13
stopped [1] - 20:25
stops [1] - 25:24
stored [1] - 15:3
storeroom [1] - 13:16
story [2] - 6:5
straight [1] - 25:14
Street [3] - 2:3, 2:8, 2:14
stretch [1] - 23:15
stricken [1] - 7:8
study [1] - 12:5
stunt [3] - 31:10, 31:25, 36:14
submission [1] - 17:25
submit [1] - 19:2, 34:2
submitted [1] - 28:1
subpoena [3] - 17:14,

17:22, 26:10
subpoenaed [1] - 17:13
subpoenas [4] - 18:10, 18:13, 22:7, 23:17
succeeded [1] - 36:9
sued [1] - 16:21
suggest [1] - 36:19
suggesting [1] - 24:18
Suite [1] - 2:3
supposed [1] - 33:8
sympathy [2] - 32:24, 33:2

## T

tax [7] - 6:21, 6:23, 7:2, 7:6, 7:16, 7:24
telephone [2] - 20:9, 20:17
tend [1] - 7:23
term [1] - 24:21
terminated [1] - 30:24
terms [3] - 25:9, 26:20, 27:8
testify [7] - 17:19, 27:23, 30:19, 31:6, 32:9, 32:12, 32:13
testimony [8] - 27:12, 28:1, 28:3, 30:18, 31:12, 31:24, 32:4
THE [35] - 1:1, 1:1, 3:4, 3:9, 3:15, 4:11, 5:5, 6:1, 6:21, 7:4, 7:20, 7:22, 10:1, 12:10, 12:22, 14:8, 14:13, 15:15, 15:23, 16:13, 20:2, 20:5, 22:9, 25:13, 25:23, 28:13, 28:15, 28:21, 30:16, 32:18, 33:13, 33:23, 34:15, 36:22, 36:24
themselves [2] - 4:23, 11:9
they've [5] - 6:5, 8:7, 9:13, 24:19, 26:11
third [2] - 8:5, 22:5
three [2] - 3:18, 33:25
thumb [3] - 10:15, 13:14, 14:5
tickets [1] - 24:10
today [11] - 5:10, 13:9, 20:7, 20:14, 20:15, 23:4, 26:4, 29:2, 33:9, 33:11, 33:15
took [2] - 21:2, 29:11
total [1] - 34:1
towards [2] - 7:13, 7:14
town [2] - 26:6, 26:8
traffic [2] - 10:4, 24:10
Transcribed [1] - 2:13
TRANSCRIPT [1] - 1:7
transcript [9] - 3:1, 3:20, 4:2, 15:19, 16:1, 24:6, 28:18, 37:3, 37:22
transgressed [1] - 19:19
travel [1] - 20:11

**trial** [2] - 35:14, 35:15
**tries** [1] - 21:4
**trodding** [1] - 16:14
**troubling** [2] - 28:23, 29:3
**true** [1] - 6:7
**truthful** [1] - 30:10
**try** [1] - 10:6
**trying** [5] - 18:12, 27:16, 35:9, 36:5, 36:6
**Tuesday** [1] - 10:14
**turn** [3] - 5:24, 6:21, 34:14
**two** [6] - 12:22, 14:23, 15:10, 21:2, 33:16, 33:25
**types** [1] - 36:20
**typically** [2] - 7:9, 19:4

**U**

**U.S.C** [2] - 17:11, 26:20
**ultimately** [1] - 34:3
**unauthorized** [1] - 24:25
**uncertain** [1] - 27:8
**under** [1] - 5:22
**underscored** [1] - 26:23
**understood** [1] - 6:18
**undocumented** [1] - 8:21
**undue** [2] - 16:17, 17:18
**unfair** [2] - 9:12, 9:21
**UNIDENTIFIED** [1] - 3:14
**UNITED** [1] - 1:1
**United** [1] - 1:11
**unrelated** [1] - 5:18
**unrepresented** [1] - 29:15
**unusual** [1] - 34:20
**up** [17] - 4:3, 8:1, 8:10, 8:15, 9:13, 9:22, 13:20, 15:9, 15:11, 18:4, 19:14, 20:19, 23:5, 26:17, 26:25, 33:8, 33:10
**urge** [1] - 35:4
**urgency** [1] - 4:9
**urgent** [1] - 4:3

**V**

**VA** [1] - 2:4
**valid** [1] - 24:14
**various** [1] - 34:2
**Verizon** [1] - 14:10
**versus** [1] - 3:5
**violating** [1] - 26:20
**violations** [1] - 17:11
**visit** [1] - 12:12
**vs** [1] - 1:6

**W**

**walk** [1] - 18:12
**wants** [1] - 32:12
**wealth** [1] - 7:9

**wear** [1] - 24:10
**week** [2] - 24:2, 34:5
**weeks** [2] - 17:3, 17:5
**West** [2] - 2:3, 2:8
**WESTERN** [1] - 1:2
**wheels** [1] - 35:8
**whole** [2] - 24:9, 28:15
**Winnick** [1] - 35:2
**witness** [12] - 8:23, 11:14, 12:17, 12:20, 12:25, 18:19, 21:7, 21:9, 30:8, 32:9, 34:23, 35:14
**witnesses** [6] - 15:10, 17:13, 22:16, 27:2, 27:11, 32:3
**workers** [7] - 9:18, 23:9, 23:11, 23:16, 23:18, 23:25, 24:18
**works** [1] - 33:5
**worry** [2] - 26:3, 30:7
**writing** [1] - 6:14
**wrote** [3] - 4:21, 10:13

**Y**

**years** [1] - 18:21
**yesterday** [11] - 8:12, 8:22, 15:17, 17:2, 18:18, 18:20, 23:13, 23:20, 24:9, 26:23, 34:1
**yield** [1] - 14:5
**York** [1] - 2:8
**yourself** [1] - 16:14

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 5:20-cv-04003-CJW-MAR   Document 104   Filed 05/18/21   Page 44 of 44