1        IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF IOWA
2                 WESTERN DIVISION

3   ANTHONY NUNES, JR.,                )
    ANTHONY NUNES III,                 )
4   AND NUSTAR FARMS, LLC,             )
                                       )
5              Plaintiffs,             )
                                       )
6        VS.                           )    20-CV-4003
                                       )
7   RYAN LIZZA AND HEARST MAGAZINE     )
    MEDIA, INC.,                       )
8                                      )
               Defendants.             )
9

10

11                    *  *  *  *  *

12

13            TELEPHONIC MOTION HEARING,

14       HELD BEFORE THE HON. MARK A. ROBERTS,

15  on the 11th day of June, 2021, at 111 Seventh Avenue

16  S.E., Cedar Rapids, Iowa, commencing at 1:59 p.m., and

17  transcribed from an audio recording by Patrice A. Murray,

18  Certified Shorthand Reporter.

19

20  Transcript Ordered:  6/11/21
    Transcript Completed:  6/14/21
21

22

23            Patrice A. Murray, CSR, RMR, FCRR
                     Court Reporter
24                    PO Box 10541
                 Cedar Rapids, Iowa 52410
25              PAMurrayReporting@gmail.com

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 1 of 41

1                          APPEARANCES:

2   ATTORNEY STEVEN SCOTT BISS, Law Office of Steven S. Biss,
    300 West Main Street, Suite 102, Charlottesville,
3   Virginia 22903, appeared on behalf of the Plaintiffs.

4   ATTORNEYS NATHANIEL S. BOYER, JONATHAN R. DONNELLAN,
    NINA N. SHAH, AND RAVI V. SITWALA, The Hearst
5   Corporation, 300 West 57th Street, 40th Floor, New York,
    New York 10019, appeared on behalf of the Defendants.

6
    ATTORNEYS MICHAEL A. GIUDICESSI AND NICHOLAS A.
7   KLINEFELDT, Faegre Drinker Biddle & Reath, 801 Grand
    Avenue, 33rd Floor, Des Moines, Iowa 50309, appeared on
8   behalf of the Defendants.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 2 of 41

     1          (The following transcript was prepared from an audio

     2     recording.)

     3                         * * * * *

     4          (The following proceedings were held in the chambers

     5     of the Hon. Mark A. Roberts.)

     6               THE COURT:  Good afternoon.  The matter before

     7     the Court is Nunes, et al., versus Lizza, et al., Number

     8     20-CV-4003.

     9          I understand, Mr. Biss, you are here for the

    10     plaintiffs?

    11               MR. BISS:  Yes, sir.

    12               THE COURT:  And for the defendants, I

    13     understand we have Mr. Donnellan, Mr. Giudicessi,

    14     Mr. Boyer, Mr. Klinefeldt, and Ms. Shah.  Did I miss

    15     anybody?

    16               MR. SITWALA:  Yes, Your Honor.  This is Ravi

    17     Sitwala, also for defendants.

    18               THE COURT:  Welcome, Mr. Sitwala.

    19          Anybody else?

    20               MR. SITWALA:  Thank you.

    21               THE COURT:  Okay.  So I know we have a lot on

    22     our agenda, and I'm actually needing to leave.  There's

    23     going to be an initial appearance for a gentleman who was

    24     involved in activities in Washington, D.C., on

    25     January 6th that I need to go meet with at 3:00 for the

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 3 of 41

```
 1    first time, so I need to leave before that.
 2        What I have in front of me is the prayer from
 3    document 103, plaintiffs' pleading that has their prayer,
 4    that has various items they're seeking in relief, and
 5    that's what I am intending to sort of use as my -- my
 6    checklist just so I make sure I don't miss any of the
 7    things that we need to visit about this afternoon.  So
 8    I'm going to let the parties know, I have read
 9    everything, I've been through it all, and, in fact, I've
10    been thinking about the dilemmas this case presents quite
11    regularly and persistently, since we seem to meet fairly
12    regularly.
13        The first item in the prayer from the plaintiffs is
14    compelling the NuStar employee deponents to comply with
15    the subpoenas duces tecum and produce the requested
16    identification documents at their depositions.  And from
17    the defendants' reply, I get the sense that the
18    defendants are in agreement that they should and are
19    willing and will provide anything that they do have,
20    although Mr. Biss represents that he's not sure how much
21    they may have; because some of them have been here for a
22    number of years, they might have -- not have original
23    documents.  So I guess it's more of my concern that,
24    given the state of counsel for these people and the
25    language barriers, et cetera, that it be conveyed to
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 4 of 41

1    these people in advance of their depositions what is

2    really being required of them, that they are to bring all

3    of these requested identification documents to their

4    deposition if they have them, that they are to make a

5    thorough inspection of every place they think they might

6    be before they get to the deposition.  And then when they

7    get there, that they can expect to be asked, "Did you

8    look for them, and is this all you found?"

9        And I don't know who's going to convey that to them.

10    Mr. Biss, I assume that might be part of one of your

11    duties, but it might also be part of counsel for these

12    people that we'll discuss here in a minute.  Is there

13    anything we -- else we need to talk about, about the

14    responses to the subpoenas duces tecum in terms of

15    production of documents?

16           MR. BOYER:  Your Honor, this is Mr. Boyer for

17    defendants.  I just -- a point of clarification, and I'm

18    almost positive these are the exact words the Court had

19    in mind.  I think you might have mixed up the parties in

20    which you were saying we're here on.  This is the

21    defendants' motion.  We were the ones who had filed the

22    prayer, but I think that's exactly what you meant, but I

23    just wanted to make sure we were all on the same page

24    here.

25           THE COURT:  Yeah, I do apologize.  I get enough

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 5 of 41

1  plaintiffs and defendants through here, that it's

2  surprising I don't make that mistake more often.  But,

3  yes, I do mean the prayer by Mr. Lizza and Hearst, is

4  what I'm going through here.  And I assume it's

5  Mr. Biss's side or perhaps their attorney who will be

6  conveying to these employees the need to bring these

7  items.

8       So let's talk about the next one, directing

9  plaintiffs' counsel, including Mr. Biss and Mr. Feller,

10  to comply with the Federal Rules of Civil Procedure and

11  Iowa Rules of Professional Conduct with respect to the

12  depositions in this case.  I'm just going to cut to the

13  chase on this.  It's not the worst conduct I've seen in a

14  deposition, Mr. Biss, but it's -- it's not helpful to me,

15  to the court reporter, or to making a good record, to do

16  things other than assert the basis of your objection.

17  You know, just asserting form of the question -- that's

18  another issue, but it doesn't always help.  I'm going to

19  ask you to endeavor in the future to avoid speaking

20  depositions [sic].  Like I tried to put before everybody,

21  what I thought was somewhat humorously, before was

22  pretend it's a courtroom, you know.  Kind of assume that

23  I'm there in the courtroom when you are making a long

24  speaking objection, and know that I'm going to tell you

25  to stop it if I hear it.  So I get that there are reasons

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 6 of 41

 1    that people feel heated or animated, but let's try to do
 2    everything we can to be as professional and just get to
 3    the nub of this.
 4         I guess, another layer of this is, this is a
 5    difficult -- this is a difficult position for those
 6    employees to be in.  Whether they've committed a crime or
 7    done something illegal with respect to their immigration
 8    status, these aren't sophisticated people who understand
 9    the American legal system.  They don't want to be in
10    front of judges, juries, lawyers, and court reporters,
11    and interpreters, and it -- it doesn't -- it's not
12    conducive -- and we'll talk more about that later
13    perhaps, but it's not really conducive to getting these
14    depositions completed to have the attorney, particularly
15    for their employer, reacting negatively to -- you know,
16    you're kind of cluing them in to what you want them to
17    do, and there's enough pressure in this circumstance that
18    we don't really need that.  And I think that's all I'm
19    going to say about the deposition conduct.  I think
20    everybody gets the point.  And everybody should follow
21    the Federal Rules of Civil Procedure.  Okay.
22         So the -- here's the $64,000 question, if anybody
23    remembers old game shows, appointing independent counsel
24    to represent the employee deponents at their depositions,
25    I've made inquiry of our clerk's office here, and we do

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 7 of 41

```
 1   have a CJA panel that when someone is facing potential
 2   criminal liability, that is a possibility for me to do.
 3   However, I understand that in this circumstance, that
 4   Mr. Biss, or perhaps it's the Nuneses, have arranged to
 5   have another lawyer or lawyers appear on behalf of these
 6   witnesses.  Is that the case, Mr. Biss?
 7           MR. BISS:  Yes, sir, it is.
 8           THE COURT:  All right.  Who is it that you've
 9   arranged to have appear?
10           MR. BISS:  I know her name is Jennifer.  I
11   don't know her full name, but I was involved in engaging
12   her; but NuStar engaged her, so she -- and she is
13   available.
14           THE COURT:  What do you mean that she is
15   available?  For us to talk to now or just available for
16   any of these depositions?
17           MR. BISS:  She's available for the depositions,
18   whenever they are scheduled.
19           THE COURT:  Okay.  I'd like you to figure out
20   who that person is and notify the Court and notify
21   opposing counsel of that today.  I know you expressed
22   some concern that whoever would be designated to
23   represent these defendants would be -- I don't know if
24   you used the word "harassed," but I don't -- encouraged
25   to assert their Fifth Amendment rights, and I don't think
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 8 of 41

1    there's -- I'm not worried about Iowa lawyers who are

2    admitted to the bar being able to vigorously assert their

3    clients' rights. I think if I were in Jennifer's

4    position and someone who knew a lot more about the

5    underlying case -- whether it was you, Mr. Biss, or

6    someone from the defendants who knew more about the

7    underlying documents and the potential jeopardy my

8    clients might face -- was calling me to talk to me about

9    that, I'm not sure I would consider that harassment. It

10    might be somewhat welcome so that I can accurately -- I

11    mean, effectively defend my clients in their depositions.

12    So that's not a worry that I have.

13        I guess another worry that someone might have and

14    I -- I obviously don't know who Jennifer is, but if she's

15    admitted to practice in Iowa courts and in federal court,

16    she certainly understands that she's governed by the Iowa

17    Rules of Professional Conduct, including Rule 32:1.8(f),

18    which provides that a lawyer shall not accept

19    compensation for representing a client from one other

20    than the client unless, (1), the client gives informed

21    consent; (2), there is no interference with the lawyer's

22    independence of professional judgment or with the

23    client-lawyer relationship; and, (3), information

24    relating to the representation of a client is protected

25    as required by 32:1.6. I assume the lawyers on this call

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 9 of 41

     1   know about this, as will Jennifer, and she will be able

     2   to do her job to assert the Fifth Amendment as she sees

     3   fit on behalf of her clients.  If it seems like that's

     4   not the case or she feels like she is being threatened or

     5   pressured by either party to do something, I'm sure

     6   she'll make that known after she's met with her -- met

     7   with her clients.  So at this point, I'm not appointing

     8   independent counsel to represent the employee deponents.

     9   That is a possibility, if this doesn't straighten up,

    10   this deposition situation.

    11        Part 4 of this says, given the extraordinary

    12   circumstances and threat of a violation of the witnesses'

    13   Fifth Amendment rights or the possibility of false

    14   testimony being provided, providing court supervision of

    15   the employee depositions as follows:  Location and time,

    16   to be held at a location identified.  I assume these are

    17   still going to be held at that law office in Sibley, as

    18   they were originally planned.

    19        Is that right, Mr. Boyer?

    20             MR. BOYER:  That is correct.  We will make

    21   arrangements for them to take place at the location

    22   there.

    23        I apologize, I tried to stay on point.  On point 3,

    24   we are -- I must note, defendants' concern -- I

    25   appreciate, of course, Your Honor's point that you expect

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 10 of 41

1  Iowa lawyers to conduct themselves in accordance with the

2  applicable rules.  I am concerned that we're going to see

3  this play -- play out again.  I mean, we -- there was --

4  there was a competent counsel once.  That counsel, very

5  tellingly, over plaintiffs' claim that that person was

6  fired -- that counsel was fired by the first witness, was

7  then never offered for any other witness, so I am -- I am

8  concerned, significantly so, that a -- an independent

9  counsel, somebody who is retained, is going to be getting

10  a message from plaintiffs to be -- that's to the extent

11  of, you know, the advice that needs to be given and, you

12  know, what ultimately needs to be put on the record here,

13  and if it doesn't come out the way (indiscernible audio),

14  then that lawyer's ultimately not going to be sticking

15  around very much longer either.

16        THE COURT:  Okay.  And I appreciate your

17  concern, Mr. Boyer.  I can see it possibly playing out

18  this way.  I did -- and I expressed this before when I

19  heard about former counsel from BrownWinick, who left

20  after the two-hour hiatus during those depositions, after

21  there had been an attempt to assert the Fifth Amendment

22  privilege, that he's out of this, that -- that is

23  troubling, and it would be even more troubling if this

24  new lawyer is similarly cowed or fired.  I think if

25  that's the case and we can't rely on counsel that's

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 11 of 41

```
 1   independent in this manner, then I can find counsel that
 2   I'm confident are independent, because we have counsel on
 3   our CJA -- Criminal Justice Act -- panel in the Northern
 4   District of Iowa, that if someone's in criminal jeopardy,
 5   I can appoint them to people who request it.  I think
 6   there's going to be practically some challenges for me,
 7   but I'm willing to do it.  If I have to go out to a
 8   courtroom -- well, I'm sorry, a conference room in Sibley
 9   and meet with each of these individual deponents, because
10   I think dragging them to a courthouse would be
11   counterproductive for a lot of reasons -- but meet with
12   them and an interpreter ex parte and explain to them, you
13   know, what they're in and why I'm willing to appoint them
14   a lawyer if they want one and what that's going to mean,
15   I can do that and I will do it.  But I'm hoping that, you
16   know, what happened at the last depositions doesn't
17   happen, and this lawyer understands -- and I'm willing to
18   convey it to her ex parte if need be -- that, you know,
19   it's her job to represent people who are potentially --
20   and I'm not saying they are, Mr. Biss, because I know
21   you've represented to me these people want to testify and
22   they're not worried about it -- but that's what this
23   process gets, is some confidence that those people when
24   they do testify, you know, if they testify and they say
25   things, that you and I and everybody can sleep at night
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 12 of 41

1  that they did that with good counsel that's independent,

2  that they weren't placing themselves in legal jeopardy.

3  I think that's hopefully something we're all trying to

4  accomplish here.  And that's why I'm doing it this way.

5  But I can -- there are other gears that I can put in

6  motion if need be, and I'm willing to do it, but let's

7  try to do it this way.

8          MR. KLINEFELDT:  Your Honor, this is Nick

9  Klinefeldt.  If I may add a point to that.

10          THE COURT:  Please do.

11          MR. KLINEFELDT:  I wanted to put out another

12  idea as well in terms of kind of a middle ground here,

13  and that would be as follows.  We fully understand and

14  expect that this new -- Jennifer will abide by the Iowa

15  ethical rules and do her very best job to be independent,

16  but I think there's another concern here, and that is

17  having counsel that is experienced and knowledgeable in

18  this area.  As the Court's already indicated, that

19  typically when this kind of thing would occur, in a

20  trial, for example, the Court wouldn't -- the Court

21  wouldn't just appoint anybody.  They would appoint

22  somebody from the Criminal Justice Act.  And I know how

23  important that is, because I'm a member of the Southern

24  District of Iowa Criminal Justice Act panel.  You have to

25  be vetted by the Court, you have to fill out

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 13 of 41

```
 1  applications, and the Court has to be comfortable that

 2  you have the requisite federal criminal experience to

 3  adequately advise your client.  And here, when it comes

 4  to Fifth Amendment issues, this is something that I've

 5  built part of a 20-year career on.  It can be a very

 6  complex situation, to not only understand the criminal

 7  statute, to understand your client's potential exposure,

 8  but also the process for asserting the Fifth Amendment,

 9  which was not followed here, as well as the scope of the

10  protection afforded by the Fifth Amendment, which is

11  often disputed.  And it's not just as simple as one or

12  two questions.  It can be much, much broader in terms of

13  what protections somebody is afforded under their Fifth

14  Amendment rights.  And we would request in that regard

15  that if -- if Jennifer is allowed to be counsel for

16  employees, that the Court, you know, have a conference or

17  a hearing to kind of, you know, vet and make sure that

18  she's going to be equipped, not just based on her

19  experience to represent these individuals, but also in

20  terms of, as the Court indicated, you know, she has the

21  requisite discovery and everything else to be able to

22  adequately do her job.  Because if that doesn't happen,

23  we are back in front of Your Honor, then we would have

24  already had made, for lack of a better term, a mess on

25  the record that may be difficult to correct.
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 14 of 41

```
1                THE COURT:  Okay.

2                MR. KLINEFELDT:  And so that would be the only

3    additional request we would make, Your Honor.

4                THE COURT:  Well, I think it's more complicated

5    than that, Mr. Klinefeldt, for a couple reasons.  One

6    being, in addition to my confidence in Iowa lawyers,

7    knowing their ethical responsibilities with respect to

8    conflicts of interest, I think they also have -- they

9    know their ethical responsibilities with respect to

10   competence.  And if they're not competent in a certain

11   area, they have to associate with someone who is.  And

12   I'm hopeful that Jennifer "unknown name" is a person who

13   realizes her ethical responsibilities in both of those

14   venues.

15        Also, people in criminal matters, they have a right

16   to pick their own attorneys, right?  And I don't know

17   that these people don't want Jennifer to represent them.

18   I see people every day who make bad decisions about --

19   well, not every day because we have lots of really good

20   lawyers in the criminal bar here, but occasionally I see

21   people who pick a worse attorney than one who would be

22   appointed for them perhaps, but that's their right too.

23   And, you know, one of the reasons that I would perhaps

24   need to make inquiry of these deponents on my own is, you

25   know, I don't know that they -- that they want attorneys
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 15 of 41

```
 1   appointed for them.  So I guess I'm not -- I appreciate
 2   your concern, but I'm not willing -- ready at this point
 3   to make that step.  And whoever is working -- talks to
 4   Jennifer -- and I assume you all will.  Once Mr. Biss has
 5   identified her, I'm sure Mr. Biss will visit with her and
 6   let her know that he's not intending to pressure her one
 7   way or the other, and that the plaintiffs don't want to
 8   pressure her one way or the other, to do what she thinks
 9   is right for her clients, and explain probably from their
10   perspective what the documents show or don't and what
11   might be the pitfalls, and she'll probably take that as
12   useful information; and similarly, a friendly call from
13   you, Mr. Klinefeldt, perhaps in the very tone you shared
14   today, about the potential pitfalls of representing
15   people in this area and your views on, you know, what the
16   jeopardy out there is for these various witnesses, may be
17   welcome for her as she, you know, both prepares to attend
18   those depositions and assesses potential conflicts and
19   whether there's a Fifth Amendment right.  And her
20   knowing, as I'm making clear today, that if she feels
21   that there is pressure one way or the other or some other
22   concern that she would like to bring to my attention
23   ex parte, I am inviting her to make that ex parte
24   communication.  I'll certainly keep a sealed record of
25   it.
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 16 of 41

```
 1              MR. KLINEFELDT:  Okay, thank you, Your Honor.
 2              THE COURT:  Okay.  So I guess that gets us to
 3   paragraph C.  Materials provided to new counsel:  That
 4   discovery regarding the NuStar employees be provided to
 5   their new counsel and that this motion and any responses,
 6   hearings, or orders regarding this motion be shared with
 7   counsel for the NuStar employees.  And, reviewing your
 8   response, Mr. Biss, perhaps I missed it, but is there an
 9   objection to that?
10              MR. BISS:  Well, Judge, my response is, I don't
11   know what they're talking about.  We have produced 5,000
12   pages of documents in discovery.  And one of the things
13   that -- and, Judge, I -- I disagree with Mr. Boyer and
14   Mr. Klinefeldt.  One of the things that they're going to
15   try to do is put pressure on this lawyer.  They're going
16   to bombard her with a ton of questions and they're going
17   to, you know, again, intimidate her into -- into either
18   making a decision not to do this, in which case then
19   they're going to come back to court and ask you to
20   appoint independent counsel, that -- that -- I'm afraid
21   that's what's going to happen.  So materials -- what
22   materials does she -- does she need?  I mean, I think
23   that's up to her.  I -- you know, at this point in time,
24   she hasn't even met with -- with any of the employees, so
25   if she needs some materials, you know, again, I'm not
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 17 of 41

```
 1   sure what she would need.  I don't know how to really
 2   respond to it, but I certainly don't feel like it would
 3   be appropriate to dump 6,000 pages of documents on her at
 4   all.  I think that's -- that's -- again, that's
 5   calculated to further defendants' desire to get her to
 6   withdraw.  It's hard enough finding somebody to -- to get
 7   involved in a case like this.  It's hard enough.  I think
 8   that's what this is designed to do, is to put pressure on
 9   her to get her to disengage.
10          THE COURT:  And I hope that's not the case.
11   I'm hoping that the point of this is to get someone who
12   is competent and informed so that they can make a --
13   their own assessment of the legal jeopardy of their
14   clients.  I'm not sure, I guess, now that Mr. Biss has
15   said that, what materials that plaintiff -- I'm sorry,
16   defendants are thinking they want to provide to the new
17   attorney.  I'm guessing it's shy of the 6,000 pages of
18   documents, perhaps documents that are related to the
19   individual defendants' potential jeopardy, whatever I9
20   forms relate to those.  It might be the concern here that
21   are -- are they going to be running afoul of a protective
22   order if they show this lawyer that.
23          What's the concern here, Mr. Boyer?
24          MR. BOYER:  Sure.  I think it would just be
25   something similar to the documents which would be shown
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 18 of 41

1   in the deposition in any event, (indiscernible audio)

2   maybe some beyond that.  The point is just, as I

3   understand, you know, from my own experience, and

4   certainly (indiscernible audio) to Mr. Klinefeldt, it's

5   very common in these situations when somebody has their

6   own individual counsel, once they've signed

7   (indiscernible audio) protective orders, to provide that

8   information to them, such that (indiscernible audio).

9           THE COURT:  I'm not -- you're --

10          MR. BISS:  I can't hear Mr. Boyer.  I'm sorry,

11  Your Honor.

12          THE COURT:  I'm having the same problem.

13          MR. BOYER:  Yes, let me -- hold on one second.

14  I will see if I can turn up my Bluetooth.  Is that

15  better, Your Honor?

16          THE COURT:  Yes, it is.

17          MR. BOYER:  Is it better?  I'm sorry.

18          THE COURT:  Yes, it's better.

19          MR. BOYER:  Okay, great.  I apologize.  Yes.

20  It would be something similar, Your Honor, to the packet

21  of materials that would constitute the exhibits at the

22  deposition, maybe some more beyond that, with the point

23  being to get the person up to speed as to (indiscernible

24  audio).  And I understand this general practice of doing

25  so is common, when individuals have counsel that they've

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 19 of 41

```
 1  retained for themselves and they're being examined by
 2  lawyers; and, of course, if that person signs a
 3  protective order, there would be no reason for them not
 4  to have it.  I would also note that this transcript of
 5  the hearing that we've had here today would certainly be
 6  of value to the new counsel, for them to consider the
 7  issues that brought -- brought us to this moment and to
 8  make sure that counsel acts (indiscernible audio).  And
 9  the last thing I would note is (indiscernible audio)
10  scratch my head and not understand Mr. Biss's concern
11  that I'm going to be lecturing or intimidating anybody to
12  do anything in particular.  We want everybody -- we want
13  the person to know the issues that their clients will be
14  facing, but ultimately, they have presumably the
15  fortitude and the judgment to make decisions that they
16  need to make and to advise their clients accordingly.
17          MR. BISS:  This is Steve Biss.  There's no need
18  for defendants' counsel to be in contact with an adverse
19  party or the adverse party's lawyer.  If they want to
20  provide deposition exhibits ahead of time, which is
21  rarely done, if they want to do that, they can do that,
22  but they don't have to be in e-mail contact with her;
23  they don't have to be in telephone contact with her; they
24  don't have to be asking her questions about her
25  representation, whether her clients understand what's
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*

1  going on.  I mean, some of the things that I've been
2  bombarded with in discovery, they don't need to do that.
3  There's no need.  The goal is to harass her and get her
4  to disengage.  There should be no -- it -- there should
5  be no need for them to have any contact with her
6  whatsoever before the depositions.  It's her job.
7           THE COURT:  Well, I -- I disa --
8           MR. BISS:  And I'm not going to have any
9  contact with her either.
10          THE COURT:  Okay, well, I disa -- you know, I
11 thought I expressed myself fairly plainly when I said I
12 disagreed with that.  When I said that, you know, if I
13 was in Jennifer's shoes, I'd -- and someone knew more
14 about the underlying case and the potential legal
15 jeopardy of my client, I'm not such a retiring or shy
16 violet that I couldn't take a call from an attorney who's
17 familiar with the case who has thoughts on it.  I
18 anticipate that the tone of the conversations, whether
19 it's Mr. Biss calling Jennifer or it's Mr. Boyer calling
20 Jennifer, it will be the same tone of discussion that
21 we've had here today, or Mr. Klinefeldt expressed, and
22 that -- you know, this isn't about browbeating.  And
23 that's why Jennifer can call me if she feels she's being
24 browbeaten or being subject to some improper influence.
25 But, you know, these are -- we're all grown-up attorneys,

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 21 of 41

1  and there's no reason we can't answer our phone and talk

2  to people who know about our cases.

3      So with respect to the materials that are to be

4  provided to this new counsel, you know, you have

5  exchanged 6,000 documents.  I don't know as though you

6  have to copy Mr. Biss on anything you want to send her

7  but at least alert him to what it is.  It may be just as

8  easy to, you know, make another copy of whatever letter

9  you're -- or e-mail you're sending to her so that he's

10 aware of what that communication is.  So anything that is

11 shared does need to be pursuant to the confidentiality

12 order.  If there's some reason that you can't share

13 something with her because of that, we need to discuss

14 that.  We can -- we can do that, or she can sign-off to

15 be subject to it if -- if need be, but I don't think

16 there's any reason that this new attorney can't be

17 provided information that will help her in discharging

18 her duties for her -- for her new clients.

19      Okay.  There's another thing perhaps on my agenda,

20 but is there anything else with respect to the current

21 motion to compel that anybody wants to bring --

22          MR. BOYER:  Your Honor, this is Mr. -- this is

23 Nathaniel Boyer, defendants.  Just a matter of potential

24 housekeeping, and this is probably just consisting of the

25 discussion we've had all along, but before Your Honor

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 22 of 41

| | |
|---|---|
| 1 | were the declarations that were submitted in support of a |
| 2 | motion, Boyer declaration, Exhibits A through L, and then |
| 3 | reply Boyer declaration.  I just want to make sure that |
| 4 | the -- I'm correct in understanding that those documents |
| 5 | are part of the evidentiary record that's been considered |
| 6 | on this motion and, to the extent necessary, I would just |
| 7 | offer them into evidence at this moment in time. |
| 8 | THE COURT:  I have considered those exhibits, |
| 9 | and they are part of the court's -- court's record at |
| 10 | this point.  I don't know as we need to formally admit |
| 11 | them otherwise.  And I -- I hesitate to ask Mr. Biss, but |
| 12 | since we've offered exhibits, are there any objections? |
| 13 | MR. BISS:  Well, Judge, I'll be succinct.  I |
| 14 | object on grounds of relevance, I object on grounds of |
| 15 | inadmissible opinion, hearsay, I want to preserve all |
| 16 | objections under the Federal Rules of Evidence, lack of |
| 17 | foundation.  And in particular, I do want to preserve the |
| 18 | argument that I had raised in the areas that this -- this |
| 19 | motion on a grand scale is an effort to -- is an effort |
| 20 | to distract from what this case is really about, and that |
| 21 | is whether or not the statements in this article are |
| 22 | truthful.  So I -- I want to be succinct and I intend -- |
| 23 | I heard Your Honor's admonishment; I intend to be |
| 24 | succinct.  Those are my objections to all of |
| 25 | his declarations and their parts. |

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 23 of 41

```
1          (Telephone rings.)
2               THE COURT:  Okay.
3               UNIDENTIFIED SPEAKER:  That's not me, Your
4      Honor.  That's not my phone.
5               THE COURT:  It wasn't mine either, but we don't
6      have to sort it out.
7          Since this isn't, you know, the trial in this
8      matter -- I understand you're potentially preserving your
9      objections, to make those at trial -- I'm going to
10     overrule them for the purposes of our hearing today to
11     the extent that the evidentiary rules apply in this
12     hearing, and I am going to consider those.
13         So is there anything else with respect to the motion
14     that you wanted to say, Mr. Boyer?
15              MR. BOYER:  No, Your Honor.  Thank you.
16              THE COURT:  Okay.  I guess I -- here in the
17     Northern District of Iowa, unlike some other places you
18     might practice, we're not big on twisting people's arms
19     to settle their cases, and I have never done that, and
20     none of the judges over here suggested that I should do
21     that for any of their cases; and Judge Williams certainly
22     hasn't reached out to me and asked me to do anything like
23     that.  So the -- the next observation I'm going to make
24     is merely that; it's just an observation.  And I'm not
25     volunteering to be involved in any sort of settlement
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 24 of 41

```
 1   discussion, and I'm not even going to ask you to even
 2   reply about what you think of my idea or my observation
 3   here, because your clients aren't even here to consider
 4   it.  But, like I said, I have been giving this case a lot
 5   of thought.  And I -- I can see how each side with
 6   competent -- very competent lawyers can spin a version of
 7   their of story that, perhaps for Mr. Lizza and Hearst,
 8   that they're the ones who are out fighting the interests
 9   of the First Amendment and doing investigative journalism
10   and presenting the truth and preserving the reporter's
11   privilege, and, you know, they're -- they're doing the
12   right thing.  And I can also hear Mr. Biss saying, well,
13   what about the poor Iowa farmers that are just trying to
14   make a living, they're just trying to, you know, make
15   milk for America's youth, things like that, you know, and
16   here they are being picked on by the big media
17   conglomerate.  I can see you doing that.  But the party
18   who we can all agree deserves some sympathy in this
19   matter are these deponents.  Now, you can both point your
20   fingers at the other about why now they might be subject
21   to these depositions, whether it was the article or the
22   lawsuit.  I don't care to resolve that at this point,
23   but, you know, I guess my observation is that this claim,
24   this lawsuit, is now kind of falling on the backs of
25   some -- some people who I think, in ordinary human
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 25 of 41

```
1   circumstances, we'd all have a great deal of sympathy for
2   them.  I see people in my courtroom all the time that
3   their only crime is an immigration violation perhaps;
4   they've been found illegally reentering two or three
5   times because they're trying to feed their family.  And I
6   think everybody in the courtroom, from the prosecutors,
7   to the defense attorneys, to everybody else, you know,
8   it's -- they're -- they're sympathetic people.  But the
9   weird way that this lawsuit has shaken out is that the
10  incentives are really -- are really troubling, that
11  Mr. Biss's clients are at the position that they're not
12  just doing what every other business in America does, and
13  that's, you know, presenting it -- or preserving the I9
14  forms and filling them out the best they can and saving
15  them.  They're not promising to the world that none of
16  these people have immigration problems, but because of
17  the way this lawsuit is shaking out, you know, they're --
18  they're sort of making a promise somewhat similar to
19  that, that, you know, there's nothing in here that could
20  make these people have any sort of immigration problems.
21  And on the other side of the coin we've got Mr. Boyer and
22  Mr. Klinefeldt, and neither of them probably particularly
23  wanted to be a federal prosecutor, who are now showing up
24  in Iowa conference rooms asking people questions that
25  could potentially put them in legal jeopardy of having
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 26 of 41

 1  committed an immigration violation.  So it's -- it's just

 2  a weird circumstance for us to have gotten to where your

 3  clients end up fighting about people you probably both,

 4  on a human level, certainly, as their employers, you care

 5  about.  You don't want to -- you know, and, Mr. Biss, I

 6  say that believing that perhaps -- that, you know, there

 7  is no reason for them to have any worry of legal

 8  jeopardy, but they're still being forced to go in front

 9  of, you know, a court reporter, potentially a judge,

10  potentially a jury, when they're not familiar with the

11  system, so it's frightening regardless of what legal

12  jeopardy they actually face.  So it's far above my pay

13  grade to speculate on what a claim like this is worth

14  monetarily.  It's farther above my pay grade to suggest

15  what it might be worth politically or financially or

16  reputationally or anything else.  But if I'm the only one

17  in a position who can suggest it to both the parties, I'm

18  willing to do that; and that is, I'm just wondering if

19  there is a way that the parties could find a way to walk

20  away from a claim that's kind of visiting this sort of

21  mess on people who don't deserve it and don't welcome it

22  and just want to work, and then, you know, go to the

23  Eighth Circuit and fight about the rest of the case that

24  Judge Williams dismissed.

25      Now, Mr. Biss, that may be completely harebrain from

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 27 of 41

```
 1  your perspective, and completely harebrain from the
 2  perspective of Hearst and Mr. Lizza, for all I know.  And
 3  again, I don't expect either of you to make any response
 4  because you don't have your clients here to talk about
 5  it, but I just thought I would throw that out as
 6  something that maybe if a third-party threw it at both
 7  sides in the room together, from my perspective, it might
 8  be something that you could consider separately with your
 9  clients, and perhaps from that ripen into something
10  that's useful for resolving this case in a way.  And
11  that -- that's my big thought for today.
12       As I said, I will make myself available to Jennifer.
13  You don't have to schedule your depositions around me,
14  but if you do want to alert me to when the depositions
15  are occurring, I'll do what I can to make myself
16  available if the need arises for questions or concerns
17  that arise in the course of those depositions.
18       Is there anything further this afternoon, Mr. Biss?
19            MR. BISS:  Judge, just one thing.  I'm going to
20  do my best to contact my client to get the name and
21  e-mail that name to opposing counsel, and I'll copy
22  Ms. Steele on that e-mail.  But if I can't reach my
23  clients today, because it's Friday -- if I can't reach
24  them for whatever reason, then -- I think Your Honor
25  knows, these people work 24 hours a day.  They're
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 28 of 41

1  (indiscernible audio) dairy virtually their whole lives.

2  If I can't reach them, I will reach them at the very

3  earliest part of this weekend, one day this weekend, and

4  get it done.  I just want to alert you to that, and

5  I don't -- because you indicated I should do it today.

6  If I can't do it today, I'm going to do it just as soon

7  as I possibly can do it.

8          THE COURT:  Okay, I appreciate that.

9      Ironically, Ms. Steele held up a sticky note that

10 said "sticky note," because she wanted to remind me to

11 talk to you all about the sticky notes.  So I've looked

12 through them.  I guess my general impression of them is

13 that they're fairly innocuous.  They might have comments

14 that relate to attorney-client privilege communication,

15 but even those strike me as fairly innocuous.  What we do

16 with -- with that, I'm not sure.

17     Mr. Biss, I think, as I -- looking back, when we

18 first started talking about the sticky notes, I

19 understand your general response to it was, you know,

20 they don't amount to anything, it's not worth the time,

21 or, you know, they don't mean anything.  Whatever it was,

22 it was -- it was not like you were super worried about

23 them.  So -- and I -- I think I can provide, with what I

24 said, to Mr. Boyer that, you know, they're probably not

25 something that's very helpful to the defendants, but if

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 29 of 41

1  we can't reach an agreement to -- one way or the other

2  to, you know, just turn them over or just forget about

3  them, then it's going to be a lot of work for everybody.

4      I've talked to Amy about the possibility of scanning

5  them in in color and then identifying each of the

6  post-its on them, then separately scanning in the

7  post-its, so that could be like after we've applied a

8  Bates stamp to them, because they're not Bates stamped.

9  We'd have to put a number on them, and then 1A for the

10  first post-it, and then 1B for the next post-it, and then

11  the next document with the post-it -- you know, it's

12  going to result in all of that for what seems is

13  something that doesn't help or hurt either side.  But

14  that's kind of where my in camera review left me.

15          MR. BISS:  Judge, this is Steve Biss.  I agree

16  with you, that the sticky notes are innocuous.

17  Obviously, they are communications at some level of

18  generality between the attorney and the client, and my

19  main concern is that there -- they are -- the lawyers for

20  the defendants argue that I've waived the attorney-client

21  privilege somehow by turning these documents over, and I

22  don't -- I don't even want to take a step down that path.

23  I don't want to get into any arguments about waiver.

24  Quite frankly, the sticky notes and the documents they're

25  attached to aren't going to change the needle I don't

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 30 of 41

```
 1   even think by a fraction.  So that's my main concern.

 2   And if that -- and if that informs some resolution of

 3   this -- because I agree with you, making copies of these,

 4   scanning them in, is just a colossal waste of time, in my

 5   view, so . . .

 6           THE COURT:  Mr. Biss, are you telling me that

 7   every one of those post-it notes is a communication

 8   either to or from the Nuneses' attorney?

 9           MR. BISS:  That's my -- that's my

10   understanding, Judge.  And I've talked to both sides --

11   both the attorney, Ms. Bahena, and the client -- and

12   that's my understanding, is these -- these were sticky

13   notes that were instructions given, and the sticky note

14   was just like Ms. Steele did.  The sticky note was

15   prepared and shown to the client and put on a particular

16   document for a particular reason.

17           THE COURT:  Okay.  Well, I mean, if that's the

18   case, then I think that answers my question, that

19   regardless of how innocuous they are, if they are --

20   you're representing to me that they are how the Nuneses

21   and their attorneys communicated about these documents,

22   that -- then they wouldn't be subject to production.

23       Mr. Boyer?

24           MR. BOYER:  Yeah, Your Honor.  I mean, the only

25   thing I would point out is that if the issue was merely
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 31 of 41

1   that plaintiffs' counsel is not concerned about these

2   documents but then just doesn't want it to constitute an

3   issue of a broader waiver, while we would, of course,

4   reserve our rights to make arguments about waiver even as

5   discovery develops (indiscernible audio) whatever we may

6   learn at the depositions of the plaintiffs (indiscernible

7   audio), I mean, we can represent that the mere production

8   of these sticky notes, he's been clear that he still

9   asserts privilege over other things, and the

10  assertions -- and the production of these sticky notes

11  would not constitute a waiver beyond the sticky notes

12  obviously themselves, so I -- I would think that

13  (indiscernible audio) just about a broader waiver, then

14  maybe we can work past that and come to that arrangement.

15          THE COURT:  Well, I'll leave that as a

16  possibility, if the two of you want to visit about it and

17  come to an agreement, but ultimately, you know, it's --

18  if it's true and I'm accepting the representation that

19  that's how they communicated with -- with one another,

20  then, if it's communication between a lawyer and a party,

21  then it's privileged and they don't have to produce them.

22  That's -- and I looked at the post-its, and that's --

23  that's conceivably true.  So I'll -- that's all I'll do

24  with those sticky notes at this point.

25          I guess the only other issue then is, do we need to

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 32 of 41

```
 1   do something with these to preserve our record on them,
 2   because right now I've got three manila folders with I
 3   think the original documents, with the original post-its
 4   on them, so you won't have a good record of what did I --
 5   of what it is that I received and reviewed before I sent
 6   it back.  And, you know, maybe just to preserve the
 7   record you're going to want to -- us to make some sort of
 8   copies of these.  I'd rather avoid it by you accepting my
 9   representation that this seems to be a dead-end, but why
10   don't you visit about this outside of my presence and see
11   and let me know the next time we get together or by
12   e-mail what you want us to do.  Otherwise, we'll just
13   hang onto them for now.
14        And I do need to leave you for today, so everybody
15   have a good weekend.
16             MR. BISS:  Thank you, Your Honor.
17             MR. BOYER:  Thank you, Your Honor.
18             THE COURT:  You're welcome.
19        (Proceedings concluded at 2:45 p.m.)
20                       * * * * *
21        (This concludes the transcription of the audio
22   recording.)
23
24
25
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 33 of 41

```
 1                    C E R T I F I C A T E

 2          I, Patrice A. Murray, a Certified Shorthand
       Reporter of the State of Iowa, do hereby certify that at
 3     the time and place heretofore indicated, a hearing was
       held before the Honorable Mark A. Roberts; that I
 4     transcribed from an audio recording to the best of my
       ability the proceedings of said hearing; and that the
 5     foregoing transcript is a true record of all proceedings
       had on the taking of said hearing at the above time and
 6     place.

 7          I further certify that I am not related to or
       employed by any of the parties to this action, and
 8     further, that I am not a relative or employee of any
       attorney or counsel employed by the parties hereto or
 9     financially interested in the action.

10        IN WITNESS WHEREOF, I have set my hand this 14th day
       of June, 2021.

11

12               /s/ Patrice A. Murray
                 Patrice A. Murray, CSR, RMR, FCRR
13               Court Reporter
                 PO Box 10541
14               Cedar Rapids, Iowa 52410

15

16

17

18

19

20

21

22

23

24

25
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 34 of 41

**$**

**$64,000** [1] - 7:22

**/**

**/s** [1] - 34:12

**1**

**1** [1] - 9:20
**10019** [1] - 2:5
**102** [1] - 2:2
**103** [1] - 4:3
**10541** [2] - 1:24, 34:13
**111** [1] - 1:15
**11th** [1] - 1:15
**14th** [1] - 34:10
**1:59** [1] - 1:16
**1A** [1] - 30:9
**1B** [1] - 30:10

**2**

**2** [1] - 9:21
**20-CV-4003** [2] - 1:6, 3:8
**20-year** [1] - 14:5
**2021** [2] - 1:15, 34:10
**22903** [1] - 2:3
**24** [1] - 28:25
**2:45** [1] - 33:19

**3**

**3** [2] - 9:23, 10:23
**300** [2] - 2:2, 2:5
**32:1.6** [1] - 9:25
**32:1.8(f** [1] - 9:17
**33rd** [1] - 2:7
**3:00** [1] - 3:25

**4**

**4** [1] - 10:11
**40th** [1] - 2:5

**5**

**5,000** [1] - 17:11
**50309** [1] - 2:7
**52410** [2] - 1:24, 34:14
**57th** [1] - 2:5

**6**

**6,000** [3] - 18:3, 18:17, 22:5

**6/11/21** [1] - 1:20
**6/14/21** [1] - 1:20
**6th** [1] - 3:25

**8**

**801** [1] - 2:7

**A**

**abide** [1] - 13:14
**ability** [1] - 34:4
**able** [3] - 9:2, 10:1, 14:21
**accept** [1] - 9:18
**accepting** [2] - 32:18, 33:8
**accomplish** [1] - 13:4
**accordance** [1] - 11:1
**accordingly** [1] - 20:16
**accurately** [1] - 9:10
**Act** [3] - 12:3, 13:22, 13:24
**action** [2] - 34:7, 34:9
**activities** [1] - 3:24
**acts** [1] - 20:8
**add** [1] - 13:9
**addition** [1] - 15:6
**additional** [1] - 15:3
**adequately** [2] - 14:3, 14:22
**admit** [1] - 23:10
**admitted** [2] - 9:2, 9:15
**admonishment** [1] - 23:23
**advance** [1] - 5:1
**adverse** [2] - 20:18, 20:19
**advice** [1] - 11:11
**advise** [2] - 14:3, 20:16
**afforded** [2] - 14:10, 14:13
**afoul** [1] - 18:21
**afraid** [1] - 17:20
**afternoon** [3] - 3:6, 4:7, 28:18
**agenda** [3] - 3:22, 22:19
**agree** [3] - 25:18, 30:15, 31:3
**agreement** [3] - 4:18, 30:1, 32:17
**ahead** [1] - 20:20
**al** [2] - 3:7
**alert** [3] - 22:7, 28:14, 29:4
**allowed** [1] - 14:15
**almost** [1] - 5:18
**Amendment** [10] - 8:25, 10:2, 10:13, 11:21, 14:4, 14:8, 14:10, 14:14, 16:19, 25:9
**America** [1] - 26:12
**America's** [1] - 25:15
**American** [1] - 7:9
**amount** [1] - 29:20
**Amy** [1] - 30:4
**AND** [4] - 1:4, 1:7, 2:4, 2:6
**animated** [1] - 7:1
**answer** [1] - 22:1

**answers** [1] - 31:18
**ANTHONY** [2] - 1:3, 1:3
**anticipate** [1] - 21:18
**apologize** [3] - 5:25, 10:23, 19:19
**appear** [2] - 8:5, 8:9
**appearance** [1] - 3:23
**APPEARANCES** [1] - 2:1
**appeared** [3] - 2:3, 2:5, 2:7
**applicable** [1] - 11:2
**applications** [1] - 14:1
**applied** [1] - 30:7
**apply** [1] - 24:11
**appoint** [2] - 12:5, 12:13, 13:21, 17:20
**appointed** [2] - 15:22, 16:1
**appointing** [2] - 7:23, 10:7
**appreciate** [4] - 10:25, 11:16, 16:1, 29:8
**appropriate** [1] - 18:3
**area** [3] - 13:18, 15:11, 16:15
**areas** [1] - 23:18
**argue** [1] - 30:20
**argument** [1] - 23:18
**arguments** [2] - 30:23, 32:4
**arise** [1] - 28:17
**arises** [1] - 28:16
**arms** [1] - 24:18
**arranged** [2] - 8:4, 8:9
**arrangement** [1] - 32:14
**arrangements** [1] - 10:21
**article** [2] - 23:21, 25:21
**assert** [5] - 6:16, 8:25, 9:2, 10:2, 11:21
**asserting** [2] - 6:17, 14:8
**assertions** [1] - 32:10
**asserts** [1] - 32:9
**assesses** [1] - 16:18
**assessment** [1] - 18:13
**associate** [1] - 15:11
**assume** [6] - 5:10, 6:4, 6:22, 9:25, 10:16, 16:4
**attached** [1] - 30:25
**attempt** [1] - 11:21
**attend** [1] - 16:17
**attention** [1] - 16:22
**ATTORNEY** [1] - 2:2
**attorney** [12] - 6:5, 7:14, 15:21, 18:17, 21:16, 22:16, 29:14, 30:18, 30:20, 31:8, 31:11, 34:8
**attorney-client** [2] - 29:14, 30:20
**attorneys** [5] - 15:16, 15:25, 21:25, 26:7, 31:21
**ATTORNEYS** [2] - 2:4, 2:6
**audio** [13] - 1:17, 3:1, 11:13, 19:1, 19:4, 19:7, 20:9, 29:1, 32:5, 32:7, 32:13, 33:21, 34:4
**audio)** [3] - 19:8, 19:24, 20:8
**available** [6] - 8:13, 8:15,

8:17, 28:12, 28:16
**Avenue** [2] - 1:15, 2:7
**avoid** [2] - 6:19, 33:8
**aware** [1] - 22:10

**B**

**backs** [1] - 25:24
**bad** [1] - 15:18
**Bahena** [1] - 31:11
**bar** [2] - 9:2, 15:20
**barriers** [1] - 4:25
**based** [1] - 14:18
**basis** [1] - 6:16
**Bates** [1] - 30:8
**BEFORE** [1] - 1:14
**behalf** [5] - 2:3, 2:5, 2:8, 8:5, 10:3
**best** [4] - 13:15, 26:14, 28:20, 34:4
**better** [4] - 14:24, 19:15, 19:17, 19:18
**between** [2] - 30:18, 32:20
**beyond** [3] - 19:2, 19:22, 32:11
**Biddle** [1] - 2:7
**big** [3] - 24:18, 25:16, 28:11
**BISS** [14] - 2:2, 3:11, 8:7, 8:10, 8:17, 17:10, 19:10, 20:17, 21:8, 23:13, 28:19, 30:15, 31:9, 33:16
**Biss** [25] - 2:2, 3:9, 4:20, 5:10, 6:9, 6:14, 8:4, 8:6, 9:5, 12:20, 16:4, 16:5, 17:8, 18:14, 20:17, 21:19, 22:6, 23:11, 25:12, 27:5, 27:25, 28:18, 29:17, 30:15, 31:6
**Biss's** [3] - 6:5, 20:10, 26:11
**Bluetooth** [1] - 19:14
**bombard** [1] - 17:16
**bombarded** [1] - 21:2
**Box** [2] - 1:24, 34:13
**Boyer** [15] - 3:14, 5:16, 10:19, 11:17, 17:13, 18:23, 19:10, 21:19, 22:23, 23:2, 23:3, 24:14, 26:21, 29:24, 31:23
**BOYER** [11] - 2:4, 5:16, 10:20, 18:24, 19:13, 19:17, 19:19, 22:22, 24:15, 31:24, 33:17
**bring** [4] - 5:2, 6:6, 16:22, 22:21
**broader** [3] - 14:12, 32:3, 32:13
**brought** [1] - 20:7
**browbeaten** [1] - 21:24
**browbeating** [1] - 21:22
**BrownWinick** [1] - 11:19
**built** [1] - 14:5

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 35 of 41

business [1] - 26:12

## C

calculated [1] - 18:5
call [4] - 9:25, 16:12, 21:16, 21:23
calling [3] - 9:8, 21:19
camera [1] - 30:14
care [2] - 25:22, 27:4
career [1] - 14:5
case [16] - 4:10, 6:12, 8:6, 9:5, 10:4, 11:25, 17:18, 18:7, 18:10, 21:14, 21:17, 23:20, 25:4, 27:23, 28:10, 31:18
cases [3] - 22:2, 24:19, 24:21
Cedar [3] - 1:16, 1:24, 34:14
certain [1] - 15:10
certainly [7] - 9:16, 16:24, 18:2, 19:4, 20:5, 24:21, 27:4
Certified [2] - 1:18, 34:2
certify [2] - 34:2, 34:7
cetera [1] - 4:25
challenges [1] - 12:6
chambers [1] - 3:4
change [1] - 30:25
Charlottesville [1] - 2:2
chase [1] - 6:13
checklist [1] - 4:6
Circuit [1] - 27:23
circumstance [3] - 7:17, 8:3, 27:2
circumstances [2] - 10:12, 26:1
Civil [2] - 6:10, 7:21
CJA [2] - 8:1, 12:3
claim [4] - 11:5, 25:23, 27:13, 27:20
clarification [1] - 5:17
clear [2] - 16:20, 32:8
clerk's [1] - 7:25
client [13] - 9:19, 9:20, 9:23, 9:24, 14:3, 21:15, 28:20, 29:14, 30:18, 30:20, 31:11, 31:15
client's [1] - 14:7
client-lawyer [1] - 9:23
clients [16] - 9:8, 9:11, 10:3, 10:7, 16:9, 18:14, 20:13, 20:16, 20:25, 22:18, 25:3, 26:11, 27:3, 28:4, 28:9, 28:23
clients' [1] - 9:3
cluing [1] - 7:16
coin [1] - 26:21
color [1] - 30:5
colossal [1] - 31:4
comfortable [1] - 14:1
commencing [1] - 1:16
comments [1] - 29:13

committed [2] - 7:6, 27:1
common [2] - 19:5, 19:25
communicated [2] - 31:21, 32:19
communication [5] - 16:24, 22:10, 29:14, 31:7, 32:20
communications [1] - 30:17
compel [1] - 22:21
compelling [1] - 4:14
compensation [1] - 9:19
competence [1] - 15:10
competent [5] - 11:4, 15:10, 18:12, 25:6
completed [1] - 7:14
Completed [1] - 1:20
completely [2] - 27:25, 28:1
complex [1] - 14:6
complicated [1] - 15:4
comply [2] - 4:14, 6:10
conceivably [1] - 32:23
concern [4] - 4:23, 8:22, 10:24, 11:17, 13:16, 16:2, 16:22, 18:20, 18:23, 20:10, 30:19, 31:1
concerned [2] - 11:2, 11:8, 32:1
concerns [1] - 28:16
concluded [1] - 33:19
concludes [1] - 33:21
conducive [2] - 7:12, 7:13
Conduct [2] - 6:11, 9:17
conduct [6] - 6:13, 7:19, 11:1
conference [3] - 12:8, 14:16, 26:24
confidence [2] - 12:23, 15:6
confident [1] - 12:2
confidentiality [1] - 22:11
conflicts [2] - 15:8, 16:18
conglomerate [1] - 25:17
consent [1] - 9:21
consider [5] - 9:9, 20:6, 24:12, 25:3, 28:8
considered [2] - 23:5, 23:8
consisting [1] - 22:24
constitute [3] - 19:21, 32:2, 32:11
contact [6] - 20:18, 20:22, 20:23, 21:5, 21:9, 28:20
conversations [1] - 21:18
convey [2] - 5:9, 12:18
conveyed [1] - 4:25
conveying [1] - 6:6
copies [2] - 31:3, 33:8
copy [3] - 22:6, 22:8, 28:21
Corporation [1] - 2:5
correct [3] - 10:20, 14:25, 23:4
counsel [30] - 4:24, 5:11, 6:9, 7:23, 8:21, 10:8, 11:4, 11:6, 11:9, 11:19, 11:25, 12:1,

12:2, 13:1, 13:17, 14:15, 17:3, 17:5, 17:7, 17:20, 19:6, 19:25, 20:6, 20:8, 20:18, 22:4, 28:21, 32:1, 34:8
counterproductive [1] - 12:11
couple [1] - 15:5
course [4] - 10:25, 20:2, 28:17, 32:3
COURT [30] - 1:1, 3:6, 3:12, 3:17, 3:21, 5:25, 8:8, 8:14, 8:19, 11:16, 13:10, 15:1, 15:4, 17:2, 18:10, 19:9, 19:12, 19:16, 19:18, 21:7, 21:10, 23:8, 24:2, 24:5, 24:16, 29:8, 31:6, 31:17, 32:15, 33:18
court [6] - 6:15, 7:10, 9:15, 10:14, 17:19, 27:9
Court [11] - 1:23, 3:7, 5:18, 8:20, 13:20, 13:25, 14:1, 14:16, 14:20, 34:13
Court's [1] - 13:18
court's [2] - 23:9
courthouse [1] - 12:10
courtroom [5] - 6:22, 6:23, 12:8, 26:2, 26:6
courts [1] - 9:15
cowed [1] - 11:24
crime [2] - 7:6, 26:3
Criminal [3] - 12:3, 13:22, 13:24
criminal [6] - 8:2, 12:4, 14:2, 14:6, 15:15, 15:20
CSR [2] - 1:23, 34:12
current [1] - 22:20
cut [1] - 6:12

## D

D.C [1] - 3:24
dairy [1] - 29:1
dead [1] - 33:9
dead-end [1] - 33:9
deal [1] - 26:1
decision [1] - 17:18
decisions [2] - 15:18, 20:15
declaration [2] - 23:2, 23:3
declarations [2] - 23:1, 23:25
defend [1] - 9:11
defendants [11] - 3:12, 3:17, 4:18, 5:17, 6:1, 8:23, 9:6, 18:16, 22:23, 29:25, 30:20
Defendants [3] - 1:5, 2:5, 2:8
defendants' [6] - 4:17, 5:21, 10:24, 18:5, 18:19, 20:18
defense [1] - 26:7
deponents [4] - 4:14, 7:24, 10:8, 12:9, 15:24, 25:19
deposition [8] - 5:4, 5:6,

6:14, 7:19, 10:10, 19:1, 19:22, 20:20
depositions [19] - 4:16, 5:1, 6:12, 6:20, 7:14, 7:24, 8:16, 8:17, 9:11, 10:15, 11:20, 12:16, 16:18, 21:6, 25:21, 28:13, 28:14, 28:17, 32:6
Des [1] - 2:7
deserve [1] - 27:21
deserves [1] - 25:18
designated [1] - 8:22
designed [1] - 18:8
desire [1] - 18:5
develops [1] - 32:5
difficult [3] - 7:5, 14:25
dilemmas [1] - 4:10
directing [1] - 6:8
disa [1] - 21:7, 21:10
disagree [1] - 17:13
disagreed [1] - 21:12
discharging [1] - 22:17
discovery [5] - 14:21, 17:4, 17:12, 21:2, 32:5
discuss [2] - 5:12, 22:13
discussion [3] - 21:20, 22:25, 25:1
disengage [2] - 18:9, 21:4
dismissed [1] - 27:24
disputed [1] - 14:11
distract [1] - 23:20
District [3] - 12:4, 13:24, 24:17
DISTRICT [2] - 1:1, 1:1
DIVISION [1] - 1:2
document [3] - 4:3, 30:11, 31:16
documents [18] - 4:16, 4:23, 5:3, 5:15, 9:7, 16:10, 17:12, 18:3, 18:18, 18:25, 22:5, 23:4, 30:21, 30:24, 31:21, 32:2, 33:3
done [4] - 7:7, 20:21, 24:19, 29:4
DONNELLAN [1] - 2:4
Donnellan [1] - 3:13
down [1] - 30:22
dragging [1] - 12:10
Drinker [1] - 2:7
duces [2] - 4:15, 5:14
dump [1] - 18:3
during [1] - 11:20
duties [2] - 5:11, 22:18

## E

e-mail [5] - 20:22, 22:9, 28:21, 28:22, 33:12
earliest [1] - 29:3
easy [1] - 22:8
effectively [1] - 9:11

**effort** [2] - 23:19
**Eighth** [1] - 27:23
**either** [8] - 10:5, 11:15, 17:17, 21:9, 24:5, 28:3, 30:13, 31:8
**employed** [2] - 34:7, 34:8
**employee** [5] - 4:14, 7:24, 10:8, 10:15, 34:8
**employees** [6] - 6:6, 7:6, 14:16, 17:4, 17:7, 17:24
**employer** [1] - 7:15
**employers** [1] - 27:4
**encouraged** [1] - 8:24
**end** [2] - 27:3, 33:9
**endeavor** [1] - 6:19
**engaged** [1] - 8:12
**engaging** [1] - 8:11
**equipped** [1] - 14:18
**et** [3] - 3:7, 4:25
**ethical** [4] - 13:15, 15:7, 15:9, 15:13
**event** [1] - 19:1
**Evidence** [1] - 23:16
**evidence** [1] - 23:7
**evidentiary** [2] - 23:5, 24:11
**ex** [4] - 12:12, 12:18, 16:23
**exact** [1] - 5:18
**exactly** [1] - 5:22
**examined** [1] - 20:1
**example** [1] - 13:20
**exchanged** [1] - 22:5
**exhibits** [4] - 19:21, 20:20, 23:8, 23:12
**Exhibits** [1] - 23:2
**expect** [4] - 5:7, 10:25, 13:14, 28:3
**experience** [3] - 14:2, 14:19, 19:3
**experienced** [1] - 13:17
**explain** [2] - 12:12, 16:9
**exposure** [1] - 14:7
**expressed** [4] - 8:21, 11:18, 21:11, 21:21
**extent** [3] - 11:10, 23:6, 24:11
**extraordinary** [1] - 10:11

## F

**face** [2] - 9:8, 27:12
**facing** [2] - 8:1, 20:14
**fact** [1] - 4:9
**Faegre** [1] - 2:7
**fairly** [4] - 4:11, 21:11, 29:13, 29:15
**falling** [1] - 25:24
**false** [1] - 10:13
**familiar** [2] - 21:17, 27:10
**family** [1] - 26:5
**far** [1] - 27:12

**farmers** [1] - 25:13
**FARMS** [1] - 1:4
**FCRR** [2] - 1:23, 34:12
**Federal** [3] - 6:10, 7:21, 23:16
**federal** [3] - 9:15, 14:2, 26:23
**feed** [1] - 26:5
**feel** [2] - 7:1, 18:2
**feels** [3] - 10:4, 16:20, 21:23
**Feller** [1] - 6:9
**Fifth** [9] - 8:25, 10:2, 10:13, 11:21, 14:4, 14:8, 14:10, 14:13, 16:19
**fight** [1] - 27:23
**fighting** [2] - 25:8, 27:3
**figure** [1] - 8:19
**filed** [1] - 5:21
**fill** [1] - 13:25
**filling** [1] - 26:14
**financially** [2] - 27:15, 34:9
**find** [2] - 12:1, 27:19
**finding** [1] - 18:6
**fingers** [1] - 25:20
**fired** [3] - 11:6, 11:24
**First** [1] - 25:9
**first** [5] - 4:1, 4:13, 11:6, 29:18, 30:10
**fit** [1] - 10:3
**Floor** [2] - 2:5, 2:7
**folders** [1] - 33:2
**follow** [1] - 7:20
**followed** [1] - 14:9
**following** [2] - 3:1, 3:4
**follows** [2] - 10:15, 13:13
**FOR** [1] - 1:1
**forced** [1] - 27:8
**foregoing** [1] - 34:5
**forget** [1] - 30:2
**form** [1] - 6:17
**formally** [1] - 23:10
**former** [1] - 11:19
**forms** [2] - 18:20, 26:14
**fortitude** [1] - 20:15
**foundation** [1] - 23:17
**fraction** [1] - 31:1
**frankly** [1] - 30:24
**Friday** [1] - 28:23
**friendly** [1] - 16:12
**frightening** [1] - 27:11
**front** [4] - 4:2, 7:10, 14:23, 27:8
**full** [1] - 8:11
**fully** [1] - 13:13
**future** [1] - 6:19

## G

**game** [1] - 7:23
**gears** [1] - 13:5
**general** [3] - 19:24, 29:12,
29:19
**generality** [1] - 30:18
**gentleman** [1] - 3:23
**get** [16] - 4:17, 5:6, 5:7, 5:25, 6:25, 7:2, 18:5, 18:6, 18:9, 18:11, 19:23, 21:3, 28:20, 29:4, 30:23, 33:11
**gets** [3] - 7:20, 12:23, 17:2
**getting** [2] - 7:13, 11:9
**Giudicessi** [1] - 3:13
**GIUDICESSI** [1] - 2:6
**given** [4] - 4:24, 10:11, 11:11, 31:13
**gives** [1] - 9:20
**giving** [1] - 25:4
**goal** [1] - 21:3
**governed** [1] - 9:16
**grade** [2] - 27:13, 27:14
**Grand** [1] - 2:7
**grand** [1] - 23:19
**great** [2] - 19:19, 26:1
**ground** [1] - 13:12
**grounds** [1] - 23:14
**grown** [1] - 21:25
**grown-up** [1] - 21:25
**guess** [10] - 4:23, 7:4, 9:13, 16:1, 17:2, 18:14, 24:16, 25:23, 29:12, 32:25
**guessing** [1] - 18:17

## H

**hand** [1] - 34:10
**hang** [1] - 33:13
**happen** [3] - 12:17, 14:22, 17:21
**happened** [1] - 12:16
**harass** [1] - 21:3
**harassed** [1] - 8:24
**harassment** [1] - 9:9
**hard** [2] - 18:6, 18:7
**harebrain** [2] - 27:25, 28:1
**head** [1] - 20:10
**hear** [3] - 6:25, 19:10, 25:12
**heard** [2] - 11:19, 23:23
**hearing** [7] - 14:17, 20:5, 24:10, 24:12, 34:3, 34:4, 34:5
**HEARING** [1] - 1:13
**hearings** [1] - 17:6
**hearsay** [1] - 23:15
**HEARST** [1] - 1:7
**Hearst** [4] - 2:4, 6:3, 25:7, 28:2
**heated** [1] - 7:1
**held** [5] - 3:4, 10:16, 10:17, 29:9, 34:3
**HELD** [1] - 1:14
**help** [3] - 6:18, 22:17, 30:13
**helpful** [2] - 6:14, 29:25
**hereby** [1] - 34:2

**hereto** [1] - 34:8
**heretofore** [1] - 34:3
**hesitate** [1] - 23:11
**hiatus** [1] - 11:20
**hold** [1] - 19:13
**HON** [1] - 1:14
**Hon** [1] - 3:5
**Honor** [17] - 3:16, 5:16, 13:8, 14:23, 15:3, 17:1, 19:11, 19:15, 19:20, 22:22, 22:25, 24:4, 24:15, 28:24, 31:24, 33:16, 33:17
**Honor's** [2] - 10:25, 23:23
**Honorable** [1] - 34:3
**hope** [1] - 18:10
**hopeful** [1] - 15:12
**hopefully** [1] - 13:3
**hoping** [2] - 12:15, 18:11
**hour** [1] - 11:20
**hours** [1] - 28:25
**housekeeping** [1] - 22:24
**human** [2] - 25:25, 27:4
**humorously** [1] - 6:21
**hurt** [1] - 30:13

## I

**I9** [2] - 18:19, 26:13
**idea** [2] - 13:12, 25:2
**identification** [2] - 4:16, 5:3
**identified** [2] - 10:16, 16:5
**identifying** [1] - 30:5
**III** [1] - 1:3
**illegal** [1] - 7:7
**illegally** [1] - 26:4
**immigration** [5] - 7:7, 26:3, 26:16, 26:20, 27:1
**important** [1] - 13:23
**impression** [1] - 29:12
**improper** [1] - 21:24
**IN** [2] - 1:1, 34:10
**inadmissible** [1] - 23:15
**INC** [1] - 1:7
**incentives** [1] - 26:10
**including** [2] - 6:9, 9:17
**independence** [1] - 9:22
**independent** [8] - 7:23, 10:8, 11:8, 12:1, 12:2, 13:1, 13:15, 17:20
**indicated** [4] - 13:18, 14:20, 29:5, 34:3
**indiscernible** [12] - 11:13, 19:1, 19:4, 19:7, 19:8, 19:23, 20:8, 20:9, 29:1, 32:5, 32:6, 32:13
**individual** [3] - 12:9, 18:19, 19:6
**individuals** [2] - 14:19, 19:25
**influence** [1] - 21:24
**information** [4] - 9:23, 16:12,

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 37 of 41

19:8, 22:17
**informed** [2] - 9:20, 18:12
**informs** [1] - 31:2
**initial** - 3:23
**innocuous** [4] - 29:13, 29:15, 30:16, 31:19
**inquiry** [2] - 7:25, 15:24
**inspection** [1] - 5:5
**instructions** [1] - 31:13
**intend** - 23:22, 23:23
**intending** [2] - 4:5, 16:6
**interest** [1] - 15:8
**interested** [1] - 34:9
**interests** [1] - 25:8
**interference** [1] - 9:21
**interpreter** [1] - 12:12
**interpreters** [1] - 7:11
**intimidate** [1] - 17:17
**intimidating** [1] - 20:11
**investigative** [1] - 25:9
**inviting** [1] - 16:23
**involved** [4] - 3:24, 8:11, 18:7, 24:25
**IOWA** [1] - 1:1
**Iowa** [17] - 1:16, 1:24, 2:7, 6:11, 9:1, 9:15, 9:16, 11:1, 12:4, 13:14, 13:24, 15:6, 24:17, 25:13, 26:24, 34:2, 34:14
**ironically** [1] - 29:9
**issue** [4] - 6:18, 31:25, 32:3, 32:25
**issues** [3] - 14:4, 20:7, 20:13
**item** [1] - 4:13
**items** [2] - 4:4, 6:7

**J**

**January** [1] - 3:25
**Jennifer** [12] - 8:10, 9:14, 10:1, 13:14, 14:15, 15:12, 15:17, 16:4, 21:19, 21:20, 21:23, 28:12
**Jennifer's** [2] - 9:3, 21:13
**jeopardy** [1] - 9:7, 12:4, 13:2, 16:16, 18:13, 18:19, 21:15, 26:25, 27:8, 27:12
**job** [5] - 10:2, 12:19, 13:15, 14:22, 21:6
**JONATHAN** [1] - 2:4
**journalism** [1] - 25:9
**JR** [1] - 1:3
**judge** [3] - 27:9, 28:19, 30:15
**Judge** [6] - 17:10, 17:13, 23:13, 24:21, 27:24, 31:10
**judges** [2] - 7:10, 24:20
**judgment** [2] - 9:22, 20:15
**June** [2] - 1:15, 34:10
**juries** [1] - 7:10
**jury** [1] - 27:10

**Justice** [3] - 12:3, 13:22, 13:24

**K**

**keep** [1] - 16:24
**kind** [6] - 6:22, 7:16, 13:12, 13:19, 14:17, 25:24, 27:20, 30:14
**Klinefeldt** [8] - 3:14, 13:9, 15:5, 16:13, 17:14, 19:4, 21:21, 26:22
**KLINEFELDT** [5] - 2:7, 13:8, 13:11, 15:2, 17:1
**knowing** [2] - 15:7, 16:20
**knowledgeable** [1] - 13:17
**known** [1] - 10:6
**knows** [1] - 28:25

**L**

**lack** [2] - 14:24, 23:16
**language** [1] - 4:25
**last** [2] - 12:16, 20:9
**Law** [1] - 2:2
**law** [1] - 10:17
**lawsuit** [4] - 25:22, 25:24, 26:9, 26:17
**lawyer** [10] - 8:5, 9:18, 9:23, 11:24, 12:14, 12:17, 17:15, 18:22, 20:19, 32:20
**lawyer's** [2] - 9:21, 11:14
**lawyers** [10] - 7:10, 8:5, 9:1, 9:25, 11:1, 15:6, 15:20, 20:2, 25:6, 30:19
**layer** [1] - 7:4
**learn** [1] - 32:6
**least** [1] - 22:7
**leave** [4] - 3:22, 4:1, 32:15, 33:14
**lecturing** [1] - 20:11
**left** [2] - 11:19, 30:14
**legal** [7] - 7:9, 13:2, 18:13, 21:14, 26:25, 27:7, 27:11
**letter** [1] - 22:8
**level** [2] - 27:4, 30:17
**liability** [1] - 8:2
**lives** [1] - 29:1
**living** [1] - 25:14
**LIZZA** [1] - 1:7
**Lizza** [4] - 3:7, 6:3, 25:7, 28:2
**LLC** [1] - 1:4
**location** [3] - 10:15, 10:16, 10:21
**look** [1] - 5:8
**looked** [1] - 29:11, 32:22
**looking** [1] - 29:17

**M**

**made** [2] - 7:25, 14:24
**MAGAZINE** [1] - 1:7
**mail** [5] - 20:22, 22:9, 28:21, 28:22, 33:12
**Main** [1] - 2:2
**main** [2] - 30:19, 31:1
**make** [28] - 4:6, 5:4, 5:23, 6:2, 10:6, 10:20, 14:17, 15:3, 15:18, 15:24, 16:3, 16:23, 18:12, 20:8, 20:15, 20:16, 22:8, 23:3, 24:9, 24:23, 25:14, 26:20, 28:3, 28:12, 28:15, 32:4, 33:7
**making** [6] - 6:15, 6:23, 16:20, 17:18, 26:18, 31:3
**manila** [1] - 33:2
**manner** [1] - 12:1
**Mark** [2] - 3:5, 34:3
**MARK** [1] - 1:14
**materials** [7] - 17:3, 17:21, 17:22, 17:25, 18:15, 19:21, 22:3
**matter** [4] - 3:6, 22:23, 24:8, 25:19
**matters** [1] - 15:15
**mean** [11] - 6:3, 8:14, 9:11, 11:3, 12:14, 17:22, 21:1, 29:21, 31:17, 31:24, 32:7
**meant** [1] - 5:22
**media** [1] - 25:16
**MEDIA** [1] - 1:7
**meet** [4] - 3:25, 4:11, 12:9, 12:11
**member** [1] - 13:23
**mere** [1] - 32:7
**merely** [2] - 24:24, 31:25
**mess** [2] - 14:24, 27:21
**message** [1] - 11:10
**met** [3] - 10:6, 17:24
**MICHAEL** [1] - 2:6
**middle** [1] - 13:12
**might** [15] - 4:22, 5:5, 5:10, 5:11, 5:19, 9:8, 9:10, 9:13, 16:11, 18:20, 24:18, 25:20, 27:15, 28:7, 29:13
**milk** [1] - 25:15
**mind** [1] - 5:19
**mine** [1] - 24:5
**minute** [1] - 5:12
**miss** [2] - 3:14, 4:6
**missed** [1] - 17:8
**mistake** [1] - 6:2
**mixed** [1] - 5:19
**Moines** [1] - 2:7
**moment** [2] - 20:7, 23:7
**monetarily** [1] - 27:14
**MOTION** [1] - 1:13
**motion** [9] - 5:21, 13:6, 17:5,

17:6, 22:21, 23:2, 23:6, 23:19, 24:13
**MR** [29] - 3:11, 3:16, 3:20, 5:16, 8:7, 8:10, 8:17, 10:20, 13:8, 13:11, 15:2, 17:1, 17:10, 18:24, 19:10, 19:13, 19:17, 19:19, 20:17, 21:8, 22:22, 23:13, 24:15, 28:19, 30:15, 31:9, 31:24, 33:16, 33:17
**Murray** [5] - 1:17, 1:23, 34:2, 34:12, 34:12
**must** [1] - 10:24

**N**

**name** [5] - 8:10, 8:11, 15:12, 28:20, 28:21
**NATHANIEL** [1] - 2:4
**Nathaniel** [1] - 22:23
**necessary** [1] - 23:6
**need** [23] - 3:25, 4:1, 4:7, 5:13, 6:6, 7:18, 12:18, 13:6, 15:24, 17:22, 18:1, 20:16, 20:17, 21:2, 21:3, 21:5, 22:11, 22:13, 22:15, 23:10, 28:16, 32:25, 33:14
**needing** [1] - 3:22
**needle** [1] - 30:25
**needs** [3] - 11:11, 11:12, 17:25
**negatively** [1] - 7:15
**never** [2] - 11:7, 24:19
**New** [2] - 2:5, 2:5
**new** [9] - 11:24, 13:14, 17:3, 17:5, 18:16, 20:6, 22:4, 22:16, 22:18
**next** [5] - 6:8, 24:23, 30:10, 30:11, 33:11
**NICHOLAS** [1] - 2:6
**Nick** [1] - 13:8
**night** [1] - 12:25
**NINA** [1] - 2:4
**none** [2] - 24:20, 26:15
**NORTHERN** [1] - 1:1
**Northern** [2] - 12:3, 24:17
**note** [7] - 10:24, 20:4, 20:9, 29:9, 29:10, 31:13, 31:14
**notes** [10] - 29:11, 29:18, 30:16, 30:24, 31:7, 31:13, 32:8, 32:10, 32:11, 32:24
**nothing** [1] - 26:19
**notify** [2] - 8:20
**nub** [1] - 7:3
**Number** [1] - 3:7
**number** [2] - 4:22, 30:9
**NUNES** [2] - 1:3, 1:3
**Nunes** [1] - 3:7
**Nuneses** [2] - 8:4, 31:20
**Nuneses'** [1] - 31:8
**NuStar** [4] - 4:14, 8:12, 17:4,

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 38 of 41

17:7
 NUSTAR [1] - 1:4

## O

object [2] - 23:14
objection [3] - 6:16, 6:24, 17:9
objections [4] - 23:12, 23:16, 23:24, 24:9
observation [4] - 24:23, 24:24, 25:2, 25:23
obviously [3] - 9:14, 30:17, 32:12
occasionally [1] - 15:20
occur [1] - 13:19
occurring [1] - 28:15
OF [1] - 1:1
offer [1] - 23:7
offered [2] - 11:7, 23:12
Office [1] - 2:2
office [2] - 7:25, 10:17
often [2] - 6:2, 14:11
old [1] - 7:23
once [3] - 11:4, 16:4, 19:6
one [20] - 5:10, 6:8, 9:19, 12:14, 14:11, 15:5, 15:21, 15:23, 16:6, 16:8, 16:21, 17:12, 17:14, 19:13, 27:16, 28:19, 29:3, 30:1, 31:7, 32:19
ones [2] - 5:21, 25:8
opinion [1] - 23:15
opposing [2] - 8:21, 28:21
order [3] - 18:22, 20:3, 22:12
Ordered [1] - 1:20
orders [2] - 17:6, 19:7
ordinary [1] - 25:25
original [3] - 4:22, 33:3
originally [1] - 10:18
otherwise [2] - 23:11, 33:12
outside [1] - 33:10
overrule [1] - 24:10
own [5] - 15:16, 15:24, 18:13, 19:3, 19:6

## P

p.m [2] - 1:16, 33:19
packet [1] - 19:20
page [1] - 5:23
pages [3] - 17:12, 18:3, 18:17
PAMurrayReporting@gmail.com [1] - 1:25
panel [3] - 8:1, 12:3, 13:24
paragraph [1] - 17:3
part [7] - 5:10, 5:11, 10:11, 14:5, 23:5, 23:9, 29:3
parte [4] - 12:12, 12:18,

16:23
 particular [4] - 20:12, 23:17, 31:15, 31:16
particularly [2] - 7:14, 26:22
parties [6] - 4:8, 5:19, 27:17, 27:19, 34:7, 34:8
parts [1] - 23:25
party [5] - 10:5, 20:19, 25:17, 28:6, 32:20
party's [1] - 20:19
past [1] - 32:14
path [1] - 30:22
Patrice [5] - 1:17, 1:23, 34:2, 34:12, 34:12
pay [2] - 27:12, 27:14
people [24] - 4:24, 5:1, 5:12, 7:1, 7:8, 12:5, 12:19, 12:21, 12:23, 15:15, 15:17, 15:18, 15:21, 16:15, 22:2, 25:25, 26:2, 26:8, 26:16, 26:20, 26:24, 27:3, 27:21, 28:25
people's [1] - 24:18
perhaps [13] - 6:5, 7:13, 8:4, 15:22, 15:23, 16:13, 17:8, 18:18, 22:19, 25:7, 26:3, 27:6, 28:9
persistently [1] - 4:11
person [6] - 8:20, 11:5, 15:12, 19:23, 20:2, 20:13
perspective [4] - 16:10, 28:1, 28:2, 28:7
phone [2] - 22:1, 24:4
pick [2] - 15:16, 15:21
picked [1] - 25:16
pitfalls [2] - 16:11, 16:14
place [4] - 5:5, 10:21, 34:3, 34:6
places [1] - 24:17
placing [1] - 13:2
plainly [1] - 21:11
plaintiff [1] - 18:15
Plaintiffs [1] - 2:3
plaintiffs [7] - 1:5, 3:10, 4:13, 6:1, 11:10, 16:7, 32:6
plaintiffs' [4] - 4:3, 6:9, 11:5, 32:1
planned [1] - 10:18
play [1] - 11:3
playing [1] - 11:17
pleading [1] - 4:3
PO [1] - 1:24, 34:13
point [17] - 5:17, 7:20, 10:7, 10:23, 10:25, 13:9, 16:2, 17:23, 18:11, 19:2, 19:22, 23:10, 25:19, 25:22, 31:25, 32:24
politically [1] - 27:15
poor [1] - 25:13
position [4] - 7:5, 9:4, 26:11, 27:17
positive [1] - 5:18

possibility [5] - 8:2, 10:9, 10:13, 30:4, 32:16
possibly [2] - 11:17, 29:7
post [8] - 30:6, 30:7, 30:10, 30:11, 31:7, 32:22, 33:3
post-it [4] - 30:10, 30:11, 31:7
post-its [3] - 30:6, 30:7, 32:22, 33:3
potential [8] - 8:1, 9:7, 14:7, 16:14, 16:18, 18:19, 21:14, 22:23
potentially [5] - 12:19, 24:8, 26:25, 27:9, 27:10
practically [1] - 12:6
practice [3] - 9:15, 19:24, 24:18
prayer [4] - 4:2, 4:3, 4:13, 5:22, 6:3
prepared [3] - 3:1, 31:15
prepares [1] - 16:17
presence [1] - 33:10
presenting [2] - 25:10, 26:13
presents [1] - 4:10
preserve [3] - 23:15, 23:17, 33:1, 33:6
preserving [3] - 24:8, 25:10, 26:13
pressure [6] - 7:17, 16:6, 16:8, 16:21, 17:15, 18:8
pressured [1] - 10:5
presumably [2] - 20:14
pretend [1] - 6:22
privilege [5] - 11:22, 25:11, 29:14, 30:21, 32:9
privileged [1] - 32:21
problem [1] - 19:12
problems [2] - 26:16, 26:20
Procedure [2] - 6:10, 7:21
proceedings [3] - 3:4, 34:4, 34:5
Proceedings [1] - 33:19
process [2] - 12:23, 14:8
produce [2] - 4:15, 32:21
produced [1] - 17:11
production [4] - 5:15, 31:22, 32:7, 32:10
professional [2] - 7:2, 9:22
Professional [2] - 6:11, 9:17
promise [1] - 26:18
promising [1] - 26:15
prosecutor [1] - 26:23
prosecutors [1] - 26:6
protected [1] - 9:24
protection [1] - 14:10
protections [1] - 14:13
protective [3] - 18:21, 19:7, 20:3
provide [5] - 4:19, 18:16, 19:7, 20:20, 29:23
provided [5] - 10:14, 17:3,

17:4, 22:4, 22:17
 provides [1] - 9:18
providing [1] - 10:14
purposes [1] - 24:10
pursuant [1] - 22:11
put [9] - 6:20, 11:12, 13:5, 13:11, 17:15, 18:8, 26:25, 30:9, 31:15

## Q

questions [5] - 14:12, 17:16, 20:24, 26:24, 28:16
quite [2] - 4:10, 30:24

## R

raised [1] - 23:18
Rapids [3] - 1:16, 1:24, 34:14
rarely [1] - 20:21
rather [1] - 33:8
RAVI [1] - 2:4
Ravi [1] - 3:16
reach [5] - 28:22, 28:23, 29:2, 30:1
reached [1] - 24:22
reacting [1] - 7:15
read [1] - 4:8
ready [1] - 16:2
realizes [1] - 15:13
really [8] - 5:2, 7:13, 7:18, 15:19, 18:1, 23:20, 26:10
reason [7] - 20:3, 22:1, 22:12, 22:16, 27:7, 28:24, 31:16
reasons [4] - 6:25, 12:11, 15:5, 15:23
Reath [1] - 2:7
received [1] - 33:5
record [10] - 6:15, 11:12, 14:25, 16:24, 23:5, 23:9, 33:1, 33:4, 33:7, 34:5
recording [4] - 1:17, 3:2, 33:22, 34:4
reentering [1] - 26:4
regard [1] - 14:14
regarding [2] - 17:4, 17:6
regardless [2] - 27:11, 31:19
regularly [2] - 4:11, 4:12
relate [2] - 18:20, 29:14
related [2] - 18:18, 34:7
relating [1] - 9:24
relationship [1] - 9:23
relative [1] - 34:8
relevance [1] - 23:14
relief [1] - 4:4
rely [1] - 11:25
remembers [1] - 7:23

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 39 of 41

**remind** [1] - 29:10
**reply** [3] - 4:17, 23:3, 25:2
**Reporter** [4] - 1:18, 1:23, 34:2, 34:13
**reporter** [2] - 6:15, 27:9
**reporter's** [1] - 25:10
**reporters** [1] - 7:10
**represent** [7] - 7:24, 8:23, 10:8, 12:19, 14:19, 15:17, 32:7
**representation** [4] - 9:24, 20:25, 32:18, 33:9
**represented** [1] - 12:21
**representing** [3] - 9:19, 16:14, 31:20
**represents** [1] - 4:20
**reputationally** [1] - 27:16
**request** [3] - 12:5, 14:14, 15:3
**requested** [2] - 4:15, 5:3
**required** [2] - 5:2, 9:25
**requisite** [1] - 14:2, 14:21
**reserve** [1] - 32:4
**resolution** [1] - 31:2
**resolve** [1] - 25:22
**resolving** [1] - 28:10
**respect** [7] - 6:11, 7:7, 15:7, 15:9, 22:3, 22:20, 24:13
**respond** [1] - 18:2
**response** [4] - 17:8, 17:10, 28:3, 29:19
**responses** [2] - 5:14, 17:5
**responsibilities** [3] - 15:7, 15:9, 15:13
**rest** [1] - 27:23
**result** [1] - 30:12
**retained** [2] - 11:9, 20:1
**retiring** [1] - 21:15
**review** [1] - 30:14
**reviewed** [1] - 33:5
**reviewing** [1] - 17:7
**rights** [5] - 8:25, 9:3, 10:13, 14:14, 32:4
**rings** [1] - 24:1
**ripen** [1] - 28:9
**RMR** [2] - 1:23, 34:12
**Roberts** [2] - 3:5, 34:3
**ROBERTS** [1] - 1:14
**room** [2] - 12:8, 28:7
**rooms** [1] - 26:24
**Rule** [1] - 9:17
**rules** [3] - 11:2, 13:15, 24:11
**Rules** [5] - 6:10, 6:11, 7:21, 9:17, 23:16
**running** [1] - 18:21
**RYAN** [1] - 1:7

**S**

**S.E** [1] - 1:16

**saving** [1] - 26:14
**scale** [1] - 23:19
**scanning** [3] - 30:4, 30:6, 31:4
**schedule** [1] - 28:13
**scheduled** [1] - 8:18
**scope** [1] - 14:9
**SCOTT** [1] - 2:2
**scratch** [1] - 20:10
**sealed** [1] - 16:24
**second** [1] - 19:13
**see** [9] - 11:2, 11:17, 15:18, 15:20, 19:14, 25:5, 25:17, 26:2, 33:10
**seeking** [1] - 4:4
**seem** [1] - 4:11
**sees** [1] - 10:2
**send** [1] - 22:6
**sending** [1] - 22:9
**sense** [1] - 4:17
**sent** [1] - 33:5
**separately** [2] - 28:8, 30:6
**set** [1] - 34:10
**settle** [1] - 24:19
**settlement** [1] - 24:25
**Seventh** [1] - 1:15
**Shah** [1] - 3:14
**SHAH** [1] - 2:4
**shaken** [1] - 26:9
**shaking** [1] - 26:17
**shall** [1] - 9:18
**share** [1] - 22:12
**shared** [3] - 16:13, 17:6, 22:11
**shoes** [1] - 21:13
**Shorthand** [2] - 1:18, 34:2
**show** [2] - 16:10, 18:22
**showing** [1] - 26:23
**shown** [2] - 18:25, 31:15
**shows** [1] - 7:23
**shy** [2] - 18:17, 21:15
**Sibley** [2] - 10:17, 12:8
**sic]** [1] - 6:20
**side** [4] - 6:5, 25:5, 26:21, 30:13
**sides** [2] - 28:7, 31:10
**sign** [1] - 22:14
**sign-off** [1] - 22:14
**signed** [1] - 19:6
**significantly** [1] - 11:8
**signs** [1] - 20:2
**similar** [3] - 18:25, 19:20, 26:18
**similarly** [2] - 11:24, 16:12
**simple** [1] - 14:11
**situation** [2] - 10:10, 14:6
**situations** [1] - 19:5
**SITWALA** [3] - 2:4, 3:16, 3:20
**Sitwala** [2] - 3:17, 3:18

**sleep** [1] - 12:25
**someone** [7] - 8:1, 9:4, 9:6, 9:13, 15:11, 18:11, 21:13
**somewhat** [3] - 6:21, 9:10, 26:18
**soon** [1] - 29:6
**sophisticated** [1] - 7:8
**sorry** [4] - 12:8, 18:15, 19:10, 19:17
**sort** [7] - 4:5, 24:6, 24:25, 26:18, 26:20, 27:20, 33:7
**Southern** [1] - 13:23
**SPEAKER** [1] - 24:3
**speaking** [2] - 6:19, 6:24
**speculate** [1] - 27:13
**speed** [1] - 19:23
**spin** [1] - 25:6
**stamp** [1] - 30:8
**stamped** [1] - 30:8
**started** [1] - 29:18
**state** [1] - 4:24
**State** [1] - 34:2
**statements** [1] - 23:21
**STATES** [1] - 1:1
**status** [1] - 7:8
**statute** [1] - 14:7
**stay** [1] - 10:23
**Steele** [3] - 28:22, 29:9, 31:14
**step** [1] - 16:3, 30:22
**Steve** [2] - 20:17, 30:15
**STEVEN** [1] - 2:2
**Steven** [1] - 2:2
**sticking** [1] - 11:14
**sticky** [13] - 29:9, 29:10, 29:11, 29:18, 30:16, 30:24, 31:12, 31:13, 31:14, 32:8, 32:10, 32:11, 32:24
**still** [3] - 10:17, 27:8, 32:8
**stop** [1] - 6:25
**story** [1] - 25:7
**straighten** [1] - 10:9
**Street** [2] - 2:2, 2:5
**strike** [1] - 29:15
**subject** [4] - 21:24, 22:15, 25:20, 31:22
**submitted** [1] - 23:1
**subpoenas** [2] - 4:15, 5:14
**succinct** [3] - 23:13, 23:22, 23:24
**suggest** [2] - 27:14, 27:17
**suggested** [1] - 4:20
**Suite** [1] - 2:2
**super** [1] - 29:22
**supervision** [1] - 10:14
**support** [1] - 23:1
**surprising** [1] - 6:2
**sympathetic** [1] - 26:8
**sympathy** [2] - 25:18, 26:1
**system** [2] - 7:9, 27:11

**T**

**talk** [8] - 5:13, 6:8, 7:12, 8:15, 9:8, 22:1, 28:4, 29:11
**talked** [2] - 30:4, 31:10
**talking** [2] - 17:11, 29:18
**talks** [1] - 16:3
**tecum** [2] - 4:15, 5:14
**telephone** [2] - 20:23, 24:1
**TELEPHONIC** [1] - 1:13
**tell** [1] - 6:24
**telling** [1] - 31:6
**tellingly** [1] - 11:5
**term** [1] - 14:24
**terms** [4] - 5:14, 13:12, 14:12, 14:20
**testify** [3] - 12:21, 12:24
**testimony** [1] - 10:14
**THE** [32] - 1:1, 1:1, 1:14, 3:6, 3:12, 3:18, 3:21, 5:25, 8:8, 8:14, 8:19, 11:16, 13:10, 15:1, 15:4, 17:2, 18:10, 19:9, 19:12, 19:16, 19:18, 21:7, 21:10, 23:8, 24:2, 24:5, 24:16, 29:8, 31:6, 31:17, 32:15, 33:18
**themselves** [4] - 11:1, 13:2, 20:1, 32:12
**they've** [4] - 7:6, 19:6, 19:25, 26:4
**thinking** [2] - 4:10, 18:16
**thinks** [1] - 16:8
**third** [1] - 28:6
**third-party** [1] - 28:6
**thorough** [1] - 5:5
**thoughts** [1] - 21:17
**threat** [1] - 10:12
**threatened** [1] - 10:4
**three** [2] - 26:4, 33:2
**threw** [1] - 28:6
**throw** [1] - 28:5
**today** [11] - 8:21, 16:14, 16:20, 20:5, 21:21, 24:10, 28:11, 28:23, 29:5, 29:6, 33:14
**together** [2] - 28:7, 33:11
**ton** [1] - 17:16
**tone** [3] - 16:13, 21:18, 21:20
**transcribed** [2] - 1:17, 34:4
**transcript** [3] - 3:1, 20:4, 34:5
**Transcript** [2] - 1:20, 1:20
**transcription** [1] - 33:21
**trial** [3] - 13:20, 24:7, 24:9
**tried** [2] - 6:20, 10:23
**troubling** [3] - 11:23, 26:10
**true** [3] - 32:18, 32:23, 34:5
**truth** [1] - 25:10
**truthful** [1] - 23:22
**try** [3] - 7:1, 13:7, 17:15
**trying** [4] - 13:3, 25:13,

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 40 of 41

25:14, 26:5
**turn** [2] - 19:14, 30:2
**turning** [1] - 30:21
**twisting** [1] - 24:18
**two** [4] - 11:20, 14:12, 26:4, 32:16
**two-hour** [1] - 11:20
**typically** [1] - 13:19

## U

**ultimately** [4] - 11:12, 11:14, 20:14, 32:17
**under** [2] - 14:13, 23:16
**underlying** [3] - 9:5, 9:7, 21:14
**UNIDENTIFIED** [1] - 24:3
**UNITED** [1] - 1:1
**unknown** [1] - 15:12
**unless** [1] - 9:20
**unlike** [1] - 24:17
**up** [9] - 5:19, 10:9, 17:23, 19:14, 19:23, 21:25, 26:23, 27:3, 29:9
**use** [1] - 4:5
**used** [1] - 8:24
**useful** [2] - 16:12, 28:10

## V

**value** [1] - 20:6
**various** [2] - 4:4, 16:16
**venues** [1] - 15:14
**version** [1] - 25:6
**versus** [1] - 3:7
**vet** [1] - 14:17
**vetted** [1] - 13:25
**view** [1] - 31:5
**views** [1] - 16:15
**vigorously** [1] - 9:2
**violation** [3] - 10:12, 26:3, 27:1
**violet** [1] - 21:16
**Virginia** [1] - 2:3
**virtually** [1] - 29:1
**visit** [4] - 4:7, 16:5, 32:16, 33:10
**visiting** [1] - 27:20
**volunteering** [1] - 24:25
**vS** [1] - 1:6

## W

**waived** [1] - 30:20
**waiver** [5] - 30:23, 32:3, 32:4, 32:11, 32:13
**walk** [1] - 27:19
**want** [27] - 7:9, 7:16, 12:14, 12:21, 15:17, 15:25, 16:7,

18:16, 20:12, 20:19, 20:21, 22:6, 23:3, 23:15, 23:17, 23:22, 27:5, 27:22, 28:14, 29:4, 30:22, 30:23, 32:2, 32:16, 33:7, 33:12
**wanted** [5] - 5:23, 13:11, 24:14, 26:23, 29:10
**wants** [1] - 22:21
**Washington** [1] - 3:24
**waste** [1] - 31:4
**weekend** [3] - 29:3, 33:15
**weird** [2] - 26:9, 27:2
**welcome** [5] - 3:18, 9:10, 16:17, 27:21, 33:18
**West** [2] - 2:2, 2:5
**WESTERN** [1] - 1:2
**whatsoever** [1] - 21:6
**WHEREOF** [1] - 34:10
**whole** [1] - 29:1
**Williams** [2] - 24:21, 27:24
**willing** [7] - 4:19, 12:7, 12:13, 12:17, 13:6, 16:2, 27:18
**withdraw** [1] - 18:6
**witness** [2] - 11:6, 11:7
**WITNESS** [1] - 34:10
**witnesses** [2] - 8:6, 16:16
**witnesses'** [1] - 10:12
**wondering** [1] - 27:18
**word** [1] - 8:24
**words** [1] - 5:18
**work** [4] - 27:22, 28:25, 30:3, 32:14
**working** [1] - 16:3
**world** [1] - 26:15
**worried** [3] - 9:1, 12:22, 29:22
**worry** [3] - 9:12, 9:13, 27:7
**worse** [1] - 15:21
**worst** [1] - 6:13
**worth** [3] - 27:13, 27:15, 29:20

## Y

**years** [1] - 4:22
**York** [2] - 2:5, 2:5
**youth** [1] - 25:15

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 5:20-cv-04003-CJW-MAR   Document 115   Filed 06/14/21   Page 41 of 41