IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| ANTHONY NUNES, JR., ANTHONY NUNES, III, and NUSTAR FARMS, LLC, | No. 20-cv-4003-CJW |
|---|---|
| Plaintiffs, | |
| vs. | ORDER |
| RYAN LIZZA and HEARST MAGAZINE MEDIA, INC., | |
| Defendants. | |

Before me is Defendants' Resisted Expedited Motion to Compel and Other Relief Regarding NuStar Employee Depositions. (Docs. 103 and 106.)[1] Plaintiffs filed a response. (Docs. 107, 108.) Defendants filed a reply. (Docs. 111, 112.) On June 11, 2021, I held a hearing regarding the motion and heard arguments from the parties. I advised the parties of my ruling on the motion at the hearing. This order will memorialize my rulings regarding the relief requested.

## I. BACKGROUND

Defendants' published an article about Plaintiffs' dairy farm. A thorough statement of the factual background is set forth in Judge Williams's Memorandum and Order regarding Defendants' Motion to Dismiss. (Doc. 50.) Because of Judge Williams's ruling, the sole surviving claim is for defamation arising from Defendants' allegedly false statements that Plaintiffs knowingly employed undocumented or unauthorized workers. Thereafter, discovery focused on the immigration status of

---

[1] The parties have been filing sealed, unredacted versions and unsealed, redacted versions of their discovery motions and resistances.

1

Plaintiffs' employees, including, among other things, Plaintiffs' I-9 documentation and records in the possession of the Social Security Administration. Defendants noticed the depositions of six of Plaintiffs' current employees and had them served with subpoenas duces tecum that required them to bring identification to their depositions. Plaintiffs' counsel, Steven S. Biss, accepted service of the subpoenas on behalf of the employees, but Plaintiffs arranged for separate counsel, Justin Allen, to represent the deponents. F.S.D. was the first such witness to be deposed on May 12, 2021.

While Defendants' counsel was questioning F.S.D. about his purported signature on various documents, Mr. Allen stated, "I've advised my client to invoke his Fifth Amendment right regarding questions about this document. [F.S.D.] --- " (Doc. 103-8 at 20 (Dep. pp. 71-72).) Mr. Biss then interrupted stating, "Hold on. Hold on. Can we go off the record for just a minute? I'd like to talk to Justin before we do this." (*Id.* (Dep. p. 72).) In fact, the deposition was delayed for much more than just a minute. More than two hours later, the deposition resumed. When Defendants' counsel attempted to make record, Mr. Biss interrupted him several times insisting that Mr. Allen would make a statement and the deposition would be rescheduled. Once Mr. Biss got his way, Mr. Allen stated,

> I am not going to allow [F.S.D.] to answer that question because when we left it I advised him to invoke his Fifth Amendment right. We took a break. We went off the record, and we've had several conversations with lots of people and I've talked to [F.S.D.], and as of now I am no longer representing him. I am not his lawyer.

(*Id.* at 21 (Dep. pp. 74-75).) The depositions were then halted. At the hearing, Mr. Biss stated that a new lawyer had been retained to represent the employee witnesses at their depositions, but he could only identify the new attorney by her first name, Jennifer. Mr. Biss was ordered to provide her name to opposing counsel and the Court. To date, I have not received that information.

## II. DISCUSSION

Because of the events at the deposition of F.S.D., Defendants have requested several types of relief. I will address each request in turn, as I did during the hearing.

### A. *Witness Compliance with Subpoenas Duces Tecum*

Defendants seek to have the employee deponents ordered to produce the documents as required by the subpoenas. Although the subpoenas had been timely served and no objection was raised, apparently F.S.D. first learned of the deposition on the morning it was scheduled, he had not been shown the subpoena, and he did not appear with the requested documents. Plaintiffs respond that the employees will produce whatever documents they have. This request for relief is **granted.**

To avoid a repetition of this problem at upcoming depositions, Mr. Biss and any attorney retained for the employees will inform the employees of their obligation to search for the requested documents and bring the documents to the deposition, if they still possess them. Mr. Biss and any attorney retained for the employees will also advise the employees that the Court has ordered this production and employees may be asked about their efforts to comply at the deposition.

### B. *Professional Behavior During Depositions*

Defendants complain about Mr. Biss's behavior during the deposition of F.S.D. Particularly, Defendants assert that Mr. Biss asserted argumentative objections that were disruptive and intended to intimidate or coach the witness. Mr. Biss asserts that his objections were proper and "intended to call out the Defendants' overt harassment of the NuStar employee." (Doc. 107 at 10.) Mr. Biss's further explanation on this issue is puzzling and troubling:

> No effort was made to "signal to the witness how to answer questions" or to "coach[] the witness to testify in a certain way." Counsel for the Defendants got answers to all his questions, including those about [F.S.D.'s] traffic tickets. The deponent was never instructed not to answer.

3

> Indeed, he wanted to answer all questions. Plaintiff's counsel sought a side bar with counsel for the witness to determine whether the witness wanted to take the Fifth Amendment. The witness did not, which is why the witness terminated the lawyer with absolutely no prompting by Plaintiffs' counsel.

(*Id.* (brackets in original).) During the deposition, Defendants' counsel was asking questions about documents such as a bond F.S.D. had posted and a traffic ticket he had received that bore his signature. Mr. Biss made a lengthy speaking objection claiming this was harassment. (Doc. 103-8 at 19 (Dep. pp. 66-67).) Here, where the identity and immigration status of the employees is a central issue, it is not harassing or irrelevant to ask questions about such documents. In the context of this case, it is not conducive to obtaining truthful answers from an employee such as F.S.D. to have his employer's lawyer making lengthy, animated objections to those questions.

The most puzzling and troubling aspect of Mr. Biss's explanation, however, is the representation that he "sought a sidebar with counsel for the witness to determine whether the witness wanted to take the Fifth Amendment." (Doc. 107 at 10.) This two-hour "sidebar" occurred immediately after Mr. Allen stated, "I've advised my client to invoke his Fifth Amendment right regarding questions about this document." (Doc. 103-8 at 20 (Dep. pp. 71-72).) Normally, one would expect the lawyer for a deponent to be in the best position to ascertain whether the deponent desires to assert a privilege. There is no record of the sidebar, only Mr. Biss's protestations that the employees are not being pressured regarding their rights under the Fifth Amendment. Mr. Biss makes bald assurances that the employees want to answer all questions and not assert their Fifth Amendment rights. Nevertheless, Mr. Biss's behavior—coupled with the facts that (a) the privilege was raised, (b) the privilege was perhaps withdrawn after a lengthy sidebar, and (c) Mr. Allen was fired—gives me little confidence that F.S.D. could make a knowing waiver of his Fifth Amendment rights under these circumstances.

This Court has had occasion to provide instruction on appropriate behavior:

4

> The Federal Rules of Civil Procedure, and cases applying those rules, provide very clear guidance about how an attorney (and a witness) should behave during a deposition. Rule 30(c)(2) states that a deponent must answer all deposition questions, even if his or her attorney objects, unless the attorney expressly instructs the deponent not to answer or moves to suspend the deposition. See Fed. R. Civ. P. 30(c)(2). If counsel for a deponent believes that a question is inappropriate, he or she has two choices: object to the question and allow the witness to answer, thus preserving the objection, or instruct the witness not to answer. The second option is appropriate only to (a) preserve a privilege, (b) enforce a court-ordered limitation or (c) bring a motion to terminate or limit the deposition on grounds that it is being conducted in bad faith or in order to unreasonably harass or embarrass the deponent. *See* Fed. R. Civ. P. 30(c)(2) and (d)(3)(A). It is not appropriate to instruct a witness not to answer on the basis of relevance.
>
> An attorney may instruct a witness not to answer due to alleged bad faith or harassment only if he or she intends to present a motion for protective order. Fed. R. Civ. P. 30(d)(3)(A). In other words, it is not enough for the attorney to instruct a witness not to answer and simply state, as grounds, that the question was posed in bad faith or for purposes of harassment or annoyance. Instead, the attorney issuing the instruction has the burden of making an immediate motion for protective order.

*Van Stelton v. Van Stelton*, C11-4045-MWB, 2013 WL 5574566, at *15 (N.D. Iowa Oct. 9, 2013), *order amended on other grounds on reconsideration*, 2013 WL 12424211 (N.D. Iowa Nov. 5, 2013) (some citations omitted.) In *Van Stelton,* the problem was improperly instructing a party witness not to answer. *Id.* at *1. Here, the problem is at least the appearance of an attorney pressuring a witness not to assert a privilege and effectively canceling the deposition to obtain that result. I make no finding based on this record that such pressure did, in fact, occur. Nevertheless, the record lends itself to the appearance that [F.S.D.] may have been subject to pressure not to independently assert his rights.

5

To avoid a repetition of this problem, Plaintiffs' attorneys are adjured to read the *Van Stelton* decision. In addition, they are ordered to comply with the Federal Rules of Civil Procedure and conform their behavior in future depositions to those rules.

## C.  *Appointment of Counsel for the Employee Deponents*

The Criminal Justice Act plan adopted by the Northern District of Iowa provides:

> 2. Discretionary. Whenever a judge or United States magistrate judge determines that the interests of justice so require, representation may be provided for any financially eligible person who:
>
> . . .
>
> d. has been called as a witness before a grand jury, a court, Congress, or a federal agency or commission which has the power to compel testimony, and there is reason to believe, either prior to or during testimony, that the witness could be subject to a criminal prosecution, a civil or criminal contempt proceeding, or face loss of liberty.

https://www.iand.uscourts.gov/sites/iand/files/CJA%20Plan.pdf, (p. 5/24) (emphasis omitted).

While Plaintiffs attempt to assure the Court there is no reason to believe the employee deponents have any reason to fear criminal prosecution, Plaintiffs may not be in the best position to know what jeopardy their employees may face. Plaintiffs' and the deponents' interests regarding the assertion of a Fifth Amendment privilege may differ widely. Moreover, as a consequence of this litigation, Defendants have every incentive to uncover evidence that would tend to show the employees are insufficiently documented and, in so doing, place them in jeopardy of a criminal prosecution or the loss of liberty. The fact that Mr. Allen was inclined to assert F.S.D.'s Fifth Amendment rights at the deposition also persuades me that I have discretion to appoint counsel for the employee deponents pursuant to the CJA plan.

At this juncture, I decline to appoint counsel because Plaintiffs have represented that independent counsel has been retained to represent the employees. As I stated at the

hearing, a lawyer admitted to practice in Iowa should be aware of his or her obligations under Rule 32:1.8(f)(2) of the Rules of Professional Conduct, which requires independence of professional judgment on behalf of a client, even if someone else is paying for those services. As I intended to convey at the hearing, if concerns arise about the exercise of independent judgment by the attorney replacing Mr. Allen, I may reconsider the necessity of appointing counsel.

### D. *Time and Place of Employee Depositions*

Plaintiffs have requested certain relief for the upcoming depositions, including that they be held at the location identified in the subpoenas. I understand the depositions will occur in the conference room of a law firm as with F.S.D.'s deposition. For the reasons set forth at the hearing and on the record at the commencement of F.S.D.'s deposition, the conclusion of F.S.D.'s deposition and the depositions of the remaining employee deponents shall occur at the same or similar location. Plaintiffs have requested the depositions be scheduled at a time when I can be available for consultation. The parties shall advise me of the time they choose for the depositions. I will make myself available, if practicable.

### E. *Ex parte Communication with Counsel for the Employee Deponents*

Defendants have requested the attorney for the employee deponents be permitted to contact the Court on an *ex parte* basis to raise concerns about his or her ability to independently represent the deponents. As I stated above, I do not intend to speculate regarding whether any attempts were made to influence Mr. Allen or F.S.D. regarding assertion of a Fifth Amendment privilege. Nevertheless, the ability of counsel to address these concerns *ex parte* should promote confidence that privilege decisions are made independently and without undue influence. Therefore, counsel for the employee deponents may contact me *ex parte* to raise concerns about his or her ability to exercise independent judgment in asserting a Fifth Amendment privilege.

7

Case 5:20-cv-04003-CJW-MAR    Document 119    Filed 06/17/21    Page 7 of 8

## F. Provision of Materials to New Counsel

Defendants request permission to provide discovery to new counsel, along with the instant motion, the transcript of the hearing, and this order. Plaintiffs raised a concern about inundating new counsel with all of or a substantial part of the discovery produced to date. I understand from defense counsel's statements at the hearing that they intend to provide, for the most part, documents relating to the employee deponents so that they and new counsel are prepared for issues that may arise. This relief is **granted**. The parties are free to share documents they believe new counsel should be aware of to adequately represent the deponents.

## G. Contact with New Counsel

Plaintiffs raised a related concern. Plaintiffs explained that they had not identified new counsel previously out of concern Defendants' attorneys will contact the new lawyer to intimidate him or her or threaten ethics violations. (Doc. 107 at 8 n.5.) At the hearing, I expressed my belief that, if I were in the new lawyer's shoes, I would welcome communications from counsel familiar with the case and the underlying documents as I prepared to independently evaluate my clients' potential legal jeopardy. I also expressed my expectations that any communications with new counsel would be civil and professional.

## III. CONCLUSION

Defendants' motion is **granted in part and denied in part** consistent with the foregoing.

**IT IS SO ORDERED** this 16th day of June 2021.

_____
Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa