|  |  |  |
|---|---|---|
| **NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III,** | ) ) ) | **Case No. 5:20-cv-04003-CJW-MAR** |
|  | ) | **Defendants' Brief in Support of Their** |
| Plaintiffs, | ) ) | **Resisted Motion to Compel Testimony of and Production of Documents by** |
| v. | ) | **Amanda Bahena** |
| **Ryan Lizza** and **Hearst Magazine Media, Inc.,** | ) ) ) | **(Expedited Treatment and Oral** |
|  | ) | **Argument Requested)** |
| Defendants. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**Table of Contents**

Table of Authorities ............................................................................................................. ii

Facts ..................................................................................................................................... 2

    A.  Plaintiffs' Assertion of Privilege Over Matters Relating to the 2018 Audit *Before* Their Depositions .................................................................................................. 2

    B.  NuStar and the Nunes Family Members Repeatedly, and in Detail, Described the 2018 Audit at Their Depositions, Without Instruction from Counsel, Relied on it for Their Testimony, and Revealed Portions of Its Contents ........................................................... 3

    C.  Having Selectively Disclosed Their Characterization of the 2018 Audit, Plaintiffs Continue to Withhold the Underlying Documents and Assert the Attorney-Client Privilege Over Other Aspects of the 2018 Audit ................................................................ 5

Argument ............................................................................................................................. 5

    I.  The Attorney-Client Privilege Does Not Shield Bahena from Testifying Regarding Underlying Facts or From Producing Portions of the 2018 Audit Documents that Set Forth Those Facts ..................................................................................................... 5

    II.  Even if the Attorney-Client Privilege Applied to the 2018 Audit and the 2018 Audit Documents, Plaintiffs Waived It in All Respects and As to All Information and Communications ................................................................................................... 6

        A.  Plaintiffs Waived Any Attorney-Client Privilege by Voluntarily Disclosing Communications and Content Relating to the 2018 Audit ........................................ 6

        B.  Plaintiffs Impliedly Waived the Attorney-Client Privilege By Putting the 2018 Audit "In Issue" in This Case ......................................................................................... 8

Conclusion ......................................................................................................................... 11

i

# Table of Authorities

**Page(s)**

**Cases**

*Exotica Botanicals v. Terra Int'l*,
  612 N.W.2d 801 (Iowa 2000) ...................................................................................6

*Fenceroy v. Gelita USA, Inc.*,
  908 N.W.2d 235 (Iowa 2018) .................................................................................. 8

*Hearn v. Rhay*,
  68 F.R.D. 574 (E.D. Wash. 1975).............................................................................9

*In re Martin Marietta Corp.*,
  856 F.2d 619 (4th Cir. 1988) ...................................................................................6

*Lahart v. BNSF Ry. Co.*,
  No. 15-CV-464, 2017 WL 5634148 (S.D. Iowa Mar. 28, 2017)............................6

*Miller v. Cont'l Ins. Co.*,
  392 N.W.2d 500 (Iowa 1986) ...............................................................................6, 8

*Squealer Feeds v. Pickering*,
  530 N.W.2d 678 (Iowa 1995) ...............................................................................8, 9

*Union Cnty., Iowa v. Piper Jaffray & Co.*,
  No. 06-CV-374, 2010 WL 11465479 (S.D. Iowa Nov. 22, 2010)..........................9

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981)..................................................................................................5

*United States v. Davis*,
  583 F.3d 1081 (8th Cir. 2009), *cert. denied*, 2010 WL 85968 (2010)...................7

**Other Authorities**

3 Christopher B. Mueller et al., *§5.28 Waiver by Voluntary Disclosure* (2018),
  *available at* SSRN: https://ssrn.com/abstract=3277027 .......................................7

Defendants Ryan Lizza ("Lizza") and Hearst Magazine Media, Inc. ("Hearst") (collectively "Defendants") respectfully submit this brief in support of their Motion to Compel the Production of Documents, and Testimony by Amanda Bahena, a partner with Woods, Fuller, Shultz & Smith, P.C. ("Woods Fuller") (the "Motion").

The Motion seeks expedited treatment and entry of an order compelling Bahena to testify about, and for Bahena and/or Plaintiffs to produce documents relating to, an immigration fact review she did in 2018 under commission from Plaintiffs NuStar Farms, LLC ("NuStar") and/or Anthony Nunes Jr. ("Anthony Jr."), and Anthony Nunes III ("Anthony III") (together, "Plaintiffs"), overruling Plaintiffs' assertion of the attorney-client privilege in connection with these matters.

Plaintiffs are using the 2018 Audit as a sword and a shield in this litigation. In their recent depositions, Plaintiffs disclosed—without instruction or intervention from their counsel—characterizations of the 2018 Audit that they believed helped them. Despite these disclosures of *some* information concerning the 2018 Audit, Plaintiffs selectively withheld from Defendants *other* information concerning the 2018 Audit, including the documents related to it. What's more, Plaintiffs made specific allegations in their Second Amended Complaint, *see* ECF No. 51, that are consistent with their characterization of the 2018 Audit's results.

No privilege should attach to Bahena's factual review. *See infra* Point I. But even if the privilege attached to the facts considered in and communications that occurred during the 2018 Audit, then NuStar, Anthony Jr. and Anthony III each expressly (*see infra* Point II.A) and impliedly (*see infra* Point II.B) waived all attendant privileges, opening the door to a robust examination of Bahena and a complete review of the 2018 Audit Documents.

**A.       Plaintiffs' Assertion of Privilege Over Matters Relating to the 2018 Audit *Before* Their Depositions.**

Prior case management and discovery conferences in this matter in Spring 2021 covered how NuStar conducted a "self-audit" of its work authorization verification practices (the "2018 Audit") immediately after Esquire.com published the article at issue on September 30, 2018.

As disclosed in those communications and hearings with the Court, NuStar enlisted Amanda Bahena, an immigration attorney with Woods Fuller, to gather and review the facts needed to complete the immigration assessments of the 2018 Audit.

As Defendants previously pointed out, the 2018 Audit is highly relevant to their defenses (and to Plaintiffs' obligation to prove falsity with convincing clarity), and its information is not attainable elsewhere.  The facts gathered in the 2018 Audit and the communications and work product associated with it go directly to Plaintiffs' practices with regard to its duty to verify that its workers are authorized to work in the United States.  Those facts and records speak to what NuStar knew about its workers' immigration statuses, and/or what it attempted to avoid knowing about their documented status and eligibility to work at the NuStar dairy.

Relatedly, to the extent NuStar limited the scope of the 2018 Audit in any way, such as by specifically instructing Bahena *not* to review or scrutinize documentation provided by NuStar applicants or employees, that fact reinforces how Plaintiffs took great lengths to remain willfully blind to their employees' statuses and to NuStar's compliance obligations under federal law.

As the Court will recall from the prior informal discussions about the Bahena review, Plaintiffs asserted the attorney-client privilege over *all* documents relating to the 2018 Audit, which included:

> (i)       an October 2, 2018 email from Lori Nunes to Bahena, the subject of which was "Ryan Lizza's Hit Piece on Plaintiffs";

2

(ii)     "Multiple Sticky Notes affixed to Forms I-9 during audit in October 2018" (the "Sticky Notes"); and

(iii)    an October 12, 2018 letter from Bahena to Lori Nunes, the subject of which was a "Follow-up to I-9 Audit conducted in October of 2018."

(together, the "2018 Audit Documents").  *See* July 26, 2021 Decl. of Nathaniel S. Boyer in Support of Mot. ("Boyer Decl."), Ex. A.

**B.     NuStar and the Nunes Family Members Repeatedly, and in Detail, Described the 2018 Audit at Their Depositions, Without Instruction from Counsel, Relied on It for Their Testimony, and Revealed Portions of Its Contents.**

NuStar and its owners and managers described the 2018 Audit in detail at the depositions, prior to any instruction or intervention from Plaintiffs' counsel.

For example, Anthony III (testifying in his individual capacity and as NuStar's corporate representative, *see* Boyer Decl., Exs. B, C, at 140:8–141:20) described ███████████

███████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Boyer Decl., Ex. D at 332:7-23; *see also id.*, Ex. E, at 85:22–87:20 (Lori Nunes, part-owner of NuStar and NuStar's corporate secretary, ████████████████████████████

████████████████ ), 140:24–141:8 (disclosing ████████████████████

████████████████████████████████████ ); and 150:16–

151:19 (describing ████████████████████████████████████ ).[1]

Anthony III also described ████████████████████████████████

████████████████████████████████████ *Id.*, Ex. D, at 145:13-22.

---

[1]    Because Plaintiffs designated the entirety of these deposition transcripts as "Counsel's Eyes Only" pursuant to the Protective Order in this case, Defendants are redacting all quoted deposition testimony in the unsealed version of this brief.  Defendants reserve the right to challenge Plaintiffs' designations.

He then testified about ███████████████████████████████████████████ :

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

*Id.* at 190:1-12; *see also id.*, Ex. F, at 77:8-10 (Plaintiff Anthony Jr., 90% owner of NuStar

testifying ███████████████████████████████████████████████████████████

███████████████████████

Anthony III continued his testimony by disclosing that, ████████████████████

███████████████████████████████████████████████████████████████████

████████████    *Id.*, Ex. D, at 190:13-15.

Only after this on-the-record testimony and these 2018 Audit contents disclosures did

Plaintiffs try and assert a privilege. This occurred later, as Defendants' counsel started asking

Anthony III ███████████████████████████████████████████████████████████

████████████    At that point, ████████████████████████████████████████████

████████████ . *Id.*, Ex. D, at 334:8–336:1.

Defendants noted their disagreement on the record at the depositions, and the depositions

were left open. *See id.*, Ex. C, at 141:21–142:12. Defendants seek to examine Bahena at her

upcoming deposition about the information NuStar, Anthony III, and other NuStar witnesses

freely disclosed in their testimony about the 2018 Audit and the 2018 Audit Documents.

**C.** **Having Selectively Disclosed Their Characterization of the 2018 Audit, Plaintiffs Continue to Withhold the Underlying Documents and Assert the Attorney-Client Privilege Over Other Aspects of the 2018 Audit.**

On July 20, 2021 (one day after the NuStar and Nunes family depositions concluded), Defendants' counsel emailed Plaintiffs' counsel and explained, with legal support, why Plaintiffs had waived the attorney-client privilege with respect to the 2018 Audit and the 2018 Audit Documents. *Id.* ¶ 9. In compliance with the Local Rules, Defendants' counsel conferred with Plaintiffs' counsel telephonically concerning this on July 21, 2021. *Id.* During that telephone conference, Plaintiffs' counsel argued that his clients had not waived the attorney-client privilege, and stated that Plaintiffs do not consent to the relief requested by this Motion. *Id.*

Because the attorney-client privilege issue relating to the 2018 Audit was already addressed with the Court, *see* ECF No. 99 at 5:2–15:24, and because Plaintiffs refuse to acknowledge the waiver that occurred as a result NuStar's and the Nuneses' testimony, Defendants bring this Motion.

## Argument

### I. The Attorney-Client Privilege Does Not Shield Bahena from Testifying Regarding Underlying Facts or From Producing Portions of the 2018 Audit Documents that Set Forth Those Facts

As an initial matter, this Court should hold that simply because an attorney participated in the 2018 Audit does not shield her from testifying as to the facts considered by her in her immigration review or from discussing the factual contents of the 2018 Audit findings or recommendations. As stated in the seminal *Upjohn Co.* attorney-client privilege case, while communications with a lawyer about facts of a matter to obtain legal advice qualify for the attorney-client privilege, mere facts are not privileged. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981).

Here, to the extent the examination of Bahena seeks facts such as the immigration status

5

of NuStar workers, the documentation considered by it and Plaintiffs when completing I-9 forms, or the process Plaintiffs used or failed to utilize to insure immigration law compliance (such as use of E-Verify), these are the very sorts of "mere facts" the attorney-client privilege does not protect.

Thus, this Court should begin its review of the issues presented in this Motion to Compel with the presumption that underlying facts known by Bahena about NuStar's hiring and retention of employees are not privileged.

## II. Even if the Attorney-Client Privilege Applied to the 2018 Audit and the 2018 Audit Documents, Plaintiffs Waived It in All Respects and As to All Information and Communications

A.      **Plaintiffs Waived Any Attorney-Client Privilege by Voluntarily Disclosing Communications and Content Relating to the 2018 Audit**

"[V]oluntary disclosure of the content of a privileged communication constitutes waiver as to all other communications on the same subject." *Miller v. Cont'l Ins. Co.*, 392 N.W.2d 500, 504-05 (Iowa 1986). "[W]hen [the privilege holder's] conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder." *Id*. at 505 (alterations in original) (citations omitted); *see also Lahart v. BNSF Ry. Co.*, No. 15-CV-464, 2017 WL 5634148, at *4-5 (S.D. Iowa Mar. 28, 2017) (finding waiver of attorney work product protection: "The Court finds that BNSF's disclosure and use of portions of the Statement at the disciplinary hearing was an intentional act and waived the entire Statement's work-product protection.").

This rule is referred to as subject matter waiver. *See Exotica Botanicals v. Terra Int'l*, 612 N.W.2d 801, 807 (Iowa 2000) (citing *In re Martin Marietta Corp*., 856 F.2d 619, 623 (4th Cir. 1988)) (noting that subject matter waiver occurs with a disclosure of a confidential

communication outside a privileged relationship that thereby "waives the privilege as to all information related to the same subject matter."). Further, as the Eighth Circuit has noted, a party who testified about what his attorney told him also waived privilege for what he told his attorney, which was "information directly related to that which was actually disclosed." *United States v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009), *cert. denied*, 559 U.S. 958 (2010).

In summary: "Unless protected by a judicial non-waiver order under FRE 502(d), the attorney-client privilege is waived by the client's voluntary disclosure or consent to disclosure of any significant part of the privileged communication or matter in a nonprivileged setting. Waiver by disclosure can occur at any stage of a proceeding, including discovery . . . ." 3 Christopher B. Mueller et al., *§5.28 Waiver by Voluntary Disclosure* 1 (2018), *available at* SSRN: https://ssrn.com/abstract=3277027.

Plaintiffs engaged in such disclosures, thereby effectuating a subject matter waiver of any attorney-client privilege with Bahena and her law firm. To withhold Bahena's testimony and the 2018 Audit Documents now would unfairly inhibit Defendants from evidence held by Plaintiffs and their immigration practices audit, which they selectively disclosed, and into which they opened the door to inquiry.

As described above, Plaintiffs testified—without objection or instruction—regarding the



. Despite this, Plaintiffs continue to withhold the 2018 Audit Documents, and their counsel belatedly instructed the witnesses not to answer *certain* questions that probed into details of the 2018 Audit. Plaintiffs cannot "disclos[e]

as much as [t]he[y] please[]" regarding the 2018 audit but "withhold the remainder." *Miller*, 392 N.W.2d at 505 (citation omitted).

Plaintiffs waived their privilege relating to the 2018 Audit.

**B.      Plaintiffs Impliedly Waived the Attorney-Client Privilege by Putting the 2018 Audit "In Issue" in This Case**

As the late Iowa Chief Justice Mark Cady wrote in 2018, not long before the Bahena immigration fact review commenced, "a basic component of a fair trial requires that when a party injects a legal issue into a lawsuit, the opposing party is entitled to discover the relevant evidence concerning the issue." *Fenceroy v. Gelita USA, Inc*., 908 N.W.2d 235, 243 (Iowa 2018) (citing *Squealer Feeds v. Pickering*, 530 N.W.2d 678, 684 (Iowa 1995), *abrogated on other grounds by Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38 (Iowa 2004)).

*Fenceroy* considered the defendant's invocation of the attorney-client communication privilege in an employment discrimination case where the defendant employer used "an attorney to conduct an investigation into a complaint, and the investigation gathered relevant evidence sought to be used by the employer to support the *Faragher-Ellerth* affirmative defense in a subsequent lawsuit." *Id*. at 242.  Chief Justice Cady wrote for the majority:

> When these two venerable legal principles come face to face because relevant information concerning an issue injected into a lawsuit by a party includes communications between that party and his or her attorney, we have concluded that the party who injects the issue into the heart of a lawsuit impliedly waives the attorney-client privilege.  The outcome is derived from basic fairness and requires the party injecting the issue into the lawsuit to decide if the privileged information is important enough to the lawsuit to waive the privilege.  These two legal principles come face to face in this case.

*Id*. at 243 (citation omitted).  The court held the employer defendant waived the attorney-client privilege by relying on the attorney's inquiry as one of its summary judgment affirmative defenses.  *Id*. at 246.

Longstanding federal case law similarly holds that a client waives the attorney-client privilege by bringing an action that makes intent and knowledge of the law relevant. *See, e.g.*, *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). "[A]n implied waiver occurs where the [client] has placed in issue a communication which goes to the heart of the claim in controversy." *See Union Cnty., Iowa v. Piper Jaffray & Co.*, No. 06-CV-374, 2010 WL 11465479, at *2 (S.D. Iowa Nov. 22, 2010) (alterations in original) (quoting *Squealer Feeds*, 530 N.W.2d at 684 and applying Iowa law).

Here, Plaintiffs' fundamental assertion rests on their contention that Defendants defamed them by publishing a statement indicating or inferring that they hired or retained undocumented workers at the NuStar dairy farm and, as the Court characterized the publication in its ruling on the Motion to Dismiss,[2] that such employment was done knowingly. A core element of Plaintiffs' complaint therefore is that the statement about their employment practices and knowledge of the lawfulness of it was false and they bear the burden of proving that falsity.

The facts of Plaintiffs' immigration hiring practices, their efforts to document whether employees they hired and retained were in this country lawfully, and their knowledge or willful avoidance of learning of the immigration status of NuStar workers, including what they said to Bahena and what she communicated to them, thereby rest as the central element of Plaintiffs' claims. They provide a core component of the proof needed by Defendants to show that Plaintiffs cannot prevail on their lawsuit's claims that the *Esquire* publication in issue was false rather than true or substantially true.

---

[2]    Defendants do not concede that the publication taken as a whole stated or inferred that Plaintiffs "knowingly hired" undocumented workers. Nevertheless, Plaintiffs continue to litigate this case by asserting they did not knowingly hire or retain undocumented workers, thereby making their knowledge of the law and facts in issue in the way they pleaded and pursued their lawsuit.

Indeed, the withheld 2018 Audit and 2018 Audit Report, as well as the testimony of Bahena, go to the core of what Plaintiffs knew or should have known about their hiring and retention practices as well as the underlying facts about what documents and proof of eligibility to work at NuStar existed when it hired each of its workers whose papers, proof, and status were communication in or considered as part of the 2018 Audit. Defendants well may ascertain facts and statements against Plaintiffs' interest, but not unless this Court grants the requested order finding a waiver of the attorney-client privilege and compelling Bahena to testify and produce documents.

If the 2018 Audit, the 2018 Audit Documents, and the testimony of Bahena remain outside the bounds of permitted discovery, Plaintiffs will have shielded the very facts and knowledge they put in issue from revelation, to Defendants' detriment in preparing and presenting their defenses. That prejudice militates against retention of the attorney-client privilege in this instance because of the truth and knowledge questions Plaintiffs placed in issue.

Moreover, as described above, NuStar's witnesses testified



Boyer Decl., Ex. D, at 190:1-12.

*Id.*

*Id.*, Ex. D, at 190:13-15.

And then, to state facts sufficient to support their allegation that it was false to report that NuStar was aware of the status of their workers, Plaintiffs alleged, in their operative complaint,

that "NuStar documents all labor and employment decisions," and that I-9s and supporting

identity and work authorization documents are "reviewed and maintained by NuStar in the

ordinary course of its business in accordance with Federal law."  ECF No. 51 ¶ 4; *see also id.* ¶

19(a) ("NuStar did not hire undocumented labor as its business records will attest," and "NuStar

fully documented all hiring decisions in accordance with Federal law.").

Plaintiffs therefore cannot escape their acts of putting legal advice "in issue" through

their initiation of litigation and their testimony in pursuit of it.  They made allegations, sufficient

and necessary to survive a motion to dismiss (and thereby maintain this lawsuit), on the strength

of the 2018 Audit.  They cannot now use the attorney-client privilege as a sword and a shield.

Because Defendants are entitled to discover the facts underlying the 2018 Audit, the

information provided to Bahena, and the advice Plaintiffs received from Bahena, upon which

Plaintiffs are relying in order to show that they do not and did not knowingly use undocumented

labor at NuStar Farms, this Court should grant the Motion to Compel.

## Conclusion

For the reasons stated above, Defendants respectfully request that the Court issue an

order on an expedited basis that:

(1)     Compels the production of the "2018 Audit Documents";

(2)     Directs Plaintiffs to allow Bahena to answer all questions posed to her by

        Defendants' counsel regarding the 2018 Audit and the 2018 Audit Documents at

        her deposition (currently scheduled for July 29, 2021 at 9 a.m. CT, but subject to

        rescheduling for reasons described in the Motion), without objection based on or

        assertion of the attorney-client or attorney work product privileges;

(3)     Requires Bahena to appear for and testify at the deposition under an order of the

Court that holds that (a) the attorney-client and attorney work product privileges do not apply to the 2018 Audit, the 2018 Audit Documents, or her testimony about those matters and records, or (b) Plaintiffs waived any such privileges; and

(4)    Continues the depositions of NuStar / Anthony III, Anthony Jr., and Lori Nunes for the limited purpose of examining each witness regarding the 2018 Audit, the 2018 Audit Documents, and Bahena's testimony.

[*signature block on next page*]

Dated:  July 26, 2021

**Ryan Lizza and Hearst Magazine Media, Inc.,
Defendants**

/s/ Nathaniel S. Boyer
Jonathan R. Donnellan, *Lead Counsel\**
  *jdonnellan@hearst.com*
Ravi R. Sitwala\*
  *rsitwala@hearst.com*
Nathaniel S. Boyer\*
  *nathaniel.boyer@hearst.com*
Sarah S. Park\*
  *sarah.park@hearst.com*
Nina Shah\*
  *nina.shah@hearst.com*
Kristen Hauser
  *khauser@hearst.com*
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000
*\*Admitted Pro Hac Vice*

Michael A. Giudicessi
  *michael.giudicessi@faegredrinker.com*
Nicholas A. Klinefeldt
  *nick.klinefeldt@faegredrinker.com*
Susan P. Elgin
  *susan.elgin@faegredrinker.com*
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

**Attorneys for Defendants**

13

**Certificate of Service**

The undersigned certifies that a true copy of **Defendants' Brief in Support of Their Resisted Motion Resisted Motion to Compel Testimony of and Production of Documents by Amanda Bahena (Expedited Treatment and Oral Argument Requested)** was served upon the following parties through the Court's CM/ECF electronic filing system on July 26, 2021.

/s/  Nathaniel S. Boyer
Nathaniel S. Boyer

Copy to:

Bill McGinn
  *bmcginn@mcginnlawfirm.com*
Steven S. Biss
  *stevenbiss@earthlink.net*

*Attorneys for Plaintiff*

The undersigned certifies that—once-the below-identified attorney signs and returns Exhibit A to the Protective Order, thereby allowing him to review and consider materials that were designated as Confidential or Counsel's Eyes Only pursuant to the Protective Order in this case—he will serve a true copy of **Defendants' Brief in Support of Their Resisted Motion Resisted Motion to Compel Testimony of and Production of Documents by Amanda Bahena (Expedited Treatment and Oral Argument Requested)** upon said attorney via email at his last known email address as shown below.

/s/ Nathaniel S. Boyer

Copy to:

Sander J. Moorhead
  *sander.moorhead@woodsfuller.com*

*Counsel for Amanda Bahena and Woods, Fuller, Shultz & Smith, P.C.*