1          IN THE UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF IOWA

3                 WESTERN DIVISION

4

5

6     _____

                                     )

7     NUSTAR FARMS, LLC,             )

      ANTHONY NUNES, JR., AND        )

8     ANTHONY NUNES, III,            )

                                     )

9              Plaintiffs,           ) Case No.

                                     ) 5:20-cv-04003-CJW-

10        vs.                        ) MAR

                                     )

11    RYAN LIZZA, HEARST             )

      MAGAZINE MEDIA, INC.,          )

12                                   )

               Defendants.           )

13    _____)

14

15

16

17        ZOOM VIDEOTAPED DEPOSITION OF DEVIN NUNES

18               Tulare, California

19            Tuesday, August 10, 2021

20                 Volume I

21

22    Reported by:

23    LORI M. BARKLEY CSR No. 6426

24    Job No. 4751278

25

1          (Recess taken.)

2          VIDEO OPERATOR:  We are now back on the record.

3     The time is 4:28 p.m.

4          MR. DONNELLAN:  Congressman, that's all the

5     questions that I have for you today.

6          I am going to leave the deposition open subject

7     to, you know, taking up with the court, some of the

8     questions that you have either declined to answer or

9     have not answered on the basis of privilege or

10    otherwise, but that's going to be all for today.

11         THE WITNESS:  Well, I've answered all your

12    questions, so I'm not sure what you would take up with

13    the court, but...

14         MR. DONNELLAN:  Thank you very much for your

15    time.

16         MR. BISS:  Okay, I've got just a couple of

17    questions to follow up on some of the things that were

18    asked during the deposition today, and let me see if I

19    can do this as smoothly as possible.

20

21                        EXAMINATION

22    BY MR. BISS:

23         Q.   Counsel asked you during the deposition whether

24    you had ever listened to the audiotapes that Mr. Lizza

25    produced.  I think you said no.  I want to play two of

Case 5:20-cv-04003-CJW-MAR   Document 138-1   Filed 08/13/21   Page 2 of 21

1  those audiotapes for you and get your response --

2          MR. DONNELLAN:  Hold on, Steve, I'll object to

3  that.  That goes beyond the scope of my examination.  I

4  did not ask the Congressman today about any matters that

5  were covered by the protective order in this case, and

6  he did not testify as to the substance of any matters

7  covered by the protective order in this case, and I want

8  it to stay that way.

9          So, that's beyond the scope of the examination,

10  so I object to any attempt to introduce to him or to

11  expose him to any of the evidence that's covered by the

12  protective order.

13          MR. BISS:  All right, that's -- that's -- I

14  fully understand why you're making that objection.  I

15  fully understand why you don't want to have him hear

16  these tapes.  I think it will -- it will upset him more

17  than your questions have upset him today.

18          But you've asked him multiple times today, you

19  asked him about the audiotapes.  You also asked him

20  about the sources.  And so, it's absolutely fair game

21  for me to ask him --

22          MR. DONNELLAN:  It is not fair game.  Steven,

23  it's not fair game.  And you can't unscramble the egg,

24  so I would say that we take this -- if you want to take

25  this up with the court, we take it up with the court,

1    but it's totally inappropriate.  We have not asked him

2    to sign a protective order.  He has not signed a

3    protective order.  And it is beyond the scope of the

4    testimony that I elicited and I asked for, and so I

5    object to this and I will -- I will take great exception

6    if you try to proceed.  I'm going to end the deposition.

7              MR. BISS:  Why don't you want him to hear what's

8    on the tapes?  What are you afraid of?

9              THE WITNESS:  Aren't I the one being deposed,

10   doesn't my lawyer have a right to ask me questions?  You

11   get to end it without my lawyer having time to ask me

12   questions, is that how this works?

13             MR. DONNELLAN:  It's beyond the scope of the

14   examination and it's evidence that you are not entitled

15   to hear, Congressman.

16             MR. BISS:  Why isn't he entitled to hear it?

17             MR. DONNELLAN:  It's governed by the protective

18   order.

19             MR. BISS:  He can sign the witness assurance

20   declaration, just like everyone else.

21             MR. DONNELLAN:  Well, this is our deposition, we

22   called the deposition, and we have not asked about any

23   evidence that is covered, and it's completely beyond the

24   scope of the direct examination, so it's inappropriate.

25   You should take it up with the court if you feel that

Case 5:20-cv-04003-CJW-MAR   Document 138-1   Filed 08/13/21   Page 4 of 21

1    strongly about it, Steve.

2         MR. BISS:  I just don't understand how you could

3    possibly think that's a valid objection, how you could

4    possibly think that you can stop a witness from

5    listening to an audiotape that you referred to expressly

6    on your direct examination.  You examined this witness

7    and you referred to the audiotapes.  You also --

8         MR. DONNELLAN:  No, I didn't.  All I did was ask

9    him if he had heard them, and he said no.

10        THE WITNESS:  You also asked me about some

11   documents, and I said no, I'd like to see them.  So, I

12   have that on my testimony to you, that I would like to

13   see them.  If they exist, what you're asking me, I have

14   every right to see them.  If not, there needs to be

15   transparency in this process.  Because if you're hiding

16   something from me, like you hid my response of my

17   subpoena, that's completely outrageous.  You can't do

18   that.

19        MR. DONNELLAN:  Steven, if you look at --

20        THE WITNESS:  You have to show me.  You brought

21   it up.  If they exist, I get to see them.  You don't get

22   to ask me questions about things that you know and that

23   I don't.  You did it once, you got caught, now you're

24   doing it again.  So, now I find out there are audiotapes

25   and there's -- are there documents?  What kind of

1  documents have I not seen for this -- for this --

2        MR. BISS:  You chose to depose this witness.

3  You opened the door.  You --

4        MR. DONNELLAN:  No, I did not.  No, I did not,

5  Steve --

6        MR. BISS:  Absolutely, you did.

7        MR. DONNELLAN:  No, I did not --

8        MR. BISS:  Absolutely, you did.

9        (Speaking simultaneously)

10        MR. BISS:  Now you want to make sure that he

11  doesn't get to see that the -- gets to hear what's on

12  those audiotapes.  You've listened to the audiotapes.

13  You know what's on them.

14        MR. DONNELLAN:  If you go to the protective

15  order, paragraph 8E, that during the deposition

16  witnesses in the action to whom disclosure is reasonably

17  necessary shall be given access to the materials.  It's

18  not reasonably necessary.  I asked him if he'd heard

19  them.  He said no.  That's the end of it.

20        MR. BISS:  That's not reasonable --

21        MR. DONNELLAN:  It's not reasonably necessary to

22  play them.

23        THE WITNESS:  Wait, I object to that.  I have a

24  right, this is my deposition, I totally object to that.

25  They definitely -- I do have a reason to know.  You've

1  sat on this deposition going through conspiracy theory

2  after conspiracy theory after conspiracy theory, whether

3  it's who's paying lawsuits, or frivolous ethics

4  violations, and then you do that bogus little game on me

5  where you show me a subpoena and then play some game

6  like I haven't complied, and now I find out that you had

7  it sitting next to you there as one of the exhibits.

8          You asked me if I had seen some type of

9  documents.  I said no, but I'd like to see them, if I

10  want to see Lizza's notes or something like that.  If

11  there's notes you're damn right I want to see them.  And

12  it's wrong, it's not transparent, it's totally corrupt,

13  and I'm going to go to the judge.  I want to go to the

14  judge myself.  And I'm not ending this deposition.  I

15  want Steve to continue to ask me questions.

16          MR. BISS:  You asked him a question --

17          (Speaking simultaneously)

18          THE WITNESS:  Who do the hell do you think you

19  are?

20          MR. BISS:  Jon, you asked him questions about

21  the article.  You asked him questions about illegal

22  immigration.  You spent hours --

23          (Speaking simultaneously)

24          MR. BISS:  You talked about the audiotapes.  You

25  used every single word to open the door here for me to

1    ask him questions about that.  You asked him about his

2    family, about the operation of the farm.

3          And the fact that you don't want these

4    audiotapes made public is -- it's beyond alarming.  This

5    is a matter of extreme public concern.  The public --

6          MR. DONNELLAN:  Steve, you are using this --

7    look, you are using this to try to -- to try to publicly

8    disclose these and to try to expose them to a witness.

9    It's not reasonably necessary, it's not appropriate

10   under the order.  And to play them right now would be a

11   violation of the order and I would move for sanctions

12   and move to hold you in contempt.

13         MR. BISS:  You're not going to scare me with

14   your threats.

15         MR. DONNELLAN:  I don't care whether I'm scaring

16   you or not.  I'm just putting you on notice.

17         (Speaking simultaneously)

18         MR. BISS:  Go write an article about it, tell

19   the Fresno Bee, go write an article --

20         MR. DONNELLAN:  We should take it up with the

21   judge because this is a very serious step that you're

22   proposing to take.  It's a violation of the protective

23   order.  It's beyond the scope of the examination.  You

24   can make your choice, but I would end this deposition

25   right now because this is absolutely inappropriate.

1        MR. BISS:  You're trying to conceal material

2  information from the public.  That's what you're trying

3  to do.  You're trying to assure that the public knows

4  your half of the story.

5        MR. DONNELLAN:  If you would like to go to the

6  court and make a motion, you should do it.

7        MR. BISS:  (Speaking simultaneously).

8        MR. DONNELLAN:  Just the same way that I'm going

9  to go to the court and make a request with respect to

10  matters that the Congressman didn't want to answer

11  today, if you have issues that you would like to take up

12  with the court in connection with this deposition, you

13  should do that, too.  And then we'll come back and we

14  will ask questions, and if the court allows you, you can

15  ask questions and play the deposition -- play the tapes

16  for the deposition.  But --

17        MR. BISS:  He has a right to know what you did

18  to his family.

19        MR. DONNELLAN:  (Speaking simultaneously)

20        MR. BISS:  That, he has a right to know.

21        MR. DONNELLAN:  He has no right to know this

22  information because it's covered by a protective order

23  that you and I are subject to, and our clients are

24  subject to, and that this would be a violation of the

25  protective order.

1     THE WITNESS:  You asked me questions about

2     documents that I don't know about and now you're trying

3     to claim that now we don't have to do that --

4          MR. DONNELLAN:  With all due respect,

5     Congressman, I can't discuss this with you, this is

6     between me and your lawyer, and he and I need to work

7     this out.  Okay?  So, I'm not going to respond to

8     anything that you have to say.

9          THE WITNESS:  Well, I also have --

10         MR. DONNELLAN:  If you feel the need to make a

11    speech, you can make a speech.

12         THE WITNESS:  I'm not making a speech, but you

13    continue to say that I didn't answer your questions.  I

14    answered every single one of your questions, so I want

15    to make sure that that's on this deposition.  Hopefully,

16    the judge will read this deposition, 'cause there's

17    nothing that I didn't answer.  Matter of fact, I

18    answered all your psychobabble questions about things

19    that have nothing to do, zero relevance whatsoever,

20    including about trips to the White House.  Like what --

21         MR. DONNELLAN:  Every single word that you've

22    said is reflected in the transcript and he'll have an

23    opportunity to read it, and your lawyer will have an

24    opportunity to point them out to him.

25         MR. BISS:  I'm concerned with what you're trying

1    to keep out of the transcript and --

2            MR. DONNELLAN:  Well, take it up with the court.

3    Take it up with the court, Steve, that's where it

4    belongs.

5            MR. BISS:  This witness has a right to know

6    what's on those audiotapes, just like the public does.

7            MR. DONNELLAN:  No, he does not.

8            MR. BISS:  The public has a right --

9            MR. DONNELLAN:  It is subject to a court

10   order --

11          (Speaking simultaneously)

12         MR. DONNELLAN:  It's subject to a court order

13   and it should be taken up with the court.

14         MR. BISS:  Jon, what I find most astounding is,

15   you represent a member of the press, and here we have a

16   classic example, maybe another classic example of the

17   press trying to keep the truth from the people, and

18   including this witness, trying to keep the truth from

19   this witness.  And he's entitled to know what's on the

20   audiotapes and to respond to what's on the audiotapes,

21   as part of his testimony in this case, including on the

22   question of damages, on the question of --

23         MR. DONNELLAN:  This witness is not even a party

24   to this case --

25         MR. BISS:  He's a witness.

1          MR. DONNELLAN:  -- Steve.

2          MR. BISS:  He's a witness.  He's a witness

3    and --

4          MR. DONNELLAN:  He has no entitlement under this

5    order to have access to these materials.  If you would

6    like to have a discussion offline about lifting the

7    protective order so that all materials subject to the

8    protective order are disclosed, let's have that

9    discussion.

10         But for right now, we have a protective order,

11   it's in place, it's signed by the judge, and if you were

12   to play this tape right now it would be a violation of

13   that order.

14         MR. BISS:  Well, I can tell you this, I am --

15   I'm shocked by this response.  I'm shocked by it, but

16   I'm not surprised.  And I'm not going to put myself or

17   my clients, or the witness, in the position of violating

18   a federal court order.  I'm not going to give you the

19   satisfaction of preparing a motion for sanctions, but I

20   will tell you this:

21         We are definitely, definitely going to the judge

22   on this, and we're going to seek attorney's fees and

23   costs for you tying up this deposition.  We have a few

24   more days left to finish up discovery.  How am I going

25   to get to examine this witness on these audiotapes

1   because of what you're doing?  You're effectively
2   running out the clock, that's what you're doing here.
3   And unless you --
4           MR. DONNELLAN:  If you have a valid claim, you
5   take it up with the court, and I'm sure the court will
6   give you relief to pursue that questioning if he deems
7   that it's appropriate, as he's done in other instances
8   where there's been an appropriate request to push out
9   the discovery schedule.  So, that's certainly your right
10  and you can make that request.  And if the court grants
11  it, we'll come back and we'll finish it.
12          MR. BISS:  Just so I'm clear, so you're refusing
13  to go forward with the deposition, you're threatening
14  me, and perhaps the witness, you're threatening me with
15  sanctions and other types of remedies if I proceed with
16  the audiotapes, with showing him and asking him
17  questions about what's on those audiotapes.
18          MR. DONNELLAN:  I'm not threatening you.  I'm
19  telling you that it would be --
20          MR. BISS:  Sounds like a threat to me.
21          MR. DONNELLAN:  Don't mischaracterize it.  I am
22  telling you that it would be a violation of the court
23  order and that I will seek relief from the court if you
24  proceed with that.
25          MR. BISS:  And what other grounds, other than

1   what you've stated, what other grounds do you have that

2   it's a violation of the court order?

3        MR. DONNELLAN:  As I've already told you,

4   it's -- you can go read the protective order yourself.

5   It's right in there --

6        MR. BISS:  Well, are there any other grounds --

7        MR. DONNELLAN:  And it's also beyond the scope

8   of the direct examination to begin with, so it's

9   completely inappropriate.

10       MR. BISS:  Well, it's definitely not beyond the

11  scope, but any other grounds under the protective order

12  that you want to put on the record?  This is your

13  opportunity.

14       MR. DONNELLAN:  I would just direct you to the

15  protective order, Steve.  You've got it.  You can read

16  it.  You are a party to it and you were part of putting

17  it forward to the court.  So --

18       MR. BISS:  I don't think it restricts me at all

19  in the examination of the witness.  This witness can

20  sign a witness assurance declaration and he can receive

21  any counsel's eyes only information at all.  He's a

22  witness to the deposition.  You agree with that, right?

23       MR. DONNELLAN:  No, absolutely not.

24       MR. BISS:  You don't think -- because you called

25  this witness, I can't show him counsel's eyes only

 1    information?

 2              MR. DONNELLAN:  Absolutely not.  This is my

 3    deposition.  This is defendants' deposition.  I called

 4    it.  I did not show him those materials and I did not

 5    reveal any materials that are subject to the

 6    confidentiality order, whether attorney's eyes only or

 7    under any lesser standard.  And so, there's no basis for

 8    him to sign, it's not reasonably necessary to the

 9    deposition, and it's beyond the scope of anything that

10    I've asked about.

11              THE WITNESS:  So, just so I'm clear, so now,

12    Steve, you don't get to ask me any questions, and

13    anything that he asked of me, he gets to decide whether

14    or not it's relevant or not.  So, I'm being treated

15    differently than all the other people that got deposed,

16    which is totally ridiculous and wrong.

17              And I don't know what the hell you guys at

18    Hearst are trying to cover up, but you asked me about

19    audiotapes, you asked me about notes, you asked me about

20    documents, so I get a right to see those documents and

21    hear those tapes, that I now know exist.  And if not,

22    you're keeping them from me, a witness, who you've made

23    a witness.  And you're the one that called me for a

24    deposition, not Steve.

25              You asked me 90 percent of questions that are

1  not relevant at all to this case, that are completely

2  just fishing, things that you want to try to push out to

3  all your fake news people.  And now you're threatening

4  my lawyer with me on the line.  You threatened me a

5  couple times with going to the judge.  And then you said

6  that I didn't answer your questions and you're going to

7  the judge, so you're full of threats.

8          But I know this much, those tapes need to get

9  out.  If you continue to hide them, I don't know what my

10  legal remedies are, but as far as I'm concerned, this

11  deposition is not complete because of your illegal cover

12  up and activity here, that continues to cover up your

13  lies for the sex predator that you sent out to harass my

14  family.

15          And now there's actual tapes that exist of this?

16  I've never heard of them.  So, why do I not get to hear

17  them?  I don't know what the court's going to say about

18  this, but this seems totally unfair, that my lawyer

19  doesn't get to ask me any questions.  This is absurd.

20  And I don't know what game you think this is, but maybe

21  you should send ICE out to Hearst winery and Hearst

22  ranch or something.  What a joke.

23          (Speaking simultaneously)

24          MR. DONNELLAN:  I don't agree with your

25  ad hominum characterizations, Congressman, but I think

1  we can agree --

2            (Speaking simultaneously).

3            MR. BISS:  Do you think that it's ethical for

4  you to stop a deposition based on the grounds that the

5  cross-examination exceeds the scope of your direct?  Do

6  you think that's a legitimate response?  I don't think

7  that's a legitimate response, and I don't think --

8            MR. DONNELLAN:  I think it's a legitimate

9  response when you're about to violate a protective order

10 that's been put in place by the court.

11           MR. BISS:  I'm not about to violate anything.

12 You know I'm not about to violate anything.  You know

13 that the only reason you're doing this is to hide the

14 truth.  That's it.

15           MR. DONNELLAN:  I know, Steve, I know, Steve, I

16 understand all the points that you and your client want

17 to make right now and that's --

18           MR. BISS:  So, why not let us make them?  Why

19 not?

20           MR. DONNELLAN:  No, no, no, no, if you can get

21 off your soapbox right now, I think we have said what we

22 have to say for the record, let's close the deposition,

23 we can take it up with the court, and anything that you

24 want to say to the court in terms of playing attorneys'

25 eyes only material that was not covered by this

1    deposition, you can make those arguments to the court.

2           MR. BISS: Hey, Jon, so much for the First

3    Amendment.

4           THE WITNESS: Well, hold on a second. I have

5    another question for my lawyer, since we're still in the

6    deposition, but I guess you have the right to just shut

7    it off, you can just shut me off.

8           So, I want to know, I brought up the goons that

9    were out in my district that you sent to harass my

10    constituents. How did those people know of these people

11    that worked for my family years and years and years ago

12    unless it was something that my family had provided to

13    you --

14           MR. DONNELLAN: I'm going to stop you,

15    Congressman, and I'm going to --

16           (Speaking simultaneously)

17           MR. DONNELLAN: Mr. Biss, would you please

18    instruct your client to stop with the speeches? There's

19    no question pending. We're suspending this deposition

20    at this point.

21           MR. BISS: Well, the problem is, is that you're

22    the one who talks about counsel's eyes only and the

23    protective order, and what he's pointing out is the

24    hypocrisy of your statement. The fact is, that you sent

25    goons out to California and you gave them -- you gave

1   them counsel's eyes only information.  That's his point.

2         It doesn't -- it's hypocrisy.  That's what he's

3   concerned about.  That's what he's trying --

4         MR. DONNELLAN:  This is not the right place for

5   speeches, okay, we're done.  You can take it up with the

6   court.

7         MR. BISS:  We will, we definitely will take it

8   up with the court, no question.

9         MR. DONNELLAN:  The deposition is ended.

10        MR. BISS:  Thanks for hiding the truth, Jon,

11  thanks for trying to hide it.  We'll get it out, okay,

12  we'll get it out.

13        VIDEO OPERATOR:  We are now going off the record

14  at 4:48 p.m. and this concludes today's testimony given

15  by Devin Nunes.  The total number of media units used

16  was three and will be retained by Veritext Legal

17  Solutions.  Thank you.

18

19         (TIME NOTED:  4:48 p.m.)

20

21

22

23

24

25

1        I declare under penalty of perjury

2    under the laws of the State of

3    California that the foregoing is true

4    and correct.

5        Executed on _____, 2021, at

6    _____, _____.

7

8

9

10    _____

11             SIGNATURE OF WITNESS

12

13

14

15

16

17

18

19

20

21

22

23

24

    Job No. CS4751278

25

Veritext Legal Solutions

800-567-8658                                        973-410-4098

```
 1    STATE OF CALIFORNIA      ) ss.

 2    COUNTY OF LOS ANGELES    )

 3

 4            I, Lori M. Barkley, CSR No. 6426, do hereby

 5    certify:

 6            That the foregoing deposition testimony taken

 7    before me at the time and place therein set forth and at

 8    which time the witness was administered the oath;

 9            That the testimony of the witness and all

10    objections made by counsel at the time of the

11    examination were recorded stenographically by me, and

12    were thereafter transcribed under my direction and

13    supervision, and that the foregoing pages contain a

14    full, true and accurate record of all proceedings and

15    testimony to the best of my skill and ability.

16            I further certify that I am neither counsel for

17    any party to said action, nor am I related to any party

18    to said action, nor am I in any way interested in the

19    outcome thereof.

20            IN WITNESS WHEREOF, I have subscribed my name

21    this 12th day of August 2021.

22

23

24            LORI M. BARKLEY, CSR No. 6426

25
```