| | |
|---|---|
| **NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III,** <br><br> Plaintiffs, <br><br> v. <br><br> **Ryan Lizza and Hearst Magazine Media, Inc.,** <br><br> Defendants. | Case No. 5:20-cv-04003-CJW-MAR <br><br> **Defendants' Brief in Support of Their Resisted Motion to Compel Responses to Third-Party Litigation Funding Discovery Requests** <br><br> **(Oral Argument Requested)** <br><br> **(Redacted Version)** |

Defendants Ryan Lizza ("Lizza") and Hearst Magazine Media, Inc. ("Hearst") file this brief to support their Motion to Compel third-party litigation funding discovery.

## Introduction

Plaintiffs NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III have not satisfied Defendants' Request for Documents No. 92 by providing responsive third-party litigation funding information. In addition, at the depositions of Plaintiffs and Congressman Devin Nunes (the prominent public official and libel litigant who is the son and brother of the persons suing in their individual capacity in this case), the deponents failed to answer questions regarding who is paying for this lawsuit. Similarly, they blocked inquiry into what participation or control any third-party funder might have in this action, or in any other libel suit that the Congressman and Steven Biss, the lawyer he shares with Plaintiffs, are pursuing against the American press.

This information goes to the heart of a potentially dispositive issue in this case—whether Plaintiffs should be deemed public figures by virtue of their relationship to the Congressman and their coordination in pursuing this lawsuit as part of his policy to sue media entities. *See* Brief

Point A(2), below at 6-8. (As public figures, Plaintiffs must establish actual malice through clear and convincing evidence—something they cannot do, just as Congressman Nunes could not even allege it in his now-dismissed case.) The record is replete with evidence that Plaintiffs are not controlling or directing this lawsuit and that the range of relief sought does not advance the interests they articulate. *See id.* The information sought is also relevant to Plaintiffs' standing as well as their general narrative that Defendants, as a large media organization, pried into their private business. Plaintiffs cannot meet their burden of resisting production of this relevant and non-burdensome discovery.

While this Court expressed reservation about the discoverability of third-party litigation funding information, it further indicated an open-mindedness about the issue by stating it would entertain argument and authority on the question if presented in a formal motion. *Id*. at 33-24. Defendants provide that argument and authority below, which demonstrates Defendants' right and need for the requested third-party litigation funding discovery detailing who is funding, supporting, and/or controlling this and ancillary libel litigation.

At a minimum these court-ordered disclosures should require Plaintiffs and their attorneys of record to reveal the information Defendants sought through production request No. 92 and their depositions of Plaintiffs and Congressman Nunes by answering whether they are receiving third-party litigation funding, for example through a non-party's direct or indirect advancement or payment of legal fees and costs and, if so, from whom and in what amounts.

**Factual Background**

During discovery, Defendants' Request for Production No. 92 sought:

> Documents sufficient to show the person or persons who, or entity or entities that, are funding Plaintiffs' prosecution of this action, including but not limited to the person or persons who, or entity or entities that, are paying Mr. Biss's and/or Mr. Feller's legal fees.

2

Plaintiffs responded on November 9, 2020 with "Objection – relevance" and withheld all responsive documents and information.

Prior communications with the Court covered this lack of discovery at one or more case management conferences. *See, e.g.*, ECF No. 72. Defendants deferred filing this motion with the hope that Plaintiffs would provide litigation funding details in their depositions, and Congressman Nunes would answer unresolved questions regarding whether Plaintiffs were motivated to file and pursue this lawsuit directly or indirectly by others who would pay for it in exchange for, by way of example, furtherance of a common purpose or participation in the sharing of a potential recovery.

As such, Defendants agreed to "table the issue . . . in the hopes that the subpoenas [would] yield comparable information." ECF No. 74. Those alternatives did not work. As with his family members who testified before him, Congressman Nunes refused to provide anything of substance regarding whether third parties are funding this lawsuit and, if so, on what terms.

This motion comes with within 14 days of his deposition, the last one taken to date.

> **A.    This Court should compel Plaintiffs to disclose third-party litigation funding information so that Defendants may prepare their defenses and develop a fulsome summary judgment and appeal record.**
>
>> *1.    Courts regularly compel disclosure of facts and documents relevant to a party's defenses.*

One polestar of the Federal Rules of Civil Procedure is that a party remains entitled to discover evidence relevant to its claims or defenses and proportional to the case. *See* Fed. R. Civ. P. 26(b)(1). Further, federal discovery rules mandate a liberality in the scope of discoverable material. *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 507, 509 (S.D. Iowa 1992) (citing *In re Hawaii Corp.,* 88 F.R.D. 518, 524 (D. Haw. 1980)); *cf*. Fed. R. Civ. P. 1 (requiring construction of the rules to secure the "just" determination of every action). Lastly, while the

federal discovery rules are not limited by admissibility standards under the Federal Rules of Evidence, *see* Fed. R. Civ. P. 26(b)(1), under Fed. R. Evid. 401 "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Here, Plaintiffs' litigation funding information is discoverable under any standard of relevance and critical because of the chilling effect of this litigation and the constitutional ramifications of tandem libel cases by a Congressman and his family against media defendants. *See* Levi, Lili. *The Weaponized Lawsuit Against the Media: Litigation Funding as a New Threat to Journalism*, 66 Am. UL Rev. 761, 763 (2016) (observing, "Wealthy private donors, seeking to shut down outlets they dislike, are inaugurating a modern wave of censorship-by-litigation.").[1]

Defendants recognize that discovery requests for information regarding how a plaintiff is paying its lawyer or even as to who is funding a lawsuit are not standard, and that often plaintiffs are not asked for and do not disclose their payment arrangements, such as whether they are paying an attorney hourly or are proceeding under a contingency fee arrangement. Even so, the burden of showing irrelevancy rests with Plaintiffs because they are the ones objecting to the requested discovery. *See e.g. V5 Technologies v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev.

---

[1] This observation dovetails with the August 10, 2021 deposition testimony of Congressman Nunes. There, he testified about his involvement [or lack of memory about his involvement] with his father, brother, and NuStar Farms in bringing this case, but regaled about the libel litigation strategy he and attorney Biss now employ in their nationwide assault on journalists and media organizations. The Congressman testified: '█████████████████████████████████████████ Devin Nunes Dep. 79:10-12. The Congressman's full deposition testimony highlights how Plaintiffs' case proceeded with vigor after his own lawsuit against Defendants in this Court was dismissed for failure to state a claim and in keeping with his general scheme to sue the media fast and frequently. *Plaintiffs*' recent motion to allow the Congressman to access confidential discovery materials in this case and the Congressman's insistence at his deposition of his entitlement to discovery materials in *this* case further shows the identity of interest between Plaintiffs and the Congressman, as well as the lack of meaningful distinction in plaintiffs' overall "policies" in prosecuting both cases.

2019) (a case denying litigation funding discovery but noting it is appropriate upon a factual showing of "something untoward" occurring in the case).

Further, even when denying broad discovery about third-party litigation funding, federal courts caution that "discovery issues are generally case-specific and deserve individual consideration that require courts to balance the concerns of relevancy and proportionality." *Fulton v. Foley*, No. 17-CV-8696, 2019 WL 6609298 (N.D. Ill. Dec. 5, 2019); *see also Miller UK Ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711, 722 (N.D. Ill. Jan. 6, 2014) ("Relevance is not inherent in any item of evidence, but exists only as a relation between an item of evidence and the matter properly provable in the case."); *Abrams v. First Tenn. Bank Nat. Ass'n*, No. 3:03-cv-428, 2007 WL 320966 (E.D. Tenn. Jan. 30, 2007) (ordering production of litigation funding agreement because it is "relevant and not protected by any privilege").

Thus, while a request for third-party litigation funding information may appear unusual, this unusual case warrants production of the requested records and facts.[2]

> 2. *Third-party funding information provides relevant evidence showing that Plaintiffs are public figures.*

Here, the third-party litigation funding discovery request is not only relevant, but—depending on the answer—could prove crucially important to Defendants' defense at the District Court or on appeal that Plaintiffs are public figures who must show constitutional actual malice to survive a defense motion for summary judgment.[3]

---

[2] Increasingly courts are imposing general litigation funding disclosure requirements, often for conflicts clearance purposes. *See* Joseph J. Strobel and Laura Welikson, *Third-Party Litigation Funding: A Review of Recent Industry Developments*, 87 Def. Counsel J. 1, 12 n.91-92 (2020) ("As of February 2018, six U.S. Courts of Appeals have local rules which require identifying litigation funders. Approximately 25% of all U.S. District Courts have local rules or forms that require the disclosure of third-party funding arrangements in civil actions.").

[3] This issue by no means is finally resolved and beyond Defendants' right and ability to obtain discovery on it, argue the merits of it in their forthcoming motion for summary judgment, and

The issue of third-party litigation funding raises a multitude of questions about Plaintiffs' public figure status and whether they injected themselves or were drawn into a public controversy or matter of public concern through their relationship to Congressman Nunes, by a willingness to share control and proceeds of a libel claim with others, or even through inserting themselves into an orchestrated campaign of suing the press in concert with their son/brother and the lawyer they share with him.

These prospects are not imaginary or speculative. Instead, they now stand supported by testimony showing, among other things, that Congressman Nunes and Plaintiffs shared information about or coordinated efforts regarding selecting their lead counsel and in engaging Christopher Buskirk as a purported expert on magazine journalism.

In addition, Plaintiffs' apparent lack of investment in prosecuting their own lawsuit was buttressed by their deposition testimony admitting they ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and their document production of financial records indicating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Consider further that Plaintiff Anthony Nunes III, testifying *as the 30(b)(6) corporate representative of NuStar*, answered the question ▮▮▮▮▮▮

---

present it for consideration by this Court and on appeal. As the District Court noted in its Order on Defendants' initial Motion to Dismiss, "At oral argument defendants' counsel asserted that the Nunes are limited public figures by virtue of the relation to Congressman Nunes. Defendants did not raise this issue in their brief, nor did defendants cite to any authority on this point. At this stage the Court must construe the record in the light most favorable to plaintiffs. Thus, the Court will presume for purposes of the present motions that plaintiffs are private figures." ECF No. 27, at 8, n.2. Then, in its Memorandum Opinion and Order on Defendants' motion seeking dismissal of Plaintiffs' Amended Complaint, ECF No. 50, the Court discussed the involuntary public figure issue, noted its view that Eighth Circuit and Iowa precedent dictated a determination that the involuntary public figure status *required* the making of "*new*" law, and decided—on a motion to dismiss without an evidentiary record—that none of the Plaintiffs (and perhaps no Iowa libel plaintiff) qualified as an involuntary public figure. *Id*. at 33-36.

Dep. 400:8-10.

These facts, coupled with the Congressman's practice of targeting media critical of him, Biss's representation of Devin Nunes in such cases, the Congressman's clear interest in using this case to pontificate, as he did in his recent deposition, and the vocal objections and "Twitter sewer" comments of attorney Biss provide "a sufficient factual showing of 'something untoward' occurring in the case." *V5 Technologies*, 334 F.R.D. at 312.

These facts make inquiry into third-party litigation funding important to ascertaining if this case is a mere surrogate for the Congressman's libel action against Defendants that the District Court already dismissed in its entirety so that he may advance his "policy" of suing those who publish commentary he dislikes as a shadow litigant.[4] The record also demonstrates that

---

[4] The deposition conduct of Devin Nunes and the lawyer he shares with Plaintiffs illustrates this. As the pleadings and appendix materials that Plaintiffs filed at ECF No. 138 show, attorney Biss and Congressman Nunes continue to lodge immaterial and scurrilous allegations about Lizza's character as part their personal attack on the journalist despite court orders not to do so. Similarly, those filings, and their demand that the Court order Defendants to disclose confidential information covered by the protective order in this case *to the Congressman* similarly show how non-party Devin Nunes insists on retaining a seat at the table as if he were a plaintiff in this lawsuit, or as if his now dismissed federal court libel action against Defendants remained ongoing.

The excerpts of the Congressman's deposition testimony that Plaintiffs filed in disregard of the protective order at ECF No. 138-1 highlight this. This passage is representative:

> THE WITNESS: Well, I object to that. I have a right, this is my deposition, I totally object to that. They definitely -- I do have a reason to know. You've sat on this deposition going through conspiracy theory after conspiracy theory after conspiracy theory, whether it's who's paying lawsuits, or frivolous ethics violations, and then you do that little bogus game on me where you show me a subpoena, and now I find out that you had it sitting next to you there as one of the exhibits.
>
> You asked me if I had seen some type of documents. I said no, but I'd like to see them, if I want to see Lizza's notes or something like that. If there's notes you're damn right I want to see them. And it's wrong, it's not transparent, it's totally corrupt, and I'm going to the judge myself. And I'm not ending this deposition. I want Steve to continue to ask me questions.

ECF No. 138-1 at 6-7.

Plaintiffs have had little involvement in the prosecution of their own case. *See* NuStar 30(b)(6) Corporate Rep. Tr. at 10:9-15:18 ; Lori Nunes Tr. at 185:3-22 ; Anthony Nunes, III Tr. at 303:8-308:11 (same); Anthony Nunes, Jr. Tr. at 97:13-100:15 (same); Lori Nunes Tr. at 117:23-124:9 ; *see also* Toni Dian Nunes Tr. at 86:10-89:17, 112:25-116:6 (Referenced transcript excerpts are attached to the accompany declaration of Nathanial Boyer filed as part of this motion).

These facts place into question whether Plaintiffs are simply a part of a larger program of striking media defendants with defamation suits as a strategy of intimidation and incursion of the exercise of free speech and press rights.

As important, Defendants require this information to argue, with a full evidentiary record, that this Court should recognize that Plaintiffs or the parties who stand to benefit from the case are public figures.

For instance, if a political action committee (PAC) or a political interest group were underwriting any part of this lawsuit, such funding (and any participation in its outcome) would demonstrate why Plaintiffs should not qualify as private figures in a case that relates to significant issues of public concern. Those organizations exist to raise and distribute money to elect or defeat political candidates—not to assist western Iowa farmers in waging a libel campaign against media defendants.

8
Case 5:20-cv-04003-CJW-MAR   Document 151   Filed 08/26/21   Page 8 of 12

### 3. Facts about Plaintiffs' third-party litigation funding is relevant to standing and real party in interest issues.

Plaintiffs' refusal to provide litigation funding information also calls into question whether one of the witnesses in this case is funding it and who is the true party in interest.

Federal Rule of Civil Procedure 17(a) states that "[a]n action must be prosecuted in the name of the real party in interest." Article III case and controversy requirements further require that parties have a stake in the case and its outcome. Other rules similarly address this for conflicts purposes. *See* Fed. R. Civ. P. 7.1 (requiring disclosure of corporate parents and publicly held affiliates holding a stake in the outcome of a case).

Plaintiffs admit ████████████████████████████████████████ and presumably Biss does not work for free. This prompts the question of whether Plaintiffs are the real party in interest, particularly if they do not stand to materially benefit from its outcome. For instance, Anthony Nunes III testified at his deposition ████████████████████████ ████████████—yet the Complaint seeks, in bold face type, $25 million dollars. *See* NuStar 30(b)(6) Anthony Nunes III Dep. 360:22-361:4.

Other courts have recognized that such a disconnect may indicate that the named litigants are not the real parties in interest, in violation of Fed. R. Civ. P. 17(a). *See, e.g.*, *Conlon v. Rosa*, No. 295907, 2004 WL 1627337, at *2 (Mass. Land Ct. July 21, 2004) (noting that when the litigation is being secretly funded, "He who pays the piper may not always call the tune, but he'll likely have an influence on the playlist").

Similarly, facts about who is supporting this lawsuit are relevant to rebut the narrative put forward by Plaintiffs that Defendants represent a large media company coming to a small town to pry into the lives of private individuals. *See, e.g.*, *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020) (ordering disclosure of identities of litigation funders

because "[t]hey concern Plaintiff's financial resources and could be used to refute any David vs. Goliath narrative"). This provides an independent basis to grant the requested discovery.

### B. This Court could require an *in camera* examination of Plaintiffs' third-party litigation funding documents and information.

Plaintiffs' restricted their objection to Request for Production No. 92 to relevancy and attorney Biss objected to litigation funding deposition questions by asserting only that the inquiries were irrelevant and harassing. *See e.g.,* NuStar 30(b)(6) Anthony Nunes III Dep. 398:12-402:8. Plaintiffs did not assert such records and information were covered by the attorney-client or attorney work product privileges. And no such privilege likely exists: "[T]he identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney client privilege, and the identity of the person paying legal bills does not disclose any mental impressions, conclusions, opinions or legal theories of the plaintiffs' attorneys." *Conlon*, No. 295907, 2004 WL 1627337, at *2.

Nevertheless, should Plaintiffs belatedly express concerns that the information and documents sought are privileged, Defendants suggest that this Court could take affirmative steps of deciding discoverability, relevancy, and burden by satisfying itself through a preliminary *in camera* review of documents responsive to Defendants' Request for Production No. 92. *See United Access Tech., LLC v. AT&T Corp.*, No. 11-338-LPS (D. Del. June 12, 2020) ("Generally, when confronted with this sort of dispute, close consideration of the subject matter in the disputed documents (e.g., through *in camera* review) is a prudent approach.").

### Conclusion

Based on the foregoing, Defendants respectfully request that the Court order Plaintiffs to provide third-party litigation funding information and documents responsive or relating to production request No. 92 to Defendants, or to the Court for an *in camera* review.

<table>
<tr><td>Dated: August 23, 2021.</td><td>**Ryan Lizza and Hearst Magazine Media, Inc., Defendants**</td></tr>
</table>

/s/ Michael A. Giudicessi
Jonathan R. Donnellan, *Lead Counsel\**
 jdonnellan@hearst.com
Ravi R. Sitwala\*
 rsitwala@hearst.com
Nathaniel S. Boyer\*
 nathaniel.boyer@hearst.com
Sarah S. Park\*
 sarah.park@hearst.com
Nina Shah\*
 nina.shah@hearst.com
Kristen Hauser
 khauser@hearst.com
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000
*\*Admitted Pro Hac Vice*

Michael A. Giudicessi
 michael.giudicessi@faegredrinker.com
Nicholas A. Klinefeldt
 nick.klinefeldt@faegredrinker.com
Susan P. Elgin
 susan.elgin@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

**Attorneys for Defendants**

# Certificate of Service

The undersigned certifies that a true copy of **Defendants' Brief in Support of Their Resisted Motion to Compel Responses to Third-Party Litigation Funding Discovery Requests (Oral Argument Requested) (Redacted Version)** was served upon the following parties through the Court's CM/ECF electronic filing system on August 23, 2021.

<u>/s/ Katie Miller</u>

Copy to:

Bill McGinn
 bmcginn@mcginnlawfirm.com
Steven S. Biss
 stevenbiss@earthlink.net

*Attorneys for Plaintiffs*

US.134326556.01