# HEARST

**Office of**
**General Counsel**

**Sarah S. Park**
Counsel

Eve Burton
**Executive Vice President**
**Chief Legal Officer**

Jonathan R. Donnellan
Mark C. Redman
**Vice President**
**Co-General Counsel**

Kenan J. Packman
Maureen Walsh Sheehan
Ravi V. Sitwala
Jack Spizz
**Associate General Counsel**

Carolene S. Eaddy
**Vice President**
**Corporate Human Resources**

Jennifer G. Tancredi
Debra S. Weaver
**Senior Counsel**

Catherine A. Bostron
**Corporate Secretary**

Sultan Barazi
Liddy Barrow*
Nathaniel S. Boyer
Lisa Bozman
David Brioso
Michael A. Canencia
James Coil
Adam Colón
Howard Davis
Travis P. Davis
Ignacio Diaz*
Vincent Floyd*
Kerry A. Flynn
Matthew Greenfield
Diego Ibargüen
Monika Jedrzejowska
Kate Mayer
Marianne Chow Newman
Aimee Nisbet*
Sarah S. Park
Suzanne Peters
Andrea S. Ryken
Eva M. Saketkoo
Jennifer Schanes
Nina Shah
Federica Tigani*
Kitty Yang*
Stephen H. Yuhan
Jim Zeng
**Counsel**

* Not admitted or
resident in New York

January 18, 2021

**VIA EMAIL to    Mark_Roberts@iand.uscourts.gov, and to**
                 **Amy_Steele@iand.uscourts.gov**

Mark A. Roberts
United States Magistrate Judge
U.S. District Court for the Northern District of Iowa
111 Seventh Avenue SE
Cedar Rapids, IA 52401

Re:    *NuStar Farms, LLC et al. v. Lizza et al.*,
       Case No.  5:20-cv-04003-CJW-MAR

Dear Judge Roberts:

    We and Faegre Drinker Biddle & Reath LLP represent Defendants Ryan Lizza and Hearst Magazine Media, Inc. ("Hearst," together with Lizza, "Defendants") in this defamation action brought by Plaintiffs NuStar Farms, LLC ("NuStar"), Anthony Nunes, Jr. ("Anthony Jr."), and Anthony Nunes, III ("Anthony III," together with NuStar and Anthony Jr., "Plaintiffs").

    We submit this letter to outline Defendants' positions in advance of the status conference scheduled before the Court on January 21, 2021.  *See* ECF No. 69.

    Since Defendants' email to the Court on January 13, 2021, the parties met and conferred and further narrowed the disputes between them.  Plaintiffs now represent that they will produce all categories of documents responsive to Defendants' requests for the time period of 2006 (the time of NuStar's formation) to the present day.  Plaintiffs have also agreed not to redact any non-privileged information—including personal identifying information such as Social Security numbers, addresses, and the like—from their productions. And they state they have not produced a privilege log because they have not withheld or redacted privileged information.

300 West 57th Street
New York, NY 10019
T 212.649.2042
Sarah.Park@hearst.com

While not mentioned in the January 13, 2021 email, as to records marked and logged by Defendants as protected by the attorney-client privilege, in connection with drafts of the article at issue in this case, Defendants have offered to produce the earliest draft of the article by Lizza in their possession, the final published draft of the article, and all editor's notes or comments and related communications in between the first and final drafts that do not disclose any privileged communications with, or advice provided or requested from, legal counsel, subject to Plaintiffs' agreement that such production under the Counsel Eyes Only or Confidential provisions of the Protective Order will resolve this discovery issue. At the status conference, Defendants intend to request that the Court approve this agreement on the record, to ensure the fullest protection and preservation of the attorney-client privilege attached to the article drafts and client communications.[1]

Notwithstanding this substantial progress, the parties have reached an impasse on two issues of significance:

    (a)    Plaintiffs' refusal to provide interrogatory responses identifying people who have worked for them; and

    (b)    Plaintiffs' objections to producing documents sufficient to identify the litigation funder(s) of this action.

Defendants also respectfully request regular status conferences to ensure the parties' ability to meet discovery and pretrial deadlines. As of the writing of this letter, Defendants have received only a fraction of the documents to which they are entitled, despite significant efforts to cooperate with Plaintiffs in jointly engaging an eDiscovery vendor.

---

[1] Plaintiffs' counsel's letter to the Court of January 18, 2021 acknowledges Defendants' proposal and appears to confirm this agreement in principle. Plaintiffs however also reference specific logged documents, seeming to speculate as to their content and eligibility for production under the agreement. As Defendants understand it, based on their meet-and-confer and subsequent communications, this issue has been resolved; from the logged documents, Defendants intend to honor their agreement and produce the first draft and subsequent notes and communications as discussed. Defendants are happy to discuss the matter further at the forthcoming conference as necessary.

Plaintiffs' issue no. 2 in their January 18 letter was never raised at a meet-and-confer—had it been, Defendants would have explained that they are not withholding any such non-privileged communications and agree to produce those within their possession, custody or control.

I.      **Plaintiffs' Refusal to Respond to Interrogatories by Identifying Their Workers as Requested**

On October 23, 2020, Defendants served interrogatories, asking each Plaintiff in Interrogatory No. 1 to provide information identifying every person who had worked for them between January 1, 2006 to the present, and providing certain information including the documents forming the basis of Plaintiffs' verification of the person's identification and authorization for employment. Defendants sought the responses in an organized manner by asking Plaintiffs to complete this chart:

| Name | |
|---|---|
| Present or last known address, telephone number, and email address | |
| Present or last known occupation, title, business, and employer | |
| Present or last known address, telephone number, and email address of the employer | |
| Dates and nature of employment/engagement with NuStar | |
| U.S. Social Security Number | |
| Alien Registration Number | |
| Identity and employment authorization Document(s)*[2] | |

Defendants' interrogatories to NuStar, virtually identical to their interrogatories to the other Plaintiffs, are attached hereto as **Exhibit A**.

On November 23, 2020, Plaintiffs served objections, attached hereto as **Exhibit B**, stating that Interrogatory No. 1 was "over-broad as to time frame and not proportional to the needs of the case; confidential."[3]

Citing Federal Rule 33(d), Plaintiffs also referred generally to "NuStar's Iowa Workforce Development Employer's Contribution and Payroll Reports and USCIS Form I-9 Employment Eligibility Verifications,

---

[2]      Following an asterisk (*) the Interrogatory continued: "Per the Instructions . . ., for each Document please state the nature or type of Document; any identification or serial number unique to the Document (including Bates number); the subject matter of the Document and/or a general description of its contents; the Identity of the person or entity who issued, authored or created the Document; the date of creation of the Document; and the expiration date of the Document."

[3]      As noted above, Plaintiffs no longer object to the applicable time period for discovery of 2006 to present, and a protective order now governs the case.

including supporting documentation," claiming "[t]he burden of deriving or ascertaining the answer to this Interrogatory and its discrete subparts is substantially the same for either party."

Defendants immediately sought to confer with Plaintiffs about these responses. During a meet and confer on November 28, 2020, Plaintiffs contended their imminent production of employment records should provide the information requested. Without waiving their rights, Defendants allowed Plaintiffs additional time to produce such records, in hopes of narrowing the dispute.

However, after continuing to raise the lack of interrogatory responses and other deficiencies at meet-and-confer conferences in December 2020 and January 2021, Defendants have still not received Plaintiffs' employment records. Nor would such a production negate Defendants' right to a substantive sworn response to Interrogatory No. 1.

Plaintiffs' case centers on a single claim—"that defendants defamed plaintiffs by falsely alleging that they knowingly employed undocumented workers." ECF No. 50, at 42. And Plaintiffs bear the substantial burden of proving that allegation is false. *See id.* at 7 (citing *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986)).[4]

Plaintiffs filed this lawsuit and willingly put at issue the legal status of their workers, an essential element of their claim as a matter of truth or falsity. Not only is this information central to Plaintiffs' case, but it is far more readily at their disposal. Plaintiffs know who has worked for them. It is neither correct nor logical to suggest Defendants can identify Plaintiffs' workers as easily as Plaintiffs can, or that Plaintiffs lack the duty to provide the information that goes to the heart of their suit.

Cases interpreting Rule 33(d) make clear a plaintiff may not invoke that rule to avoid answering straightforward questions going to the "crux" of their claims. In *Kadambi v. Express Scripts, Inc.*, No. 13-cv-321, 2015 WL 10985383 (N.D. Ind. July 14, 2015), a plaintiff alleged defamation but refused to provide a complete response to an interrogatory asking him to identify, in chart format, specific information about each alleged defamatory statement including the author, the date, and the identity of witnesses to the statement; instead, the plaintiff referred generally to "documents produced." *Id.* at *1-3.

---

[4] The statement also is not actionable if the reporting is "substantially true"—even if there were an error in it, if the "sting of the defamatory charge" remained, and thus would have the same effect on the mind of the reader, then it is not actionable. ECF No. 50, at 8.

As the court noted, "[t]he allegedly defamatory statements . . . are at the crux of [the plaintiff's] suit against [the defendant]. Courts to have addressed this issue have found such behavior by a plaintiff impermissible." *Id.* at *4 (citing *Sellick Equip. Ltd. v. United States*, 18 C.I.T. 352, 356 (Ct. Int'l Trade 1994) ("The government would be disadvantaged if it were required to blindly rummage through Sellick's records. The government is entitled to know the factual content of Sellick's claims with a reasonable degree of precision," and plaintiff's failure to fully "identify[] the factual bases of its allegations" was "simply unacceptable")); *see also Kadambi*, 2015 WL 10985383, at *9 (ordering plaintiff to answer interrogatory asking for specific information regarding each employee from 1999 to the time of trial).

This is especially true where a plaintiff is far more familiar with the referenced records than the defendant could be, as is the case here. *See, e.g.*, *Kadambi*, 2015 WL 10985383, at *6 ("There is no question that a doctor will have greater familiarity with and knowledge of his own notes and charts, which he created over the course of treating his patients" such that doctor's broad reference to his charts was insufficient interrogatory response).

Moreover, some of the information sought is unlikely even to be found in records. The very fact that the case involves undocumented labor means critical information may not be contained in documents at all, highlighting the need for sworn responses. Even as to documented employees, I-9 forms are not likely to list the dates and nature of the person's employment, and the person's last known employer and contact information. Defendants further seek information for those who performed work beyond a formal employment relationship. The article is substantially true if Plaintiffs used undocumented workers, whether they were employees, contractors, or sub-contractors.

The withholding of this information prejudices Defendants in preparing their defenses and securing judgment, whether by a Rule 56 motion or trial. Plaintiffs' continuing to withhold these responses stands at such a high disregard for the duties of a litigant, Defendants reserve the right to seek appropriate sanctions, including dismissal with prejudice. *See Denton v. Mr. Swiss of Mo., Inc.*, 564 F.2d 236, 240 (8th Cir. 1977) (holding sanction of dismissal is "proper where there has been a willful failure to answer interrogatories . . . . This is particularly so when, as here, such failure makes it impossible to determine the factual merits of a claim."); *First General Resources Co. v. Elton Leather Corp.*, 958 F.2d 204, 206 (8th Cir. 1992) (upholding dismissal with prejudice for failure to respond to interrogatories, noting court need not find bad faith, only "deliberate[] as opposed to accidental[]" conduct).

Therefore, Defendants seek the Court's guidance on whether this issue is ripe for Defendants to file a motion to compel.

## II. Plaintiffs' Refusal to Identify the Litigation Funder(s) of This Action

Defendants will seek to establish as a matter of law that Plaintiffs are "limited purpose public figures" (and not "private figures"), and thus they must prove that Defendants acted with "actual malice," meaning knowledge of falsity or reckless disregard for the truth.

This exceedingly high bar is one Plaintiffs cannot establish. As the Court recognized in its order granting in part Defendants' motion to dismiss, this inquiry traditionally turns, in part, on whether Plaintiffs had access to the media in order to influence public debate, or whether they have injected themselves into a public debate. *See* ECF No. 50, at 35; *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (1974) ("[P]ublic figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy.").

Defendants have requested documents sufficient to show who is funding this litigation.[5]  This information is highly relevant to whether Plaintiffs constitute public figures.  The true party(ies) in interest behind this action, and Plaintiffs' relationship to and dependence on them, are probative of this question.

If, for example, this litigation is being funded in whole or in part by Congressman Devin Nunes, his supporters or associated political entities, or being handled *pro bono* or for a reduced fee by Congressman Nunes's counsel, that strongly suggests Plaintiffs have access to resources (namely, a prominent United States Congressman and his political apparatus) through which they can seek to shape public opinion.

This possibility is not mere speculation.

Plaintiffs' actions in prosecuting this suit strongly suggest a connection between them and Devin Nunes's political operations.  To start,

---

[5]     *See* Request No. 92 ("Documents sufficient to show the person or persons who, or entity or entities that, are funding Plaintiffs' prosecution of this action, including but not limited to the person or persons who, or entity or entities that, are paying Mr. Biss's and/or Mr. Feller's legal fees.").

Plaintiffs' original complaint in this action was a near copy of Devin Nunes's complaint, filed by the same lawyer, Mr. Biss (who has represented Devin Nunes in at least a half-dozen lawsuits around the country, two of which have been dismissed for failure to plead actual malice) four months earlier.[6] The complaint here made the same allegations concerning harm suffered by *Devin Nunes*, not just Plaintiffs herein.

To this point, Plaintiffs' document production to date consists largely of articles and social media posts about Devin Nunes, not about Plaintiffs.

Importantly, in their Federal Rule 26(a)(1) disclosures in this case, Plaintiffs named Devin Nunes as a witness on whom they intend to rely, represented by Mr. Biss.[7] If Congressman Nunes has any connection to the funding of the case *or* stands to benefit from a recovery by Plaintiffs (who seek at least $20 million in this case), Defendants are entitled to explore this potential bias of a key witness. *See Berger v. Seyfarth Shaw, LLP*, No. C07-05279, 2008 WL 4570687, at *1 (N.D. Cal. Oct. 14, 2008) (holding discovery into third-party witness's possible financial assistance to plaintiffs was relevant to third party's "potential bias as a witness in [the] action"); *Bryant v. Mattel*, 573 F. Supp. 2d 1254, 1274 (C.D. Cal. 2007) (holding "fee-payment arrangements are relevant to credibility and bias").

The Court may also recall that Plaintiffs have served subpoenas for documents *concerning Devin Nunes* on CNN, on Fusion GPS, and on an entity that, Plaintiffs argue, provides funding to Fusion GPS (TDIP). More recently, Plaintiffs have sought to serve another subpoena on CNN, one subpoena on Politico, and subpoenas on two other persons who seem to have written critical opinion articles *about Devin Nunes*. That Plaintiffs—farmers in Northwestern Iowa who claim to have no connection to Devin Nunes's political operations—would seek records from entities with national political

---

[6]     Notably, Anthony Jr.'s wife, Toni Dian Nunes—the treasurer of many of Devin Nunes's congressional campaigns—is not a plaintiff in this lawsuit, despite being identified in the Article. Her omission from this case is at least consistent with an effort by Plaintiffs to avoid a finding that they are limited public purpose figures with access to the media subject to the actual malice standard. *See, e.g.*, *Buchanan v. Associated Press*, 398 F. Supp. 1196, 1202 (D.D.C. 1975) (accountant who performed services for finance committee to reelect President Nixon was a public figure).

[7]     The Rule 26(a)(1) disclosure states: "Devin Nunes has knowledge and information relevant to all facts, allegations and claims stated in his Amended Complaint filed in Case C19-4064 as it may be amended, including, without limitation, Defendants' publication of false and defamatory statements, the republication of those statements, Defendants' actual malice, and the presumed damages and actual damages, including insult, pain, embarrassment, humiliation, mental suffering, and injury to his reputation, caused by the Defendants' defamation and conspiracy."

profiles (and/or who write critical articles about Devin Nunes) raises significant questions as to the parties with interest in this litigation, the true objective of this suit, and whether Plaintiffs really are "private figures" for purposes of their defamation claim.

Further, Plaintiffs recently served an expert report by Chris Buskirk, publisher and editor of the journal *American Greatness*, a website providing commentary on national politics from an apparently conservative viewpoint. Buskirk's public record shows he greatly admires, and has interviewed and written about, Congressman Devin Nunes.[8] The fact that Plaintiffs engaged Buskirk—himself a prominent figure in conservative media—in and of itself suggests they may have unique access to a media platform. If Congressman Nunes is behind this suit, and Plaintiffs thus engaged Buskirk with the Congressman's assistance, this underscores the relevance of this funding question to the "limited purpose public figure" inquiry.

Transparency in litigation funding is essential to this Court's fair administration of justice. Notably, in the last Congress, United States Senator Chuck Grassley introduced the "Litigation Funding Transparency Act of 2019," which highlighted the importance of knowing who the true parties in interest are. *See* Press Release, *Grassley Leads Lawmakers in Introducing Bill to Improve Transparency of Third Party Financing in Civil Litigation*, *available at* https://www.grassley.senate.gov/news/news-releases/grassley-leads-lawmakers-introducing-bill-improve-transparency-third-party. As Senator Grassley explained:

> Transparency brings accountability. . . . For too long, obscure third-party litigation funding arrangements have secretly funneled money into our civil justice system, without any meaningful oversight, all for the purpose of profiting off someone else's case. We should know whether there are undue pressures at play that could needlessly prolong litigation or harm the interests of the claimants themselves. A healthy dose of transparency is needed to ensure that profiteers aren't distorting our civil justice system for their own benefit.

---

[8]     *See, e.g.*, Chris Buskirk, *Devin Nunes: hero of the republic*, Am. Spectator, Mar. 25, 2019, https://spectator.us/topic/devin-nunes-hero-republic/ (last visited Jan. 18, 2021); Podcast: The Chris Buskirk Show, *The Plot Against The President: How Devin Nunes Uncovered The Biggest Scandal in US History w/ Lee Smith*, Oct. 31, 2019, *available at* https://www.stitcher.com/show/the-chris-buskirk-show/episode/the-plot-against-the-president-how-devin-nunes-uncovered-the-biggest-scandal-in-us-history-w-lee-smith-64978693 (last visited Jan. 18, 2021).

Plaintiffs should, at a minimum, disclose the identities of those funding the action to allow Defendants to evaluate the validity of their objections to producing the requested documents.

As an alternative, this Court should consider requiring Plaintiffs to file with the Court under seal documents sufficient to identify the funders of the action, which may include litigation funding agreements and related correspondence and communications by Plaintiffs or their attorney with proposed sources of funding for this case and actual funders, if any. This would permit the Court to conduct an *in camera* review as to relevancy and need. Further, such judicial scrutiny will move to fostering, if not achieving, the judicial oversight that is but one part of the public policy supporting open and accountable courts and litigants.

## III.   Recurring Status Conferences

Defendants renew their request that the Court schedule periodic case management or status conferences now so that the parties can keep the Court apprised of discovery and other issues and receive guidance and rulings before issues turn into motions.

Use of such conferences can assist the parties and the Court in meeting the goal of Fed. R. Civ. P. 1 that the Federal Rules of Civil Procedure enable "the just, speedy, and inexpensive determination of every action and proceeding." Local Rule 72(i) empowers this Court to exercise supervisory powers over civil calendars "including entering scheduling orders, approving discovery plans, [and] conducting calendar and status calls."

Federal magistrate judges in Iowa further use orders setting standing status conferences in civil cases of every nature, not just class action lawsuits or complex litigation.

For example, Chief Magistrate Judge Helen Adams of the Southern District often uses such orders in civil cases by scheduling a series of status conferences and including the following in her orders, "The parties shall **file** in the docket a list of any proposed matters to be discussed during the upcoming status conference **no less than 48-hours prior to the status conference**. The list may be submitted jointly or separately by each party. If any party anticipates that the status conference will take longer than 30-minutes and/or would like a court reporter for the status conference, this should also be indicated in the same filing." *See e.g. The Wittern Group, et.*

*al, v. Bauer, et. al*, 4:20-cv-00007 CRW-HCA, Dkt. No. 20 (S.D. Iowa, entered Feb. 24, 2020) (emphasis in original).

Here, there is a demonstrated need for close supervision of the discovery process and close tracking of how this case is progressing under the tight deadlines of the Scheduling Order.

While Plaintiffs indicate they oppose these scheduled proceedings, their objection that status or case management conferences should occur only as issues arise disregards the path this case already has travelled, the frequent need for Court guidance that already has arisen, and the reactionary approach that requires.[9]

Further, use of a provision such as this employed by Chief Magistrate Judge Adams would fully address that concern: "If the parties believe that there are no matters to be discussed at the upcoming status conference, this should also be indicated in a **filing no less than 48-hours prior to the status conference**." *Id.* (emphasis in original).

We therefore urge that the Court set periodic status conferences to provide the parties with concrete deadlines by which they must meet, confer, and resolve those issues that they can and a standing place on the Court's docket to present those matters that they cannot.

Respectfully submitted,

 /s/    Sarah S. Park
  Sarah S. Park*

*Admitted pro hac vice

cc: all counsel of record (by electronic mail)

---

[9]     While Plaintiffs' counsel has often suggested his own time is too scarce to review or respond to communications, he has shown less regard for Defendants' counsel's time in missing numerous scheduled calls and his own stated deadlines for productions.

# Exhibit A

| | | |
|---|---|---|
| NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III, | ) ) ) | Case No. 5:20-cv-04003-CJW-MAR |
| | ) | |
| Plaintiffs, | ) ) | Defendants' First Set of Interrogatories to Plaintiff NuStar Farms, LLC |
| v. | ) ) | |
| Ryan Lizza and Hearst Magazine Media, Inc., | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants Hearst Communications, Inc., Defendants Ryan Lizza and Hearst Magazine Media, Inc., by and through their attorneys, hereby request that Plaintiff NuStar Farms, LLC answer each of the Interrogatories set forth below, separately and fully, in writing and under oath. Answers shall be served at the Hearst Corporation, Office of General Counsel, 300 West 57th Street, 40th Floor, New York, New York 10019 within thirty (30) days of service of these Interrogatories.

## Definitions

1.      These Interrogatories incorporate by reference Rule 33 of the Federal Rules of Civil Procedure and L.R. 33 of the United States District Court for the Northern District of Iowa.

2.      "Document(s)" shall have the broadest meaning ascribed to it by Rule 34 of the Federal Rules of Civil Procedure, and includes (but is not limited to) any written, recorded or graphic information however produced or reproduced, of every kind, source, and authorship, including both originals and all non-identical copies and drafts thereof, irrespective of whether the information is intended for or transmitted internally by you, or intended for or transmitted by any other person or entity, or transmitted to no one, including without limitation any government

1

agency, department, administrative entity, or personnel. This term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter, including but not limited to communications in words, symbols, pictures, sound recordings, films, tapes, emails, and other ESI, as defined below. For purposes of illustration and not limitation, the term includes: correspondence; transcriptions of testimony; letters; notes; papers; files; records; contracts; agreements; telegraphs; teletypes; emails; text messages; messages and posts conveyed via social media such as Facebook, LinkedIn, Twitter, Instagram, Pinterest, Flickr, Google+, Tumblr; websites; blogs; diaries; calendars; logs; circulars; announcements; advertisements; instructions; schedules; minutes; summaries; notes and other records and recordings of any conferences, meetings, visits, statements, interviews, or telephone conversations; bills; statements and other records of obligations and expenditures; canceled checks; vouchers; receipts and other records of payments; ledgers; journals; balance sheets; profit and loss statements; interviews; affidavits; printed matter (including published books, articles, speeches, and newspaper clippings); press releases; charts; drawings; specifications; manuals; brochures; parts lists; memoranda of all kinds to and from any persons, agencies, or entities; technical and engineering reports; evaluations; advises; recommendations; commentaries; conclusions; studies; test plans; procedures; data; reports, results, and conclusions; records of administrative, technical, and financial actions taken or recommended; and all other materials the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

3.      "Electronically Stored Information" or "ESI" means and refers to computer-generated information or data, of any kind, stored on computers, file servers, disks, tape or other devices or media, or otherwise evidenced by recording on some storage media, whether real, virtual, or cloud-based.

4.      "Relate" or "relating to" means constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing, concerning, supporting, refuting, or referring to, directly or indirectly.

5.      "NuStar," "You," and "Your" refers to Plaintiff NuStar Farms, LLC, and those affiliates, subsidiaries, divisions, officers, directors, employees, agents, attorneys, and any other person who acted or purported to act on any or all of its behalf at any and all times relevant to the issues in this action.

6.      "NuStar Employees" refers to all employees who were hired by and/or performed work of any kind for NuStar (as defined above) from January 1, 2006 to present.

7.      "NuStar Workers" refers to all persons other than Employees who performed services for, or provided labor to, or at the premises or business locations of, NuStar (as defined above), including but not limited to independent contractors, from January 1, 2006 to present.

8.      The singular includes the plural and vice versa; the terms "and" and "or" shall be both conjunctive and disjunctive; the past tense includes the present tense and vice versa; the term "including" means "including but not limited to"; and the terms "all," "each," and "every" shall be construed as inclusive or exclusive, as necessary to afford the widest possible scope to the Interrogatory containing such terms.

9.      For any term used herein which is not otherwise specifically defined, the common and usual meaning of such term is intended.  Any ambiguity in these Interrogatories shall be resolved so as to construe the Interrogatories as broadly as possible.  Defined terms need not be capitalized to retain their defined meaning.

**Instructions**

1.      You are required to provide a separate and complete answer to each Interrogatory, including all subparts.

2.      In producing information in response to these Interrogatories, you must furnish all information known or available to you regardless of whether the information is possessed: directly by you; by your relatives, agents, employees, representatives, investigators, or any other person acting or purporting to act on your behalf; by your present or former attorneys or their agents, employees, representatives, or investigators; or by any other legal entities controlled or in any manner affiliated with you.

3.      When asked to "Identify" a person or entity or when asked for the "Identity" of a person or entity, please include:

    a.      The name of the person or entity;

    b.      The present or last known address, telephone number, and email address of the person or entity;

    c.      The present or last known occupation, title, business, and employer of the person or entity; and

    d.      The present or last known address, telephone number, and email address of the employer of the person or entity.

4.      When asked to Identify a Document, please include:

    a.      The nature or type of Document (e.g., letter, photograph, e-mail, tape recording, etc.);

    b.      Any identification or serial number unique to the Document, including any Bates number, as applicable;

4

c.      The subject matter of the Document and/or a general description of its

contents;

d.      The Identity of the person or entity who issued, authored, or created the

Document;

e.      The date of the Document or, if it bears no date, the date on which it was

created;

f.      The expiration date of the Document, as applicable; and

g.      The physical location of the original and any copies of the Document of

which you are aware and the Identity of the present custodian of the

Document.

5.      If any of these Interrogatories cannot be answered in full, you should answer to

the extent possible, specifying the reasons for your inability to answer the remainder of the

Interrogatory and stating whatever information, knowledge, or belief you have concerning the

unanswered portion.

6.      These Interrogatories are continuing.  If you obtain additional information

responsive to these Interrogatories at any time after service of your initial answers and prior to

trial, you are required to supplement or amend your answers in a timely manner pursuant to

Rule 26(e) of the Federal Rules of Civil Procedure.

7.      If you claim any of the information sought by these Interrogatories is immune

from discovery on the grounds of privilege or attorney work-product production, you must

provide the following with respect to the information:  (a) type of document, communication, or

other privileged matter (e.g., letter, memoranda, email, etc.); (b) its general subject matter; (c) its

date, if any; (d) its author, addressees, and any other recipients, if any, and, where not apparent,

the relationship of the author, addressees and recipients to each other; (e) the nature of the privilege which is being claimed.

8.     Questions regarding the interpretation of these Interrogatories should be resolved through a meet and confer with undersigned counsel.

9.     Unless otherwise specified, these Interrogatories cover the time period from the point NuStar began operations or purchased real property in Iowa, but in no event later than January 1, 2006, to the present.

**INTERROGATORY NO. 1.** Identify each and every NuStar Employee and NuStar Worker, the dates and nature of each NuStar Employee or NuStar Worker's employment or engagement, the Social Security and Alien Registration Number of each NuStar Employee or NuStar Worker (to the extent you possess such information), and the Documents that formed the basis of your verification of each NuStar Employee or NuStar Worker's identification and authorization for employment, including in connection with USCIS Form I-9. The information may be provided in the following format:

| | |
|---|---|
| Name | |
| Present or last known address, telephone number, and email address | |
| Present or last known occupation, title, business, and employer | |
| Present or last known address, telephone number, and email address of the employer | |
| Dates and nature of employment/engagement with NuStar | |
| U.S. Social Security Number | |
| Alien Registration Number | |
| Identity and employment authorization Document(s)* | • <br> • <br> • <br> • |

    \* Per the Instructions above, for each Document please state the nature or type of Document; any identification or serial number unique to the Document (including Bates number); the subject matter of the Document and/or a general description of its contents; the Identity of the person or entity who issued, authored or created the Document; the date of creation of the Document; and the expiration date of the Document.

7

**INTERROGATORY NO. 2.**  Identify each person who participated in preparing your responses to any Interrogatory propounded by Defendants.  For the avoidance of doubt, this Interrogatory is continuing in nature.

October 23, 2020

**Ryan Lizza and Hearst Magazine Media, Inc., Defendants**

By: /s/ Jonathan R. Donnellan
Jonathan R. Donnellan, *Lead Counsel*\*
 *jdonnellan@hearst.com*
Ravi V. Sitwala\*
 *rsitwala@hearst.com*
Nathaniel S. Boyer\*
 *nathaniel.boyer@hearst.com*
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000
*\*Admitted Pro Hac Vice*

 /s/ Michael A. Giudicessi
Michael A. Giudicessi
 *michael.giudicessi@faegredrinker.com*
Nicholas A. Klinefeldt
 *nick.klinefeldt@faegredrinker.com*
Susan P. Elgin
 *susan.elgin@faegredrinker.com*
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

*Attorneys for Defendants*

9

## Certificate of Service

The undersigned certifies that a true copy of **Defendants' First Set of Interrogatories to Plaintiff NuStar Farms, LLC** was served upon the following parties by email on October 23, 2020.

_/s/ Jonathan R. Donnellan_

Original to:

Joseph M. Feller
 *jfeller@kkfellerlaw.com*

Steven S. Biss
 *stevenbiss@earthlink.net*

*Attorneys for Plaintiff*

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
Western Division

| | | |
|---|---|---|
| NUSTAR FARMS, LLC | ) | |
| *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case 5:20-cv-04003-CJW-MAR |
| | ) | |
| | ) | |
| RYAN LIZZA | ) | |
| *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# PLAINTIFFS' OBJECTIONS AND ANSWERS
# TO DEFENDANTS' INTERROGATORIES

Plaintiffs, NuStar Farms, LLC, Anthony Nunes, Jr. and Anthony Nunes, III (collectively, the "Plaintiffs"), by counsel, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Federal Rules of Evidence ("FRE"), hereby note and preserve the following Objections and serve the following Answers to defendants, Ryan Lizza and Hearst Magazine Media, Inc.'s (collectively, the "Defendants"), interrogatories dated October 23, 2020 (the "Discovery Requests").

## General Objections

1.      Plaintiffs object to the Discovery Requests on the ground and to the extent that the Discovery Requests exceed the scope of discovery permitted under Rules 26(b) and 33(a)(2) of the Federal Rules of Civil Procedure (the "Rules").

1

2.      Plaintiffs object to the Discovery Requests on the ground and to the extent that the Discovery Requests seek the production and/or disclosure of information protected by the attorney-client privilege and/or work-product doctrines.  Subject to and without waiving the privilege as to any document, Plaintiffs represent that the only information and documents being withheld are communications between Plaintiffs and legal counsel in this action (Mr. Biss and Mr. Feller), documents prepared in anticipation of this litigation, and work-product of Plaintiffs' legal counsel.  The privileged materials consist almost entirely of email communications between Plaintiffs and their legal counsel and legal analysis of claims and defenses prepared by counsel.  Plaintiffs do not intend to produce a privilege log as to these documents, unless requested to do so by counsel for Defendants.  Any other claim of privilege or protection of trial-preparation materials will be expressly made in accordance with Rule 26(b)(5).

3.      Plaintiffs object to the Discovery Requests on the ground and to the extent that the Discovery Requests seek the production and/or disclosure of information protected by the marital/spousal privilege.

4.      Plaintiffs object to the Discovery Requests on the ground and to the extent that the Discovery Requests seek the production and/or disclosure of confidential information and sensitive personal, business and/or financial information and material that is not generally known to the public and that is the subject of efforts by Plaintiffs that are reasonable under the circumstances to maintain the privacy and confidentiality of such material.  Plaintiffs will produce all "CONFIDENTIAL" or "ATTORNEY'S EYES ONLY" information in accordance with the terms and conditions of a stipulated Protective Order or as ordered by the Court or agreed to by the parties.

2

5.      Plaintiffs object to the Discovery Requests on the ground and to the extent that the Discovery Requests seek to elicit inadmissible opinion evidence and/or hearsay or call for Plaintiffs to speculate or are duplicative.

6.      Plaintiffs object to the Discovery Requests on the ground and to the extent that the information requested is not in Plaintiffs' possession or control, but is in the possession and control of others.

7.      Plaintiffs object to the Discovery Requests (including the definitions and instructions that accompany the Discovery Requests) on the ground that the Discovery Requests are vague, confusing, argumentative, overly broad, and unduly burdensome.

8.      Plaintiffs object to the Discovery Requests to the extent that the Discovery Requests require Plaintiff to create documents for the Plaintiff or to take action not required by Rules 26 and 33 of the Federal Rules of Civil Procedure.

Continued on Next Page

## Answers to Interrogatories

As to each and every interrogatory, Plaintiffs note and preserve the following objections: Relevance (FRE 402); Prejudice (FRE 403); Privilege, including the Iowa spousal privilege [Iowa Code 669.9] and the attorney-client privilege (FRE 501-502); Lack of Foundation/Knowledge (FRE 602); Inadmissible Opinion (FRE 701); Hearsay (FRE 802); and Authenticity (FRE 901).

Plaintiffs each expressly and specifically object to Interrogatory No. 1 on the ground that the interrogatory (including Definitions 6, 7 and 8, respectively, and Instruction 9) is over-broad as to the time frame. Defendants published the Article at issue in this case on September 30, 2018. Lizza began his reporting in late August 2018, after being given the lead by Fusion GPS. In the Article, Lizza claims that he "landed" in Iowa on August 27, 2018. Lizza drove to Sibley and lied to numerous town folks, telling them that he was there to "talk about dairy farms". [https://www.esquire.com/news-politics/a23471864/devin-nunes-family-farm-iowa-california/ ("When I told her I was working on a story about dairy farms, her ears perked up."). When Lizza confronted Tony at his home, however, Lizza changed the story and admitted the truth. Lizza represented to Tony that he was in Iowa to write an "article about ***his*** dairy", *i.e.*, NuStar. (Emphasis added). Lizza intentionally concealed from Plaintiffs the fact that he was concocting a story around a preconceived narrative that would falsely accuse NuStar of knowingly using undocumented labor. Lizza worked with others on this false narrative, including someone who unlawfully ran Tony's license plate "through a database." The Article misrepresents that Lizza conducted "interviews" with anonymous sources on or about September 1, 2018. Lizza claims that one of these anonymous "sources", a person

who, according to Lizza, was "deeply connected in the local Hispanic community", told him that "NuStar did indeed rely … on undocumented labor", "asserting that the farm was aware of their [unauthorized] status". Lizza claims the so-called "source" with "firsthand knowledge"[1] said he/she/they sent unauthorized aliens to NuStar, but Lizza refuses to identify any names or dates or why the "source" has "firsthand knowledge". Lizza claims that a "second source" worked at NuStar for "several years, only recently leaving the dairy" – again, no names, no dates, no particulars. Because the Article was a hit piece, Lizza made no effort to contact Devin Nunes until after he had already written the Article. Lizza misrepresented the subject matter of the Article to Devin Nunes, *e.g.*:



Hi Rep. Nunes,

I'm working on a major story for Esquire magazine about immigration and the dairy industry and I have some questions for you. When would be a good time to talk this week?

Ryan Lizza
202-494-2208

FYI, my email is ryan.lizza@hearst.com

9/19/18, 8:38 AM

The Article falsely states that Plaintiffs are hiding a politically explosive secret: that NuStar knowingly employed unauthorized aliens and failed to document its hiring of aliens. Defendants conceal the time frame and particulars of the alleged Federal crimes

---

[1] In the Article, Lizza represents that he interviewed "two sources with firsthand knowledge". Lizza recognizes that it would be *per se* negligent to rely on and cite an anonymous source with no first-hand knowledge.

because, of course, Defendants' statements are knowingly false. The Discovery Requests for "all" records dating back to 2006, when NuStar was formed, and Discovery Requests for "current" employment records or employment records between October 1, 2018 and "the present", are overbroad and not proportional to the needs of this case. The Defendants' discovery exceeds the time period relevant to the defamation at issue in the Article and constitutes a blatant fishing expedition. Given the admissions in the Article and Defendants' intentional failure to specify when the supposed Federal crimes occurred, Plaintiffs will respond for the time period from January 1, 2018 through September 30, 2018.

Subject to the foregoing objections as to scope and proportionality, Plaintiffs answer each numbered Interrogatory, including discrete subparts, as follows:

Continued on Next Page

## NuStar Farms, LLC

**INTERROGATORY NO. 1.** Identify each and every NuStar Employee and NuStar Worker, the dates and nature of each NuStar Employee or NuStar Worker's employment or engagement, the Social Security and Alien Registration Number of each NuStar Employee or NuStar Worker (to the extent you possess such information), and the Documents that formed the basis of your verification of each NuStar Employee or NuStar Worker's identification and authorization for employment, including in connection with USCIS Form I-9. The information may be provided in the following format:

| | |
|---|---|
| Name | |
| Present or last known address, telephone number, and email address | |
| Present or last known occupation, title, business, and employer | |
| Present or last known address, telephone number, and email address of the employer | |
| Dates and nature of employment/engagement with NuStar | |
| U.S. Social Security Number | |
| Alien Registration Number | |
| Identity and employment authorization Document(s)* | • <br> • <br> • <br> • |

  **ANSWER**:     Objection – over-broad as to time frame and not proportional to the needs of the case; confidential.

  Subject to the foregoing objections, NuStar responds to this Interrogatory and each of its three (3) discrete subparts as follows: In accordance with Rule 33(d), the answer to this interrogatory may be determined by examining NuStar's Iowa Workforce Development Employer's Contribution and Payroll Reports and USCIS Form I-9 Employment Eligibility Verifications, including supporting documentation (collectively

the "NuStar Documentation"), for the relevant period from January 1, 2018 to September 30, 2018, which will be produced upon entry of a Protective Order. The burden of deriving or ascertaining the answer to this Interrogatory and its discrete subparts is substantially the same for either party. To protect the privacy of NuStar's employees/workers and former employees/workers, the NuStar Reports will be redacted to comply with the spirit and letter of Rule 5.2(a).

<div style="border:1px solid black; padding:10px;">

**INTERROGATORY NO. 2.** Identify each person who participated in preparing your responses to any Interrogatory propounded by Defendants. For the avoidance of doubt, this Interrogatory is continuing in nature.

</div>

  **ANSWER**:   Anthony Nunes, Lori Nunes, Tony Nunes.

**Anthony Nunes, Jr.**

**INTERROGATORY NO. 1.** Identify each and every Anthony Jr. Employee and Anthony Jr. Worker, the dates and nature of each Anthony Jr. Employee or Anthony Jr. Worker's employment or engagement, the Social Security and Alien Registration Number of each Anthony Jr. Employee or Anthony Jr. Worker (to the extent you possess such information), and the Documents that formed the basis of your verification of each Anthony Jr. Employee or Anthony Jr. Worker's identification and authorization for employment, including in connection with USCIS Form I-9. The information may be provided in the following format:

| | |
|---|---|
| Name | |
| Present or last known address, telephone number, and email address | |
| Present or last known occupation, title, business, and employer | |
| Present or last known address, telephone number, and email address of the employer | |
| Dates and nature of employment/engagement with NuStar | |
| U.S. Social Security Number | |
| Alien Registration Number | |
| Identity and employment authorization Document(s)* | • <br> • <br> • <br> • |

      **ANSWER**:        Objection – over-broad as to time frame and not proportional to the needs of the case; confidential.

      Subject to the foregoing objections, Tony responds to this Interrogatory and each of its three (3) discrete subparts as follows: There are no "Anthony Jr. Employees" or "Anthony Jr. Workers".

9

> **INTERROGATORY NO. 2.** Identify each person who participated in preparing your responses to any Interrogatory propounded by Defendants. For the avoidance of doubt, this Interrogatory is continuing in nature.

**ANSWER**:   Tony Nunes.

# Anthony Nunes III

> **INTERROGATORY NO. 1.** Identify each and every Anthony III Employee and Anthony III Worker, the dates and nature of each Anthony III Employee or Anthony III Worker's employment or engagement, the Social Security and Alien Registration Number of each Anthony III Employee or Anthony III Worker (to the extent you possess such information), and the Documents that formed the basis of your verification of each Anthony III Employee or Anthony III Worker's identification and authorization for employment, including in connection with USCIS Form I-9. The information may be provided in the following format:
>
> | | |
> |---|---|
> | Name | |
> | Present or last known address, telephone number, and email address | |
> | Present or last known occupation, title, business, and employer | |
> | Present or last known address, telephone number, and email address of the employer | |
> | Dates and nature of employment/engagement with NuStar | |
> | U.S. Social Security Number | |
> | Alien Registration Number | |
> | Identity and employment authorization Document(s)* | • <br> • <br> • <br> • |

**ANSWER**: Objection – over-broad as to time frame and not proportional to the needs of the case; confidential.

Subject to the foregoing objections, Anthony responds to this Interrogatory and each of its three (3) discrete subparts as follows: There are no "Anthony III Employees" or "Anthony III Workers".

11

> **INTERROGATORY NO. 2.** Identify each person who participated in preparing your responses to any Interrogatory propounded by Defendants. For the avoidance of doubt, this Interrogatory is continuing in nature.

**ANSWER**: Anthony Nunes.

## Reservation of Rights

Plaintiffs reserve the right to amend and/or supplement their Objections and Answers to Defendants' Discovery Requests.

DATED: November 23, 2020

NUSTAR FARMS, LLC
ANTHONY NUNES, JR
ANTHOY NUNES, III

By: ___*/s/ Steven S. Biss*_____
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone: (804) 501-8272
      Facsimile: (202) 318-4098
      Email: stevenbiss@earthlink.net
      (*Admitted Pro Hac Vice*)

      Joseph M. Feller, Esquire
      (Iowa State Bar No. AT0002512)
      Koopman, Kennedy & Feller
      823 3rd Avenue
      Sibley, Iowa 51249
      Telephone: (712) 754-4654
      Facsimile: (712) 754-2507
      jfeller@kkfellerlaw.com

      *Counsel for the Plaintiffs*

12

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2020 a copy of the foregoing was served

electronically in PDF upon counsel for the Defendants.


By:  */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:    (804) 501-8272
Facsimile:    (202) 318-4098
Email:        stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Joseph M. Feller, Esquire
(Iowa State Bar No. AT0002512)
Koopman, Kennedy & Feller
823 3rd Avenue
Sibley, Iowa 51249
Telephone:    (712) 754-4654
Facsimile:    (712) 754-2507
jfeller@kkfellerlaw.com

*Counsel for the Plaintiffs*

13