| | | |
|---|---|---|
| **NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III,** | ) ) ) | **Case No. 5:20-cv-04003-CJW-MAR** |
| Plaintiffs, | ) ) | **Defendants' Brief in Support of Their** |
| v. | ) ) | **Resisted <u>Expedited</u> Motion to Compel and for Other Relief Regarding** |
| **Ryan Lizza** and **Hearst Magazine Media, Inc.,** | ) ) ) | **Depositions of NuStar Employees** |
| Defendants. | ) ) ) | **FILED UNDER SEAL** |

**Table of Contents**

Introduction ........................................................................................................ 1

Factual Background ............................................................................................ 2

    A.    NuStar's Employees Are Key Witnesses to the Central Issue in
           this Case .......................................................................................... 2

    B.    The Evidence Raises Criminal Liability and Constitutional Concerns
           Under the Fifth Amendment for NuStar's Employee Deponents ........................ 3

    C.    ███████████████    Testimony Tended to Incriminate Him .................... 5

    D.    ██████████████    Is Advised by Counsel to Invoke His Fifth
           Amendment Right—and, then, NuStar Causes that Counsel to be Fired ............ 7

    E.    Mr. Biss's Behavior at and in Connection with the Employee Depositions
           Was Improper .................................................................................. 9

Argument .......................................................................................................... 12

    I.    The Court Should Compel Compliance with the Subpoenas ............................. 14

    II.    The Court Should Direct Plaintiffs' Counsel to Abide by Federal and
           Ethics Rules ................................................................................... 16

    III.    The Court Should Appoint Competent, Independent Counsel to
           Represent the Employees ................................................................... 17

    IV.    The Court Should Be Available for Issues that Arise in Connection
           with the Employee Depositions .......................................................... 20

Conclusion ........................................................................................................ 20

## Table of Authorities

**Page(s)**

**Cases**

Armstrong v. Hussmann Corp.,
163 F.R.D. 299 (E.D. Mo. 1995) ........................................................................17

Central States, Se. Areas Pension Fund v. King Dodge, Inc.,
No. 11MC00233, 2011 WL 2784118 (E.D. Mo. July 15, 2011)..........................15

GMAC Bank v. HTFC Corp.,
248 FRD 182 (E.D. Penn. 2008)........................................................................20

Hall v. Clifton Precision,
150 F.R.D. 525 (E.D. Pa. 1993) .........................................................................16

Harvey v. Cable News Network, Inc.,
No. CV 20-3068, 2021 WL 1751121 (D. Md. May 4, 2021) ...............................11

Lokhova v. Halper,
995 F.3d 134 (4th Cir. 2021) .......................................................................11, 12

Lund v. Matthews,
No. 13CV144, 2014 WL 517569 (D. Neb. Feb. 7, 2014)....................................16

Pillsbury Co. v. Conboy,
459 U.S. 248 (1983)..............................................................................................8

Rakes v. Life Investors Ins. Co. of Am.,
No. C06-0099, 2008 WL 429060 (N.D. Iowa Feb. 14, 2008).............................17

Sec. Nat'l Bank of Sioux City, Iowa v. Day,
800 F.3d 936 (8th Cir. 2015) ..............................................................................16

United States v. Blanche,
149 F.3d 763 (8th Cir. 1998) ..............................................................................18

Vallejo v. Amgen, Inc.,
No. 14-CV-50, 2017 WL 3037391 (D. Neb. May 30, 2017).................................20

Van Pilsum v. Iowa State Univ. of Sci. & Tech.,
152 F.R.D. 179 (S.D. Iowa 1993)........................................................................16

**Statutes**

8 U.S.C. § 1304(e) ......................................................................................................15

8 U.S.C. § 1324c .................................................................................................4, 17, 19

Criminal Justice Act, 18 U.S.C. § 3006A ......................................................................18

**Other Authorities**

Dep't of Homeland Security, *Immigrant Classes of Admission*,
    https://www.dhs.gov/immigration-statistics/lawful-permanent-
    residents/ImmigrantCOA (last visited May 15, 2021)....................................................6

Fed. R. Civ. P. 30 ...............................................................................14, 16, 17, 20

Fed. R. Civ. P. 37 ..........................................................................................14, 20

Fed. R. Civ. P. 45 ..........................................................................................14, 15

Iowa Court R. 33.1(1) ........................................................................................16

Iowa R. Prof. Conduct 32:1.1 ...............................................................................18

Iowa R. Prof. Conduct 32:1.3 ...............................................................................18

Iowa R. Prof. Conduct 32:1.7 ...............................................................................19

Iowa R. Prof. Conduct 32:1.8 ...............................................................................19

Iowa R. Prof. Conduct 32:3.3 ...............................................................................18

Iowa R. Prof. Conduct 32:4.2 .................................................................................3

Defendants Ryan Lizza ("Lizza") and Hearst Magazine Media, Inc. ("Hearst") (collectively "Defendants"), by and through the undersigned attorneys, respectfully submit this brief in support of their Expedited Motion to Compel and for Other Relief Regarding Depositions of NuStar Employees (the "Motion"). Defendants have a serious concern that Plaintiffs NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III ("Plaintiffs") may be about to violate the Fifth Amendment rights of the NuStar employees and introduce false testimony on the record concerning their immigration status.

## Introduction

This Motion comes in the wake of an unusual and troubling series of events in this case, which were previewed for the Court during last week's telephone conferences with Judge Roberts. The events, described in more detail below, demonstrate that Plaintiffs and their counsel, Steven S. Biss, are pressuring their employees to *not* invoke their Fifth Amendment rights against self-incrimination during Defendants' depositions of them, even after counsel for the first employee deposed affirmatively advised the employee to invoke his right not to incriminate himself after conferring with him.

The moment an independent counsel retained for the first NuStar employee to testify advised his client to assert his Fifth Amendment right against self-incrimination, Plaintiffs' counsel took that deposition off the record for over two hours; caused the independent counsel to be fired by that first witness; and made clear that NuStar is no longer going to offer the services of that attorney to any of its other employees. And, astonishingly, Mr. Biss continues to insist that none of the employees will assert their Fifth Amendment rights. He does so without any apparent consultation with the employees; notwithstanding that he (now) claims to not even represent the employees; and in the face of substantial evidence suggesting that these examinations will present Fifth Amendment concerns.

There is an obvious conflict between the interests of Plaintiffs and the rights and interests of their employees, and therefore between the interests of Plaintiffs' counsel and Plaintiffs' employees. And, just as importantly, there is a grave risk that the NuStar's employees, having received a clear signal from their employer as to what answers to provide and not provide, will lie under oath, allowing untruthful testimony to be entered into the record.

To guard against this risk, and because Plaintiffs and their counsel cannot be trusted to arrange for independent counsel, Defendants ask that the Court do so, through an appointment via the District's Criminal Justice Plan, or otherwise. *See infra* Point III. Beyond that, the first witness did not comply with the subpoena's requirement to produce the documents; the Court should order that all witnesses do so. *See infra* Point I. Moreover, Mr. Biss's conduct during the deposition was disruptive and intimidating to the witness; the Court should order that Plaintiffs' counsel refrain from speaking objections, speeches, or other interruptions during the questioning. *See infra* Point II. Lastly, Defendants respectfully request that, in this unusual posture, the Court continue to make itself available to assist with issues that may arise during the depositions. *See infra* Point IV.

## Factual Background

### A. NuStar's Employees Are Key Witnesses to the Central Issue in this Case.

In September 2020, Judge Williams dismissed all but one of the 14 statements challenged by Plaintiffs. This case has proceeded to discovery solely on the "claim that defendants defamed Plaintiffs by falsely alleging that they knowingly employed undocumented workers." ECF No. 50, at 42. Thus, by prosecuting this action, Plaintiffs have put at issue (i) whether they ever hired, retained, or used an undocumented worker, and (ii) what they knew, should have known, or purposely avoided knowing about the status of each person providing services and labor to them. These are the central issues in this case.

NuStar's current and former employees are, obviously, percipient witnesses with direct knowledge of these issues. Yet from the outset of this case, Plaintiffs' counsel has stymied Defendants' ability to gather relevant information from any current NuStar employees. Plaintiffs' counsel has repeatedly told Defendants' counsel that they are prohibited by the Iowa Rules of Professional Conduct from communicating with *any* NuStar's employees, at one point expressly agreeing that all of NuStar's employees "ha[ve] authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." *See* Iowa R. Prof. Conduct 32:4.2, comment no. 7 (identifying which "constituents" of a "represented organization," like NuStar, may not be contacted by Defendants' counsel about the subject of the representation). Declaration of Nathaniel S. Boyer, dated May 17, 2021 ("Boyer Decl.") ¶ 12.

Unlikely as Plaintiffs' position may seem, Defendants have nonetheless honored Plaintiffs' counsel's representation, and have instead focused their efforts on document collection and review in advance of the employee depositions.

### B. The Evidence Raises Criminal Liability and Constitutional Concerns Under the Fifth Amendment for NuStar's Employee Deponents.

To satisfy their burden of pleading falsity with sufficient factual matter to make the allegation plausible, Plaintiffs alleged that "NuStar did not hire undocumented labor." ECF No. 51 (Second Am. Compl.) ¶ 19. They also alleged that "NuStar documents all labor and employment decisions," *id.* ¶¶ 4, 19, and that "[t]hose records, including documents establishing both employment authorization and identity and Forms [I]-9 – Employment Eligibility Verifications, are reviewed and maintained by NuStar in the ordinary course of its business in accordance with Federal law," *id.* ¶ 4; *see also id.* ¶ 19.

To defend against those allegations, Defendants obtained in discovery from NuStar

records concerning its hiring of workers. These include (i) USCIS Forms I-9 and accompanying employee identification cards for most current and former employees, and (ii) two "No-Match" letters issued to NuStar by the U.S. Social Security Administration ("SSA"). Boyer Decl., ¶ 3, Ex. A; *e.g.*, *id.* Ex. G. Defendants also obtained from the SSA, pursuant to this Court's order, ECF Nos. 80, 89, a chart indicating whether or not the Social Security Numbers ("SSNs") that the workers provided to NuStar matched the SSA's records. Boyer Decl., ¶ 3, Ex. B.

Those documents demonstrate that the six subpoenaed NuStar employees—who were employed by NuStar before, during, and after the article was published, according to NuStar's verified response to Interrogatory No. 1,[1] could have criminal exposure under 8 U.S.C. § 1324c, and that their testimony may incriminate them. What follows is a small sampling of the reasons.

*First*, the SSA responded that the Social Security numbers reported by NuStar as associated with each of the subpoenaed employees did not match the SSA's records.[2] *See* Boyer Decl., Ex. B, at lines 8, 50, 92, 128, 233, 275. This authoritative, self-authenticating document from the United States Government confirms that the SSA has no record of having issued to these workers the SSNs that NuStar recorded at the time of hire.

*Second*—and consistent with this—NuStar received letters from the SSA in 2019 (for tax year 2018) and 2020 (for tax year 2019) notifying them that the majority of SSNs provided on

---

[1]    *See* Boyer Decl., ¶ 4, Ex. C, at pp. 2, 7, 11, 15, 26, 30; the subpoenaed employee deponents are: ███████████████████████████████████████████████████████████ *see id.* ¶ 13, Ex. L.

[2]    Defendants also informed Plaintiffs' counsel that they intended to depose current employees ███████████████. Following that notice, Plaintiffs' counsel responded that he could not accept service for ████████████████████████ because the former had recently left the employment of NuStar (and NuStar did not have a forwarding address), and the latter recently died. Boyer Decl., Ex. D; *id*. ¶ 13. In any event, the SSA had no record of SSNs being issued to persons with their names and dates of birth, either. Boyer Decl., Ex. B, at lines 184, 196.

their employees' Forms W-2 did not match the government's records.  That is, in 2018, 20 out of

27 employees came back as a "no match," and in 2019, 14 of 19 came back as a "no match."  *See*

Boyer Decl., Ex. A at PX2264-67, PX2268-75.  Those letters stated that NuStar could use a free

online portal to learn which employees' numbers did not match, and to thereafter follow up with

the respective employees to correct the errors on the W-2 forms.  *Id*.  This is important if the

employees are here legally, as otherwise the SSA will not be able to accurately account for their

Social Security benefits.  Tellingly, Plaintiffs did not produce any documents indicating they had

done so.[3]

*Third*, the Forms I-9, social security cards, and identification documents are, in many

instances, insufficient and/or fraudulent on their face.  This was on stark display in the (yet-

completed) deposition of ███████████████, the first NuStar employee to testify.

### C. ████████████████ Testimony Tended to Incriminate Him.

The first employee witness was ██████████████.  The SSA has no record of

having issued ███████████████ the SSN that he proffered to NuStar.[4]  Boyer Decl., Ex.

B, line 275.

On his I-9, bearing a date in 2007, ██████████████ stated that he was a United

States citizen.  Boyer Decl., Ex. G at PX 687.  However, before his attorney (from the Brown

Winick firm in Des Moines, who met his client for the first time that day) advised him to invoke

---

[3]      The names and SSNs in the SSA's chart are the same as those listed in NuStar Farms,
LLC's Verified Employee/Worker Supplement, sworn to on April 1, 2021.  *Compare,* Boyer
Decl. Ex. B, *with id.,* Ex. C. Of the 330 employee names and SSNs, only 74 matched the SSA's
records, according to the SSA.  *Id.*, Ex. B. Notably, to control for mistakes, at the request of the
SSA, the chart also includes a column with the employees' dates of birth, to the extent they were
reflected in NuStar's records.

[4]      Eliminating the possibility of spelling errors or incorrect dates of birth, ████████
███████ confirmed his full name and date of birth on the record at his deposition.  Boyer
Decl., Ex. F at 19:23-20:4, 20:8-9.

his Fifth Amendment right, ██████████████████ testified that he *was not* a United States citizen and, instead, was and is a legal permanent resident holding a government-issued green card. Boyer Decl., Ex. F at 20:12-13, 28:9-21, 48:5-11.[5] This, of course, suggests ████████ ██████ made a false statement under penalty of perjury on his Form I-9.

Moreover, Section 2 of the Form I-9 is not filled out by the employer, and the signature on the Form I-9 does not appear to match the signature on the produced 2017 Form W-4 for ██ ████████████. Boyer Decl., Ex. G. This raises questions as to how ████████ ██████, who does not read English, was able to complete the form without assistance, and whether someone at NuStar completed it for him without disclosing that fact as required on the form itself. These are questions Defendants' counsel intended to explore, until ████████ ████████ counsel from the Brown Winick firm instructed his client to assert his Fifth Amendment right. Boyer Decl., Ex. F at 71:17-25.

Most significantly: The resident alien card that ██████████████ proffered to NuStar in order to gain employment is, on its face, fraudulent. ██████████████ proffered card states that his class of admission to the United States is "W16." Boyer Decl., ¶ 14; *id*., Ex. G. "W16" is limited to persons who entered the United States without inspection prior to January 1, 1982, and were subsequently granted legal permanent resident status. *See* Dep't of Homeland Security, *Immigrant Classes of Admission*, https://www.dhs.gov/immigration-statistics/lawful-permanent-residents/ImmigrantCOA (last visited May 15, 2021); Boyer Decl. ¶ 14. However, ████████████ date of birth, as stated on his proffered card and as he testified, is ██████████. Boyer Decl., Ex. F at

---

5       That alien registration card has a 2009 expiration date. ██████████████ did not produce a current green card at the deposition as required by the subpoena. Boyer Decl., Ex. G at PX 688; *id.*, Ex. F at 48:9-11.

20:8-9; *id.*, Ex. G at PX 687-88. It is impossible for ████████████████ to have been granted permanent resident status under the W16 class of admission, as he was born almost three years after the cut off for that class.

Defendants' counsel intended to ask ████████████████ about this discrepancy, before his counsel instructed him to invoke his Fifth Amendment right. And, when ████████ ████████ testimony resumes, Defendants' counsel intends to ask ████████ about other inconsistencies in his testimony so far—inconsistencies that strongly suggest that, until the moment his attorney instructed him to invoke his Fifth Amendment right, he had lied about his legal status to be present and work in the United States.[6]

But, as the Court knows, ████████████████ testimony was discontinued and held open once his then-counsel advised him to assert his Fifth Amendment right. The sequence of events to and through that moment were, as the Court observed on Thursday, "very troubling."

     **D.**   **████████████████ Is Advised by Counsel to Invoke His Fifth Amendment Right—and, then, NuStar Causes that Counsel to be Fired.**

After some initial testimony about the witness's signatures on publicly available documents and his Form I-9, ████████████████ independent counsel asked for a break in the examination to consult with his client. Boyer Decl., Ex. F at 66:1-4, 68:20-71:9. Following the twelve-minute break, during which the witness and his counsel conferred, Defendants' counsel asked the witness, "do you remember who presented this document [Form I-9] to you?" *Id.* at 71:10-22. Before the witness could answer, his counsel stated:

       I've advised my client to invoke his Fifth Amendment right

---

[6]    Defendants would be happy to provide information concerning these additional discrepancies in ████████████████ testimony to the Court *in camera* if it would aid the Court in consideration of this Motion.

regarding questions about this document. ███████ --[7]

*Id.* at 71:23-72:1.  Before the witness could invoke his rights, Plaintiffs' counsel, Mr. Biss,

interjected, stating, "Hold on.  Hold on.  Can we go off the record for just a minute?  I'd like to

talk to [the witness's counsel] before *we do this*."  *Id.* at 72:2-4 (emphasis added).

The deposition went off the record for over two hours.  Once back on the record,

Defendants' counsel attempted to ask the witness whether he was going to follow his counsel's

advice and invoke his Fifth Amendment right.  *Id.* at 74:7-11.  Before the witness could answer,

Plaintiffs' counsel, Mr. Biss, again interjected, in front of the witness:

> *No he's not going to follow it.*  The lawyer is going to make a
> statement now, so he's not going—that's not going to happen.  So
> go ahead. . . . That's not going to happen.  So Mr. Allen needs to
> make his statement before—

*Id.* at 74:12-20 (emphasis added).  The witness's counsel then stated that he would not let the

witness answer the question because he had advised his client to invoke his Fifth Amendment

right; that during the break, he spoke to many people, including the witness, and that he would

no longer be representing the witness; that he understood different counsel would be provided;

and, that, the witness had a right to counsel and that the deposition would be adjourned for the

day.  *Id.* at 74:21-75:14, 76:1-15.

███████████████████ deposition was adjourned *sine die*.  The five other employees

for whom subpoenas were accepted by NuStar's attorney—for all of whom, the SSA has no

record of having issued the SSNs they tendered to NuStar to gain employment at the farm—have

I-9s, supporting documents, and other matters bearing similar indicia of illegal conduct.

---

[7]     The Fifth Amendment applies to civil depositions.  *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 263-64 (1983).

### E. Mr. Biss's Behavior at and in Connection with the Employee Depositions Was Improper.

Mr. Biss's repeated statements that employee witnesses, who are not his clients and whom Defendants understand he has not personally met, would not invoke the Fifth Amendment, are highly improper. *See, e.g.*, Boyer Decl., Ex. H at 20:21-23:15. These follow numerous misrepresentations to the Court and to Defendants' counsel regarding these witnesses.

As noted above, up until about a week ago, Mr. Biss consistently maintained that he represented NuStar's employees in connection with this lawsuit. When Defendants' counsel suggested to him on April 23 that his clients' document production and the SSA's response to the Court's order created serious issues for the employees, including potential criminal exposure that may require counseling on their Fifth Amendment rights, and potential for conflicts that would prevent his representation of the employees, Mr. Biss stated that he would consider it. Boyer Decl. ¶ 15. He later said he would seek an order prohibiting this inquiry altogether (but did not). Boyer Decl., Ex. D at 4.

Despite Mr. Biss's representations to the Court at the April 15, 2021 status conference that he'd work with Defendants' counsel "to schedule the depositions in a week in May," Boyer Decl., Ex. J, at 18:12-13, and Defendants' prompt and diligent efforts to schedule the depositions, it was not until May 6, 2021 that Mr. Biss confirmed that he would even accept service of the subpoenas on behalf of NuStar's employees and ensure their compliance with them. Boyer Decl., Ex. D. Yet, ███████████████ later testified that he had never seen the subpoena before the deposition, did not bring the requested documents with him, and only learned about the deposition from NuStar on the day of the deposition when he showed up at work. Boyer Decl., Ex. F at 20:20-23:4, 47:8-48:11; *id*., Ex. E. And in the end, Mr. Biss stated that he would not be representing the employees at their depositions—notwithstanding his

refrain, which prevented Defendants from conducting their investigation, that he represented NuStar's employees by virtue of serving as its counsel of record.  Boyer Decl. ¶ 12.

Before, during, and after the first employee deposition, Mr. Biss represented, consistent with the Plaintiffs' pleadings, that there are no problems with the employees' documentation or their immigration status, and that they would not assert their Fifth Amendment rights.  *See, e.g.*, Boyer Decl., Ex. F at 74:1-20; *id.*, Ex. H at 20:21-23:15; *id.*, Ex. I.  That Mr. Biss would make these representations—despite apparently never meeting with these witnesses, not being their lawyer, and notwithstanding an avalanche of indicia that the workers are here illegally—raises questions about his and his clients' efforts to mold or restrain the testimony of these witnesses.

At the deposition of ███████████████, Mr. Biss interjected inappropriate objections and, in several instances, monologues, which he insisted be translated so that the witness could hear it.  For example, when Defendants asked for confirmation of the witness's complete last name—relevant to a host of matters, including further confirming the accuracy of the information from the SSA—Mr. Biss interjected to say "Why does that matter?  Who cares?" Boyer Decl., Ex. F at 19:23-20:3.  When it became clear that the witness had no idea what the case is about or why his testimony was needed, and Defendants' counsel offered to explain to ████████████████ why he was there, Mr. Biss said (without stating an objection) "Well, that's a little unfair. What are you going to tell him about the case?," *Id.* at 23:16-18.  Then, when Defendants' counsel asked ████████████████ about his prior criminal citations and paying for bail based on publicly available records,[8] Mr. Biss interjected multiple, lengthy

---

[8]     These questions are pertinent under <u>Federal Rule of Civil Procedure 26(b)(1)</u> for multiple reasons, including (i) verifying signatures, which did not match the signature on ████████ ███████ Form I-9, (ii) that the criminal charge of driving without a valid drivers' license is consistent with someone who is not here legally and possesses fraudulent or no state-issued identification, (iii) relatedly, understanding whose driver's license ███████████████

speaking objections and monologues, which he insisted be translated for the witness, even though he did not represent him.  *See, e.g.*, *id.* at 51:22-53:4, 58:5-7, 66:6-67:21, 72:24-74:20.

And, most recently, Plaintiffs' counsel has stated that he has obtained counsel for the employee witnesses, but has so far not responded to Defendants' counsel's request to identify the attorney and provide his/her contact information.  *See* Boyer Decl., Ex. I.

Mr. Biss's conduct begs the question of whether and to what extent Plaintiffs' Iowa counsel, Joseph Feller, remains active in the representations of Plaintiffs alongside of Mr. Biss, who is appearing in this case by a *pro hac vice* admission under the supervision of Mr. Feller.

And, with a largely absent Iowa counsel, Mr. Biss has litigated this matter consistent with his record in other jurisdictions around the country.  For example, the United States District Court for the District of Maryland recently sanctioned Mr. Biss and his local counsel in the amount of $21,437.50 in fees and $52.26 in costs and expenses for vexatiously prolonging the litigation with a baseless amended complaint.  *See Harvey v. Cable News Network, Inc.*, No. CV 20-3068, 2021 WL 1751121, at *3 (D. Md. May 4, 2021).

But Mr. Biss's record of misconduct goes beyond dubious pleadings; as the *Harvey* court noted, its sanctions decision joined a "chorus" of courts that sanctioned Mr. Biss and/or his local counsel for his litigation conduct.  In particular, the United States Court of Appeals for the Fourth Circuit last month in, *Lokhova v. Halper*, observed:

> [T]his is not the first time attorney Biss's litigation conduct has earned reprimand.  His history of unprofessional conduct is long.  *See, e.g., Nunes v. Cable News Network, Inc.*, No. 3:19-cv-889, 2020 WL 2616704, at *2 (E.D. Va. May 22, 2020) ("It is with chagrin that the Court must begin to address this motion by observing that Plaintiff engages in ad hominin attacks against CNN and others in

---

proffered to the officer at the time he was cited for a seat belt violation, and (iv) exploring what persons on the farm knew about the charge, and how they reacted (which could demonstrate Plaintiffs' knowledge of the status of their workers).

the Amended Compliant which the Court cannot tolerate."
(alterations and internal quotation marks omitted) (quoting *Steele v.
Goodman*, No. 3:17-cv-601, 2019 WL 3367983, at *3 (E.D. Va. July
25, 2019))); *see also Nunes v. Lizza*, 486 F. Supp. 3d 1267, 1299–
1300 (N.D. Iowa 2020) (requiring Biss to file "a second amended
complaint . . . stripped of all such spurious allegations" and
directing Biss "not to file any further public pleadings referencing
such matters without first obtaining leave of the Court and showing
that there is a good faith factual basis for the allegations and that
they are relevant and material to some matter at issue in this
litigation"). In fact, attorney Biss had his license suspended in 2009
for unprofessional conduct including breaching fiduciary duties and
violating federal securities law. *See Va. State Bar v. Biss*, No. CL07-
1846 (Va. Cir. Ct. Nov. 26, 2008). And, even during his suspension
period, attorney Biss failed to be forthright about his suspension
status with an opposing party when engaging in negotiations on
behalf of a client, resulting in an additional 30 day suspension of his
license. *See In re Steven Scott Biss*, No. 09-032-078962 (Va. State
Bar Disciplinary Bd. Nov. 3, 2009).

*Lokhova v. Halper*, 995 F.3d 134, 149 (4th Cir. 2021).

Mr. Biss's history of misconduct underscores the need for competent, *independent*

representation for the NuStar employees, whom Plaintiffs are exploiting in their quest to

prosecute a meritless defamation claim.

## Argument

For all the noise that Mr. Biss has made about Mr. Lizza coming to Iowa with a

"preconceived storyline," it is actually Mr. Biss who will do anything to preserve the story that

fits Plaintiffs' pre-conceived narrative and theory of the case—even if it means violating the

Federal Rules and Iowa Rules of Professional Conduct, and forcing their employees to make an

untenable choice of (i) lying under oath about their immigration status, or (ii) telling the truth

and facing the consequences concerning their job, housing, and ability to remain in the United

States.[9]  To address these grave concerns and the other improper conduct that has recently taken place, Defendants respectfully request that this Court enter an order:

(i)     Compelling the NuStar employee deponents to comply with the subpoenas *duces tecum* and produce the requested identification documents at their depositions;

(ii)    Directing Plaintiffs' counsel, including Mr. Biss and Mr. Feller, to comply with the Federal Rules of Civil Procedure and Iowa Rules of Professional Conduct with respect to depositions in this case.  Specifically, Plaintiffs' counsel should be ordered to refrain from:

    a.  Interrupting the witness, questioner, interpreter, counsel for the witness, and the videographer, and court reporter;

    b.  Making improper speaking or argumentative objections or narrative statements or misstatements, particularly such statements that are intended to or may have the effect of intimidating the witness or coaching the witness to testify a certain way; and

    c.  Otherwise interfering with the depositions or witnesses or interacting with their counsel in a way to influence the employees' testimony;

(iii)   Appointing independent counsel to represent the employee deponents at their depositions; and

(iv)    Given the extraordinary circumstances and threat of a violation of witnesses' Fifth

---

[9]     Similarly, Mr. Biss continues to promote conspiracy theories about the genesis of the article at issue and other matters, notwithstanding that discovery has confirmed that there is no truth to his claims.  *See, e.g.*, ECF Nos. 35-4, 35-5 (subpoenas to Fusion GPS and an entity that, Plaintiffs suggest, provides funding to Fusion GPS); ECF No. 67, at 5:12-13:12 (describing baseless concern that Defendants would "leak" materials designated Counsel's Eyes Only "to CNN"); Boyer Decl., Ex. H at 6:2-20 (speculating that "Mr. Lizza might have been talking to some political operative in the Democratic party about doing this article, or he could have been talking about . . . an opposition research firm such as Fusion GPS").

Amendment rights and/or the possibility of false testimony being provided, providing court supervision of the employee depositions as follows:

a.  Location/Time: That these depositions be held at the location identified on the subpoenas as well as at a time when the Court may be consulted if necessary;

b.  *Ex Parte* Communication w/Appointed Counsel: That appointed counsel for NuStar employees be permitted during that time to consult with the Court on an *ex parte* basis to address any concerns regarding his/her ability to provide effective representation to his/her clients; and

c.  Materials Provided to New Counsel: That discovery regarding the NuStar employees be provided to their new counsel and that this Motion and any responses, hearing transcripts, or orders regarding this Motion be shared with counsel for the NuStar employees.

Under the discretion afforded the Court to fashion relief for discovery abuses under Federal Rules of Civil Procedure 30, 37, and 45 and its inherent authority, Defendants seek this order for the reasons described above and the important public policy considerations of (i) witness protection from self-incrimination, and (ii) the need to assure that sworn testimony is freely given without taint or coercion.

## I.

### The Court Should Compel Compliance with the Subpoenas

The Court should compel the NuStar employee witnesses to produce the identification documents requested in the respective subpoenas. In addition to subpoenaing six NuStar employees for depositions, Defendants also requested that the witnesses produce for inspection, at their depositions, their current government identification cards and social security cards, and any identification documents and the social security cards they presented to NuStar at the time of

their hire.  *See, e.g.*, Boyer Decl., Exs. E, L.  These are all highly relevant documents.

Federal Rule of Civil Procedure 45(d)(2)(B)(i) permits the Court to enter an order to compel compliance with a validly issued Rule 45 subpoena.  Such an order is warranted here. The subpoenas were validly served on Plaintiffs' counsel, who made clear that he was authorized to accept service of the subpoenas on behalf of the NuStar employees sufficient to guarantee their appearances at their depositions pursuant to those subpoenas.  Boyer Decl., ¶ 13; *id.*, Ex. D. No timely objections to the subpoenas were made, and no motions to quash were timely filed. The place for compliance is within 10-15 minutes of the witnesses' workplace in Sibley at their respective depositions, and the requested identification documents were few, and therefore not burdensome.  Boyer Decl., Exs. E, L.

Notwithstanding the lack of objection, the first witness to be deposed testified that he was first informed of the deposition by his boss, Plaintiff Anthony Nunes III, on the morning of the deposition; that he had never seen a copy of the subpoena (nor, apparently, asked to bring the required records), that he holds a green card[10] and a ████████ driver's license; and that he did not bring with him or have on his person any of the requested identification documents or social security card.  Boyer Decl., Ex. F at 20:20-23:4, 28:9-18, 47:8-48:11, 57:14-17  (Had Plaintiffs' attorney not stopped the deposition, Defendants' counsel would have asked the witness to retrieve any such documents from his nearby home and/or the farm, on a break.)  Therefore, the Court should order each of the six NuStar employee deponents to produce at their depositions the documents identified in their respective subpoenas.[11]  *See Central States, Se. Areas Pension*

---

[10]     Green card holders are required to have their card with them at all times.  8 U S C § 1304(e).

[11]     The employees, upon being advised by independent competent counsel, may choose to invoke their Fifth Amendment rights and refuse to produce any such documents.  If that happens, Defendants will consider whether to challenge that assertion.

*Fund v. King Dodge, Inc.*, No. 11MC00233, 2011 WL 2784118, at 2-3 (E.D. Mo. July 15, 2011).

## II.

### The Court Should Direct Plaintiffs' Counsel to Abide by Federal and Ethics Rules

As described in *supra* Sections D-E, Plaintiffs' counsel's conduct at the deposition of ██ ████████████ exceeded the bounds of attorney conduct at depositions permitted by the Federal Rules of Civil Procedure and the standards of "personal courtesy and professional integrity" mandated by the Iowa rules. *See* Fed. R. Civ. P. 30(c)(2) (objections "must be stated concisely in a nonargumentative and nonsuggestive manner," and "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)"); Iowa Court R. 33.1(1). "[A]rgumentative objections, suggestive objections, and directions to a deponent not to answer, improperly disrupt, prolong, and frustrate deposition testimony." *Sec. Nat'l Bank of Sioux City, Iowa v. Day*, 800 F.3d 936, 942 (8th Cir. 2015) (citing Fed. R. Civ. P. 30(d)(2), advisory committee notes (1993 amendments)); *see also Van Pilsum v. Iowa State Univ. of Sci. & Tech.*, 152 F.R.D. 179, 180 (S.D. Iowa 1993) (quoting *Hall v. Clifton Precision*, 150 F.R.D. 525, 527 (E.D. Pa. 1993)) (criticizing objections that were "thinly veiled instructions to the witness": "The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record.  It is the witness—not the lawyer—who is the witness."); *Lund v. Matthews,* No. 13CV144, 2014 WL 517569, at *5 (D. Neb. Feb. 7, 2014) (sanctions awarded for objections that coached witness and impeded, delayed, and frustrated the examination).

Mr. Biss's "objections" were disruptive and intended to intimidate and/or coach the witness, who was not his client.  Boyer Decl., Ex. F at 19:23-20:23, 23:11-18, 51:22-53:4, 58:5-7, 66:6-67:21, 72:24-74:20.  Most significantly, when Mr. Biss stated on the record, in front of

the witness, that ████████████████ is "not going to follow" his personal lawyer's instruction to invoke his Fifth Amendment right against self-incrimination—*and* that lawyer, having just given that counsel, was summarily fired at that moment—his statements and actions had the effect of instructing the witness to *not* give a particular answer. *Id.*, at 71:21-74:15.

To ensure that Defendants will adduce truthful evidence from witnesses free from coaching and intimidation, the Court should enter an order directing Plaintiffs' counsel to abide by applicable rules. *See* Fed. R. Civ. P. 30(d)(1) (court may order appropriate sanction on any person who frustrates, delays or impedes fair examination of witness); *Rakes v. Life Investors Ins. Co. of Am.*, No. C06-0099, 2008 WL 429060, at *5-7 (N.D. Iowa Feb. 14, 2008) (noting that counsel admitted *pro hac vice* to the Northern District of Iowa must comply with Federal Rules of Civil Procedure and Iowa rules at depositions); *Armstrong v. Hussmann Corp.*, 163 F.R.D. 299, 303 (E.D. Mo. 1995) (ordering restrictions on plaintiff's counsel's conduct at deposition in response to counsel's prior improper speaking objections, coaching and interruptions).

### III.

### The Court Should Appoint Competent, Independent Counsel to Represent the Employees

Given the seriousness of the employee witnesses' exposure under 8 U S C § 1324c and the potential for false testimony, the employee deponents should be represented by independent counsel not selected by, paid by, or beholden to Plaintiffs or their attorneys of record. While Mr. Biss claims to have identified an (undisclosed) counsel, Plaintiffs have demonstrated they are not capable of arranging for an *independent* counsel for the employees.

As the Court recognized at the May 13, 2021 status conference, it is of vital importance that the employee witnesses have independent counsel representing them:

> [W]e are going to pause these depositions until you have made arrangements to get them counsel. I will make some inquiries about the possibility of having counsel appointed for them. It would be

very unusual I would think, but I will make some inquiries about it. But we're not just going to go forward with the deposition of this witness who started it with a lawyer and now he's not going to have one just because our schedules say that that's when your deposition is going to occur. So he's going to have time to find a lawyer. And given someone help[ed] him find a Brown, Winnick lawyer the other day, I assume that his employer is making efforts to look for independent counsel, and I urge you to do that. I may—you know, alert Ms. Steele what progress you've made with respect to finding counsel and where that is in the schedule so I'm not spinning my wheels trying to find someone. But I hope you would all agree it's important that they have counsel at these depositions.

Boyer Decl., Ex. H at 34:16-35:11. The Court has discretion to appoint that counsel. *See United States v. Blanche*, 149 F.3d 763, 768-69 (8th Cir. 1998) (district court did not abuse discretion to solicit independent counsel for witness to advise her of consequences of perjury over witness's and defense counsel's objection); *see also* Criminal Justice Act, 18 U.S.C. § 3006A (requiring each Federal District Court to enact a Criminal Justice Plan to provide for the appointment of counsel for indigent persons); Northern District of Iowa's Criminal Justice Act Plan, IV(A)(2)(d) (https://www.iand.uscourts.gov/sites/iand/files/CJA%20Plan.pdf, provides for the appointment of counsel where a witness may be compelled to provide testimony and there is reason to believe the witness could be subject to a criminal prosecution).

Under the Iowa Rules of Professional Conduct, a lawyer may not proffer false testimony or allow a client to testify falsely in a deposition; nor can a lawyer allow false testimony in a deposition to stand on the record after counsel becomes aware that it is false. *See* Iowa R. Prof. Conduct 32:3.3(a)(3), comment no. 1. In other words, a lawyer "must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false." *Id.*, Comment 2. And a "lawyer's knowledge that evidence is false . . . can be inferred from the circumstances", and "a lawyer cannot ignore an obvious falsehood." *Id.*, comment 8.

Counsel also must be competent, *see* Iowa R. Prof. Conduct 32:1.1, diligent, *id.* at 32:1.3,

and loyal and free from risk of conflicts of interest that would compromise his duty of independent judgment to the client, like payment by someone other than the client or when representing multiple individuals, *id* at 32:1.7(a)-(b) and Comments 1, 8, 13; 32:1.8(f).

Here, both the ethical dangers of allowing false testimony and a conflict of interest between the Plaintiffs and their employees are readily apparent and recently exposed. This is especially concerning given the prospect that the NuStar employee deponents are employed in the United States illegally, and may be most motivated to do and say whatever they believe it takes to preserve their livelihoods and homes, even if that means providing false testimony.

Mr. Biss's behavior leading up to the employee depositions, during the first deposition of an employee, and since the deposition was adjourned, calls into serious question whether any counsel Plaintiffs have engaged or will engage to represent NuStar's employees will be free to provide independent, loyal, competent, diligent and conflict-free representation to the employees. Because the NuStar employees could be subject to prosecution under 8 U.S.C. § 1324c based on the answers to the relevant questions regarding their immigration status, work authorization, and their Forms I-9—and, with one counsel having already advised ███████████ to invoke his Fifth Amendment protection against self-incrimination with respect to questions about his Form I-9 responses—independent counsel should be appointed for them by the Court.[12]

---

[12]     As to what counsel would be appropriately appointed, Defendants note that, at his deposition, Father James Callahan, one of the named sources in the article at issue, testified concerning his work ████████████████████████ an organization that provides legal services to the immigrant community in the northwestern Iowa and southwestern Minnesota region for a wide range of issues, including immigration matters. *See* Boyer Decl., Ex. K at 71:8-76:15.

## IV.

### The Court Should Be Available
### for Issues that Arise in Connection with the Employee Depositions

Given the extraordinary circumstances, including the criminal and constitutional concerns facing these employees, the potential for continued misbehavior by Mr. Biss, the NuStar employee depositions should be conducted under limited court supervision that ensures that the evidence ultimately presented into a summary judgment or trial record is factual. *See, e.g.*, *GMAC Bank v. HTFC Corp.*, 248 FRD 182, 196-99 (E.D. Penn. 2008) (imposing sanctions on witness and his counsel under Rules 30 and 37 for impeding and frustrating deposition, and requiring deposition to be held at courthouse under judicial supervision of magistrate judge); *Vallejo v. Amgen, Inc.*, No. 14-CV-50, 2017 WL 3037391, at *2, 5 (D. Neb. May 30, 2017) (describing court's order to suspend and reconvene deposition with direct judicial supervision and court's inherent powers to "supervise, monitor and, when appropriate, discipline the conduct of attorneys").

Defendants therefore request that the employee depositions be scheduled at a time when the Court is available for consultation; that the appointed independent counsel for the witnesses receive advance authorization to consult with the Court *ex parte* if needed to address concerns regarding their employee representation; and that the Court order the parties to provide discovery regarding the employees and any responses, hearing transcripts, or orders regarding this Motion to the employees' independent counsel.

### Conclusion

For the reasons stated above, Defendants respectfully request that the Court issue the orders as set forth above.

[*signature block on next page*]

May 17, 2021

**Ryan Lizza and Hearst Magazine Media, Inc.,
Defendants**

By: /s/ Nathaniel S. Boyer
Jonathan R. Donnellan, *Lead Counsel*\*
 *jdonnellan@hearst.com*
Ravi V. Sitwala\*
 *rsitwala@hearst.com*
Nathaniel S. Boyer\*
 *nathaniel.boyer@hearst.com*
Sarah S. Park\*
 *sarah.park@hearst.com*
Nina N. Shah\*
 *nina.shah@hearst.com*
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000
*\*Admitted Pro Hac Vice*

Michael A. Giudicessi
 *michael.giudicessi@faegredrinker.com*
Nicholas A. Klinefeldt
 *nick.klinefeldt@faegredrinker.com*
Susan P. Elgin
 *susan.elgin@faegredrinker.com*
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

*Attorneys for Defendants*

## Certificate of Service

The undersigned certifies that a true copy of **Defendants' Brief in Support of Their Resisted <u>Expedited</u> Motion to Compel and for Other Relief Regarding Depositions of NuStar Employees** was served upon the following parties through the Court's CM/ECF electronic filing system on May 17, 2021.

/s/  Nathaniel S. Boyer
Nathaniel S. Boyer

Copy to:

      Joseph M. Feller
       *jfeller@kkfellerlaw.com*
      Steven S. Biss
       *stevenbiss@earthlink.net*

      *Attorneys for Plaintiff*