IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III,<br><br>Plaintiffs,<br><br>v.<br><br>Ryan Lizza and Hearst Magazine Media, Inc.,<br><br>Defendants. | Case No. 5:20-cv-04003-CJW-MAR<br><br>**Defendants' Reply Brief in Further Support of Their Resisted Motion to Compel and for Other Relief Regarding Depositions of NuStar Employees**<br><br>**FILED UNDER SEAL** |

Defendants submit this brief in further support of their Motion, and in reply to Plaintiffs' Resistance and Opposition to Defendants' Motion to Compel, ECF No. 107 ("Resistance" or "Res.").[1] Setting aside its bluster, irrelevant and inaccurate attacks on Mr. Lizza's reporting, and baseless accusations of misconduct by Defendants and their representatives, Plaintiffs' Resistance does not dispute the alarming facts that support granting the relief Defendants seek.

1. ***The Court Should Appoint Competent, Independent Counsel to Represent the Employees (Mot., Pt. III).*** The Motion sets forth the events, in detail and with record evidence, up to and through the deposition of the first NuStar employee witness, ███. Plaintiffs respond with limited, irrelevant excerpts from the deposition of one of Mr. Lizza's sources, ███. ECF No. 107-1. Plaintiffs never explain the relevance of these excerpts to the issues presented and relief requested.[2]

2. Plaintiffs do not dispute that the following occurred:

---

[1] Unless otherwise noted, abbreviated and capitalized terms herein shall have the meaning ascribed to them in Defendants' Motion and supporting brief, *see* ECF No. 103-1 ("Brief" or "Br.").
[2] Beyond this, Plaintiffs' selected excerpts of ███ testimony mislead. ███ explained, in detail, the facts demonstrating why ███ and the Nuneses knew that many workers at NuStar were undocumented.

1

(a) NuStar arranged for an attorney with substantial criminal law experience from Brown Winick in Des Moines to serve as separate counsel for each of the six NuStar employees set to testify at depositions occurring from May 12-14, 2021;

(b) when Defendants' counsel began to ask ▇▇▇▇▇ about his Form I-9 and supporting documentation, independent counsel for the witness asked for and took a break for 12 minutes, consulted with his client, and upon returning advised ▇▇▇▇▇ on the record to assert his Fifth Amendment right against self-incrimination;

(c) before ▇▇▇▇▇ could indicate that he would follow the advice of his attorney, one of NuStar's attorneys of record, Mr. Biss, recessed the deposition for over two hours, during which many conversations occurred;³

(d) by the time the deposition reconvened, the witness's independent counsel had been fired, ostensibly, by the witness—but, tellingly, Plaintiffs are no longer making that lawyer available for *any* of the *other* NuStar employee witnesses, either; and

(e) Mr. Biss then said, *in front of the witness* and on the record, that ▇▇▇▇▇—whom he did not represent, and with whom Mr. Biss admits to having never spoken (*see* Res. 5)—was "*not going to follow*" his now-discharged lawyer's advice to invoke his Fifth Amendment rights. *See* Br. 7-8.

3. These undisputed events, and Mr. Biss's conduct, establish that Plaintiffs do not want their employees to have legal counsel who will fully and independently advise them about their Fifth Amendment rights, duties to testify truthfully, and penal risks of perjury. The message conveyed by Plaintiffs' and Mr. Biss's actions is unmistakable: Deny that you are in this country illegally, or suffer employment consequences (and lose your housing)—just like the lawyer who advised ▇▇▇▇▇ to not answer a question suffered consequences.

4. Plaintiffs continue to argue that the "NuStar employees are fully authorized to work in the United States," Res. 8, and "did nothing wrong and will not assert the Fifth Amendment or refuse to answer any questions," Res. 5. That Mr. Biss makes this argument

---

³ Plaintiffs offer no evidence of what was said during these conversations; only conclusory denials that they "signaled" or "pressured" any employees. The Court should not accept Plaintiffs' unsupported denials and the motion can be decided on the unrebutted evidence submitted by Defendants. (The Court could of course hold an evidentiary hearing to inquire about the retention and subsequent firing of the independent counsel.)

2

despite *not representing* these employees—or providing any evidence that he or Mr. Feller have ever spoken with any of the employees—is both baseless and troubling. Res. 4-5.

5. Although Plaintiffs claim to have identified a (new) "independent counsel," they refuse to tell Defendants' counsel *or the Court* who that attorney is, alleging that Defendants' lawyers will "engage in efforts to intimidate the attorney and threaten ethics violations." Res. 8 n.5. Plaintiffs cite nothing to support that bizarre and baseless accusation (setting aside *why* an independent counsel would be "intimidate[d]" by Defendants' counsel, anyway). Regardless, this highlights Plaintiffs' unfitness to hire, pay, and control counsel for the employee witnesses; Plaintiffs, apparently, do not believe this new counsel can act independently and discharge her/his duties to her/his clients and keep NuStar and its lawyers happy at the same time.

6. Beyond that, Plaintiffs argue that the Court should disregard the documented facts of record that, (i) of the 330 workers they listed in their response to Interrogatory No. 1, *256 did not match the* SSA's records, and (ii) NuStar has received two no-match letters from the SSA indicating that the overwhelming majority of the then-current workers as listed on the company's annual wage reports did not match the SSA's records. *See* Res. 5; Br. 5 n.3.

7. Plaintiffs attempt to explain the "no matches" with speculative hypotheticals, *see* Res. 6, but cannot explain why the six specific employees who are to be deposed returned an erroneous "no match" from the SSA. Indeed, ▮▮▮▮▮▮▮▮▮▮▮▮ confirmed his full name and date of birth on the record at his deposition, eliminating the possibility of spelling errors or incorrect dates of birth. Br. 5 n.4. And Plaintiffs' speculation makes no sense here: The names and Social Security Numbers on the "matching" chart that was provided to the SSA were pulled directly from NuStar's *own sworn response* to Defendants' Interrogatory No. 1, and the dates of birth were pulled directly from the sworn I-9 records produced by Plaintiffs in this case. Boyer

Decl., Exs. B, C, G.[4] And Plaintiffs have no explanation for how occasional scriveners' errors could cause the SSA to return such an overwhelming number of "no matches."

8.   Plaintiffs further do not explain why ▮▮▮▮▮▮▮▮▮▮ proffered green card states that his class of admission to the United States is "W16."[5] As explained, it is impossible for this class of admission to have been assigned to ▮▮▮▮▮▮▮▮▮▮ because he was born nearly three years after the cut-off date for the class of persons granted amnesty by the operative legislation creating the W16 authorization. Br. 6-7.

9.   Instead, Plaintiffs merely proclaim that "▮▮▮▮▮▮▮▮▮▮ is fully prepared to testify about the circumstances under which he obtained his green card." Res. 7. This is not a meaningful response, especially since he already testified that he doesn't remember the process he went through to become a permanent legal resident. Boyer Decl., Ex. F at 28:9-21. Either Plaintiffs do not appreciate the significance of the "W16" designation on ▮▮▮▮▮▮▮▮▮▮ green card and the risks it poses to him when he answers questions about it under oath; or, Plaintiffs are not bothered by the designation, because they would gladly accept an impossible explanation from ▮▮▮▮▮▮▮▮▮▮ as to how he obtained such a green card. Either way, Plaintiffs are not fit to identify independent counsel.

10.   ***The Court Should Compel Compliance with the Subpoenas (Mot., Pt. I)***. All six

---

[4]   In arguing that "the mere receipt of a no-match letter or other no-match notice does not, standing alone, constitute 'constructive knowledge' on the part of an employer that the referenced employee is not work authorized," Res. 6, Plaintiffs miss the point (and selectively misread the cited guidance document). What's at issue in the Motion are the Fifth Amendment rights of the employees themselves—*i.e.*, whether their testimony about, *e.g.*, their entry into and presence in the United States may tend to incriminate *themselves*—not *the employers' knowledge* of their legal status.

[5]   Plaintiffs also offer no explanation for how ▮▮▮▮▮▮▮▮▮▮ would *not* tend to incriminate himself by testifying why he certified on his Form I-9 under penalty of perjury that he was a United States citizen, when at deposition he admitted that he is not. Br. 5-6. Likewise, Plaintiffs offer no explanation for how ▮▮▮▮▮▮▮▮▮▮ completed his Form I-9 in English, and without assistance, when he testified he did not read or write English. Br. 6.

4

Case 5:20-cv-04003-CJW-MAR   Document 163-4   Filed 09/16/21   Page 4 of 7

subpoenas compelled employees to produce, for inspection, at their depositions, originals of the employees' (i) social security cards, (ii) current government-issued identification cards, and (iii) the government issued identification cards that the employees presented to NuStar at the time of hire. *See* Boyer Decl., Exs. E, L. Plaintiffs did not object to this aspect of these subpoenas, although they appear to misunderstand it. *Compare id.*, *with* Res. 9-10.[6]

11. ***The Court Should Direct Plaintiffs' Counsel to Limit Deposition Objections to Those Permitted by the Rules (Mot., Pt. II)***. The Motion sets forth examples of Mr. Biss's speaking objections, monologues, and other inappropriate interjections during the deposition of ▮▮▮▮▮▮▮▮▮▮▮▮, who was not his client. *See* Br. 9-10. In response, Plaintiffs argue that Mr. Biss's conduct was defensible because he was just responding to Defendants' counsel's "harassment" by asking the witness about his prior criminal citations. But Defendants explained why these questions were relevant, *see* Br. 10-11 at n.8, and Plaintiffs do not dispute that.[7]

12. ***The Court's Continued Availability for Issues that Arise (Mot., Pt. IV)***. Plaintiffs do not directly respond to this request for relief. It should be granted.

## Conclusion

By prosecuting this defamation claim, Plaintiffs have put NuStar's employees in a difficult position. Their need for competent and independent counsel is clear from the record evidence, to which the Resistance offers no response. The actions of Plaintiffs and their counsel, for which the Resistance makes no excuse, demonstrate that they cannot be trusted to provide truly independent counsel for the employees. The Motion should be granted, in full.

---

[6] Plaintiffs have not "produced" copies of the "identification documents presented to NuStar" by each employee, Res. 10; *e.g.*, Plaintiffs have not produced any identification for ▮▮▮▮▮▮▮▮▮▮, one of the proposed deponents. *See* June 4, 2021 Reply Decl. of Nathaniel S. Boyer ¶ 2.

[7] The Motion also described Plaintiffs' counsel's conveniently shifting position on whether he represented NuStar's employees. Plaintiffs' Resistance does not dispute these facts.

| | |
|---|---|
| June 4, 2021 | **Ryan Lizza and Hearst Magazine Media, Inc., Defendants** |
| | By:  /s/ Nathaniel S. Boyer |
| | Jonathan R. Donnellan, *Lead Counsel*\* |
| |  jdonnellan@hearst.com |
| | Ravi V. Sitwala\* |
| |  rsitwala@hearst.com |
| | Nathaniel S. Boyer\* |
| |  nathaniel.boyer@hearst.com |
| | Sarah S. Park\* |
| |  sarah.park@hearst.com |
| | Nina N. Shah\* |
| |  nina.shah@hearst.com |
| | THE HEARST CORPORATION |
| | Office of General Counsel |
| | 300 West 57th Street |
| | New York, New York 10019 |
| | Telephone: (212) 649-2030 |
| | Telephone: (212) 649-2035 |
| | *\*Admitted Pro Hac Vice* |
| | |
| | Michael A. Giudicessi |
| |  michael.giudicessi@faegredrinker.com |
| | Nicholas A. Klinefeldt |
| |  nick.klinefeldt@faegredrinker.com |
| | Susan P. Elgin |
| |  susan.elgin@faegredrinker.com |
| | FAEGRE DRINKER BIDDLE & REATH LLP |
| | 801 Grand Avenue, 33rd Floor |
| | Des Moines, Iowa 50309-8003 |
| | Telephone: (515) 248-9000 |
| | Facsimile: (515) 248-9010 |
| | |
| | *Attorneys for Defendants* |

## Certificate of Service

The undersigned certifies that a true copy of **Defendants' Reply Brief in Further Support of Their Resisted Motion to Compel and for Other Relief Regarding Depositions of NuStar Employees** was served upon the following parties through the court's CM/ECF electronic filing system on June 4, 2021.

/s/ Nathaniel S. Boyer

Copy to:

Joseph M. Feller
 jfeller@kkfellerlaw.com

Steven S. Biss
 stevenbiss@earthlink.net

*Attorneys for Plaintiff*