IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| **NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III,** | Case No. 5:20-cv-04003-CJW-MAR |
| Plaintiffs, | |
| v. | **Defendants' Resistance to Plaintiffs' Motion to File Amended Complaint** |
| **Ryan Lizza and Hearst Magazine Media, Inc.,** | |
| Defendants. | **REDACTED** |

Defendants Ryan Lizza ("Lizza") and Hearst Magazine Media, Inc. ("Hearst") (collectively "Defendants") resist Plaintiffs NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III's (collectively "Plaintiffs") Motion for Leave to File Amended Complaint filed on October 7, 2021 (ECF No. 172) (the "Motion"). As set forth below, the Court should deny the Motion in its entirety.

As an initial matter, Plaintiffs failed to comply with this Court's meet and confer requirement (even after specifically committing to do so at the last case management hearing). This alone warrants denial of the motion, especially given Plaintiffs' dismissiveness of the requirement when highlighted by Defendants.

Moreover, rather than simply adding back the single implication theory of defamation liability that the Eighth Circuit allowed to go forward in the separate case by Devin Nunes against Defendants, Plaintiffs seek to add entirely new causes of action—false light invasion of privacy (Count 3) and civil conspiracy (Count 4)—and undo this Court's dismissal of its claim for punitive damages, none of which have any relationship to the Eighth Circuit decision and all of which are based on "facts" that Plaintiffs have had in their possession from virtually the outset

1

of this case and at all times prior to the expiration of the deadline to amend set by this Court's series of scheduling orders and extensions. Indeed, for the conspiracy claim, Plaintiffs affirmatively identified the purported conspirators in their initial disclosures and issued subpoenas to those parties, but chose not to follow up on those efforts prior to the close of discovery or otherwise. Given this inexcusable untimeliness, lack of diligence, and lack of adherence to the rules and scheduling orders of this Court, there is no good cause to allow this last-minute, post-discovery expansion of the case with the attendant expense and delay the proposed new claims would add to this lawsuit.

In addition, each of these proposed additions would unfairly prejudice Defendants, who litigated through discovery on the reasonable basis that these claims were not part of the case. And, in any event, all of the claims would be futile as measured by the Rule 12(b)(6) standard. The false light and punitive damages claims require a showing of actual malice, something the Court already held absent when it granted Defendants' motions to dismiss. Plaintiffs' attempt to plead actual malice based on discovery obtained in this case does not pass the plausibility standard (and in any event, relies on information that has been in Plaintiffs' possession for nearly one year). And the conspiracy claim is unsupported by any factual content and at best alleges bare parallel activities that do not amount to conspiracy as a matter of law (and that should be subsumed by their existing libel claim and defeated by the prior ruling of a lack of intentional publication of a falsehood). In short, the Court should not countenance Plaintiffs' attempt to use the Eighth Circuit decision as *carte blanche* to infuse this case with unrelated, futile claims and reopen discovery. This case is ripe for adjudication on summary judgment.

## Procedural and Factual Background

### A. The Proceedings to Date.

Plaintiffs initiated this lawsuit in January 2020. After motion practice on the sufficiency of the Complaint (ECF Nos. 1, 15, 18, 20, 27) and Amended Complaint (ECF Nos. 28, 33, 37, 41, 43, 50), the case proceeded to discovery on one count of defamation arising from the reporting in the *Esquire* article concerning NuStar Farms' hiring of undocumented workers (ECF No. 51). None of the pleadings (ECF Nos. 1, 28, 51) alleged that Defendants Hearst or Lizza agreed or conspired with CNN, Olivia Nuzzi or other non-party journalists or media organizations to defame Plaintiffs. Similarly, none of those pleadings asserted a false light invasion of privacy claim.

For more than a year and through the end of August 2021 the parties completed extensive discovery on the single defamation claim. This included the parties (i) producing thousands of pages of documents after objections were resolved, (ii) disclosing five expert witnesses (who submitted seven expert reports), (iii) taking 18 depositions (of whom 13 were non-parties), and (iv) receiving from the U.S. Social Security Administration a chart indicating that the vast majority of NuStar's current and former employees submitted Social Security numbers to NuStar for employment verification that did not match the government's records (ECF Nos. 163-2 at 4-5, n.3; 163-4 ¶ 6 (unsealed filings)).

Discovery was complicated by Plaintiffs' delays, which required the Court's intervention and necessitated extensions to court-ordered deadlines. *See, e.g.*, ECF Nos. 72 at 12:18-25:16; 74 at 3-4; 81 at 2-4; 90 at 10:15-12:9; 91 at 23:24-31:4 (Plaintiffs' delay in answering Defendants' Interrogatory No. 1); 103; 104 at 15:15-36:22; 106; 119; 122 (Plaintiffs' counsel's behavior necessitating Court appointment of independent counsel for NuStar's employees); 77;

110; 130; 152 (ordering extensions of deadlines). Despite it all, this case was on the precipice of summary judgment, notwithstanding two outstanding discovery motions that remain *sub judice* with the Court. *See* ECF Nos. 127, 151.

Then, two days before Defendants were going to file their motion for summary judgment, the Court continued *sine die* the September 17, 2021 dispositive motion deadline based on a three-judge panel decision issued by the Court of Appeals in *Devin Nunes v. Lizza*, 12 F.4th 890 (8th Cir. 2021). *See* ECF Nos. 162, 164. The appellate court affirmed the district court's decision that the Congressman did not plead facts sufficient to plausibly allege actual malice as to the publication of the Article. *Devin Nunes*, 12 F.4th at 899. However, it revived Congressman Nunes's suit in limited part, based solely on a hyperlink to the Article that Lizza posted to his Twitter feed in November 2019 after the Congressman had filed his lawsuit (but before Plaintiffs filed this one). *Id.* at 899-901.

The Court of Appeals has not yet issued its mandate, and Defendants have petitioned the Court of Appeals for rehearing or rehearing *en banc*. Appellees' Petition for Rehearing and Rehearing *En Banc*, *Devin Nunes v. Lizza*, No. 20-2710 (8th Cir. Oct. 13, 2021); *see also* Brief *Amici Curiae* of 35 National and Local Media Organizations and Journalists in Support of Rehearing, *Devin Nunes v. Lizza*, No. 20-2710 (8th Cir. Oct. 20, 2021) (amicus brief in support of petition, supported by 35 publishers of various sizes and forms of media).

On September 23, 2021 Plaintiffs' counsel represented to the Court that Plaintiffs would seek to amend their complaint to add a defamation by implication claim based on the *Devin Nunes* ruling. Declaration of Nathaniel Boyer dated October 21, 2021 ("Boyer Decl."), Ex. A at 7:12-16; ECF Nos. 170, 171. Plaintiffs' Motion seeks to expand the scope of their claim for defamation (Claims 1 and 2); to add claims for (i) false light invasion of privacy (Count 3) and

(ii) civil conspiracy (Claim 4); and to revive a demand for punitive damages, which was removed from Plaintiffs' Second Amended Complaint after the Court previously held that Plaintiffs had failed to plausibly allege actual malice. ECF Nos. 172-1 at 21-32; ECF No. 50 at 33-40.

> **B. From the Beginning of Discovery, Plaintiffs Have Disclosed, and Sought Evidence from, Witnesses Who Would Testify to a Supposed Conspiracy and the False Light Invasion of Privacy Claim.**

Plaintiffs had not previously alleged a conspiracy between Defendants and third parties in the media industry. Nor had they previously sought to amend their complaint to add that claim. However, Plaintiffs' actions to date in this case suggest that they were aware of this claim, despite failing to attempt to add it within any deadline for amendments.

Plaintiffs listed members of this so-called conspiracy on their Rule 26(a)(1) disclosures as having knowledge that would be directly relevant to the conspiracy. Boyer Decl. Ex. B (4/14/20 Rule 26(a)(1) disclosures listing Jay Fielden (knowledge of "publication" of Article), Olivia Nuzzi (knowledge of "publication" and "conspiracy with Lizza to defame Plaintiff"), CNN (knowledge of "publication and republication" of defamatory statements)). Moreover, Plaintiffs long ago sought discovery from these same third parties they now accuse of involvement in the conspiracy. Boyer Decl. Exs. C (1/12/21 Notice of Subpoena to CNN), D (6/2/20 Notice of Subpoena to Nuzzi), E (1/28/21 Notice of Subpoena to Nuzzi), F (6/1/20 Notice of Subpoena to Fusion GPS), G (6/2/20 Notice of Subpoena to The Democracy Integrity Project). But Plaintiffs never followed through with this discovery. Plaintiffs' counsel also chose not to ask Ryan Lizza or Hearst's 30(b)(6) witness any questions about purported communications with these third parties, despite having identified them as sources of knowledge fifteen months earlier. Ultimately, Plaintiffs' efforts to develop this fictitious narrative (unsurprisingly) amounted to nothing.

For their part, Defendants justifiably relied on Plaintiffs' failure to assert these additional claims in how they prepared their defenses and conducted discovery. For example: On the understanding that Plaintiffs were not asserting a claim for false light invasion of privacy, Defendants did not seek testimony or third-party discovery on issues that would be relevant to that claim. Boyer Decl. ¶ 9. Likewise, Defendants did not seek discovery concerning the supposed "conspiracy" among Lizza, Hearst, and others, either. *Id.*

### C. Plaintiffs' Counsel Fails to Meet and Confer Regarding the Proposed Third Amended Complaint.

Despite having represented in Court that they would provide Defendants with the proposed amended pleading ahead of filing the motion (Boyer Decl. Ex. A at 7:12-20, 10:22-25, 12:15-20, 13:13-17, 17:22-25, 23:23-25), as required by the rules, Plaintiffs declined to meet and confer in good faith. Plaintiffs' counsel did not send the proposed pleading to Defendants until 3:06 p.m. CT on the day it was due. Defendants explained that Plaintiffs' counsel had provided Defendants with the draft at a time that was too late to evaluate, discuss with their clients, and confer with Plaintiffs' counsel. Therefore, Defendants' counsel asked Plaintiffs' counsel to set forth Defendants' preliminary position in this Motion. Boyer Decl. Ex. H.

Plaintiffs' counsel refused. Instead, Plaintiffs' counsel responded that Defendants' email was a "personal insult"; accused Defendants' counsel of having a "serious character flaw"; accused Defendants of "express[ing] disdain" for a federal court; and made no excuse for not providing the draft to Defendants' counsel until the 11th hour. Boyer Decl. Ex. H; ECF No. 172 at 2. Plaintiffs' counsel made no offer to meet and confer, even at that late hour. Boyer Decl. ¶ 10.

## Argument
## Plaintiffs' Motion to Amend Should Be Denied

**A. The Court Should Deny Plaintiffs' Motion for Failure to Follow the Local Rules of Civil Procedure.**

Local Rule of Civil Procedure 7(k) requires that "[a]ll non-dispositive motions must contain a representation that counsel for the moving party personally has conferred in good faith with counsel for all other parties . . . concerning the motion, and a statement of whether or not the other parties consent to the motion." These motions include "motions to amend pleadings." LR 7(k). "If the moving party has not conferred with another party, the motion must contain a description of the efforts made to consult with the party and an explanation of why the efforts were unsuccessful." *Id.*

Despite Plaintiffs' counsel's representation to this Court in the conference on September 23, 2021 that he would provide a copy of the proposed third amended complaint to Defendants ahead of the deadline for moving to amend so that Defendants could review and discuss with Plaintiffs' counsel, *see* Boyer Decl. Ex. A at 7:12-20, 10:22-25, 12:15-20, 13:13-17, 17:22-25, 23:23-25, he did not provide Defendants with a copy until 3:06 p.m. CT the day the motion to amend was due. This provided insufficient time for defense counsel to review the pleading and discuss with their clients, let alone to confer with Plaintiffs. *See* Boyer Decl. Ex. H. Defendants' counsel requested that Plaintiffs include Defendants' counsel's stated position when they filed their motion; Plaintiffs declined to do so. *Id.* Ex. H.

This failure to follow a federal court's procedural rules alone is a sufficient basis to deny the motion to amend. *See Biron v. Carvajal*, No. 19-cv-2938, 2020 WL 5812970, at *4-5 (D. Minn. Sept. 30, 2020) (slip copy) (adopting Magistrate' judge's denial of motion to amend because *pro se* plaintiff failed to comply with procedural rules in making the motion, including

failure to meet and confer prior to filing); *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 316 F. Supp. 3d 22, 24-25 (D.D.C. 2018) (denying contempt motion for failure to comply with local rule requiring meet and confer before non-dispositive motion, stating "Plaintiffs' failure to meet and confer is no mere ministerial misstep."). Here, where Plaintiffs' counsel not only failed to meet and confer but then declined to fairly represent Defendants' counsel's preliminary position in the Motion, the Court should deny the motion to amend in its entirety.

### B. Pursuant to Rule 16(b), the Court Should Reject Plaintiffs' Untimely Attempts to Assert False Light (Claim 3) and Conspiracy (Claim 4) Claims Because Plaintiffs Did Not Diligently Pursue Them.

As Plaintiffs acknowledge, "[i]f a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule" under "Rule 16(b)'s good cause standard" and "not the more liberal standard of Rule 15(a)." ECF No. 172-3 ¶ 6; *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715-17 (8th Cir. 2008). "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Sherman*, 532 F.3d at 716 (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006), *overruled on other grounds by Avichail ex rel T.A. v. St. John's Mercy Health Sys.*, 686 F.3d 548 (8th Cir. 2012)).

Plaintiffs have not demonstrated the requisite diligence under Rule 16(b) to modify the scheduling order to pursue their new false light invasion of privacy and civil conspiracy claims, neither of which was contemplated or addressed by the Court of Appeals' ruling in *Devin Nunes*.

Discovery is complete, save for two pending motions by Defendants awaiting ruling by this Court. An Amended Scheduling Order was entered in December 2020, which did not even reset the July 2020 deadline for amending pleadings because the parties represented that they

8

Case 5:20-cv-04003-CJW-MAR   Document 176   Filed 10/21/21   Page 8 of 20

saw no need to do so.  ECF Nos. 59 at 2; 61.  Plaintiffs have not otherwise sought leave to extend the deadline to amend.  While the Court of Appeals did remand the defamation by implication claim (and the related conspiracy claim) alleged by non-party Congressman Devin Nunes in his separate lawsuit on the narrow issue of a November 2019 hyperlink, *see Devin Nunes*, 12 F.4th at 901, the Court of Appeals decision does not save Plaintiffs' false light invasion of privacy and civil conspiracy claims in *this* suit.[1]  And Plaintiffs should not be permitted to use the Court of Appeals' decision to add all manner of late claims to this lawsuit at this late stage.

The false light claim, which requires allegations and proof that Defendants had knowledge of or acted in reckless disregard of the falsity of the publicized matter,[2] is entirely premised on facts known to Plaintiffs, or of which Plaintiffs had notice, since virtually the inception of the case.  Defendants produced to Plaintiffs all the audio tapes of Lizza's interviews by January 2021.  Boyer Decl. ¶ 11.  Plaintiffs deposed one of Lizza's unnamed sources in May 2021 and never indicated they would seek to depose the other after learning their identity.  Boyer Decl. ¶ 11.  The allegations made in support of the false light claim are cherry-picked from the audio tapes and the source's deposition testimony, which has been known to Plaintiffs for many months.  *E.g.*, ECF No. 172-2 at 22-23; *see also* ECF No. 50 at 36-40.

---

[1]  Unlike in the Congressman's case, Plaintiffs here never asserted a civil conspiracy claim. While the Court of Appeals did revive the Congressman's civil conspiracy claim, it did so because the District Court dismissed it based on the dismissal of the underlying tort.  Plaintiffs' conspiracy allegations fail to state a claim.  *See infra* Part C.2.

[2]  Under Iowa law, a false light invasion of privacy claim arises when "1) Defendants gave publicity to a matter concerning [plaintiff] that placed him before the public in a false light; 2) the false light [plaintiff] was placed in would be highly offensive to a reasonable person; and 3) Defendants had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [plaintiff] was placed."  *Mills v. Iowa*, 924 F. Supp. 2d 1016, 1034-35 (S.D. Iowa 2013); *Betz v. Fed. Home Loan Bank of Des Moines*, No. 21-cv-00022, -- F. Supp. 3d --, 2021 WL 3046888 at *11 (S.D. Iowa July 19, 2021); *Bierman v. Weier*, 826 N.W.2d 436, 465 (Iowa 2013).

Further, evidence of Plaintiffs' purported injury from any false light claim (Claim 3) has been in their sole possession since the Article was published. Plaintiffs give no reason why they could not have alleged false light together with defamation as early as when the Article was published, and they do not (and cannot) show their diligence in pursuing the claim now. Rather, it appears only now—███████████████████████████████████████████████████

████████████████████████████████████████—that they try to dress their defamation claim in a new cloak. *See, e.g.*, Boyer Decl. Ex. I at 363:19-373:6, 374:2-15, 376:10-23, 378:10-15, 379:8-384:2, 392:5-393:12; Boyer Decl. Ex. J at 58:19-63:6, 65:9-66:12, 69:25-71:3, 131:14-135:9, 227:22-228:23.

Plaintiffs' lack of diligence in pursuing the civil conspiracy claim (Claim 4) is just as inexcusable. The new conclusory allegations attempt to support an agreement to defame Plaintiffs among Defendants and their employees, CNN, Olivia Nuzzi, Fusion GPS, and other unnamed "political operatives" and co-conspirators. ECF No. 172-2 ¶¶ 20, 39, 62-67. Plaintiffs identified CNN and Nuzzi with references to a "conspiracy" and "communications" with Defendants in its Rule 26(a) initial disclosures in April 2020 and noticed subpoenas long ago (as early as June 2020) to CNN, Nuzzi, Fusion GPS, and others that encompassed the allegations Plaintiffs now make. *See supra* pp. 2, 5-6.

As described above, Plaintiffs did not ask Defendants about any communications with these co-conspirators at their depositions, much less about any purported agreements among them. *See supra* pp. 2, 5-6. And this Court will well remember the numerous times Plaintiffs' counsel alluded to CNN and other members of the media in court hearings and conferences. This addition of a conspiracy claim is late indeed. *See Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (affirming denial of amendment where movant already

had almost all relevant evidence months before the late motion); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (district court did not abuse its discretion by denying plaintiff's motion to amend complaint to add punitive damages where motion was filed seven weeks before end of discovery but 10 months after district court entered scheduling order and where plaintiff provided no reason why those damages could not have been alleged earlier and no good cause for late filing of motion to amend); *G2 Database Mktg., Inc. v. Stein*, No. 18-cv-00331, 2020 WL 6481540, at *8 (S.D. Iowa, Sept. 29, 2020) (slip copy) (finding plaintiff was not diligent where he waited 13 months to develop factual basis for proposed amendment).

Tellingly, in their Motion, Plaintiffs do not argue that these new claims were diligently pursued. ECF No. 172-3 ¶¶ 8-9. They skip that step in the analysis and, instead, assert that discovery must be reopened for the defamation by implication claim anyway and as a result there is no prejudice to Defendants to add the false light claim and take additional discovery on it.[3] *Id.* ¶ 9. However, Plaintiffs' lack of good cause alone should be dispositive. *See Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) ("We generally will not consider prejudice [to the nonmovant] if the movant has not been diligent in meeting the scheduling order's deadlines. Instead, we focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order.") (alteration in original) (quotation marks and citations omitted).

Even if Plaintiffs could show good cause for their late additions of false light and conspiracy claims, any potential reopened discovery—including into unconnected third parties like CNN and Fusion GPS—would occasion delay and unnecessarily prejudice Defendants. Where a proposed amendment occurs after the deadline to amend (and after discovery has

---

[3] Plaintiffs made no argument at all in support of adding the conspiracy claim.

closed), purports to require additional discovery and evidences a change in litigation strategy rather than a change in law or newly discovered facts, motions to amend and modify the scheduling order are rightfully denied. *See, e.g.*, *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1099-1100 (8th Cir. 2020) (affirming denial of motion to amend at advanced stage where no new facts supporting the claim had emerged, discovery would need to be reopened, and plaintiff admitted he had no other way to hold one defendant liable); *Hartis*, 694 F.3d at 948-949 (affirming denial of amendment where plaintiffs did not set forth a change in circumstances but instead made tactical decision to delay adding punitive damages demand). Failing to take discovery during the time allotted that may have supported the claim is also a reason to deny an amendment for lack of good cause. *See Hawkins*, 464 F.3d at 822 (affirming denial of prisoner plaintiff's dilatory motion to amend where plaintiff had focused on matters other than taking discovery or amending his complaint).

Unlike the plaintiff in *Kmak v. American Century Cos., Inc.*, who attempted unsuccessfully to convince the court that late discovery revealed new facts, Plaintiffs here have not even argued that these two claims arose from any newly discovered facts or a change in the law.[4] 873 F.3d 1030, 1034 (8th Cir. 2017). In *Kmak*, the court rejected the late new claims as nothing more than "legal variations on a theme that the parties had been litigating for years." *Id.* at 1034; *see also G2 Database*, 2020 WL 6481540, at *8 (rejecting amendment where it would have "injected a new theory of liability late in the game"). The same reasoning applies here, and Plaintiffs have cited no case supporting these amendments. Plaintiffs have not satisfied Rule 16(b).

---

4   To the extent Plaintiffs' false light claim purports to arise from Lizza's retweet of the Article in November 2019, the amendment also should not be permitted. *See infra* Part C.1.

### C. Alternatively, the Court Should Reject Plaintiffs' Attempt to Allege False Light (Claim 3) and Conspiracy (Claim 4) Claims and Punitive Damages as Futile Pursuant to Rule 15.

Even if diligence and good cause are shown, the Court "appropriately denies . . . leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Sherman*, 532 F.3d at 715 (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)); *see also* ECF No. 172-3 ¶ 10 (Pl. Mot. to Amend).

An amendment is "futile" if it would not survive a Rule 12(b)(6) motion. *See Moses*.com, 406 F.3d at 1065-66. At the Rule 12(b)(6) stage, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, it would be futile for Plaintiffs to add the false light claim (Claim 3), the conspiracy claim (Claim 4), and a demand for punitive damages, because these claims and demand would not withstand a motion to dismiss.

1. *Plaintiffs' False Light Claim Would Not Withstand a Motion to Dismiss.*

A false light invasion of privacy claim requires factual allegations that Defendants had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiffs were placed. *Bierman*, 826 N.W.2d at 465; *Winegard v. Larsen*, 260 N.W.2d 816, 823 (Iowa 1977) (adopting Restatement and noting overlap with law of defamation); *see also supra* note 4 (citing *Mills*, 924 F. Supp. 2d at 1035); *Betz*, 2021 WL 3046888, at *11. This Court has already found Plaintiffs' previous pleadings failed to allege actual malice, *see* ECF No. 50, at 36-40, and Plaintiffs' proposed third amended complaint

similarly does not contain such facts that plausibly support a finding of fault as set by the *Times v. Sullivan* actual malice standard.[5] *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

Plaintiffs attempt a second bite at the apple as to actual malice. First, they assert that actual malice is present because Lizza allegedly mischaracterized certain selected statements from audiotaped interviews of unnamed sources. For example, Plaintiffs question what a source meant by saying the word "there," Lizza's supposed failure to ask a follow-up question about the timeframe of her statements, and the meaning of another source's response to a question in context. ECF No. 172-2 ¶¶ 14-15. From this, Plaintiffs leap to the conclusion that "[t]he Defendants concealed material facts and knowingly misled readers. . . . [and] published statements that were a product of their imagination." ECF No. 172-2 ¶ 40a.

Instead of actual malice, the allegations if anything tend to reinforce the diligence with which Lizza conducted his reporting, acknowledging he documented extensive interviews with audiotapes. *Id.* In any event, quibbling with isolated and cherry-picked words and statements in extensive, lengthy interviews hardly suggests that Lizza and Hearst "in fact entertained serious doubts as to the truth of [the statements]" that were ultimately published. *Bierman*, 826 N.W.2d at 465 (citation omitted); *see also Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 666 ("highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" does not establish actual malice (citation omitted)). Plaintiffs further allege that Defendants "harbored an institutional hostility,

---

[5] The standard for reckless disregard and actual malice in a false light invasion of privacy is the same as that for libel. *Winegard*, 260 N.W.2d at 823 (noting overlap with the law of defamation); *Bierman*, 826 N.W.2d at 465 (applying actual malice standard for libel set forth in *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) to false light claim and finding actual malice not present where book publisher had no reason to doubt veracity of book where it failed to follow up on buzzword search before publishing).

hatred, extreme bias, spite and ill will towards Devin." ECF No. 172-2 ¶ 40c. This also does not move the needle; as this Court has previously held, actual malice is distinct from common law malice or "bad motive or ill will." ECF No. 50 at 37 (citing *Bertrand v. Mullin*, 846 N.W.2d 884 (Iowa 2014)).

Second, Plaintiffs also allege that Lizza acted with actual malice in publicizing the Article when he tweeted it on November 20, 2019 because Plaintiffs had, on November 14, 2019, sent a retraction notice to Hearst. ECF No. 172-2 ¶¶ 25, 40b, 44. Specifically, the proposed third amended complaint alleges that "*Lizza* tweeted the Article in November 2019 after Plaintiffs sent *Hearst* notice and a demand to retract," *id.* ¶ 40b (emphases added); *see also id.* ¶ 25. The proposed amended complaint does not supply any facts indicating that Lizza knew about that retraction demand at the time, conveniently omitting facts known to Plaintiffs that Lizza no longer worked for *Esquire* at that time. Plaintiffs failed to ask Lizza or Hearst's 30(b)(6) witness a single question at their depositions about any retraction demand, so it is pure speculation that Lizza had any awareness of it and the proposed amended complaint makes no such requisite allegation of knowledge. *See Bertrand*, 846 N.W.2d at 900 (the fact a plaintiff publicly states or informs a defendant that an implication or publication was false does not support a finding of actual malice).

Lacking this connection between Lizza and the retraction demand, Plaintiffs attempt to impute the Court of Appeal's ruling concerning the Congressman's lawsuit in September 2019 onto these Plaintiffs. The fact that Devin Nunes filed a lawsuit in September 2019 and Plaintiffs did not at that time (or for nearly four months) plausibly leads to the opposite conclusion by Lizza (which conclusion in the *Devin Nunes* case has yet to be proved and remains under challenge on the motion for reconsideration or *en banc* review pending at the Court of Appeals):

15
Case 5:20-cv-04003-CJW-MAR   Document 176   Filed 10/21/21   Page 15 of 20

That Plaintiffs did not contend the reporting was false. Indeed, as the story reports, Plaintiffs were unwilling to meet with Lizza upon multiple requests when he was in Sibley, and that one of NuStar's employees called one of Lizza's sources to try to interrupt his reporting. ECF No. 32-2 at 10, 16. Quite simply, there is no factual allegation in the Third Amended Complaint that Lizza was on notice of Plaintiffs' retraction demand sufficient to meet the pleading standard for actual malice. *See, e.g.*, *Bertrand*, 846 N.W.2d at 900.

2. *Plaintiffs' New Conspiracy Claim Would Not Withstand a Motion to Dismiss.*

Bare assertions of a "conspiracy" will not suffice under the pleading standards of Rule 12(b)(6). *See Twombly*, 550 U.S. at 556-557; *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001) (affirming dismissal on motion to dismiss of conspiracy claim under § 1985 supported only by bare allegations); *Moses.com*, 406 F.3d at 1063-64 (complaint that alluded to collusion in contrast to setting forth specific facts of conspiracy was properly dismissed on the pleadings).

Rather, to survive a motion to dismiss a claim for civil conspiracy to commit defamation under Iowa law, Plaintiffs must allege facts that show an agreement or understanding among multiple actors working in concert to commit a wrong against another. *Olson v. City of North Liberty*, 451 F. Supp. 3d 1010, 1028 (S.D. Iowa 2020).

This requires specific, particularized pleadings; a conspiracy claim "involves some *mutual mental action* coupled with an intent to commit the act which results in injury." *Id.* (emphasis in original) (quotation marks and citations omitted); *Am. Sec. Benevolent Ass'n, Inc. v. Dist. Ct. of Black Hawk Cnty.*, 147 N.W.2d 55, 63 (Iowa 1966) ("The mere knowledge, acquiescence or approval of the act, without cooperation or agreement to cooperate, is not enough to constitute one [] party to a conspiracy. There must be an intentional participation in the transaction with a view to the furtherance of the common design and purpose."). And, "there

16

Case 5:20-cv-04003-CJW-MAR   Document 176   Filed 10/21/21   Page 16 of 20

must be *knowledge* of that purpose [to defame] by the alleged conspirator." *Olson*, 451 F. Supp. 3d at 1028, 1029 (citing *Tubbs v. United Cent. Bank, N.A.*, 451 N.W.2d 177, 184 (Iowa 1990)) (emphasis added).

"By contrast, merely because two or more persons associate with each other, or meet to discuss common interests or goals does not, by itself, establish a conspiracy." *Id*. (citing Iowa Civ. Jury Instr. §§ 3500.2, 3500.3). "Speculation, relationship, or association and companionship do not establish a conspiracy." *Ezzone v. Riccardi*, 525 N.W.2d 388, 398 (Iowa 1994) (citing *Am. Sec. Benevolent Ass'n*, 147 N.W.2d at 63).

For example, in *Olson*, the district court dismissed on summary judgment plaintiffs' claim for conspiracy to defame where the defendants merely disregarded the truth in their statements "recklessly" instead of "intentionally," which "necessarily means there was no knowledge of that purpose to defame." 451 F. Supp. 3d at 1029 (quotation marks and citation omitted). The district court relied, in part, on *Nelson v. McMillan*, 156 N.W. 327, 331 (Iowa 1916). *Olson*, 451 F. Supp. 3d at 1029. The Iowa Supreme Court held in that case involving horse breeders that the evidence could not sustain a conspiracy to defame because it only demonstrated "enemies who were active and bitter and were watchfully waiting an opportunity to press their charges" and not an "intentional combination to promote that purpose." *Nelson*, 156 N.W. at 331; *Olson*, 451 F. Supp. 3d at 1029 (quotation marks and citation omitted).

Plaintiffs' allegations fall far short of this standard, sounding in conclusory statements and lacking any specifics. Not only is it entirely implausible that Defendants intentionally worked together with outlets such as CNN, plus other diverse named and unnamed parties ("political operatives and agents of opposition research firms," "others in social media"), with a knowing purpose to defame Plaintiffs, but there are no allegations to suggest how this could

possibly have occurred. *See* ECF No. 172-2 ¶¶ 20, 39, 62-67. There are no allegations of *communications* among the purported co-conspirators, let alone allegations that they reached an agreement or understanding to act in concerted action.

Rather, Plaintiffs allege that various unconnected parties all "promot[ed], publish[ed] and republish[ed] the Article" on the internet and in media. *Id.* ¶ 63. The sharing of links on the Internet by "others in social media" hardly points to an agreement or an "intentional combination to promote" a purpose. *Olson*, 451 F. Supp. 3d at 1029 (quotation marks and citation omitted). Allegations of parallel behavior alone do not support a conspiracy. *Kurtz*, 245 F.3d at 758; *Twombly*, 550 U.S. at 556-57. These empty allegations would not survive a motion to dismiss, and the Court should refuse to allow amendment to add them now. *See Olson*, 451 F. Supp. 3d at 1029.

3. *Plaintiffs' Claim for Punitive Damages Would Not Withstand a Motion to Dismiss.*

Punitive damages are available to defamation plaintiffs only upon a showing of actual malice. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974); *Caveman Adventures UN, Ltd. v. Press-Citizen Co.*, 633 N.W.2d 757, 758 (Iowa 2001), *abrogated on other grounds by Barreca v. Nickolas*, 683 N.W.2d 111 (Iowa 2004). For the reasons set forth *supra* subsection (1), Plaintiffs' new allegations do not sufficiently allege actual malice, and thus fail to set forth a viable demand for punitive damages.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to amend.

Dated: October 21, 2021.   **Ryan Lizza and Hearst Magazine Media, Inc., Defendants**

/s/ Nathaniel S. Boyer
Jonathan R. Donnellan, *Lead Counsel*\*
 jdonnellan@hearst.com
Ravi R. Sitwala\*
 rsitwala@hearst.com
Nathaniel S. Boyer\*
 nathaniel.boyer@hearst.com
Sarah S. Park\*
 sarah.park@hearst.com
Nina Shah\*
 nina.shah@hearst.com
Kristen Hauser\*
 khauser@hearst.com
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 841-7000
Facsimile: (212) 554-7000
*\*Admitted Pro Hac Vice*

Michael A. Giudicessi
 michael.giudicessi@faegredrinker.com
Nicholas A. Klinefeldt
 nick.klinefeldt@faegredrinker.com
Susan P. Elgin
 susan.elgin@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

Scott W. Wright\*
 scott.wright@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center/90 S. 7th Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
*\*Admitted Pro Hac Vice*

**Attorneys for Defendants**

19
Case 5:20-cv-04003-CJW-MAR   Document 176   Filed 10/21/21   Page 19 of 20

## Certificate of Service

The undersigned certifies that a true copy of **Defendants' Resistance to Plaintiffs' Motion to File Amended Complaint** was served upon the following parties through the Court's CM/ECF electronic filing system on October 21, 2021.

/s/ Nathaniel S. Boyer

Copy to:

Bill McGinn
  bmcginn@mcginnlawfirm.com
Steven S. Biss
  stevenbiss@earthlink.net

*Attorneys for Plaintiffs*