IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| ANTHONY NUNES, JR., ANTHONY NUNES, III, and NUSTAR FARMS, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>RYAN LIZZA and HEARST MAGAZINE MEDIA, INC.,<br><br>Defendants. | No. 20-cv-4003-CJW<br><br>ORDER REGARDING DEFENDANTS' MOTION TO COMPEL THIRD-PARTY FUNDING DISCOVERY REQUESTS |

Before me is Defendants' Resisted Motion to Compel Responses to Third-Party Litigation Funding Discovery Requests, filed on August 23, 2021. (Doc. 147.) Plaintiffs filed a timely resistance. (Doc. 153.) Defendants filed a reply. (Doc. 157.) On September 14, 2021, I held a telephonic hearing and heard arguments from the parties. (Doc. 161.)

## I.   BACKGROUND

Plaintiffs operate a dairy in northwest Iowa. The individual Plaintiffs are close family members of prominent United States Congressman Devin Nunes. The claims arise out of an alleged defamatory article written and published by Defendants. The only remaining allegation is that Defendants defamed Plaintiffs because the article accused them of knowingly employing undocumented laborers. (Doc. 50.)

1

Defendants seek to obtain information about third parties whom they believe are funding this case for Plaintiffs. Specifically, Defendants have propounded request for production no. 92 that seeks:

> Documents sufficient to show the person or persons who, or entity or entities that, are funding Plaintiffs' prosecution of this action, including but not limited to the person or persons who, or entity of entities that, are paying Mr. Biss's and/or Mr. Feller's legal fees.

(Doc. 148 at 2.)[1] Plaintiffs' response to the request merely objected on relevance grounds. Defendants point to evidence that Plaintiffs are not, in fact, paying for the instant litigation. That is, they have not incurred out-of-pocket expenses and have made only a minimal payment to local counsel. Plaintiff NuStar's Rule 30(b)(6) designee, Anthony Nunes III admitted having no idea who was paying Plaintiffs' lawyers.

Congressman Nunes is closely related to the individual Plaintiffs and has a history of litigation against media defendants, including a lawsuit in this Court about this same story. *Nunes v. Lizza et al*, 19-CV-4064.[2]

## II. DISCUSSION

### A. *The Parties' Contentions*

If the instant lawsuit is controlled by "wealthy private donors," perhaps related to the Congressman, Defendants contend this raises significant constitutional concerns. First, Defendants generally are concerned about the "chilling effect" of financing defamation cases. Second, more specifically, Defendants raise the specter of private

---

[1] Defendants failed to attach to their motion a copy of the disputed request and response as required by LR 37(b). However, because they quoted the single disputed request and the response in their entirety, the omission is harmless. Defendants are adjured to comply with the local rules.

[2] Congressman Nunes's lawsuit was dismissed by this Court but revived by the Eighth Circuit Court of Appeals. As of the date of this order, mandate has not issued and a petition for *en banc* review remains pending.

2

figures pursuing "tandem libel cases" at the behest of a public figure and avoiding the protections offered to media defendants by the requirement of proving actual malice. Defendants also contend that evidence of third-party funding of Plaintiffs' lawsuit will be relevant to whether Plaintiffs should be considered "involuntary limited purpose public figures," an argument Defendants have previously raised. (Doc. 37 at 38-41.) If they are public figures, Plaintiffs would have to show actual malice – something Defendants claim they cannot show. Defendants argue the information is relevant to Plaintiffs' standing. Defendants contend information about funding of the litigation will show if Plaintiffs' case is a "mere surrogate" for Congressman Nunes's case, which was recently revived by the Eighth Circuit Court of Appeals. Defendants argue they need information about third-party funding to determine whether Plaintiffs are the parties who will benefit from the case, or if the true beneficiary is Congressmen Nunes, who Defendants believe seeks to further an agenda of intimidating media outlets.

Defendants also contend that they are entitled to the discovery to ascertain if Plaintiffs are the real party in interest as required by Federal Rule of Civil Procedure 17(a). Defendants raise similar concerns about disclosures for conflicts purposes under Rule 7.1. Defendants also contend information about third-party litigation funding would rebut Plaintiffs' narrative of a large media corporation prying into the lives of small-town farmers.

Much of Plaintiffs' resistance is taken up with allegations about Defendants' disclosure of materials designated as "Counsel's Eyes Only" discovery materials. Those allegations are more properly taken up by the Court in response to Plaintiffs' Motion for Sanctions. (Doc. 155.) Plaintiffs' resistance points to media coverage of the disclosure and describes Defendants' "obsession" with uncovering the source of funding. (Doc. 153 at 5.) Plaintiffs note my comments during a January 2021 status conference where I questioned the relevance of the source of funding. In contrast, Plaintiffs' resistance is

3

extraordinarily light on legal reasoning that might support Plaintiffs' objection. I presume from Plaintiffs' discussion of relevancy that relevance figures in their objections. But nowhere in their resistance do they expressly assert the funding sources are irrelevant, much less engage with the issue. Plaintiffs do not object that disclosure of their funding sources would interfere with their First Amendment right of association or invade the attorney-client privilege. *See Conlon v. Rosa,* Nos. 295907, 295932, 2004 WL 1627337, at *3 (Mass. Land Ct. July 21, 2004) (citing *NAACP v. Alabama,* 357 U.S. 449, 462 (1958)).

To the extent Plaintiffs engage with the issue presented, Plaintiffs simply make bald denials such as, "There has been no 'coordination' between Plaintiffs and Devin Nunes regarding the lawsuit," "Devin Nunes does not have a 'policy to sue media outlets,'" and "The Plaintiffs are private individuals." (Doc. 153 at 8.) They argue that Defendants are merely speculating about the involvement of third-party funding. (*Id.* at 9.) However, while Plaintiffs are adamant in their assertions that they are not coordinating their respective lawsuits with Congressman Nunes, they do not deny the existence of third-party funding.

### *B. Standards*

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Rule 34(a) provides for discovery by production requests "within the scope of Rule 26(b)." A party may obtain, as of right, discovery "relevant to any party's claim or defense." 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2008 (3d ed. 2010). As this Court has previously stated:

> The Federal Rules of Civil Procedure authorize broad discovery. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). "Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 394 (N.D. Iowa 2009) (quoting *Rolscreen Co. v. Pella Prods.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992)).
>
> The scope of permissible discovery is broader than the scope of admissibility. *See, e.g., Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir.1992). Discovery requests are typically deemed relevant if there is any possibility that the information sought is relevant to any issue in the case. *Penford Corp. v. National Union Fire Ins. Co.*, 265 F.R.D. 430, 434–35 (N.D. Iowa 2009) (citing *Davis v. Union Pacific R.R. Co.*, No. 4:07CV00521 BSM, 2008 WL 3992761 (E.D. Ark. Aug. 26, 2008)). Nonetheless, there must be at least a "threshold showing of relevance" before parties "are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer*, 981 F.2d at 380. The party resisting production of requested information bears the burden of establishing the lack of relevancy, unless that lack of relevancy is obvious. *Marook*, 259 F.R.D. at 394–95.

*Kampfe v. Petsmart, Inc.,* 304 F.R.D. 554, 557 (N.D. Iowa 2015). Here, as in *Kampfe*, the issue is whether "there is any possibility that the information sought is relevant to any issue in the case." *Id.* (citing *Penford*, 265 F.R.D. at 434–35).

Discovery must also be

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

5

access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery out-weighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

*C.     Analysis*

   1.   *The discovery sought is proportional to the needs of the case.*

Plaintiffs have not objected that the discovery is disproportional to the needs of the case. Any concern regarding the proportionality of the discovery is easily disposed of. At the hearing, Plaintiffs' counsel represented that Plaintiffs response to the request, if compelled, would consist of approximately four pages. Thus, it seems that the response would be quite readily made without any burden.

   2.   *The discovery is relevant.*

The relevancy analysis is somewhat more complex. Although Plaintiffs emphasize that the funding of the litigation is irrelevant to their defamation claim, the scope of discovery is not limited to that claim but extends to Defendants' own "claim[s] and defense[s]." Rule 26(b)(1). *Fulton v. Foley* addressed the relevancy of litigation funding in the context of a claim for wrongful arrest and conviction. 17-CV-8696, 2019 WL 6609298, at *1 (N.D. Ill. Dec. 5, 2019). *Fulton* commenced its analysis with an observation consistent with my initial reaction expressed to the parties in a January 21, 2021 status conference: "As a general matter, courts across the country that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a case." *Id.* at *2. *Fulton* then helpfully compiled a collection of cases that have addressed discovery of litigation funding: *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Products Liab. Litig.*, 405 F. Supp. 3d

6

612 (D.N.J. 2019) (multidistrict litigation regarding contaminated medication); *Benitez v. Lopez*, 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *1 (E.D.N.Y. Mar. 14, 2019) (civil rights lawsuit); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711 (N.D. Ill. 2014) (misappropriation of trade secrets); *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 12-CV-9350 (VM) (KNF), 2015 WL 5730101, at *2 (S.D.N.Y. Sept. 10, 2015) (class action); *Space Data Corp. v. Google LLC*, 16-CV-03260 BLF (NC), 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) (nature of underlying dispute not disclosed in ruling); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 14-CV-03657-SI, 2019 WL 118595, at *1 (N.D. Cal. Jan. 7, 2019) (patent dispute); *Yousefi v. Delta Elec. Motors, Inc.*, C13-1632RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) (nature of underlying dispute not disclosed in ruling).

There is much that is interesting and helpful about the analysis in the cases *Fulton* cites, but none of them is on all fours with the case at bar. Unsurprisingly, none involves a dispute between a prominent U.S. Congressman and a media conglomerate engaged in a highly-publicized and contentious defamation case. Nevertheless, as *Fulton* observed, "discovery issues are generally case-specific and deserve individual consideration that require courts to balance the concerns of relevancy and proportionality." 2019 WL 6609298, at *2. Expanding on *Fulton's* analysis, *V5 Techs. v. Switch, Ltd.* reasoned as follows:

> Nonetheless, there is no bright-line prohibition on such discovery. Discovery into litigation funding is appropriate when there is a sufficient factual showing of "something untoward" occurring in the case; "[f]or example, discovery will be [o]rdered where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs or the class are sacrificed or not being protected, or conflicts of interest exist." Mere speculation by the party seeking this discovery will not suffice. Courts will compel discovery into funding sources only upon the presentation of "some objective evidence" that the discovering party's "theories of relevance are more than just theories."

7

334 F.R.D., 306, 311–12 (D. Nev. 2019) (internal citations omitted), *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*, 2:17-CV-2349-KJD-NJK, 2:17-CV-2349-KJD-NJK, 2020 WL 1042515 (D. Nev. Mar. 3, 2020). I conclude that *V5 Techs* provides a useful framework for this analysis.

In the case at bar, I find there is more than speculation or mere theory regarding the relevance of third-party funding. First, Plaintiffs have not denied that the litigation is being funded by others. Second, Plaintiffs have only incurred $500 in charges during this protracted litigation. Third, Anthony Nunes III, an individual Plaintiff and the corporate representative has "no idea" who is paying the lawyers representing Plaintiffs. These circumstances may not ultimately turn out to be "untoward," but they are certainly unusual. Moreover, these circumstances lift the basis for Defendants' inquiry above the level of mere speculation and raise legitimate subjects for inquiry not present in a more run-of-the-mill personal injury case or commercial dispute. The instant case is distinguishable from a case like *Benitez* where the defendant seeking litigation funding information could not point out how it might affect the plaintiff's credibility or be used for impeachment. 2019 WL 1578167, at *1.

As Defendants point out, a crucial and often determinative issue in a defamation case is whether a plaintiff needs to prove actual malice. (Doc. 148 at 5.) This Court has expressed doubt about the viability of a theory of defense based on the Plaintiffs' status as involuntary public figures. (Doc. 50 at 35.) Nevertheless, the unusual facts presented here make Defendants' inquiry into litigation funding a legitimate subject for discovery to enable them to make the argument on a full record.

Similarly, the Plaintiffs' relationship to Congressman Nunes is an important factor in permitting the discovery. Congressman Nunes has engaged in considerable defamation litigation with the assistance of the same attorney employed by Plaintiffs in the instant

8

action.  I offer no criticism of any party's use of the courts to vigorously protect their interests.  Nevertheless, Congressman Nunes is clearly a public figure who would be required to prove actual malice.  The requirement of actual malice was adopted by the United States Supreme Court because "[i]t would give public servants an unjustified preference over the public they serve, if critics of official conduct did not have a fair equivalent of the immunity granted to the officials themselves." *New York Times v. Sullivan*, 376 U.S. 254, 282-83 (1964.)  It may turn out that there has been no coordination between the Congressman and his family, as Plaintiffs assert.  However, Defendants inquiry into third-party funding serves the legitimate purpose of determining whether such coordination exists.  In light of the important constitutional protections that proof of actual malice provides, it is not a significant imposition to require Plaintiffs to provide discovery that would prove or dispel the notion that a third party is using the instant case to avoid a significant hurdle to a defamation claim.  Given the close family relationship, the other defamation litigation Congressman Nunes has pursued in his own name with the help of the same attorney, and the Plaintiffs' lack of knowledge of who is paying their lawyers, the inquiry is not founded on mere speculation.

These circumstances also justify discovery of third-party funding based on the other reasons advanced by Defendants.  Plaintiffs filed a Financial Interest Disclosure Statement that provides:

> Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(a) of the United States District Court for the Northern District of Iowa and to enable Judges and Magistrate Judges to evaluate possible disqualification or recusal, the undersigned counsel for Plaintiff, NuStar Farms, LLC ("NuStar"), in the above captioned action, certifies that there are no associations, firms, partnerships, corporations, and other artificial entities that either are related to NuStar as a parent, subsidiary, or otherwise, or have a direct or indirect pecuniary interest in the Plaintiffs' outcome in the case.  There are no parents, trusts, subsidiaries and/or affiliates of NuStar that have issued shares or debt securities to the public.

9

(Doc. 3 at 1.)  I will not engage in speculation about what arrangements Plaintiffs may have made to finance their lawsuit, if any.  However, Anthony Nunes III professed lack of knowledge about who is paying Plaintiffs' lawyers at least raises the possibility that an undisclosed entity related to NuStar has a pecuniary interest in the outcome of the case that would be pertinent to the Court's assessment of conflicts.

Additionally, an action must be prosecuted in the name of the "real party in interest." Fed. R. Civ. P. 17(a)(1).  *Suda v. Weiler Corp.,* noted:

> Rule 17(a) was designed to serve dual purposes. First, it serves "to protect the defendant against a subsequent action by the party actually entitled to relief, and to ensure that the judgment will have a proper res judicata effect." *Intown Properties Mgmt., Inc. v. Wheaton Van Lines*, Inc., 271 F.3d 164, 170 (4th Cir. 2001) (citation omitted). Second, it is designed to avoid the unjust forfeiture of claims. *See Sun Refining & Mktg. Co. v. Goldstein Oil Co.*, 801 F.2d 343, 345 (8th Cir. 1986). "Although the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party, there plainly should be no dismissal where substitution of the real party in interest is necessary to avoid injustice." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (quotation and citations omitted).

250 F.R.D. 437, 440 (D.N.D. 2008).  I cannot say, based on the record before me, that NuStar is not a real party in interest.  However, I also cannot rule out the possibility.  Anthony Nunes III's lack of knowledge about who is paying the attorneys prosecuting this action raises legitimate concern about not only who may be in charge of the lawsuit, but also whether Plaintiffs are the still the real parties in interest.  Defendants call the Court's attention to *Conlon v. Rosa*, which raised the concern of secret funding by stating, "He who pays the piper may not always call the tune, but he'll likely have an influence on the playlist."  2004 WL 1627337, at *2.

Again, I will refrain from speculating about the terms of any agreement between Plaintiffs and a third-party who may be funding this litigation. Nevertheless, it is more than mere speculation and far from a "fishing expedition" to make inquiries that would determine if Plaintiffs assigned all or some of their interest in their claims. Plaintiffs claim compensatory damages of $20,000,000. (Doc. 51 at 1.) It is not unreasonable to inquire whether Plaintiffs' arrangement with whomever may be funding the case includes an assignment or an agreement that the funder otherwise stands to benefit from the litigation's outcome. If Plaintiffs have made such an assignment, they may no longer be the real parties in interest. Defendants have a legitimate interest in ensuring the judgment will have a preclusive effect. *See e.g., TCF Nat. Bank v. Mkt. Intel., Inc.*, Civil No. 11-2717 (JRT/AJB), 2012 WL 3031220, at *10 (D. Minn. July 25, 2012) (allowing discovery to proceed to identify real parties in interest).

Similarly, Defendants raise a concern that "one of the witnesses" in this case may be involved in funding the litigation. (Doc. 148 at 9.) "Courts have found that indemnification agreements between co-defendants, including agreements regarding the payment of defense fees and costs, are relevant to credibility issues and a proper subject of discovery." *Kaplan*, 2015 WL 5730101, at *2. I gather from comments at the hearing that Defendants' concern is that Congressman Nunes may be a source of, or helped arrange, the funding. While this concern has yet to be proven, the basis for it goes beyond mere conjecture. Congressman Nunes and Mr. Biss have related litigation in this Court arising from the same allegedly defamatory article at issue here. Congressman Nunes alleges significant damages arising from the article, as do Plaintiffs. While these family members may be separately financing their respective suits, it is not merely a fishing expedition to inquire about the Congressman's involvement in the financing of the instant lawsuit and his stake, if any, in the outcome. It may be that he has no more than a desire for his family to succeed in their lawsuit. However, he is also a witness in

11

this case and Defendants are entitled to inquire about his interests in the lawsuit that may illuminate a possible bias.

Finally, the records are relevant to respond to a "David vs. Goliath" narrative. Certainly, Plaintiffs' Second Amended Complaint previews this narrative[3] and no one who has spent any time trying cases would be surprised by such a theme. *Contl. Cirs. LLC v. Intel Corp.* addressed discovery of litigation funding to permit a defense response to the narrative:

> [The discovery requests] concern Plaintiff's financial resources and could be used to refute any David vs. Goliath narrative at trial. Plaintiff claims that any such narrative is speculative, but Defendants are entitled to conduct discovery that may refute potential trial themes, and Defendants note that at least some evidence suggests that such a narrative will be asserted in this case.

435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020).

For the foregoing reasons, I overrule Plaintiffs' relevance objection.

### D. *Documents will be subject to in camera inspection.*

Defendants suggest I make an *in camera* inspection of the records Plaintiffs produce in response to Request No. 92 to assure the items produced are properly discoverable and relevant. (Doc. 148 at 10.) Plaintiffs resist the production, but make no reference to the need for an *in camera* inspection in their resistance. (Doc. 153.) I

---

[3] For example, Plaintiffs assert: "Plaintiffs are private individuals. They operate a private business and live with family in the small community of Sibley, Iowa. They are active in the local community in Sibley, and have always been involved in giving and fundraising for their local church." (Doc. 51 at 2 ¶ 1.) Plaintiffs describe Defendant Hearst as follows:
> Hearst's headquarters and principal place of business is in New York. Hearst publishes *Esquire* magazine. Hearst is a unit of Hearst Corporation, a global media, information and services company. Hearst's print and digital assets reach 155 million readers and site visitors each month – two-thirds of all millennials, and over 80% of Gen Z and millennial women in the country."

(*Id.* at 4 ¶ 7.)

conclude it is prudent to review the records prior to requiring production to Defendants. If, after my *in camera* review, no reason appears to reconsider my decision, I anticipate entering a supplemental order requiring their production to Defendants consistent with the protective order in place.

### III. CONCLUSION

Defendants' Motion to Compel Responses to Third-Party Litigation Funding Discovery Requests (Doc. 147) is **granted**. Plaintiffs shall deliver to my chambers by email and/or hard copy by November 2, 2021 all records in their possession responsive to Request No. 92 for an *in camera* inspection.

**IT IS SO ORDERED** this 26th day of October, 2021.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa