IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
Western Division

NUSTAR FARMS, LLC )
    *et al* )
                )
    Plaintiffs, )
                )
v. )     Case 5:20-cv-04003-CJW-MAR
                )
                )    **TRIAL BY JURY**
RYAN LIZZA )    **IS DEMANDED**
    *et al* )
                )    **Filed With Counsel's Eyes**
    Defendants. )    **Only Material Redacted**
_____ )

# <u>THIRD AMENDED COMPLAINT</u>

Plaintiffs, NuStar Farms, LLC, Anthony Nunes, Jr. and Anthony Nunes, III, by counsel, pursuant to Rule 15(a)(2), file the following Third Amended Complaint against defendants, Ryan Lizza ("Lizza") and Hearst Media Magazine, Inc., the publisher of *Esquire* magazine ("Hearst" or "*Esquire*"), jointly and severally.

Plaintiffs seek (a) compensatory and punitive damages in the sum of **$25,000,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from the date of the commencement of this action until the date of Judgment pursuant to Iowa Code § 668.13, and (c) costs incurred – arising out of the Defendants' defamation and defamation by implication.

In support of their claims, Plaintiffs state the following facts:

1

## I.  **INTRODUCTION**

1.      Plaintiffs are private individuals.  They operate a private business and live with family in the small farming community of Sibley, Iowa.  They are active in the local community in Sibley, and have always been involved in giving and fundraising for their local church.

2.      On September 30, 2018, Defendants Lizza and Hearst knowingly and recklessly embroiled Plaintiffs in a wholly contrived controversy.  The Defendants manufactured a false narrative out of whole cloth.  They knowingly fabricated and falsified facts.  They falsely attributed statements to sources that the sources never made.  They destroyed evidence to cover-up and hide knowledge of their wrongdoing.  Directly and by implication, Defendants accused Plaintiffs of criminal conduct, conspiracy, deception, deceit, lack of integrity, and dishonest and shoddy business practices.  The Defendants published false statements about Plaintiffs (described below) in an online article and in print, and targeted Plaintiffs excessively via a coordinated social media and main stream media campaign.  The Defendants deliberately and recklessly conveyed false messages to sensationalize the news and to create a political bombshell ahead of the 2018 Congressional Election.   Lizza and Hearst's false and defamatory statements were intentionally publicized and foreseeably republished millions of times within the year preceding the filing of this action.  On November 20, 2019, after Defendants knew that the Plaintiffs denied knowledge of undocumented labor on the farm or participation in any conspiracy to hide it, Lizza retweeted the false and defamatory statements.  Lizza retweeted the false and defamatory statements in November 2019 after Devin Nunes filed

a lawsuit that denied the article's central implication of a conspiracy. Defendants engaged in the purposeful avoidance of the truth.

3.     Plaintiffs received threatening phone calls at their business and home from belligerent callers who read Defendants' article. One caller, who identified herself as "Carrie", stated "Hey … I just found out that you guys are employing illegal immigrants. How's that for a republican family. Guess what. I'm reporting you to ICE. You guys are bull----! Hypocrites. You disgust me … You're engaging in criminal activity and I'm going to report this until they do something." Plaintiffs and their family continue to receive death threats caused by Defendants' publications and republications. Defendants' defamation severely impugned Plaintiffs' business and integrity, injured their reputations, and jeopardized Plaintiffs' safety and the safety of their families.

4.     In this case, Plaintiffs seek monetary damages for the loss and damage to their business, insult, pain, embarrassment, humiliation, mental suffering, anguish, and injury to their good names and professional reputations in Iowa caused by the Defendants' false and defamatory statements.

## II.  PARTIES

5.     Plaintiff, NuStar Farms, LLC ("NuStar"), operates a dairy farm in Sibley, Iowa. Plaintiffs Anthony Nunes, Jr. ("Anthony Jr.") and Anthony Nunes III ("Anthony III") (collectively "the Nuneses") manage NuStar. The business of NuStar is managed professionally. NuStar documents all labor and employment decisions. Those records, including documents establishing both employment authorization and identity as well as Forms 1-9 – Employment Eligibility Verifications, are kept and maintained by NuStar in

the ordinary course of its business in accordance with Federal law.  Devin Nunes ("Devin"), a California Congressman, is Anthony, Jr.'s son and Anthony III's brother.

6.      The Nunes family has long owned and managed a dairy farm located in Tulare, California.  The farm in California is closely associated with Devin's political profile.[1]  In 2006, Anthony Jr., Anthony Jr.'s wife Toni Dian ("Dian"), Anthony III and his family moved to Iowa, formed NuStar, and started a new dairy farm.  Devin has never had any ownership or financial interest whatsoever in NuStar or any involvement of any kind in its operations, including, without limitation, any of NuStar's labor and employment, hiring or business/immigration compliance practices.

7.      Defendant, Lizza, was a senior correspondent for Hearst.  He now works for Politico.  Acting in a managerial capacity within the scope of his employment, Lizza wrote the article at issue in this action for Hearst for publication in *Esquire* magazine. Lizza is not an "opinion" writer.  He is a political news correspondent and self-acclaimed "political analyst" for Cable News Network, Inc. ("CNN").  The article at issue in this case did not appear in any "op-ed" column.

8.      Defendant, Hearst Magazine Media, Inc. ("Hearst"), is a Delaware corporation.  Hearst's headquarters and principal place of business is in New York. Hearst publishes *Esquire* magazine.  Hearst is a unit of Hearst Corporation, a global

---

[1]      The Nunes family dairy farm of political lore – the farm that has been central to Devin's identity and a feature of every major political profile written about him – is located in Tulare, California.  It has always been in Tulare, California.  It has never moved.  The family farm was owned by Anthony Jr.'s parents.  After Anthony Jr.'s father died, Devin started working with his uncle Gerald Nunes ("Gerald"), managing the family farm, as well as working on his own farmland.  The Nunes family never sold the family farm.  As of September 30, 2018, Gerald continued to manage the Nunes family farm in California, a fact that was well-known to the Defendants when they published the Article at issue.

4

media, information and services company.  Hearst's print and digital assets reach 155 million readers and site visitors each month – two-thirds of all millennials, and over 80% of Gen Z and millennial women in the country.  *Esquire* magazine has a total print circulation of over 759,922.  More than 97% of the total circulation is subscriptions. [http://www.esquiremediakit.com/r5/home.asp].  Hearst operates multiple active websites that target Iowans.  Upon information and belief, Hearst has hundreds of thousands of print and digital subscribers, followers and viewers who live and work in Iowa, and has sold millions of copies of *Esquire* to Iowans.  Hearst encouraged, authorized and ratified publication of the article at issue in this action, and actively participated in its publication and multiple republications online, in print, and via social media.

9.     The article at issue in this action was the product of a conspiracy between Lizza and one or more third-parties to defame Plaintiffs and Devin.  The conspiracy began in 2017 and continued through November 2019.  Between March 24, 2017 and April 18, 2017, while employed by the *New Yorker*, Lizza wrote five (5) hit pieces about Devin.  In June 2018, after being terminated by the *New Yorker*, Lizza became a "senior correspondent" at Hearst.  Lizza did not ████████████ to Hearst.  Hearst does not know where Lizza got ████████████████ in the article.  In truth, the storyline – that Devin conspired with Plaintiffs to conceal the fact NuStar knowingly employed illegal workers in violation of Federal law – came from one or more political operatives and/or opposition research firms.  In telephone calls and private messages with these operatives exchanged in 2018, Lizza agreed to write the scandalous story about conspiracy and immigration law violations to defame Plaintiffs and Devin.

### III. JURISDICTION AND VENUE

10.     The United States District Court for the Northern District of Iowa has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11.     The Defendants are subject to specific personal jurisdiction in Iowa. They transact substantial business in Iowa and committed multiple acts of defamation in whole or part in Iowa. They have minimum contacts with Iowa such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution. Defendants purposefully availed themselves of the privilege of doing business in Iowa. Defendants' defamation was purposefully directed at Iowa. Plaintiffs' claims arise directly from and specifically relate to Defendants' publication of false and defamatory statements in Iowa. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

12.     Venue is proper in the Western Division of the United States District Court for the Northern District of Iowa pursuant to Title 28 U.S.C. §§ 1391(a) and 1391(b).

### IV. STATEMENT OF THE FACTS

**A.     *Knowledge of Falsity***

13.     In late August 2018, Lizza traveled to Sibley, Iowa, to find sources to support the fake narrative he had been provided. He found none.

14.     He interviewed a Hispanic woman named ███████████. Lizza ███ the interview. ███████ told Lizza that ████████████ – that is, to a



████████ in Sibley. Lizza avoided asking ██████ ████████████████. If he had asked, Lizza would have discovered that ████████████████████. This was several _years_ before Anthony Nunes, Jr. purchased the dairy farm in 2007. The ████████ reveals that Lizza asked ████████████████████ ████████" ██████ clearly stated to Lizza, "████████████████████ ██". ████████ never told Lizza that NuStar was aware of the immigration status of any workers that ██████ sent. Indeed, ██████ has never met and never spoken with Anthony Nunes, Jr., Anthony Nunes, III, or anyone else from NuStar Farms.

15.    Lizza also interviewed an anonymous source identified only as "███ ██████". Lizza ██████ the telephone interview. ████████ told Lizza that ████████ ████████████████████████. ████████ did not claim ██████ ████████. Rather, the ████████ reveals that in response to Lizza's question, "█ ████████████████████████████████", ████████ said "███". Lizza did nothing to corroborate whether ████████ was authorized to work in the United States. In truth, ████████ was ████████████. ████████ told Lizza that ██ ████████████████████████████████.

16.    Other than ██████ and "████████", Lizza never spoke with anyone in connection with his reporting who had any knowledge of the employment and hiring practices at NuStar.

17.    While he was in Sibley, Iowa, Lizza took notes and communicated with sources via text message and email. Sometime prior to the filing of this action, Lizza destroyed his notes and the original texts and emails. Hearst fact-checker, Kevin McDonnell, also discarded transcripts of the audiotapes of Lizza's interviews.

7

**B**.      *Publication and Republication*

18.      On September 30, 2018, Hearst published in its *Esquire* magazine an
article written by Lizza about Plaintiffs and Devin ("the Article").  The online version of
the Article was headlined "**Devin Nunes's Family Farm is Hiding a Politically
Explosive Secret**".  It was (and still is) accessed by clicking the following hyperlink:
https://www.esquire.com/news-politics/a23471864/devin-nunes-family-farm-iowa-
california/.  The print version was entitled "**Milking the System**" and the text under the
title, in part, asks "So why did [Devin Nunes's] parents and brother cover their tracks
after quietly moving the farm to Iowa?  Are they hiding something politically explosive?"

19.      Lizza republished the Article to his 230,000+ followers on Twitter:



20.     Lizza's girlfriend is Olivia Nuzzi ("Nuzzi").  Nuzzi is a high-profile

Washington, D.C. correspondent for *New York Magazine*.  Like Lizza, Nuzzi has a

massive following on Twitter.  Prior to publication of the Article, Lizza and Nuzzi

discussed and coordinated ways to increase the breadth of the publication.  Nuzzi agreed

to tweet out the Article to her 200,000 followers.  On September 30, 2018, shortly after

Lizza tweeted, Nuzzi published the following tweet:



21.     The Defendants intentionally timed the original publication of the Article to occur within close proximity to the November 6, 2018 Congressional Election.  It was the Defendants' intent to hurt Devin politically with false statements of fact and implication, and impair his voter bases (both agricultural and Republican) ahead of the Election.  The false statements and implication in the Article (a) that NuStar knowingly received, relied on and employed undocumented labor and (b) that Plaintiffs conspired with Devin and Rep. Steve King to hide the fact that NuStar knowingly employed illegal labor were expressly intended to mislead conservative Republicans into believing that Devin was a "hypocrite" whose family knowingly employed illegal immigrants.

22.     The Defendants intentionally and/or negligently republished the Article multiple times after September 30, 2018 without regard to Plaintiffs' rights and interests. Hearst republished the Article to its 400,000+ Twitter followers on October 1, 2018:



Hearst's editor-in-chief, Jay Fielden, tweeted out the Article:



23.    On December 28, 2018, Lizza again republished the Article. He repeated that the "Nunes family dairy, in Iowa, has for years relied on undocumented labor":



**Ryan Lizza** ✔
@RyanLizza

○○○

Replying to @RyanLizza

This is an unusual tweet for 2 reasons: 1. Until the Trump era Rep. Nunes had not been a demagogue about undocumented immigrants and crime. 2. The Nunes family dairy, in Iowa, has for years relied on undocumented labor, as reported here



Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret

🔗 esquire.com

9:23 AM · Dec 28, 2018 · Twitter for iPhone

24.     In 2019, each time a major news story broke concerning Devin, Defendants republished the Article.  For instance, on March 22, 2019, Special Counsel Robert Mueller submitted his confidential report entitled "Report on the Investigation into Russian Interference in the 2016 Presidential Election" (the "Mueller Report").   The Mueller Report vindicated Devin's long-standing insistence that there was no evidence that Trump associates colluded with Russia to steal the 2016 U.S. Presidential Election. Within days of the publication of the Mueller Report, Hearst retaliated against Plaintiffs and Devin and republished the Article:



25.     During the impeachment hearings before the House Intelligence Committee in November 2019, Devin led the Republican criticism of House Democrats for their handling of the impeachment inquiry and other investigations into President Trump. The Defendants seized the opportunity to again republish the Article:



By November 20, 2019, Defendants knew that *both* Plaintiffs *and* Devin had denied that NuStar knowingly employed undocumented labor and further expressly denied that there

was any conspiracy to hide it.  On November 14, 2019, Plaintiffs delivered notice and demand for retraction to Hearst that put Hearst on notice of the false and defamatory statements in the Article.  The Defendants disregarded Plaintiffs' notice.  The November 2019 tweet was published with actual malice and reckless disregard for truth and consequences to Plaintiffs.

26.     Within the year preceding the filing of this action, Defendants' combined 660,000+ Twitter followers and other third-parties republished the Article millions of times.

C.      *__The False Statements And Why They Are False__*

27.     The Article makes the following express statements of fact:

a.      "**There was no doubt about why I was being followed. According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor.  One source, who was deeply connected in the local Hispanic community, had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs … asserting that the farm was aware of their status … A second source, who claimed to be an undocumented immigrant, also claimed to have worked at NuStar for several years, only recently leaving the dairy … This source was nervous to talk to me and did not want to speculate about the immigration status of fellow employees**".

b.      These statements are false because (a) contrary to Defendants' central allegation, neither of the ▇▇▇▇▇ had firsthand knowledge that NuStar relied on undocumented labor, (b) the ▇▇▇▇▇▇▇ never "personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs" – indeed, ▇▇▇▇▇

15

██████████, years before the Nuneses even bought it, (c) the ██████████ did not assert that "the farm was aware of their status" – in fact, ██ had never met or spoken with the Nuneses or anyone at NuStar, (d) the ██████████ did not "claim[] to be an undocumented immigrant", (e) the ██████████ was ██████████ by NuStar, (f) the ██████████ did not "recently" leave the dairy, (g) far from not wanting to "speculate", the ██████████ unequivocally stated that ██████████, (h) NuStar did not hire undocumented labor as its business records attest; (i) NuStar was not "aware of their status" and did not violate Federal law (Title 8 U.S.C. § 1324a) by knowingly hiring an unauthorized alien.  NuStar fully documented all hiring decisions in accordance with Federal law.  Indeed,  there were never any reported cases of NuStar's use of undocumented or unauthorized workers.

## D.  *Defamation by Implication*

28.    The Article juxtaposes a series of facts so as to imply a defamatory connection between them.  The Article also creates a defamatory implication by omitting facts, such that Defendants may be held responsible for the defamatory implication.

29.    The Article is premised on false suggestions, impressions and implications arising from a series of factual statements.  The Article maintains that Plaintiffs and Devin hid the fact that the family farm is now in Iowa.  The Article states that Devin (1) "has a secret" and (2) that "he and his parents seemed to have concealed basic facts about the family's move to Iowa."  The Article describes how his parents, "Anthony Jr. and Toni Dian … used their cash from the sale to buy a dairy eighteen hundred miles away in Sibley," and declares it "strange … that the family has apparently tried to conceal the

move from the public—for more than a decade."  The Article ponders: "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?"  The Article later asserts that the farm uses undocumented labor: "According to two sources with firsthand knowledge, NuStar did indeed rely, at least in part, on undocumented labor.  One source … had personally sent undocumented workers to Anthony Nunes Jr.'s farm for jobs" and "assert[ed] that the farm was aware of their status."  Two statements insinuate that the farm's use of undocumented labor is the reason that Plaintiffs and Devin were hiding the family's move and their operation of an Iowa dairy farm.  Lizza writes that "[o]ther dairy farmers in the area helped me understand why the Nunes family might be so secretive about the farm: Midwestern dairies tend to run on undocumented labor."  The Article also includes a quote from Lizza's interview with a local newspaper reporter, who said that the farm's workers "'are immigrants and Devin is a very strong supporter of Mr. Trump, and Mr. Trump wants to shut down all of the immigration, and here is his family benefiting from immigrant labor,' documented or not."

30.    The defamatory gist and implication of the Article is that Plaintiffs conspired or colluded with Devin and with others to hide or cover-up that NuStar employs undocumented labor.

31.    Based on the Article's presentation of facts, an objectively reasonable reader could draw the false implication from the Article as a whole.

32.    The implication is false because Devin was not involved in NuStar's operations, had no knowledge of who the dairy farm hired, and, therefore, did not, indeed could not have conspired with Plaintiffs.  Further, Plaintiffs never conspired, colluded,

combined, associated, plotted, schemed or agreed with Representative Steve King to do anything; in fact, Anthony Nunes, Jr. only met Rep. King at the dairy briefly one time (long ago) and the last time he spoke with Rep. King was approximately a decade before Defendants published the Article. There was no talk about NuStar's labor and, thus, no conspiracy.[2] The defamatory implication is verifiable. The Defendants' false facts can be confirmed and refuted. A conspiracy is an agreement that requires knowledge—here, knowledge that the farm employed undocumented labor and a knowing agreement to cover up that politically embarrassing fact. Whether Devin or Rep. King knew about NuStar's hiring practices, including the potential use of undocumented labor, and whether they agreed with Plaintiffs to keep that information secret, are issues of verifiable fact.

33. The Defendants intended or endorsed the defamatory implication that Plaintiffs conspired with Devin to cover up NuStar's use of undocumented labor. The Article's click-bait headline that "Devin Nunes's family farm" is hiding a "politically explosive secret," its discussion of Plaintiffs and Devin's efforts to conceal the farm's move to Iowa, its claim that NuStar employs undocumented labor, and the manner in which the Article presents the discussion of NuStar's use of undocumented labor, including the use of a menacing cartoon and stock photographs of ICE agents, permits a plausible inference that Lizza and Hearst intended or endorsed the implication.

---

[2]     The Nuneses have never communicated with Rep. King by telephone or email. Under the circumstances, it is impossible for the Nuneses to have conspired with Rep. King.

**E.** **_Readers Understood The Article to Convey a Defamatory Meaning_**

34. Viewing the defamatory statements in the Article as a whole and in the context of the surrounding circumstances, third persons immediately understood that Defendants were accusing Plaintiffs of knowingly employing "undocumented" and "illegal" labor (unethical and illegal business practices) and conspiring with Devin to hide this "politically explosive secret". A few examples suffice:

https://twitter.com/RVAwonk/status/1046598123005636610
("Devin Nunes' family is quietly running a dairy farm reliant on undocumented immigrant labor -- and working very hard to keep it a secret");

https://twitter.com/dregg_r/status/1046609910098608128
("I'd like to report an ongoing criminal conspiracy to unlawfully employ aliens in violation of US Code-Title 8-Ch12-SubchII-Part VIII-§1324a @ICEgov by Nustar farms and its proprietors the Nunes family from Sibley Iowa");

https://twitter.com/thedailybeast/status/1046749328126152710
("Rep. Devin Nunes' family dairy farm secretly relocated from central California to Iowa more than a decade ago, where it's reported to rely heavily on undocumented immigrant labor");

https://twitter.com/showusyourwork/status/1046835542170701833
("Today's required reading is about Devin Nunes' family farm and the shadowy conspiracy surrounding it");

https://twitter.com/MatkovichTony/status/1108543305791475712
("Devin... have you talked to your family @NuStar Farms about hiring undocumented labor? Has ICE visited your farm up in Sibley, Iowa to make sure it is on the up and up?");

https://twitter.com/somebadideas/status/1194651741012267009
("This, but more egregiously, Nunes' family are probably hiding using undocumented labor on their farm while the dipshit backs the most racist immigration policies in decades");

https://twitter.com/ourBooksLuvUs/status/1198655097892270080
("Devin Nunes owns a large dairy relocated from California to Iowa, the farm uses immigrant labor and its operation is kept super-secret");

https://twitter.com/2cannan1/status/1229495018081132544
("You mean like breaking the law like Devin Nunes' family does?");

https://twitter.com/hoopsnut/status/1046576975094181888
("Really a heckuva read[.] Nunes and family hide their Iowa farm because his
and King's kissing up to DT and anti-immigration policy runs against Iowa farm
economy built on undocumented labor");

https://twitter.com/shtooky/status/1159541315673239553
("What about Devin Nunes family farm in IOWA which employs ALL
undocumented workers. Still no raid there? Why are some powerful families
exempt from these laws?");

https://twitter.com/MsToucanSami/status/1177420842910830593
("Nunes part of a thoroughly corrupt family unit. Read this appalling Esquire
story about his family, moving their farm to Iowa to hide hiring undocumented
workers while Nunes supports Trump's immigration policy. Threatening
reporters, too").

**F.** _**The False And Defamatory Statements Are Of Or Concerning Plaintiffs**_

35.     The Article expressly identifies Plaintiffs by name and contains matters of

description or other references, including extraneous facts and circumstances, which

clearly show that Plaintiffs were intended to be the object of the Defendants' libel, and

that it was so understood by others.

36.     Plaintiffs' names and references to Plaintiffs are all over the Article. The

publication refers explicitly to Plaintiffs and identifies them as "[Devin Nunes'] parents

and brother", "Anthony Jr.", "Anthony III", the "Nuneses", the "congressman's family",

the "Nunes family", "his family", and "NuStar". The reference in the opening sentence

to "Devin Nunes's family farm" is to NuStar. The millions of recipients of the Article

understood that it was referring to Plaintiffs explicitly in a defamatory way.

**G.** _**Negligent Breach Of The Standard Of Care**_

37.     In the course of investigating, reporting and publishing the Article, the

Defendants intentionally breached their own code of ethics and standard of care and

failed to exercise that degree of care which ordinarily prudent persons in the same profession exercise under similar conditions.

38. Defendants' code of ethics, in pertinent part, represents that "[w]e … dedicate ourselves to the principles of truthfulness, fairness and independence. We understand that the free flow of accurate information is vital to our system of government and the foundations of our economy … The deliberate introduction of false information into our newspapers will not be tolerated". [https://members.newsleaders.org/resources-ethics-hearst; *see also* https://www.spj.org/ethicscode.asp ("Members of the Society of Professional Journalists believe that public enlightenment is the forerunner of justice and the foundation of democracy. Ethical journalism strives to ensure the free exchange of information that is accurate, fair and thorough. An ethical journalist acts with integrity. The Society declares these four principles as the foundation of ethical journalism and encourages their use in its practice by all people in all media")]. The Article was neither truthful, accurate nor fair in its portrayal of Plaintiffs. Defendants came to Iowa with a preconceived storyline that Plaintiffs violated federal law and conspired with two Republican Congressman to hide the crimes. Prior to publication, Lizza attempted to deceive Plaintiffs and Devin into making statements by falsely claiming that the story was about "immigration and the dairy industry". Defendants fabricated facts; falsely attributed statements to sources; and violated the practice in the trade that anonymous calls are customarily relied upon for direction, but not for information. Prior to accusing Plaintiffs of crimes, including conspiracy, Defendants failed to properly investigate and determine whether NuStar had ever knowingly received unauthorized workers from anyone "aware of their status" and/or used undocumented labor without fully complying

with Federal law. Defendants maximized the harm to Plaintiffs by stating and/or implying that NuStar had, in fact, knowingly employed undocumented or unauthorized workers, that Plaintiffs conspired with Devin and Rep. King to hide it, and then by excessively republishing the false statements even after they were on notice that the statements were false.

39.     Rather than report the truth, Defendants chose to accept and publish a preconceived story created by political operatives, including Fusion GPS, whose goal it was to smear Devin ahead of the 2018 Congressional Election.

**H.**     ***<u>Actual Malice</u>***

40.     Defendants are liable for punitive damages because they acted with actual malice and reckless disregard for the truth:



a.     The ███████ demonstrate that Defendants published statements in the Article that they knew to be false. For instance, ██████ did not assert that "the farm was aware of their status". In fact, ██████ told Lizza that ███████████ ████████████████████████████████████████████████. ███████ did not claim to be an █████████████████. The Defendants fabricated facts and falsely attributed them to sources who had no firsthand knowledge and never professed to have any firsthand knowledge. The Defendants concealed material facts and knowingly misled readers. They published statements that were a product of their imagination. They made up facts out of whole cloth in order to impute intentional wrongdoing to Plaintiffs and Devin. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his

imagination"); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 153 (1967) (deliberate falsification constitutes actual malice); *Watson v. NY Doe 1*, 2020 WL 635843, at * 7 (S.D.N.Y. 2020) ("This is a case where the alleged false statements were allegedly based on the direct knowledge of the alleged defamer that the plaintiff alleges is false. A fair inference from the Complaint is that NY Doe 2 knew that the plaintiff did not rape her but falsely made that accusation. Those circumstances are sufficient to infer actual or constitutional malice on the part of NY Doe 2 because she is alleged to have firsthand knowledge of whether the plaintiff did or did not rape her."); *Miller v. Watkins*, 2021 WL 924843, at * 18 (Tex App. 2021) ("If Miller indeed fabricated her allegations, then she by definition entertained serious doubts about them and had a high degree of awareness of the statements' falsity").

        b.     "Republication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard." Restatement (Second) of Torts § 580A cmt. d (Am. L. Inst. 1977). Here, Lizza tweeted the Article in November 2019 after Plaintiffs sent Hearst notice and a demand to retract and after Devin filed a lawsuit and denied the Article's defamatory implication. In November 2019, Lizza engaged in purposeful avoidance of the truth, which constitutes actual malice.

        c.     The Defendants harbored an institutional hostility, hatred, extreme bias, spite and ill-will towards Devin. They published false statements for the sole purpose of inflicting harm on Devin and his family ahead of the 2018 Congressional Election. As evidenced by the words Defendants chose and the timing and tenor of the Article, Defendants intended to inflict harm through knowing or reckless falsehoods. *See*

*Don King Productions, Inc. v. Walt Disney Co.*, 40 So.3d 40, 45 (Fla. 4th DCA 2010) ("[a]n intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood.") (citing *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964)); *Cochran v. Indianapolis Newspapers, Inc.*, 175 Ind.App. 548, 372 N.E.2d 1211, 1221 (1978) (evidence of ill will creates jury question on actual malice where "[t]here are no facts or statements of record which even remotely support" the defamatory implication at issue). The Defendants' motive in publishing the false and defamatory statements supports an inference of actual malice. *Farmland Partners Inc. v. Fortunae*, 2021 WL 1978739, at * 2 (D. Colo. 2021); *Tomblin v. WCHS-TV8*, 2011 WL 1789770, at * 5 (4th Cir. 2011) (unpublished) ("on the question of whether WCHS-TV8 deliberately or recklessly conveyed a false message to sensationalize the news and thus to provide factual support for a finding of malice, there are disputed facts").

    d. The Defendants intentionally abandoned all journalistic standards and integrity in publishing and republishing the Statements. They did not seek the truth or report it. They betrayed the truth for the sake of their institutional bias against Plaintiff and ratings. Rather than minimize harm, Defendants set out to inflict maximum pain and suffering on Plaintiffs in order to harm Plaintiffs' reputation. The Defendants published the false statements in the broadest manner possible for the sole purpose of injuring Plaintiffs' reputation. The Defendants' intentional abandonment of their journalistic integrity supports an inference of actual malice.

e.      The Defendants had no factual basis for implying that Plaintiffs conspired with Devin and Rep. King to conceal crimes perpetrated by NuStar.  The Defendants did no investigation into the matter and any investigation they conducted was grossly inadequate.  They willfully chose not to learn the truth.  Their failure to verify the defamatory implication of the statements meant that many of the asserted "facts" were merely fabrications.  As an experienced reporter, Lizza was keenly aware of the need to corroborate the serious charges of conspiracy levelled against Iowa dairy farmers and two sitting Congressmen, especially regarding the emotionally and politically super-charged subject of immigration and the probability of harm.  The words chosen by Defendants had an instantaneous opprobrious connotation.  The use of terms with obvious pejorative connotations without underlying factual support is evidence of Defendants' reckless disregard. *Burns v. McGraw-Hill Broadcasting Co., Inc.*, 659 P.2d 1351, 1361-1362 (Colo. 1983) (citing *Kuhn v. Tribune-Republican Publishing Co.*, 637 P.2d 315, 319 (Colo. 1981)); *Hertz v. Luzenac America, Inc.*, 2006 WL 1028865, at * 25 (D. Colo. 2006) ("The record is devoid of evidence that Luzenac, before accusing Mr. Hertz of misappropriation, undertook to ascertain whether it had any secret information capable of misappropriation … The jury must determine whether Luzenac's ignorance was willful; whether Luzenac's decision-makers entertained serious doubts as to the secrecy of the information is a fact question.").

I.     ***Plaintiffs Suffered Actual Injury And Damages***

41.     Prior to publication of the Article, Plaintiffs enjoyed an untarnished reputation.

42.     The Defendants chose to publish and excessively republish the Article to the broadest possible audience in print, online and via social media.   The nature and character of the Defendants' insults had an immediate effect on those who read the Article.   Plaintiffs were universally condemned, ridiculed and exposed to contempt.   The Article directly impacted Plaintiffs' business, reputation and their standing in the community and in business.

43.     Publication and republication of the Article by the Defendants inflicted actual injury on Plaintiffs, including impairment of their personal and professional reputations and standing in the community, humiliation, embarrassment, mental anguish and suffering.

44.     Prior to filing this action, Plaintiffs gave notice to the Defendants and made a demand for retraction of the defamatory statements at issue.   The Defendants failed and/or refuse to retract or withdraw the defamatory statements.

## COUNT I – <u>DEFAMATION</u>

45.     Plaintiffs restate paragraphs 1 through 44 of this Amended Complaint, and incorporate them herein by reference.

46.     Defendants made and published to third-parties, including, but not limited to, advertisers, subscribers, readers, viewers and followers of *Esquire*, to print media, mainstream media and to followers on social media, false factual statements of and concerning Plaintiffs.   These statements are detailed verbatim above.   Defendants' false and defamatory statements were published and republished within the past year without privilege, justification or legal excuse of any kind.   The false and defamatory statements

were not published in good faith or through misinformation or mistake. Defendants published the words intentionally to harm Plaintiffs' business and reputation.

47. By publishing the Article in print magazines distributed in Iowa and throughout the United States, on the Internet and via social media such as Twitter, Defendants knew or should have known that their false and defamatory statements about Plaintiffs would be republished over and over by third-parties millions of times to Plaintiffs' detriment and injury. By tweeting the Article themselves and by encouraging others, such as Olivia Nuzzi, to tweet, retweet and post the Article to Twitter, Defendants created an unreasonable risk that the defamatory matter in the Article would be communicated by third-parties. Republication by print media, mainstream media, and via social media in 2019, 2020 and 2021 was the natural, foreseeable, reasonably expected and probable consequence of Defendants' actions and was actually and/or presumptively authorized by the Defendants. Defendants are liable for the republications of the false and defamatory statements by third-parties.

48. Defendants' false statements constitute defamation. The statements accuse Plaintiffs of multiple crimes. The statements impute to Plaintiffs an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment. Defendants' statements also prejudice Plaintiffs in their profession and business as farmers.

49. Defendants' false statements caused Plaintiffs to suffer and incur actual injury and damages, including impairment of reputation.

50. Defendants directed false and defamatory statements at Plaintiffs as private individuals with the specific intent to harm Plaintiffs' reputation. Defendants

acted negligently.  They lacked reasonable grounds for any belief in the truth of their statements.

51.     As a direct result of Defendants' defamation, Plaintiffs suffered actual injury and damages, including, but not limited to, insult, public ridicule, humiliation, embarrassment, impairment, damage and injury to personal and professional reputations, out-of-pocket expenses and costs, in the sum of $20,000,000.00 or such greater amount as is determined by the Jury.

## COUNT II – <u>DEFAMATION BY IMPLICATION</u>

52.     Plaintiffs restate paragraphs 1 through 51 of this Amended Complaint, and incorporate them herein by reference.

53.     The strong defamatory gist and false implication from the Article is that Plaintiffs conspired with others (including Devin and Rep. King) to hide and conceal a "politically explosive secret" – that NuStar knowingly employs undocumented labor on its dairy farm.  The Article implies that Plaintiffs are dishonest, deceitful, unethical in their business practices, that they are hiding criminal conduct, and that they conspired with sitting members of Congress to hide crimes.

54.     Defendants carefully chose their words and purposefully misrepresented facts.  In the Article, they juxtaposed a series of facts so as to imply a defamatory connection between them.  The first fact is the direct reference to a "**politically explosive secret**".  There was no secret, however; in fact, "Devin Nunes's family farm" never moved to Iowa.  Further, Plaintiffs never moved "the farm" or any farm to Iowa, and never concealed their move in 2007.  The entire thematic foundation of the Article is knowingly false.  The next fact is the "**conspiracy**" to hide the secret.  Here, Lizza

deliberately employs a series of falsehoods – including accusations that Plaintiffs were "hiding something politically explosive", "covered their tracks", "concealed" their actions, intimidated "sources", were "so secretive", and that "Anthony Jr. was seemingly starting to panic" – to create the appearance that the Plaintiffs acted intentionally and surreptitiously in furtherance of an agreed goal. The Article then rhetorically ponders: "Why would the Nuneses, Steve King, and an obscure dairy publication all conspire to hide the fact that the congressman's family sold its farm and moved to Iowa?" The answer is supplied by Defendants' third juxtaposed fact: Defendants state that NuStar knowingly uses "**undocumented labor**".[3] In addition, Defendants also left out facts, including statements ███████ made to Lizza, in a way that intentionally conveyed a false meaning and that rendered the challenged statements in the Article non-defamatory.

55. The Defendants' statements and actions constitute defamation by implication.

56. As a direct result of Defendants' defamation by implication, Plaintiffs suffered actual injury and damages, including, but not limited to, insult, public ridicule, humiliation, embarrassment, impairment, damage and injury to personal and professional reputations, out-of-pocket expenses and costs, in the sum of $20,000,000.00 or such greater amount as is determined by the Jury.

---

[3] The Article begins by expressly declaring that NuStar is hiding a "**politically explosive**" secret. In the context of this story, the use of undocumented labor is what makes the secret "**politically explosive**".

Plaintiffs allege the foregoing based upon personal knowledge, public statements of others, and records in their possession. Plaintiffs believe that substantial additional evidentiary support, which is in the exclusive possession of Lizza, Nuzzi, Fielden, Hearst, CNN and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiffs reserve the right to amend this Complaint upon discovery of additional instances of the Defendants' wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, NuStar, Anthony, Jr. and Anthony III, respectfully request the Court to enter Judgment against Lizza and Hearst, jointly and severally, as follows:

A. Compensatory damages in the amount of $20,000,000.00 or such greater amount as is determined by the Jury;

B. Punitive damages in the amount of $5,000,000.00 or such greater amount as is determined by the Jury;

C. Prejudgment interest from January 16, 2020 until the date Judgment is entered at the maximum rate allowed by law;

D. Postjudgment interest at the maximum rate allowed by law;

E. Costs and such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED:        January 4, 2022


                        NUSTAR FARMS, LLC
                        ANTHONY NUNES, JR.
                        ANTHONY NUNES, III


                    By:    */s/ Steven S. Biss*
                        Steven S. Biss (VSB # 32972)
                        300 West Main Street, Suite 102
                        Charlottesville, Virginia 22903
                        Telephone:    (804) 501-8272
                        Facsimile:    (202) 318-4098
                        Email:        stevenbiss@earthlink.net
                        (*Admitted Pro Hac Vice*)

                        William F. McGinn #24477
                        McGINN LAW FIRM
                        20 North 16th Street
                        Council Bluffs, Iowa 51501
                        Telephone: (712) 328-1566
                        Facsimile: (712) 328-3707
                        Email: bmcginn@themcginnlawfirm.com

                        *Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2022 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.


By:  */s/ Steven S. Biss*
                    Steven S. Biss (VSB # 32972)
                    300 West Main Street, Suite 102
                    Charlottesville, Virginia 22903
                    Telephone:    (804) 501-8272
                    Facsimile:    (202) 318-4098
                    Email:         stevenbiss@earthlink.net
                    (*Admitted Pro Hac Vice*)

                    William F. McGinn #24477
                    McGINN LAW FIRM
                    20 North 16th Street
                    Council Bluffs, Iowa 51501
                    Telephone: (712) 328-1566
                    Facsimile: (712) 328-3707
                    Email: bmcginn@themcginnlawfirm.com

                    *Counsel for the Plaintiffs*