IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| **Devin G. Nunes,** | ) | Case No. 5:19-cv-04064-CJW-MAR |
| Plaintiff, | ) | |
| v. | ) | |
| **Ryan Lizza** and **Hearst Magazine Media, Inc.,** | ) | |
| Defendants. | ) | |
| | | |
| **NuStar Farms, LLC, Anthony Nunes, Jr., and Anthony Nunes, III,** | ) | Case No. 5:20-cv-04003-CJW-MAR |
| Plaintiffs, | ) | |
| v. | ) | |
| **Ryan Lizza and Hearst Magazine Media, Inc.,** | ) | |
| Defendants. | ) | |

**Defendants' Brief Regarding a Joint Trial in the *Nunes* and *NuStar* Cases**

Ryan Lizza and Hearst Magazine Media, Inc., Defendants in the above-captioned related cases of *Devin G. Nunes v. Ryan Lizza & Hearst Magazine Media, Inc.*, 5:19-cv-04064-CJW-MAR (N.D. Iowa) ("*Devin Nunes*") and *NuStar Farms, LLC, Anthony Nunes, Jr., & Anthony Nunes, III v. Ryan Lizza & Hearst Magazine Media, Inc.*, 5:20-cv-04003-CJW-MAR (N.D. Iowa) ("*NuStar*," together with *Devin Nunes*, the "*Nunes Cases*"), submit this brief, as directed by the Court, *see Devin Nunes* ECF No. 71, *NuStar* ECF No. 191, to state and support their position seeking consolidation of the *Nunes Cases* for joint trial only.

For the reasons described below, Defendants respectfully submit that the Court should

1

defer setting any trial date(s) in either of the *Nunes Cases* until it has ruled on the motions for summary judgment in *NuStar*, which Defendants anticipate filing promptly after taking the additional discovery they were granted leave to take. If the Court is nonetheless inclined to set a trial date based on what remains in the current posture of the *Nunes Cases*, it should set them for joint trial together.

## Background

The Court is very familiar with the *Nunes Cases*. Defendants will summarize only the most salient facts here.

> **A. At Present, the *Nunes Cases* Concern Identical and Nearly Identical Claims, Concern the Same Article, Are Brought Against the Same Defendants, Would Require Attendance and Testimony from the Same Witnesses Concerning the Same Factual Matters, and Would Present the Same Evidence and Legal Questions.**

The *Nunes Cases* seek recovery for defamation. Both concern the same September 2018 *Esquire* article by Ryan Lizza, entitled *Devin Nunes's Family Farm Is Hiding a Politically Explosive Secret* (the "Article"). The *Nunes Cases* are brought against the same defendants, Ryan Lizza and Hearst Magazine Media, Inc. The plaintiffs in the *Nunes Cases* are Devin Nunes and his immediate family members, represented by the same counsel. *Compare Devin Nunes* ECF No. 23, *with NuStar* ECF No. 188. Defense counsel is the same in both cases, too.

At present, both cases feature the same defamation by implication claim: That the Article purportedly implies Devin Nunes, his family, and perhaps others "conspired" to hide the fact that the NuStar Farms, LLC hired undocumented workers. *See Devin Nunes* ECF No. 23 ¶ 13; *NuStar* ECF No. 188 ¶ 53. The plaintiffs in *NuStar* have described this claim, as asserted in *NuStar*, as being "**the exact same claim**" as the one asserted in *Devin Nunes*. *NuStar* ECF No. 162, at 2 (emphasis in original). That this claim is substantively identical in both cases was one reason the Court granted the plaintiffs in *NuStar* leave to add the defamation by implication

claim. *See* ECF No. 187, at 32-35.

As a result, any trial of either of the *Nunes Cases* would feature significant testimony and documentary evidence regarding the truth, or substantial truth, of statements regarding NuStar's employment of undocumented workers, and only if false, the "conspiracy."

This is critical because the alleged purpose of this "conspiracy" is to hide the hiring of undocumented labor, making the question of whether the Nunes family farm does, in fact, rely on undocumented labor at issue in both cases.

Indeed, in *NuStar*, that is the family's claim: That the Article implies that they knowingly hired undocumented workers. *NuStar* ECF No. 188 ¶ 53. This necessarily involves the same underlying facts concerning NuStar Farms, LLC's hiring and employment practices, and the immigration documentation and status of each of its workers, as are at issue in the defamation by implication claims in both *Nunes Cases*.

Thus, trial in both *Nunes Cases* would feature substantial duplicative testimony, from the same witnesses, regarding the hiring practices of NuStar Farms, LLC; the immigration and documentation status of each NuStar worker and whether the farm does, in fact, hire undocumented workers; and all plaintiffs' awareness and knowledge of those hiring practices and the status of their workers. Any narrowing of these issues on summary judgment would likewise result in efficiencies for joint trial of both cases.

In both *Nunes Cases*, the parties would present the same evidence concerning Defendants' reporting, editing, and publication of the Article and state of mind toward its facts. *See generally Devin Nunes* ECF No. 23 (amended complaint); *NuStar* ECF No. 188 (third amended complaint). Indeed, both *Nunes Cases* concern the question of whether either or both Defendants intentionally published the allegedly defamatory implications with "actual malice"

toward their meaning and falsity, and whether the plaintiffs can prove knowledge of falsity or reckless disregard for the truth by the required evidentiary burden of clear and convincing evidence. *See Devin Nunes* ECF No. 23 ¶ 35; *NuStar* ECF No. 188 ¶ 40.

"Actual malice" is a required element of the plaintiff's claim in *Devin Nunes*. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 278-280 (1964). And, while the parties dispute whether it is an element of the plaintiffs' claim in *NuStar*, *see NuStar* ECF No. 50 at 33-36, and ECF No. 180 at 8-9, both parties agree that it is a requirement for the plaintiffs in *NuStar* to recover the punitive damages that they seek, *see NuStar* ECF No. 188 ¶ 40.

That the trials in the *Nunes Cases* would involve the same witnesses, testifying to the same matters, on the same and similar claims is not only self-evident from the overlap of claims and parties: All the plaintiffs have admitted as much in their own Rule 26(a)(1) disclosures.

The plaintiffs' initial Rule 26(a)(1) disclosures in *Devin Nunes* and *NuStar* disclosed the same 11 witnesses, purportedly who will possess facts and will be called by the plaintiffs to testify as to identical or nearly identical matters. *Compare* Jan. 25, 2022 Declaration of Nathaniel S. Boyer ("Boyer Decl."), Ex. A, *with id.*, Ex. B. The only difference between the initial disclosures is that, in *NuStar*, the plaintiffs listed unnamed "Sibley Citizens" and "Twitter Users" as witnesses, too. The plaintiffs in *NuStar* have since amended their initial disclosures to add additional witnesses (and to remove a few, too)—but the additional witnesses would, by-and-large, testify to matters at issue in both *Nunes Cases*, anyway. *Id.* ¶ 3.

**B. Both *Nunes Cases* Will Be the Subject of Motions for Summary Judgment, Which Could Affect and Narrow What if Any Aspects of Each Case Remains to Be Tried.**

The foregoing describes the current overlap in both *NuStar* and *Devin Nunes*. However, each of the *Nunes Cases* will be the subject of Defendants' motions for summary judgment. While Defendants anticipate they will prevail in full on both motions, uncertainty exists about

4
Case 5:20-cv-04003-CJW-MAR   Document 195   Filed 01/25/22   Page 4 of 12

what portions of either or both *Nunes Cases* will survive summary judgment, if any.

## Argument

### A. The Court Should Defer Setting Trial Date(s) Until It Decides Defendants' Motions for Summary Judgment in *NuStar*.

As the Court knows, Defendants were days away from moving for summary judgment in *NuStar*, when the Court of Appeals ruled in *Devin Nunes*. Defendants anticipate moving for summary judgment as soon as practicable in *NuStar*, after completing the remaining discovery the Court granted leave to take in its ruling sustaining Defendants' motion to compel discovery concerning the 2018 Audit. *See NuStar* ECF No. 177.

Defendants anticipate the *NuStar* case will terminate at the summary judgment stage, mooting the question of whether it should be tried together with *Devin Nunes*. Until it is known if some portion of *NuStar* will survive Defendants' motion for summary judgment, then the question of whether joint trial is appropriate does not appear ripe for decision. If that happens, the Court will then have more information—namely, knowing what remains to be tried in *NuStar*, together with legal rulings that could affect the likely ultimate outcome of *Devin Nunes*—to inform its decision as to whether to set the *Nunes Cases* for a joint trial.

Defendants acknowledge that deferring the setting of a trial date is not the ordinary practice in this District. But little about these cases is ordinary. As the Court has recognized, *NuStar* ECF No. 180 at 7, these are high-profile defamation suits against a large media company and a prominent national journalist, brought by a (now-former) member of the United States Congress who held leadership positions in his party and his chamber of Congress, and his family members. The *Nunes Cases* present important legal issues affecting free speech and press rights. The motions for summary judgment will present arguments that require legal rulings that may have effects across both cases. In this unusual setting, a tailored approach to case management


5

Case 5:20-cv-04003-CJW-MAR     Document 195     Filed 01/25/22     Page 5 of 12

remains warranted.

### B. The *Nunes Cases* Should Be Tried Jointly if There Is to Be Trial in Both Cases.

If the Court is inclined to set the *Nunes Cases* for trial now, it should set them for a joint trial. The "trial ready date" in *Devin Nunes* would be on or after March 2023, if the Court adopts the parties' jointly proposed case management plan and discovery schedule the parties are filing today. If *NuStar* goes to trial, that should occur jointly with *Devin Nunes*, at that time.

#### 1. The *Nunes Cases* present common questions of law and fact.

Where actions "involve a common question of law or fact, the court may [] join for hearing or trial any or all matters at issue in the actions." Fed. R. Civ. P. 42(a)(1); *see also E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 550-551 (8th Cir. 1998). Where common evidence and witnesses are relevant to two plaintiffs' separate claims against the same defendant, consolidation for trial is appropriate. *E.E.O.C.*, 135 F.3d at 550-551 (finding no clear error in district court's consolidation and joint trial of two employee's claims [retaliatory discharge and racial discrimination] against same employer defendant); *see also Sarah Courtney Ctr. v. Chiafos*, No. 19-CV-0023 CJW, 2019 WL 2358425, at *3 (N.D. Iowa June 4, 2019) (ordering cases to be consolidated where they involved "the same set of facts and involve the same parties"); *Linton v. Angie's Inc.*, 288 F.R.D. 432, 438-39 (D.S.D. 2012) (consolidating two plaintiffs' employment discrimination claims, where claims against employer and manager were similar, witnesses and evidence were largely the same, and district court and counsel could assure through jury instructions that no jury confusion would arise).

Here, indisputably, the *Nunes Cases* present "common question of law" *and* "common questions of . . . fact." Fed. R. Civ. P. 42(a)(1). As explained above, the *Nunes Cases* concern "the exact same" cause of action for defamation by implication, concerning the same Article, made against the same Defendants. The other claims are related, and both cases concern the

6
Case 5:20-cv-04003-CJW-MAR   Document 195   Filed 01/25/22   Page 6 of 12

same evidence regarding (i) the operation and hiring practices of NuStar Farms, LLC and the immigration and documentation statues of each of its employees; (ii) what Devin Nunes, his family, and others knew about those hiring practices, and their communications regarding them; and (iii) the reporting for and editing of the Article. The *Nunes Cases* involve the same witnesses, who would testify to the same and similar matters. And the *Nunes Cases* present other identical legal and factual questions, including (i) the truth and substantial truth of the Article's reporting regarding the farm's hiring practices, the immigration and documentation statues of each of its employees, and the others' awareness of these matters, and (ii) Hearst's fault in publishing the Article (or Lizza's fault in tweeting a hyperlink to the Article), including whether Defendants harbored actual malice as to the truth of the Article at the time of the relevant "publication."

        2.  <u>Other factors weigh in favor of a joint trial.</u>

Once the "threshold" showing of a common question of law or fact is established, courts consider other factors, such as the risks of prejudice and the burdens of separate trials, to determine whether to join cases for trial. *See Blood v. Givaudan Flavors Corp.*, No. C04-0085-EJM, 2009 WL 982022, at *7-8 (N.D. Iowa Apr. 10, 2009). Here, the interests of efficiency, minimizing burdens, and the lack of prejudice to the plaintiffs all militate in favor of a joint trial.

***On efficiency and burdens***: This is not a situation involving a "large amount of individualized evidence, [where] a single trial would, essentially, be comprised of [multiple] sub-trials, in which each plaintiff would seek to prove her case." *Cf. Bertroche v. Mercy Physician Assocs., Inc.*, No. 18-CV-59-CJW-KEM, 2019 WL 4307127, at *29 (N.D. Iowa Sept. 11, 2019). Nor would a "combined trial . . . literally involve trying two separate cases to the same jury at the same time." *Peters v. Woodbury County, Iowa*, 291 F.R.D. 316, 319-20 (N.D. Iowa 2013)

(declining to consolidate because claims involve separate incidents that occurred nine months apart).

To the contrary, and as described above, most of the evidence would be generally applicable to both cases. It would be highly inefficient to try these overlapping cases with overlapping facts and witnesses twice. And separate trials would impose an undue burden on the parties, the Court, and the witnesses. *Rasch v. Tyson Fresh Meats, Inc.*, No. C16-3006-LTS, 2017 WL 2219985, at *3 (N.D. Iowa May 19, 2017) ("It is in the interest of both the parties' and the court's time to consolidate these cases" where cases involved similar claims and evidence).

***On prejudice to the plaintiffs***: Defendants anticipate two arguments the plaintiffs may make to avoid consolidation. Neither have merit.

First, the plaintiffs may argue that (i) the plaintiffs in *NuStar* are not limited purpose public figures, involuntary or otherwise, and therefore, (ii) unlike the plaintiff in *Devin Nunes*, they do not need to prove "actual malice" as an element of liability. Even if the plaintiffs were correct about the first point, the issue of actual malice *is* at issue in *NuStar*: The *NuStar* plaintiffs seek punitive damages, which requires them to prove actual malice by clear and convincing evidence. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 348-50 (1974); *see also Jones v. Palmer Commc'ns, Inc.*, 440 N.W.2d 884, 891 (Iowa 1989); *Caveman Adventures UN v. Press-Citizen Co.*, 633 N.W.2d 757, 761 (Iowa 2001). Thus, in both cases, the Court would instruct the jury on the actual malice standard of fault, and would ask jurors to decide whether Defendants subjectively had knowledge of falsity or reckless disregard of the truth when publishing the challenged implication(s).

Indeed, this highlights a risk of separate trials: Inconsistent findings on the same factual questions. *See Blood*, 2009 WL 982022, at *7, 8 (in case with "common factual and legal

8

issues," any potential prejudice to a party was "insignificant and vastly outweighed by the risk that the failure to consolidate could lead to inconsistent verdicts"). "Actual malice" concerns the publisher's attitude toward the truth, not its attitude toward the plaintiffs. *See Carson v. Allied News Co.*, 529 F.2d 206, 209 (7th Cir. 1976); *Caveman Adventures UN*, 633 N.W.2d at 762 (stating that the test for determining the existence of actual malice "is purely subjective" and requires clear, convincing, and satisfactory proof that the defendant "acted with knowledge that the claims made" were false or "with a reckless disregard for the truth"). Thus, the jury would face similar actual malice inquiries in both cases, and the Court should avoid the risk of different juries returning different rulings on the same question.

This same principle applies to other issues of law or fact that may cut across both cases, such as (i) the literal truth or substantial truth of the "conspiracy" to hide the hiring of undocumented workers, (ii) the literal truth or substantial truth of whether NuStar Farms, LLC knowingly hires undocumented workers.

Even if different standards of proof were to apply to both cases, that is not reason enough to separate the cases for trial. It is not prejudicial to the plaintiffs to consolidate actions where claims arise from same facts and circumstances, even though the standards of proof applicable to one plaintiff's claim are not applicable to the other's claim. *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970). Those differences can be communicated to the jury through specific jury instructions. *Id.* (finding no merit to plaintiff appellant's speculation that jurors were confused in consolidated trial where "carefully prepared" instructions specified whether defenses were applicable to one plaintiff or another). Similarly, the fact that one claim involves damages not applicable to another plaintiff's claim does not prevent consolidation; jury instructions can be prepared so as not to confuse the jury. *Fields v. Atchison, Topeka & Santa Fe Railway Co.*, No.

CIV. A. 95-4026, 1996 WL 109536 (D. Kan. Feb. 7, 1996) (citations omitted) (granting motion to consolidate where two cases arose from same circumstances and defendants in one action would be necessary witnesses in the other).

Second, the plaintiffs may argue that they would "suffer prejudice" due to jurors "insinuating factual inferences from one plaintiff to the other plaintiff." *Roeder v. DIRECTV, LLC*, No. 14-CV-4091-LTS, 2017 WL 11458455, at *4-5 (N.D. Iowa Feb. 1, 2017). But the plaintiffs' counsel could manage this risk by addressing this issue with the jury in his opening statement and closing argument, and by requesting proposed jury instructions emphasizing that the jurors "must treat each plaintiff's claim separately." *See id.* Even if there were some complexity to the case, "jurors are routinely entrusted with important and complex tasks." *Id.* And here, there are only four plaintiffs—and there's no dispute that three of them would try their cases together in the *NuStar* case. *Id.* Defendants are confident that "jurors with the proper guidance and clear presentations by counsel will be able to fairly and efficiently serve as factfinders in a joint trial." *Id.*

## Conclusion

For the foregoing reasons, Defendants respectfully submit that the Court should defer setting any trial date(s) in the *Nunes Cases* until it has ruled on the motions for summary judgment in *NuStar*. But if the Court is nonetheless inclined to set a trial date based on what remains in the *Nunes Cases* at present, then Defendants believe sound authority and judicial economy warrant trying the *Nunes Cases* together.

January 25, 2022

**Ryan Lizza and Hearst Magazine Media, Inc., Defendants**

By:   /s/ Nathaniel S. Boyer
Jonathan R. Donnellan, *Lead Counsel*\*
 *jdonnellan@hearst.com*
Ravi V. Sitwala\*
 *rsitwala@hearst.com*
Nathaniel S. Boyer\*
 *nathaniel.boyer@hearst.com*
Sarah S. Park\*
 *sarah.park@hearst.com*
Nina N. Shah\*
 *nina.shah@hearst.com*
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street
New York, New York 10019
Telephone: (212) 649-2030
Telephone: (212) 649-2035
\**Admitted Pro Hac Vice*

Michael A. Giudicessi
 *michael.giudicessi@faegredrinker.com*
Nicholas A. Klinefeldt
 *nick.klinefeldt@faegredrinker.com*
Susan P. Elgin
 *susan.elgin@faegredrinker.com*
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8003
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

Scott W. Wright\*\*
 *scott.wright@faegredrinker.com*
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center/90 S. 7th Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
\*\**Admitted Pro Hac Vice in the NuStar case*

*Attorneys for Defendants*

## Certificate of Service

The undersigned certifies that a true copy of **Defendants' Brief Regarding a Joint Trial in the *Nunes Cases*** was served upon the following parties through the court's CM/ECF electronic filing system on January 25, 2022.

/s/ Nathaniel S. Boyer

Copy to:

William F. McGinn
 *bmcginn@themcginnlawfirm.com*

Steven S. Biss
 *stevenbiss@earthlink.net*

*Attorneys for Plaintiffs*